Yasin M. Almadani (Cal. Bar No. 242798)
ALMADANI LAW
14742 Beach Blvd., Suite 410
La Mirada, California 90638
(213) 335-3935 | YMA@LawAlm.com

Terrence M. Jones (Cal. Bar No. 256603)
THE LAW OFFICE OF TERRENCE JONES
6737 Bright Ave., Suite B6
Whittier, California 90601
(213) 863-4490 | Terrence@JonesOnLaw.com

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| MOCHA MILL, INC., *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> PORT OF MOKHA, INC., *et al.*, <br><br> Defendants. | Case No. 4:18-CV-2539-HSG <br><br> **OPPOSITION TO ADMINISTRATIVE MOTION TO CONTINUE INITIAL CASE MANAGEMENT CONFERENCE, N.D. CAL. CIV. L.R. 7-11 & 16-2** <br><br> *And see* Declaration of Yasin Almadani, filed and served concurrently herewith <br><br> Hon. Haywood S. Gilliam, Jr. <br> United States District Judge |

Plaintiffs Mocha Mill, Inc., Monk of Mocha Specialty Coffee Production and Export, Inc., Ibrahim A. Alaeli, Yasir H. Khanshali, and Adnan G. Awnallah (collectively, "Plaintiffs"), by and through their counsel of record, Yasin M. Almadani and Terrence M. Jones, hereby file their opposition to the administrative motion to continue the initial case management conference filed by Defendants Port of Mokha, Inc., Port of Mokha LLC,, Mokha Foundation, Mokhtar F. Alkhanshali, and Ibrahim Ahmad Ibrahim (collectively, "Defendants").

This opposition is based upon the attached memorandum of points and authorities, the declaration of Yasin M. Almadani and its accompanying exhibits, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: June 28, 2018              Respectfully submitted,

                                  */s/ Yasin M. Almadani*
                                  YASIN M. ALMADANI
                                  ALMADANI LAW

                                  TERRENCE M. JONES
                                  THE LAW OFFICE OF TERRENCE JONES

                                  *Attorneys for Plaintiffs*

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

Plaintiffs oppose Defendants' motion to continue the Case Management Conference ("CMC") currently set for August 7, 2018,[1] for the following two reasons:

*First*, the motion violates the parties' mutually bargained for stipulation (and this Court's order thereon), by which Plaintiffs agreed to give Defendants a lengthy extension to file their initial responses to the operative complaint with the specific caveat that the extension "***will not alter the date of any other event or deadline already fixed by court order***"—namely, the initial Case Management Conference ("CMC").  (*See* Dkt. 25 at ¶ 1).  Counsel for Plaintiffs pointedly discussed with counsel for Defendants that Plaintiffs would agree to a lengthy extension but with the caveat that no other dates, notably the CMC, would change as a result.  Now, after securing the extension, Defendants seek to renege on the parties' agreement in an effort to delay the start of discovery in a case that, despite Defendants' mischaracterization of the nature of the civil RICO suit, will certainly *not* end as the result of any yet-to-be-filed Rule 12 challenges.

*Second*, commencing discovery in this matter without delay is of utmost importance because the very Defendants who have filed the instant motion have of a history of destroying evidence relevant to this case, and may continue to do so as long as they are allowed to delay the start of the formal discovery period.

## II. STATEMENT OF FACTS

### A. Nature of the Case

To characterize the nature of this action, as Defendants so attempt, as a mere "sour grapes lawsuit" simply strains credulity.  Plaintiffs (who are represented by two former Assistant United States Attorneys) filed a detailed 73-page complaint with painstaking particularity alleging a civil RICO scheme involving fraud, extortion, and money laundering.  (*See, generally*, FAC [Dkt. No. 24]).  The operative first amended complaint

---

[1] All further dates referenced herein likewise occurred in 2018.

("FAC") includes detailed allegations with reference to specific emails, agreements, conversations, actions, and transactions evidencing the execution of the scheme, and describes how Defendants profited from their racketeering activities to the tune of hundreds of millions of dollars.

In short, this case arises out of a calculated RICO conspiracy by Defendants to supplant the "Mocha Mill" coffee company (founded by the individual Plaintiffs in this action) with another coffee company called "Port of Mokha" so that Port of Mokha, rather than Mocha Mill, would be regarded as the "first-mover" in the effort to bring premium coffee from Yemen (the birthplace of coffee) to market in the United States and worldwide.  With Mocha Mill, Plaintiffs' business plan was to locate, cultivate, refine, import, and sell for the first time in centuries premium Yemeni coffee under the Mocha Mill brand.  To accomplish this goal, Plaintiffs partnered with Defendant Mokhtar Alkhanshali ("Mokhtar"), made him Mocha Mill's CEO, and invested years of effort and over half a million dollars into Mokhtar and the company to develop relationships with Yemeni farmers to refine, cultivate, and import coffee varieties that have now come to be considered among the best in the world.  In 2015, Mocha Mill's coffee was scored by experts as among the best tasting coffee in the world.  Mocha Mill was, thus, poised for tremendous success and was preparing a big launch in 2016.

However, Mokhtar, motivated by his own greed and ego, recognized Mocha Mill's blockbuster potential and sought to usurp his company's impending success for Port of Mokha so that he and his coconspirators could reap all the financial gain for themselves.  So, while still acting as Mocha Mill's CEO, Mokhtar secretly formed Port of Mokha and conspired with, among others, Defendant Blue Bottle, Inc. (with which he had been dealing on Mocha Mill's behalf) to steal Mocha Mill's coffee and first-mover advantage for Port of Mokha through an extensive fraud and RICO scheme.  With Blue Bottle's help, Mokhtar executed the scheme using straw-buyers (Defendants T&H Computers and Metra Computer Group) to defraud Mocha Mill out of its entire business.

Today, Defendants thrive on the labor and assets stolen in the RICO scheme, particularly Port of Mokha and Defendant Blue Bottle, Inc. Given its recognition as the pioneer of premium Yemeni coffee, Port of Mokha and its investors now value the company's worth in excess of $250 million. Port of Mokha sells its Yemeni coffee varieties to Blue Bottle for upwards of $135 per kilogram. Blue Bottle, in turn, sells 12-ounce retail bags of coffee to everyday consumers for $50 and single servings of Port of Mokha varieties in its coffeeshops for $16 per cup. Indeed, on the heels of its introduction of Yemeni coffee varieties to its specialty retail lineup and the attendant boost to its brand name and profitability, Blue Bottle sold a majority stake in its company to Nestlé—the largest food company in the world—for an estimated $425 million.

### B. The Parties' Stipulation

On May 16th, counsel for Plaintiffs and Defendants spoke by phone regarding a stipulated extension of the deadline for Defendants to file their initial responses to the complaint. (Declaration of Yasin M. Almadani ("Almadani Decl.") at ¶¶ 6-7). During those discussions, counsel for Plaintiffs made clear that while they were agreeable to the extension, their agreement was predicated on the understanding that Plaintiffs were not agreeable to moving back the CMC to coincide with the hearing of any Rule 12 motions Defendants might file. (*See id.* at ¶ 6). In other words, Plaintiffs' agreement to the lengthy extension was in exchange for Defendants' agreement to maintain the August 7th CMC date. Counsel for Plaintiffs memorialized the parties' agreement in a follow-up email. (*See id.* at ¶ 7; Def. Ex. A at 1).[2]

The parties filed their stipulation on June 6th and the court entered an order thereon the following day. The stipulation and order thereon both state that "[t]he deadline for Defendants to answer or respond to the Complaint shall be extended to July 27, 2018, **which will not alter the date of any other event or deadline already fixed**

---

[2] In fact, the parties made this agreement *twice*; first, after the filing of Plaintiffs' initial complaint, and then for a second time incident to the filing of Plaintiffs' FAC. (Almadani Decl. at ¶¶ 8, 12, 13; Plf. Ex. 2 at 1).

*by court order*." (*See* Dkts. 25 and 26 at 1 (emphasis added)).

On June 22, in anticipation of the August 7 CMC, Plaintiffs emailed Defendants to schedule a date to meet and confer about the filing of the parties' Joint CMC Report. (Almadani Decl. at ¶¶ 14-16; Def. Ex. C at 4). Instead of scheduling a date, Defendants asked Plaintiffs to continue the CMC (in order to delay the start of discovery) and threatened to file the instant motion if Plaintiffs did not agree. (*See* Def. Ex. C at 1-2). Plaintiffs objected, pointing out that Defendants' motion would violate the very first provision in the parties' stipulation, and that there was no need to delay discovery because Rule 12 motions would not resolve this case. (*Id*. at 2). Plaintiffs attached a draft Joint CMC Report to their email with proposed dates for the case and again invited Defendants to meet and confer. (*Id*. at 3). Defendants filed the instant motion the very next day.

### III.   ARGUMENT

#### A.   The Parties' Stipulation Precludes Defendants' Request

Parties should be held to their written agreements, particularly those that take the form of stipulations filed before and approved by order of the court. Here, it was abundantly clear that Plaintiffs' agreement to such a lengthy extension of Defendants' deadline to respond to the complaint was predicated on the concomitant agreement that no other dates or events would be altered—namely, the date of the CMC. Defendants were well aware that Plaintiffs did not wish to delay the start of discovery, and so mutually bargained for their response date extension with that clear proviso. To allow Defendants to now use the extension as a basis to delay discovery would be a breach of the parties' stipulation and patently unfair to Plaintiffs.

Moreover, while Defendants may believe that their Rule 12 motions will be successful (as most defendants do), Plaintiffs do not share that confidence. Despite Defendants' mischaracterization of Plaintiffs' pleading, the complaint is pled with tremendous specificity—quoting from numerous emails between Defendants as they

executed their scheme, identifying specific monetary transactions on specific dates with specific bank account numbers as they embezzled funds from Plaintiffs, and articulating the conversations about Defendants' scheme to supplant Plaintiffs' coffee company with their own.  Thus, Plaintiffs do not anticipate that Defendants' Rule 12 motions (which have not even been filed) will accomplish anything but an unnecessary delay of the litigation, and therefore, should not serve as a basis for postponing the start of discovery or otherwise moving the case forward.  Indeed, most of the purported deficiencies of the FAC that Defendants raise concern the inaccurate and misunderstood recitation of the elements of Plaintiffs' respective causes of action at the end of the complaint, not the sufficiency of the allegations in the body of the pleading upon which those claims are based.  Hence, Defendants' contemplated Rule 12 motions will certainly *not* be dispositive.

### B.  Spoliation of Evidence Militates Against Delaying Discovery

Plaintiffs intend to present evidence that the Port of Mokha-related Defendants have actively engaged in the spoliation of evidence, particularly Mokhtar, and that it is a grave concern in this case.  (*See* FAC at ¶¶ 200-201).  Plaintiffs can demonstrate that Mokhtar deliberately destroyed emails evidencing his racketeering activities prior to the initiation of this suit.  And, alarmingly, even after giving notice to Mokhtar of an impending lawsuit, Plaintiffs saw evidence relevant to the case disappear off the Internet. In fact, Plaintiffs sent Defendants a letter on February 9th raising this very issue.  (*See* Almadani Decl. at ¶ 4; Plf. Ex. 1).
The sooner discovery is allowed to commence, the more likely it is that additional spoliation may be avoided.

### IV.  CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants' motion.

1  Dated: June 28, 2018                          Respectfully submitted,

                                                 */s/ Yasin M. Almadani*
                                                 YASIN M. ALMADANI
                                                 ALMADANI LAW

                                                 TERRENCE M. JONES
                                                 THE LAW OFFICE OF TERRENCE JONES

                                                 *Attorneys for Plaintiffs*