1  FRANK BUSCH (258288)
   **KERR & WAGSTAFFE LLP**
2  101 Mission Street, 18th Floor
   San Francisco, CA 94105-1727
3  Telephone: (415) 371-8500
   Fax: (415) 371-0500
4  Email: busch@kerrwagstaffe.com

5  Attorneys for Defendants
   METRA COMPUTER GROUP FZCO and
6  T&H COMPUTERS, INC.

7

8                    **UNITED STATES DISTRICT COURT**

9                    **NORTHERN DISTRICT OF CALIFORNIA**

10                          **OAKLAND DIVISION**

11

12  MOCHA MILL, INC., MONK OF MOCHA          Case No. 4:18-cv-02539-HSG
    SPECIALTY COFFEE PRODUCTION AND
13  EXPORT, INC., IBRAHIM A. ALAELI,         **NOTICE OF MOTION AND MOTION**
    YASIR H. KHANSHALI, and ADNAN G.         **TO DISMISS PURSUANT TO FRCP**
14  AWNALLAH,                                **12(b); MEMORANDUM OF POINTS**
                                             **AND AUTHORITIES IN SUPPORT**
15              Plaintiffs,                  **THEREOF**

16  v.

17  PORT OF MOKHA, INC., PORT OF MOKHA       DATE: September 27, 2018
    LLC, MOKHA FOUNATION, BLUE BOTTLE        TIME: 2:00 p.m.
18  COFFEE, INC., METRA COMPUTER             COURTROOM:  2
    GROUP FZCO, T&H COMPUTERS, INC.,
19  MOKHTAR F. ALKHANSHALI, and
    IBRAHIM AHMAD IBRAHIM,                   TRIAL:  [None]
20
21              Defendants.

22

23

24

25

26

27

28

1

## <u>TABLE OF CONTENTS</u>

2

*Page*

3 NOTICE OF MOTION AND MOTION TO DISMISS ................................................................. 1

4 I.      INTRODUCTION ................................................................................................................ 2

5 II.     BACKGROUND ................................................................................................................. 3

6   A.   Metra's Structure and Operations ................................................................................ 3

7   B.   Service on Metra .......................................................................................................... 4

8
9   C.   Metra and T&H are barely mentioned in the complaint ............................................. 4

10    1.   T&H .......................................................................................................................... 4

11    2.   Metra ........................................................................................................................ 5

12 III.    PLAINTIFFS FAIL TO STATE A CLAIM AGAINST METRA OR T&H .................. 6

13   A.   Legal Standard ............................................................................................................. 6

14
   B.   Plaintiffs have Failed to Allege A RICO Conspiracy ................................................. 7
15
16    1.   Plaintiffs fail to allege any RICO violation ........................................................... 7

17    2.   Plaintiffs do not allege a Movant agreed to commit two predicate acts ..................... 8

18    3.   Plaintiffs do not allege Movants agreed to commit a substantive violation ............... 10

19
   C.   Plaintiffs have Failed to Adequately Allege Follow-on Claims ....................................... 13
20
21    1.   Failure to Allege Fraud with Particularity ............................................................. 14

22    2.   Failure to Allege Conspiracy ................................................................................. 15

23    3.   Failure to Allege Aiding and Abetting ................................................................... 15

24    4.   Failure to allege specific state-law claims ............................................................. 16

25 IV.     THIS COURT LACKS PERSONAL JURISDICTION OVER METRA ...................... 17

26   A.   Legal Standard ........................................................................................................... 17

27
28   B.   Metra is Not Subject to General Jurisdiction ........................................................... 18

KERR
&
WAGSTAFFE
LLP

Case No. 4:18-CV-02539-HSG                                                                 MOTION TO DISMISS

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

C.    Metra is not Subject to Personal Jurisdiction ................................................. 18

    1.    Plaintiffs Cannot Impute Other Contacts to Metra .................................... 19

    2.    Plaintiffs Cannot Prove Purposeful Direction ........................................... 20

    3.    Plaintiffs Cannot Prove Forum-Related Conduct ...................................... 21

    4.    Personal Jurisdiction over Metra would be unreasonable .......................... 21

V.    PLAINTIFFS FAILED TO PROPERLY SERVE METRA ........................................ 23

A.    Legal Standard ................................................................................................... 23

B.    Rules Governing Service on Foreign Business Entities .................................... 23

    1.    Service Pursuant to Rule 4 ......................................................................... 23

    2.    Serving Foreign Corporations in California ............................................... 23

    3.    Serving Foreign Limited Liability Companies in California ...................... 24

C.    Metra is a Foreign Limited Liability Company, not a Corporation ................... 24

D.    Plaintiffs Failed to Effect Proper Service on Metra ......................................... 24

VI.    CONCLUSION ........................................................................................................ 25



KERR
— & —
WAGSTAFFE
LLP

Case No. 4:18-CV-02539-HSG

MOTION TO DISMISS

# TABLE OF AUTHORITIES

**Cases**                                                                                                          *Page*

*Allwaste, Inc. v. Hecht,*
   65 F.3d 1523 (9th Cir. 1995) ........................................................................ 12

*American Master Lease LLC v. Idanta Partners, Ltd.,*
   225 Cal. App. 4th 1451 (2014) ..................................................................... 16

*Apparel Art Int'l v. Jacobson,*
   967 F.2d 720, 722 (1st Cir. 1992) ................................................................. 11

*Asahi Metal Indus. Co. v. Superior Court of Cal.,*
   480 U.S. 102 (1987) ...................................................................................... 22

*Ashcroft v. Iqbal,*
   556 U.S. 662, 678-79 (2009) ...................................................................... 6, 7

*Aviva United States Corp. v. Vazirani,*
   902 F. Supp. 2d 1246 (D. Ariz. 2012) .......................................................... 11

*Barsky v. Spiegel Accountancy Corp.*, No. 14-cv-04957-TEH,
   2015 U.S. Dist. LEXIS 16900 (N.D. Cal. Feb. 11, 2015) ............................ 12

*Baumer v. Pachl,*
   8 F.3d 1341 (9th Cir. 1993) .......................................................................... 10

*Bell Atlantic Corp. v. Twombly,*
   550 U.S. 544, 555- 56 (2007) ..................................................................... 6, 7

*Brockmeyer v. May,*
   383 F.3d 798 (9th Cir. 2004) ........................................................................ 23

*Butcher's Union Local No. 498 v. SDC Inv., Inc.,*
   788 F.2d 535 (9th Cir. 1986) .................................................................. 11, 23

*CollegeSource, Inc. v. AcademyOne, Inc.,*
   653 F.3d 1066 (9th Cir. 2011) ...................................................................... 18

*Comm. to Protect Our Agric. Water v. Occidental Oil & Gas Corp.,*
   235 F. Supp. 3d 1132 (E.D. Cal. 2017) .......................................................... 8

KERR
&
WAGSTAFFE
LLP

*Core-Vent Corp. v. Nobel Indus. AB*,

   11 F.3d 1482 (9th Cir. 1993) ............................................................................................ 22

*Cosper v. Smith & Wesson Arms Co.*,

   53 Cal. 2d 77 (1959) ....................................................................................................... 23

*Daimler AG v. Bauman*,

   571 U.S. 117 (2014) ........................................................................................................ 18

*Decker v. GlenFed, Inc.*,

   42 F.3d 1541, 1548 (9th Cir. 1994) ................................................................................. 6

*Destfino v. Reiswig*,

   630 F.3d 952 (9th Cir. 2011) .......................................................................................... 14

*Doe v. Unocal Corp.*,

   248 F.3d 915 (9th Cir. 2001) .................................................................................... 19, 21

*Dole Food Co. v. Watts*,

   303 F.3d 1104 (9th Cir. 2002) ....................................................................................... 22

*Edwards v. Marin Park, Inc.*,

   356 F.3d 1058 (9th Cir. 2004) ......................................................................................... 8

*Fed. Reserve Bank of San Francisco v. HK Sys.*, No. C-95-1190 MHP,

   1997 WL 227955 (N.D. Cal. Apr. 24, 1997) ................................................................. 10

*Gilbert v. Bank of Am.*, No. C 13-01171 JSW,

   2014 U.S. Dist. LEXIS 133956, (N.D. Cal. Sept. 23, 2014) .......................................... 11

*H. J. Inc. v. Nw. Bell Tel. Co.*,

   492 U.S. 229 (1989).......................................................................................................... 12

*Haines v. Get Air LLC*, No. CV-15-00002-TUC-RM (EJM),

   2017 U.S. Dist. LEXIS 27140 (D. Ariz. Feb. 23, 2017)............................................... 21

*Hanson v. Denckla*,

   357 U.S. 235 (1958)......................................................................................................... 20

*Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*,

   328 F.3d 1122 (9th Cir. 2003) .................................................................................. 17, 21

KERR
&
WAGSTAFFE
LLP

Case No. 4:18-CV-02539-HSG                                                MOTION TO DISMISS

*Hexcel Corp. v. Ineos Polymers, Inc.*,

   681 F.3d 1055 (9th Cir. 2012) ................................................................ 15

*Howard v. America Online, Inc.*,

   208 F.3d 741 (9th Cir. 2000) ...................................................... 7, 8, 10

*In re Auto. Antitrust Cases I & II*,

   135 Cal. App. 4th 100 (2005) ............................................................... 19

*Int'l Shoe Co. v. Wash.*,

   326 U.S. 310 (1945) ............................................................................. 17

*J. McIntyre Mach., Ltd. v. Nicastro*,

   564 U.S. 873 (2011) ............................................................................. 17

*Jansen v. Norcross*, No. C16-0130 RSM,

   2016 U.S. Dist. LEXIS 82157 (W.D. Wash. June 23, 2016) .................... 20

*Kaplan v. Rose*, 49 F.3d 1363,

   1370 (9th Cir. 1994) .............................................................................. 7

*Kearns v. Ford Motor Co.*,

   567 F.3d 1120 (9th Cir. 2009) .............................................................. 14

*Leyvas v. Bank of Am. Corp.*,

   601 F. Supp. 2d 1201 (S.D. Cal. 2009) .................................................... 8

*LiMandri v. Judkins*,

   52 Cal. App. 4th 326 (1997) ................................................................ 16

*Lycurgan, Inc. v. Griffith*, No. 14-CV-548 JLS (BGS),

   2017 U.S. Dist. LEXIS 120020 (S.D. Cal. July 31, 2017) ...................... 20

*Martinez v. Aero Caribbean*,

   764 F.3d 1062 (9th Cir. 2014) .............................................................. 18

*Menalco, FZE v. Buchan*,

   602 F. Supp. 2d 1186 (D. Nev. 2009) .................................................... 19

*Menken v. Emm*,

   503 F.3d 1050 (9th Cir. 2007) .............................................................. 21

1   *Metcalf v. Death Row Records, Inc.*, No. C-03-1250 SC,

2       2003 U.S. Dist. LEXIS 29029 (N.D. Cal. Sept. 4, 2003) ......................................................... 8

3   *Navarro v. Block*,

4       250 F.3d 729, 732 (9th Cir. 2001) ........................................................................................ 6

5   *Neibel v. Trans World Assurance Co.*,

6       108 F.3d 1123 (9th Cir. 1997) .............................................................................................. 8

7   *Neilson v. Union Bank of Cal., N.A.*,

8       290 F. Supp. 2d 1101 (C.D. Cal. 2003 ........................................................................... 14, 16

9   *Neubronner v. Milken*,

10      6 F.3d 666, 672 (9th Cir. 1993) ............................................................................................ 7

11  *Newman v. Checkrite Cal., Inc.*,

12      912 F. Supp. 1354 (E.D. Cal. 1995) ...................................................................................... 16

13  *Odom v. Microsoft Corp.*,

14      486 F.3d 541 (9th Cir. 2007) .............................................................................................. 12

15  *Oki Semiconductor Co. v. Wells Fargo Bank*,

16      298 F.3d 768 (9th Cir. 2002) ................................................................................................ 7

17  *Panavision Int'l, Ltd. P'ship v. Toeppen*,

18      141 F.3d 1316 (9th Cir. 1998) ............................................................................................ 22

19  *Pebble Beach Co. v. Caddy*,

20      453 F.3d 1151 (9th Cir. 2006) ....................................................................................... 17, 18

21  *Picot v. Weston*,

22      780 F.3d 1206 (9th Cir. 2015) ............................................................................................ 18

23  *Piedmont Label Co. v. Sun Garden Packing Co.*,

24      598 F.2d 491 (9th Cir. 1979) .............................................................................................. 19

25  *Ranza v. Nike, Inc.*,

26      793 F.3d 1059 (9th Cir. 2015) ....................................................................................... 17, 19

27  *Reynolds v. Cty. of San Diego*,

28      84 F.3d 1162 (9th Cir. 1996) .............................................................................................. 13

Case No. 4:18-CV-02539-HSG                                                              MOTION TO DISMISS

KERR
&
WAGSTAFFE
LLP

*Rubicon Glob. Ventures, Inc. v. Chongqing Zongshen Grp. Imp./Exp. Corp.*,

    226 F. Supp. 3d 1141 (D. Or. 2016) ............................................................... 7

*Rusheen v. Cohen*,

    37 Cal. 4th 1048 (2006) ................................................................................ 15

*Salinas v. United States*,

    522 U.S. 52 (1997) ........................................................................................ 10

*Sanford v. MemberWorks, Inc.*,

    625 F.3d 550 (9th Cir. 2010) ........................................................................ 14

*Schwarzenegger v. Fred Martin Motor Co.*,

    374 F.3d 797 (9th Cir. 2004) ........................................................................ 20

*Sedima v. Imrex Co.*,

    473 U.S. 479 (1985) ...................................................................................... 7

*Sever v. Alaska Pulp Corp.*,

    978 F.2d 1529 (9th Cir. 1992) .......................................................... 8, 11, 12

*Sinatra v. Nat'l Enquirer, Inc.*,

    854 F.2d 1191 (9th Cir. 1988) ...................................................................... 22

*Singman v. NBA Props. Inc.*, No. CV 13-05675 ABC (SHx),

    2014 U.S. Dist. LEXIS 182317 (C.D. Cal. Jan 17, 2014) ........................... 16

*Sun Sav. & Loan Ass'n v. Dierdorff*,

    825 F.2d 187 (9th Cir. 1987) ........................................................................ 12

*Swartz v. KPMG LLP*,

    476 F.3d 756 (9th Cir. 2007) ........................................................................ 14

*Taiwan Semiconductor Mfg. Co. v. Tela Innovations, Inc.*, No. 14-cv-00362-BLF,

    2014 U.S. Dist. LEXIS 101657 (N.D. Cal. July 24, 2014) .......................... 15

*Tatung Co. v. Shu Tze Hsu*,

    217 F. Supp. 3d 1138 (C.D. Cal. 2016) ................................................... 7, 15

*Turner v. Cook*,

    362 F.3d 1219 (9th Cir. 2004) ...................................................................... 12

KERR
&
WAGSTAFFE
LLP

vii

Case No. 4:18-CV-02539-HSG

MOTION TO DISMISS

*UMG Recordings, Inc. v. Global Eagle Entertainment, Inc.*,
  117 F. Supp. 3d 1092 (C.D. Cal. 2015) .......................................................................... 14, 19

*Underwager v. Channel 9 Austl.*,
  69 F.3d 361 (9th Cir. 1995) ......................................................................................................... 19

*United States v. Fernandez*,
  388 F.3d 1199 (9th Cir. 2004) ..................................................................................................... 11

*Vess v. Ciba–Geigy Corp. USA*,
  317 F.3d 1097 (9th Cir. 2003) ............................................................................................... 6, 14

*Walden v. Fiore*,
  571 U.S. 277 (2014) ............................................................................................................. 17, 20

*Wash. Shoe Co. v. A-Z Sporting Goods Inc.*,
  704 F.3d 668 (9th Cir. 2012). ..................................................................................................... 20

*Wisdom v. First Midwest Bank*,
  167 F.3d 402 (8th Cir. 1999) ......................................................................................................... 8

*World-Wide Volkswagen Corp. v. Woodson*,
  444 U.S. 286 (1980) ....................................................................................................................... 17

*Wright v. City of Santa Cruz*, No. 13-cv-01230-BLF,
  2014 U.S. Dist. LEXIS 91192 (N.D. Cal. July 3, 2014) .......................................................... 23

*Yamaha Motor Co., Ltd. v. Superior Court*,
  174 Cal. App. 4th 264 (2009) ..................................................................................................... 24

**Statutes**

28 U.S.C. § 1367(c)(3) ....................................................................................................................... 13

Cal. Code Civ. Proc. § 410.10 ................................................................................................. 17, 23

Cal. Code Civ. Proc. § 416.10 ......................................................................................................... 23

Cal. Code Civ. Proc. § 416.40 ......................................................................................................... 24

Cal. Corp. Code § 18220 ................................................................................................................. 24

Cal. Corp. Code § 200(a) ................................................................................................................. 24

Cal. Corp. Code § 204(b) ......................................................................................... 24

Cal. Corp. Code § 2110 ............................................................................................ 23

KERR
&
WAGSTAFFE
LLP

**NOTICE OF MOTION AND MOTION TO DISMISS**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD HEREIN:

PLEASE TAKE NOTICE that on September 27, 2018 at 2:00 p.m., or as soon thereafter as the matter may be heard, in Courtroom 2 of the above-captioned court, before the Honorable Haywood S. Gilliam, Jr., Defendants Metra Computer Group FZCO ("Metra") and T&H Computers, Inc. ("T&H") will move and hereby do move pursuant to Federal Rule of Civil Procedure 12(b) for an order dismissing Plaintiffs' claims with prejudice.

This motion is based upon this Notice, the attached Memorandum of Points and Authorities, the declarations of Mohamed Eissa and Wael Fadel, the request for judicial notice filed concurrently, the complete files and records of this action, the arguments of counsel, and such other matters the Court may consider.

**STATEMENT OF RELIEF SOUGHT**

T&H and Metra seek an order pursuant to Federal Rule of Civil Procedure 12(b)(6) dismissing with prejudice each of Plaintiffs' claims against them for failure to state a claim upon which relief can be granted.

Metra seeks an order pursuant to Federal Rule of Civil Procedure 12(b)(2) dismissing each of Plaintiffs' claims against it for lack of personal jurisdiction.

Metra seeks an order pursuant to Federal Rule of Civil Procedure 12(b)(5) dismissing each of Plaintiffs' claims against it for insufficient service of process.

KERR
&
WAGSTAFFE
LLP

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Although some of the facts in this case are so dramatic they are featured in a novel by Dave Eggers, the allegations against T&H and Metra (collectively, "Movants") relate only to a single, negotiated sale of Plaintiffs' coffee to T&H for $50,000 that Plaintiffs now say should have been for $116,379. (If so, T&H is a "victim" too, as it resold the same beans for $51,000.) Metra—T&H's parent company in Dubai—is not alleged to have done anything in particular.

T&H's purchase and resale of Plaintiffs' coffee does not support the claim that Movants conspired to violate the RICO Act, which is the only basis for federal jurisdiction. Nor does it give rise to the state law causes of action alleged against Movants.

Regarding federal claims, Plaintiffs allege only that Movants conspired under Section 1962(d). That claim fails for three reasons. *First*, those alleged to have participated in an actual RICO enterprise will prevail on their motion to dismiss, permitting the Court to dismiss claims against Movants as a matter of law. *Second*, Plaintiffs do not allege with particularity that either Movant committed two predicate acts. *Third*, Plaintiffs do not allege with particularity that either Movant agreed to commit a substantive RICO violation. This is because the only "conspiracy" even tangentially involving Movants—the negotiation and consummation of a single purchase over three months—cannot establish a pattern of racketeering. A pattern requires multiple acts, but only one is alleged. It also requires continuity, but neither a significant duration nor possibility of future harm is hinted at.

The state-law claims fare no better. The First Amended Complaint ("FAC") falls well short of alleging with particularity which defendants took which actions, including individual members of business entities. Their conclusory allegations that everyone did everything cannot be credited, or support any claims. Indeed, Plaintiffs' state law claims are not clear about whether Movants are alleged to have committed direct violations, conspired to commit violations, or aided and abetted violations. Not only does the FAC fail to adequately allege any of these, Rule 9(b)—or even, were it applicable, Rule 8—requires that Plaintiffs tell Movants what theories of liability Movants actually face.

1    The claims against Metra should be dismissed for two additional reasons. First, Metra is

2    based in Dubai, operates exclusively in the Middle East, and has taken no actions directed

3    towards California. It is therefore not subject to personal jurisdiction in this action. Metra was

4    also served as a corporation despite being a limited liability company. Plaintiffs' attempt to take

5    advantage of stray California authority applicable only to corporations therefore cannot excuse

6    their obligation to properly serve those from whom they seek relief.

7    **II.    BACKGROUND**

8        **A.    METRA'S STRUCTURE AND OPERATIONS**

9    Metra is a Free Zone Company organized under the rules of the Jebel Ali Free Zone

10   ("Jafza") in the Emirate of Dubai. Declaration of Mohamed Eissa ("Eissa Decl.") Ex. A (Metra's

11   Jafza trading license); Request for Judicial Notice Ex. A (Jebel Ali Free Zone Companies

12   Implementing Regulations (the "Jafza Regs")). The Jafza Regulations provide clear definitions

13   of this type of entity. A Free Zone Company ("FZCO") "is a limited liability company with a

14   minimum of 2 and a maximum of 50 shareholders." Jafza Reg § 11.1. It "may not invite the

15   public to subscribe to its shares, nor may an FZCO allot shares with the intention of such shares

16   being offered to the public." Jafza Reg § 11.5. Jafza must review and approve any ownership

17   transfers. Jafza Reg § 23.1. It is managed by its directors, along with a named manager "recorded

18   in the Companies Register [who] must appear on the License of the FZE and FZCO." Jafza Reg

19   §§ 27.1, 34.1.

20   All of Metra's offices and employees are located in the United Arab Emirates. Eissa

21   Decl. ¶ 3. It is headquartered in Jafza and operates under licenses to trade various categories of

22   electronics. Eissa Decl. ¶ 4, Ex. A. It is owned by Tarek and Mohamed Eissa, both of whom

23   reside in Dubai. Eissa Decl. ¶ 5. Its manager, registered pursuant to Jafza Regulation, is

24   Mohamed Eissa. Eissa Decl. ¶ 4, Ex. A. It does not operate in the United States. Eissa Decl. ¶ 3.

25   Plaintiffs essentially admit as much, alleging Metra is subject to personal jurisdiction because of

26   T&H's business rather than its own. FAC ¶ 19, ECF No. 24. Plaintiffs further admit that Metra is

27   a "company"—notably, not a corporation— "based in Dubai, United Arab Emirates that operates

28   as a distributor of information technology products in the Middle East." FAC ¶ 38.

## B. SERVICE ON METRA

As reflected in their proof of service, Plaintiffs purported to serve Metra on June 7, 2018, by delivering process to a California UPS store and then mailing process to T&H's address in San Carlos. Ntc. of Filing Proof of Service, ECF No. 28; Declaration of Wael Fadel ("Fadel Decl.") ¶ 5. The process contained a cover letter asserting that T&H was Metra's agent because it "is a wholly-owned subsidiary of Metra and acts as Metra's agent and general manager here in the United States and within the Northern District of California." Fadel Decl. Ex. A. The cover letter went on to assert that "Plaintiffs' service on T&H is binding upon its corporate parent Metra," citing a California Court of Appeal decision captioned *Yamaha Motor Co., Ltd. v. Superior Court*. *Id.*

Plaintiffs did not, and do not claim to have, delivered anything to Metra at its address in the United Arab Emirates. Eissa Decl. ¶ 6. Metra has not appointed T&H as its agent for service of process, nor does T&H or any T&H employee have any management role in Metra. Eissa Decl. ¶ 7; Fadel Decl. ¶ 4. Indeed, no T&H employee is employed by Metra in any capacity. Eissa Decl. ¶ 7.

## C. METRA AND T&H ARE BARELY MENTIONED IN THE COMPLAINT

### 1. T&H

T&H is a peripheral figure in the events at issue here. FAC ¶ 7 (dispute relates to who would be "regarded as the 'first mover' in the importation and sale of premium Yemeni coffee," would be "first-to-market," and would earn the resulting "brand recognition and supplier, distributor, retailer, and customer loyalty."). Rather than allege that T&H had any interest in coffee-related brand recognition, the FAC makes clear that T&H is a technology company. FAC ¶¶ 40, 181. Indeed, T&H's only connection to this dispute between competing coffee importers is that it bought some of Plaintiffs' coffee for a negotiated price of $50,000, then resold it for $51,000. FAC ¶ 183. Plaintiffs dub this the "Conspiracy to Supplant Mocha Mill with Port of Mokha Using Wire Fraud as Part of a Pattern of Racketeering Activity: Take Two (April 2016 – June 2016)" (the "Spring 2016 Conspiracy"). FAC ¶ 177.

In an attempt to convert an ordinary commercial transaction into racketeering, wire fraud,

and numerous follow-on torts—but *not* breach of contract—Plaintiffs allege, with no specific

basis, that two non-Movants "created the fictional 'T&H Imports,' in conspiracy with

Defendants T&H Computers and Metra Computer Group." FAC ¶ 177. How the alleged

existence of such an entity is relevant, when Plaintiffs expressly allege that "T&H Computers

wire[d] $50,000 to Mocha Mill," and they knowingly completed the sale with T&H by delivering

coffee, goes unexplained. FAC ¶ 183(b).

Plaintiffs further allege that the price T&H paid was *negotiated*, with an initial offer to

pay $50,000 for 1,000 kilograms of coffee, and subsequent counter-proposal of the same price

for 862 kilograms. FAC ¶¶ 183(b), (f). Moreover, Plaintiffs do not—and cannot—allege that (1)

T&H concealed its identity when it paid them $50,000; (2) they had no opportunity to withdraw

from the transaction or negotiate a different price upon receiving T&H's wire and speaking to

T&H's employee; (3) T&H made any statements whatsoever about the advisability of

completing the transaction; or (4) that T&H failed to perform any commitment to any Plaintiff.

Instead, they argue only that their coffee beans were worth $116,379 instead of the agreed-upon

$50,000 sale price.

Other than this single transaction, Plaintiffs allege no wrongdoing by T&H and no

involvement by T&H in any other conspiracy.

### 2.  Metra

Metra is not alleged to have done anything in particular. Plaintiffs instead rely upon the

purely conclusory allegation that Metra "engaged in a RICO conspiracy with Port of Mokha to

defraud Plaintiffs" and "engage[d] in various schemes to defraud Plaintiffs." FAC ¶¶ 39, 128.

The only time any Metra employee is even named is where Plaintiffs allege "T&H Imports" was

somehow created through a conspiracy involving Metra, and that "Mohamed Eissa ('Eissa'),

agreed to help execute the fraud scheme."[1] FAC ¶¶ 177-78.

Beyond that, Plaintiffs allege only that *T&H employee Wael Fadel* is, in some undefined

way, "of Metra." FAC ¶ 182. The allegations against T&H above are then sporadically coupled

with the phrase "and Metra." No natural person employed by Metra is ever alleged to have taken

---

[1] Although Plaintiffs define the term "Eissa," they never again use it.

KERR
&
WAGSTAFFE
LLP

1   any specific act to harm any Plaintiff or help any Defendant. The closest Plaintiffs come to

2   alleging conduct by Metra is an allegation that ***Mokhtar*** put Metra's address on an invoice. FAC

3   ¶ 183(b).

4   **III.    PLAINTIFFS FAIL TO STATE A CLAIM AGAINST METRA OR T&H**

5         As Plaintiffs make clear, their whole case sounds in fraud. FAC ¶ 6 ("using racketeering

6   activity and other fraudulent means, Port of Mokha, through Mokhtar and his co-conspirators,

7   stole the Mocha Mill business right out from under Mokhtar's Mocha Mill partners."). Although

8   this requires them to allege each claim with particularity, they allege no particular conduct by

9   Metra, a standard commercial transaction with T&H, and refuse to clarify whether Movants are

10  liable on the state law claims directly, as conspirators, or as aiders-and-abettors. These

11  allegations do not support any claim, and should therefore be dismissed.

12        **A.    LEGAL STANDARD**

13        Rule 12(b)(6) requires dismissal when a plaintiff fails to present a cognizable legal theory

14  or to allege sufficient facts supporting a cognizable legal theory upon which relief may be

15  granted. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). As the Supreme Court has

16  emphasized, "labels and conclusions, and a formulaic recitation of the elements of a cause of

17  action will not [survive a motion to dismiss]," and "courts are not bound to accept as true a legal

18  conclusion couched as a factual allegation." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-

19  56 (2007) (internal quotation marks and citation omitted). A court must disregard unreasonable

20  inferences or legal characterizations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

21        When a complaint sounds in fraud, Rule 9(b) imposes additional requirements. "[I]n

22  alleging fraud or mistake," Rule 9(b) requires a party to "state with particularity the

23  circumstances constituting fraud or mistake," including "the who, what, when, where, and how

24  of the misconduct charged." *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir.

25  2003) (internal quotation marks omitted). In addition, "'[t]he plaintiff must set forth what is false

26  or misleading about a statement, and why it is false.'" *Id.* (quoting *Decker v. GlenFed, Inc.*, 42

27  F.3d 1541, 1548 (9th Cir. 1994) (en banc)). Although a plaintiff may plead defendant's scienter

28  on information and belief, "this exception does not nullify Rule 9(b); a plaintiff who makes

1   allegations on information and belief must state the factual basis for the belief." *Neubronner v.*

2   *Milken*, 6 F.3d 666, 672 (9th Cir. 1993).

3       Once a court has set aside conclusory assertions, it considers the well-pleaded factual

4   allegations to determine whether the plaintiff has pleaded sufficient facts to state a facially

5   plausible claim for relief. *Iqbal*, 556 U.S. at 678. "A claim has facial plausibility when the

6   plaintiff pleads factual content that allows the court to draw the reasonable inference that the

7   defendant is liable for the misconduct alleged." *Id.* "Where a complaint pleads facts that are

8   'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and

9   plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

10      **B.    PLAINTIFFS HAVE FAILED TO ALLEGE A RICO CONSPIRACY**

11      Plaintiffs do not allege that Movants violated the RICO Act directly, or that they were

12   part of the RICO "enterprise." FAC ¶¶ 213, 229-231. Instead, they allege that Movants conspired

13   with an enterprise to commit fraud in the Spring 2016 Conspiracy. FAC ¶ 215. Because this

14   conduct is fundamentally grounded in fraud, all allegations must satisfy Rule 9's heightened

15   pleading requirements. *Tatung Co. v. Shu Tze Hsu*, 43 F. Supp. 3d 1036, 1060 (C.D. Cal. 2014);

16   s*ee Kaplan v. Rose*, 49 F.3d 1363, 1370 (9th Cir. 1994); *Rubicon Glob. Ventures, Inc. v.*

17   *Chongqing Zongshen Grp. Imp./Exp. Corp.*, 226 F. Supp. 3d 1141, 1158 (D. Or. 2016).

18      To adequately allege a RICO claim "requires (1) conduct (2) of an enterprise (3) through

19   a pattern (4) of racketeering activity." *Sedima v. Imrex Co.*, 473 U.S. 479, 496 (1985). A RICO

20   conspiracy claim requires that a plaintiff allege "either an agreement that is a substantive

21   violation of RICO or that the defendants agreed to commit or participated in, a violation of two

22   predicate offenses." *Howard v. America Online, Inc.*, 208 F.3d 741, 751 (9th Cir. 2000). Where

23   the alleged agreement is not express, "its existence can be inferred from the words, actions, or

24   interdependence of activities and persons involved." *Oki Semiconductor Co. v. Wells Fargo*

25   *Bank*, 298 F.3d 768, 775 (9th Cir. 2002).

26          **1.    Plaintiffs fail to allege any RICO violation**

27      As an initial matter, Plaintiffs have failed to state a RICO claim against anyone. A

28   plaintiff "cannot claim that a conspiracy to violate RICO exist[s] if they do not adequately plead

1   a substantive violation of RICO." *Howard*, 208 F.3d at 751; *Neibel v. Trans World Assurance*

2   *Co.*, 108 F.3d 1123, 1127 (9th Cir. 1997) ("if the section 1962(c) claim does not state an action

3   upon which relief could ever be granted, regardless of the evidence, then the section 1962(d)

4   claim cannot be entertained"). Movants understand that the parties against whom Plaintiffs allege

5   a section 1962(c) claim will separately move to dismiss. Movants incorporate those arguments

6   by reference here. Should that motion be granted, the conspiracy claims against Movants

7   necessarily fail.

8              **2.**       **Plaintiffs do not allege a Movant agreed to commit two predicate acts**

9         Ninth Circuit authority is clear that each individual email sent in furtherance of an alleged

10   conspiracy is not its own predicate act. To the contrary, where all acts concern a single scheme

11   against a single victim, they combine to form only one predicate act. *Sever v. Alaska Pulp Corp.*,

12   978 F.2d 1529, 1535 (9th Cir. 1992); *see also Metcalf v. Death Row Records, Inc.*, No. C-03-

13   1250 SC, 2003 U.S. Dist. LEXIS 29029, at *11 (N.D. Cal. Sept. 4, 2003). Additionally,

14   "[t]hough mail fraud can be a predicate act, mailings are insufficient to establish the continuity

15   factor unless they contain misrepresentations themselves." *Wisdom v. First Midwest Bank*, 167

16   F.3d 402, 407 (8th Cir. 1999); *see also Comm. to Protect Our Agric. Water v. Occidental Oil &*

17   *Gas Corp.*, 235 F. Supp. 3d 1132, 1180 (E.D. Cal. 2017). In addition, Rule 9(b) requires the

18   plaintiff to "state the time, place, and specific content of the false representations as well as the

19   identities of the parties to the misrepresentation." *Leyvas v. Bank of Am. Corp. (In re*

20   *Countrywide Fin. Corp. Mortg. Mktg. & Sales Practices Litig.)*, 601 F. Supp. 2d 1201, 1215

21   (S.D. Cal. 2009). Where a complaint "contains not a word of the [false representation's] specific

22   contents" and does not attach it to the complaint, the "RICO claim therefore fails to satisfy Rule

23   9(b)." *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004).

24         Here, Plaintiffs allege T&H did four things in connection with the Spring 2016

25   Conspiracy, but no two meet the standard set forth in *Edwards, Leyvas,* or *Wisdom* to qualify as a

26   specifically-alleged predicate act. Plaintiffs do not allege Metra did anything at all.

27         *First*, "T&H Computers wire[d] $50,000 to Mocha Mill." FAC ¶ 183(b). It is not clear

28   whether Plaintiffs even consider this to be a predicate act. Plaintiffs fail to allege when the wire

occurred, whether (and why) they consider it to contain a misrepresentation, or any other particular factual content from which Movants could determine that this transfer of money could be an act of wire fraud. Such allegations are particularly necessary regarding the initial wire from T&H, as the allegation that T&H wired money in its own name cuts directly against Plaintiffs' allegation that they were misled because other defendants invented a company with a different name.

*Second*, "[o]n May 2, 2016, Wael (of T&H) sent Plaintiffs an email pretending to be a bona fide coffee purchaser seeking transfer of Mocha Mill's best coffee." FAC ¶ 183(c). Here again Plaintiffs fail to allege a single word of the email or explain why it is in any way misleading.  As in the first allegation, at best Plaintiffs have identified an accurate statement. T&H, after all, *was* a bona fide purchaser that bought $50,000 of Plaintiffs' coffee in a negotiated transaction, which necessarily involved seeking transfer of that coffee.

*Third*, "[o]n May 4, 2016, Wael (of T&H) sent Mokhtar an email, copying Plaintiffs, pretending to have bona fide negotiations with Mokhtar while knowing all along that T&H Imports (a fake company) was a straw purchaser helping to accomplish the fraud scheme set up by the racketeering Enterprise." FAC ¶ 183(e). Plaintiffs have again failed to identify a word of any of the statements they contend to be false. This shortcoming is of particular significance regarding this purported act as the allegation that T&H sought to mislead Plaintiffs into believing they were dealing with a "fake company" after wiring funds in its own name makes no sense. Nor do Plaintiffs allege that any statement made in this email was a misrepresentation, instead offering only abstract fraud claims disconnected from any contents of the message.

*Fourth*, "T&H Computers sold the same coffee to *Port of Mocha* for $51,000, taking a $1,000 commission for its part in the fraud scheme, causing foreseeable transactional wires." FAC ¶ 183(g). Here, as T&H's initial wire, it is not clear whether Plaintiffs contend this is a predicate act (although they make passing reference to "foreseeable transactional wires"). Compounding their error, Plaintiffs do not allege when this transaction took place, what individuals were involved, why the wire transfer is misleading, or how this sale harmed anyone (except, perhaps, T&H under Plaintiffs' theory the coffee was worth over $100,000).

Having failed to allege a single predicate act in sufficient detail, Plaintiffs cannot satisfy their burden to establish that either Movant is liable under the two predicate act test in connection with the Spring 2016 Conspiracy, or any other alleged conduct.  Moreover, the simple fact that Plaintiffs have not identified which acts they contend to be predicates requires dismissal.  *Fed. Reserve Bank of San Francisco v. HK Sys.*, No. C-95-1190 MHP, 1997 WL 227955, at *3 (N.D. Cal. Apr. 24, 1997) (requiring plaintiffs "to identify exactly which acts are 'predicate acts' for RICO liability").

### 3.  Plaintiffs do not allege Movants agreed to commit a substantive violation

To prevail on their Section 1962(d) claim against Movants under the substantive violation test, Plaintiffs must allege that other defendants violated Section 1962(c), that Movants agreed to the commission of two predicate acts, and that each Movant was "aware of the essential nature and scope of the enterprise and intended to participate in it." *Howard*, 208 F.3d at 751. Thus, "a defendant who did not agree to the commission of crimes constituting a pattern of racketeering activity is not in violation of section 1962(d), even though he is somehow affiliated with a RICO enterprise, and neither is the defendant who agrees to the commission of two criminal acts but does not consent to the involvement of an enterprise." *Baumer v. Pachl*, 8 F.3d 1341, 1346 (9th Cir. 1993). Put simply, "a conspirator must intend to further an endeavor which, if completed, would satisfy all of the elements of a substantive criminal offense." *Salinas v. United States*, 522 U.S. 52, 53 (1997). Even if the FAC alleges other defendants were involved in a multi-conspiracy RICO enterprise, Plaintiffs still cannot meet this standard because their allegations against Movants do not demonstrate that Movants agreed to the commission of crimes constituting a pattern of racketeering activity.

This is true even if the Court finds an adequately alleged RICO enterprise because the FAC connects Movants only to the Spring 2016 Conspiracy. An alleged conspirator cannot be charged with joining conspiracies if they lack "any specific knowledge of or participation in any of the other conspiracies," even if some individuals are involved in "each of the individual conspiracies." *Butcher's Union Local No. 498 v. SDC Inv., Inc.*, 788 F.2d 535, 539 (9th Cir.

KERR
&
WAGSTAFFE
LLP

1    1986); *Gilbert v. Bank of Am.*, No. C 13-01171 JSW, 2014 U.S. Dist. LEXIS 133956, at \*14

2    (N.D. Cal. Sept. 23, 2014) (finding no single conspiracy alleged where two groups of defendants

3    had no interactions). To prove a single conspiracy, Plaintiffs "must show that each defendant

4    knew, or had reason to know, that his benefits were probably dependent upon the success of the

5    entire operation." *United States v. Fernandez*, 388 F.3d 1199, 1226 (9th Cir. 2004).  Under the

6    allegations in the FAC, Movants had no knowledge of, or involvement in, most of the RICO

7    conspiracies allegedly attributable to any enterprise. To the contrary, Movants are alleged to

8    have participated—however indirectly—in only the Spring 2016 Conspiracy, which had a

9    particularly narrow focus: to buy Mocha Mill's coffee. FAC ¶ 177. Movants' only benefit—the

10   $1,000 profit to T&H—had nothing to do with the success of any other alleged conspiracy or any

11   enterprise's goals, as Movants are expressly alleged not to have any financial interest in the

12   future market for Yemeni coffee.

13           The three-month Spring 2016 Conspiracy also falls well short of a RICO conspiracy

14   because Plaintiffs have alleged no semblance of a pattern. Instead, they allege a conspiracy with

15   only the goal of achieving one thing, from one victim, over a short period of time.

16           The definition of a pattern "does *not* encompass a single criminal event, a single criminal

17   episode, [or] a single 'crime' (in the ordinary, nontechnical sense of that word) . . . To hold

18   otherwise would mean that many individual bank robberies, frauds, drug sales, embezzlements,

19   and other crimes as well would automatically fall within the scope of the RICO statute, a result

20   contrary to RICO's basic purpose." *Apparel Art Int'l v. Jacobson*, 967 F.2d 720, 722 (1st Cir.

21   1992) (Breyer, J.). Under this standard, no pattern is alleged where a plaintiff "alleges a number

22   of 'acts,' 'but the defendants' "collective conduct is in a sense a single episode having the

23   singular purpose of impoverishing [Plaintiff], rather than a series of separate, related acts."

24   *Sever*, 978 F.2d at 1535. Thus, no RICO claim can be alleged even where defendants are accused

25   of conceptually-separate crimes such as wire fraud, forgery, and extortion surrounding a single

26   event. *Aviva United States Corp. v. Vazirani*, 902 F. Supp. 2d 1246, 1271 (D. Ariz. 2012). Here,

27   Plaintiffs have not alleged that the Spring 2016 Conspiracy achieved anything more than

28   impoverishing Plaintiffs in a single episode by purchasing their coffee for less than it was worth.

KERR
&
WAGSTAFFE
LLP

11

1  This single act is no pattern of conduct, and charging Movants as RICO conspirators would

2  therefore be contrary to RICO's basic purpose.

3         The Spring 2016 Conspiracy also lacks the requisite continuity to establish a RICO

4  pattern. "'Continuity' is both a closed- and open-ended concept, referring either to a closed

5  period of repeated conduct, or to past conduct that by its nature projects into the future with a

6  threat of repetition." *H. J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 241 (1989). "[T]he continuity

7  requirement focuses on whether the associates' behavior was 'ongoing' rather than isolated

8  activity." *Odom v. Microsoft Corp.*, 486 F.3d 541, 553 (9th Cir. 2007). This concept ties into the

9  single-victim deficiency, as "predicate acts designed to bring about a single event . . . [do] not

10 pose a threat of continuity." *Sever*, 978 F.2d at 1536.

11        Closed-ended continuity requires that "the predicate acts occurred over a substantial

12 period of time." *Allwaste, Inc. v. Hecht*, 65 F.3d 1523, 1528 (9th Cir. 1995). Although there is no

13 bright-line definition of the phrase "a substantial period of time," it generally requires at least a

14 year of conduct, as "[a] pattern of activity lasting only a few months does not reflect the 'long

15 term criminal conduct' to which RICO was intended to apply." *Id*. Here, Plaintiffs allege the

16 Spring 2016 Conspiracy lasted only three months, and therefore fall well short of alleging a

17 closed-ended conspiracy with sufficient continuity to be addressed under RICO.

18        Open-ended continuity refers to situations where defendants are alleged not to have

19 "completed the criminal scheme." *Sun Sav. & Loan Ass'n v. Dierdorff*, 825 F.2d 187, 194 (9th

20 Cir. 1987). No open-ended continuity can be found where "the alleged actions were finite in

21 nature" and would cease upon achieving the conspiracy's goal. *Turner v. Cook*, 362 F.3d 1219,

22 1230 (9th Cir. 2004). Under these principles, RICO allegations are dismissed where "Plaintiff

23 has only alleged that Defendants have acted fraudulently in relation to proceedings against

24 Plaintiff" and "Plaintiff has given no plausible reason to conclude that Defendants would act

25 fraudulently again, much less that fraudulent filings are a part of Defendants' regular way of

26 conducting their legitimate business." *Barsky v. Spiegel Accountancy Corp.*, No. 14-cv-04957-

27 TEH, 2015 U.S. Dist. LEXIS 16900, at *22 (N.D. Cal. Feb. 11, 2015). The Spring 2016

28 Conspiracy is no different from *Turner* or *Barsky*. Movants are alleged to have conspired to buy

1   Plaintiffs' coffee, and to have immediately resold it. These allegations raise no concern about

2   future conduct and do not establish open-ended continuity.

3        Because the Spring 2016 Conspiracy targeted only Plaintiffs over a short period of time

4   with no risk of future illegal conduct, even were Movants specifically alleged to have

5   participated in it, they would not have agreed to commit a substantive RICO violation as the

6   conspiracy lacks both pattern and continuity.

7        **C.**     **PLAINTIFFS HAVE FAILED TO ADEQUATELY ALLEGE FOLLOW-ON CLAIMS**

8        In addition to their vaguely-alleged claim that Movants conspired to commit RICO

9   violations, Plaintiffs allege the following causes of action against Movants, listed by claim

10  number: (4) fraud and deceit (conspiracy and aiding and abetting); (5) fraudulent concealment

11  (conspiracy and aiding and abetting); (6) negligent misrepresentation (conspiracy and aiding and

12  abetting); (7) breach of fiduciary duty (conspiracy and aiding and abetting); (8) intentional

13  interference with prospective economic advantage (conspiracy and aiding and abetting); (9)

14  negligent interference with prospective economic advantage (conspiracy and aiding and

15  abetting); (11) conversion; (12) unjust enrichment; and (13) unlawful, unfair, and fraudulent

16  practices. It is not clear whether any of these claims are alleged directly against Movants, or

17  whether all charge Movants with some combination of "conspiracy and aiding and abetting." *See*

18  FAC ¶¶ 292, 298, 304 (conclusory allegations of conspiracy on claims eleven through thirteen).

19       This Court need not resolve these nine causes of action after it disposes of the RICO

20  claims, as only supplemental jurisdiction exists. This Court can, and should, decline

21  supplemental jurisdiction following dismissal. 28 U.S.C. § 1367(c)(3) (permitting a district court

22  to "decline to exercise supplemental jurisdiction" after it "has dismissed all claims over which it

23  has original jurisdiction."); *Reynolds v. Cty. of San Diego*, 84 F.3d 1162, 1171 (9th Cir. 1996)

24  ("in the usual case in which federal-law claims are eliminated before trial, the balance of factors .

25  . . will point toward declining to exercise jurisdiction over the remaining state law claims").

26       Not only should the claims be dismissed for lack of supplemental jurisdiction, none are

27  adequately alleged against Movants.

28

KERR
&
WAGSTAFFE
LLP

13

1

### 1.    Failure to Allege Fraud with Particularity

2  Plaintiffs' state law claims all sound in fraud and must be alleged with particularity. *Vess*

3  *v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103-04 (9th Cir. 2003) ("In some cases, the plaintiff

4  may allege a unified course of fraudulent conduct and rely entirely on that course of conduct as

5  the basis of a claim. In that event, the claim is said to be 'grounded in fraud' or to 'sound in

6  fraud,' and the pleading of that claim as a whole must satisfy the particularity requirement of

7  Rule 9(b)."). The fourth, fifth, and sixth causes of action are explicit fraud claims. FAC ¶¶ 242,

8  247, 254; *Neilson v. Union Bank of Cal.*, N.A., 290 F. Supp. 2d 1101, 1141 (C.D. Cal. 2003).

9  The seventh, eighth, ninth, eleventh, and twelfth causes of action expressly rely upon allegations

10  that Movants used deceit. FAC ¶¶ 260, 269, 277, 292, 299. The thirteenth cause of action

11  expressly relies upon alleged "fraudulent misrepresentations." FAC ¶ 303. But the FAC is not

12  "specific enough to give defendants notice of the particular misconduct." *Sanford v.*

13  *MemberWorks, Inc.*, 625 F.3d 550, 558 (9th Cir. 2010).

14  Plaintiffs cannot, as they must, sustain that burden individually as to either Movant.

15  *Swartz v. KPMG LLP*, 476 F.3d 756, 764-765 (9th Cir. 2007) (plaintiffs must "inform each

16  defendant separately of the allegations surrounding his alleged participation in the fraud."). Their

17  attempt to avoid doing so with vague conspiracy allegations against all eight defendants is

18  insufficient as a matter of law. *Destfino v. Reiswig*, 630 F.3d 952, 958 (9th Cir. 2011)

19  (allegations that "everyone did everything" justify dismissal of the complaint). Nor do they allow

20  Movants to "defend against the charge and not just deny that they have done anything wrong."

21  *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009).

22  To the contrary, the FAC is completely silent about any particular misconduct by Metra,

23  offering only the conclusory allegation that Metra "engage[d] in various schemes." FAC ¶ 128.

24  No Metra employee is alleged to have done anything related to any of Plaintiffs' allegations.

25  *UMG Recordings, Inc. v. Global Eagle Entertainment, Inc.*, 117 F. Supp. 3d 1092, 1108 (C.D.

26  Cal. 2015) (when suing a company, plaintiffs "must allege the names of the employees or agents

27  who purportedly made the fraudulent representations or omissions, or at a minimum identify

28  them by their titles and/or job responsibilities."). All Metra can do to defend itself against the

KERR
&
WAGSTAFFE
LLP

14

FAC is to generally deny wrongdoing, which is precisely what Rule 9 forbids.

The same is true of T&H. Although its employee is identified by name and alleged to have consummated a negotiated transaction with Plaintiffs, the FAC does not particularly allege any statement Mr. Fadel made at any time that he knew was false, made to induce reliance, or that harmed Plaintiffs. *Taiwan Semiconductor Mfg. Co. v. Tela Innovations, Inc.*, No. 14-cv-00362-BLF, 2014 U.S. Dist. LEXIS 101657, at \*11 (N.D. Cal. July 24, 2014); *see also Hexcel Corp. v. Ineos Polymers, Inc.*, 681 F.3d 1055, 1060 (9th Cir. 2012) (similar standards for other fraud claims). Nor do they allege how they were harmed by T&H based upon communications between Plaintiffs and Mokhtar regarding T&H Imports, when Plaintiffs admit they learned T&H was their counterparty, that they negotiated with T&H, and that T&H performed under the resulting agreement. These allegations simply do not amount to fraud.

### 2.    Failure to Allege Conspiracy

Under California law, to hold a party vicariously liable for another's tort based on a civil conspiracy, a plaintiff must allege the "(1) formation and operation of the conspiracy and (2) damage resulting to plaintiff (3) from a wrongful act done in furtherance of the common design." *Rusheen v. Cohen*, 37 Cal. 4th 1048, 1062 (2006). To be liable, an alleged conspirator must have knowledge of the planned tort and intent to aid in its commission. *Tatung Co. v. Shu Tze Hsu*, 217 F. Supp. 3d 1138, 1183 (C.D. Cal. 2016) ("Mere association does not make a conspiracy. There must be evidence of some participation or interest in the commission of the offense.").

To the extent plaintiffs allege that Movants conspired to commit state-law torts, which itself is not clear and therefore justifies dismissal, they do not allege that Metra took any wrongful act in furtherance of a common design, nor do they specifically allege that Metra had any interest any tortious conduct. They also do not allege T&H committed any wrongful act, only that it engaged in two commercial transactions for a small profit.

### 3.    Failure to Allege Aiding and Abetting

Under California law, "liability may . . . be imposed on one who aids and abets the commission of an intentional tort if the person (a) knows the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other to so act or (b) gives

KERR
&
WAGSTAFFE
LLP

substantial assistance to the other in accomplishing a tortious result and the person's own conduct, separately considered, constitutes a breach of duty to the third person." *Neilson*, 290 F. Supp. 2d at 1118. Plaintiffs must also show that "the aider and abettor provided assistance that was a substantial factor in causing the harm suffered." *Id.* at 1135.

Here, Plaintiffs cannot satisfy these burdens (assuming they even assert aiding and abetting claims against either Movant). ***First***, the non-intentional torts cannot be aided and abetted. ***Second***, Metra is not alleged to have provided any substantial assistance in causing any harm to any Plaintiff under any theory. ***Third***, T&H is not alleged to have assisted Mokhtar, but rather to have undermined an apparent attempt to mislead Plaintiffs by openly wiring funds in T&H's own name. It is unclear how either Movant's involvement was a substantial factor in causing any of the harm suffered.

### 4.   Failure to allege specific state-law claims

Plaintiffs' fiduciary duty and negligent misrepresentation claims against Movants rely upon the existence of a duty Movants simply did not owe Plaintiffs. Movants therefore cannot be held liable for these claims. *Singman v. NBA Props. Inc.*, No. CV 13-05675 ABC (SHx), 2014 U.S. Dist. LEXIS 182317, at *11 (C.D. Cal. Jan 17, 2014) (negligent misrepresentation); *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 348 (1997) (negligent interference); *American Master Lease LLC v. Idanta Partners, Ltd.*, 225 Cal. App. 4th 1451, 1474 (2014) ("[a] nonfiduciary cannot conspire to breach a duty owed only by a fiduciary."). Because Plaintiffs have alleged no such duty, owed by Movants to any of them, they have failed to adequately allege any of these torts.

Plaintiffs' UCL claim is also inadequately alleged. "'[S]omething more than a single transaction,' either on-going wrongful business conduct or a pattern of wrongful business conduct, must be alleged in order to state a cause of action under the Unfair Business Practices Act." *Newman v. Checkrite Cal., Inc.*, 912 F. Supp. 1354, 1375 (E.D. Cal. 1995). Here, by contrast, Plaintiffs allege that T&H was involved in a single transaction that was unlikely to recur. They do not allege that Metra took any action whatsoever.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## IV.   THIS COURT LACKS PERSONAL JURISDICTION OVER METRA

Plaintiffs appear to allege that this Court has general jurisdiction over Metra because Metra directs business to California through T&H. As set forth below, however, Plaintiffs do not allege—and cannot prove—that this Court has general or specific jurisdiction over Metra.[2]

### A.   LEGAL STANDARD

"When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that the court has jurisdiction over the defendant." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006). Where, as here, the complaint presents Federal and California state-law claims, the Court may "exercise personal jurisdiction over defendants to the extent permitted by the Due Process Clause of the United States Constitution." Cal. Code Civ. Proc. § 410.10; *Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1129 (9th Cir. 2003). Due process precludes a court from asserting jurisdiction over a defendant unless the defendant has certain minimum contacts with the forum state. The overriding constitutional principle is that maintenance of an action in the forum must not offend "traditional conception[s] of fair play and substantial justice." *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 320 (1945). The defendant's "conduct and connection with the forum State" must be such that the defendant "should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

The relationship "must arise out of contacts that the 'defendant *himself*' creates with the forum State" because "[d]ue process limits on the State's adjudicative authority principally protect the liberty of the nonresident defendant — not the convenience of plaintiffs or third parties." *Walden v. Fiore*, 571 U.S. 277, 284 (2014). As such, "[t]he existence of a parent-subsidiary relationship is insufficient, on its own, to justify imputing one entity's contacts with a forum state to another for the purpose of establishing personal jurisdiction." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1070 (9th Cir. 2015). Although courts have the authority to order jurisdictional

---

[2]   No other basis for jurisdiction exists, because Metra has not been "present in the State" at any relevant time and has not "consented to the exercise of jurisdiction." *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 877 (2011). To the contrary, Metra has expressly preserved its jurisdictional objection. Order Granting Stip. Extend Time to File Answer, ECF No. 31.

discovery, "[w]here a plaintiff's claim of personal jurisdiction appears to be both attenuated and based on bare allegations in the face of specific denials made by the defendants, the Court need not permit even limited discovery." *Pebble Beach Co.*, 453 F.3d at 1160.

### B. METRA IS NOT SUBJECT TO GENERAL JURISDICTION

The standard for general jurisdiction "is an exacting standard, as it should be, because a finding of general jurisdiction permits a defendant to be hauled into court in the forum state to answer for any of its activities anywhere in the world." *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1074 (9th Cir. 2011). It "requires affiliations 'so "continuous and systematic" as to render [the foreign corporation] essentially at home in the forum State.'" *Daimler AG v. Bauman*, 571 U.S. 117, 133 n.11 (2014). This high bar demonstrates that "[o]nly in an 'exceptional case' will general jurisdiction be available anywhere" except "a corporation's place of incorporation and principal place of business." *Martinez v. Aero Caribbean*, 764 F.3d 1062, 1070 (9th Cir. 2014).

Metra is organized under the laws of the United Arab Emirates, is headquartered there, and focuses its business in the Middle East. Plaintiffs make no contrary allegations, and can offer no contrary evidence. As such, Metra is not subject to the Court's general jurisdiction here.

### C. METRA IS NOT SUBJECT TO PERSONAL JURISDICTION

> [The Ninth Circuit] employ[s] a three-part test to assess whether a defendant has sufficient contacts with the forum state to be subject to specific personal jurisdiction:
>
> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof . . .;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015). Plaintiffs must prove the first two prongs. *Id.* If they can, Metra must make a "compelling case" regarding the third. *Id.* at 1212.

1

### 1.    Plaintiffs Cannot Impute Other Contacts to Metra

Plaintiffs must carry their burden by focusing exclusively upon Metra's contacts to California, unless they can establish an exception that permits them to impute another entity's contacts to Metra. They will not be able to do so.

*First*, T&H's contacts can only be imputed to Metra on an alter-ego theory. *Ranza*, 793 F.3d at 1071 (acknowledging that the Supreme Court "invalidated" the more-permissive agency test); s*ee Doe v. Unocal Corp.*, 248 F.3d 915, 926 (9th Cir. 2001) ("plaintiff must make out a prima facie case '(1) that there is such unity of interest and ownership that the separate personalities [of the two entities] no longer exist and (2) that failure to disregard [their separate identities] would result in fraud or injustice.'"). Plaintiffs do not allege that T&H is Metra's alter ego. They do not allege—let alone present evidence—that Metra "directly controls the day-to-day activities" of T&H or that any injustice would occur.  *Doe*, 248 F.3d at 930. Plaintiffs therefore cannot impute T&H's contacts to Metra under an alter ego theory.

*Second*, some federal courts impute contacts between multiple defendants where one is alleged to have conspired with the others. Neither the Ninth Circuit nor the Supreme Court, however, has approved this practice. *Underwager v. Channel 9 Austl.*, 69 F.3d 361, 364 (9th Cir. 1995) (declining to reach the question of whether a "'conspiracy theory' of personal jurisdiction" exists); *Menalco, FZE v. Buchan*, 602 F. Supp. 2d 1186, 1194 (D. Nev. 2009) ("the Ninth Circuit has noted that 'a great deal of doubt' surrounds the conspiracy theory's legitimacy"). The Ninth Circuit has expressly rejected a similar theory in the context of venue. *Piedmont Label Co. v. Sun Garden Packing Co.*, 598 F.2d 491, 495 (9th Cir. 1979) (holding venue "cannot be solely based on allegations that a defendant was a member of a conspiracy and that a co-conspirator performed acts in the forum district"). California courts share the Ninth Circuit's apparent hostility. *In re Auto. Antitrust Cases I & II*, 135 Cal. App. 4th 100, 110 (2005) ("The jurisdictional facts shown must pertain to each separate nonresident defendant, even in a case alleging a conspiracy."). California district courts therefore decline to apply this theory, particularly in cases where plaintiffs offer only "conclusory allegations of the existence of a conspiracy." *UMG Recordings, Inc.*, 2015 U.S. Dist. LEXIS 192686, at *25. Because Plaintiffs

19

1    here do not allege any act by any Metra employee in service of any conspiracy, this Court should

2    likewise decline to apply any "conspiracy theory" of personal jurisdiction.

3            **2.      Plaintiffs Cannot Prove Purposeful Direction**

4            To satisfy the first prong of the specific jurisdiction test on claims sounding in tort, courts

5    apply the "effects" test, which "requires that the defendant allegedly have (1) committed an

6    intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows

7    is likely to be suffered in the forum state." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d

8    797, 803 (9th Cir. 2004). Under this standard, "mere injury to a forum resident is not a sufficient

9    connection to the forum" but instead the courts consider "whether the defendant's conduct

10   connects him to the forum in a meaningful way." *Walden*, 571 U.S. at 284, 290 (also observing

11   "[w]e have consistently rejected attempts to satisfy the defendant-focused 'minimum contacts'

12   inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum State."

13   Moreover, "[t]he unilateral activity of those who claim some relationship with a nonresident

14   defendant cannot satisfy the requirement of contact with the forum State." *Hanson v. Denckla*,

15   357 U.S. 235, 253 (1958).

16           Here, Plaintiffs cannot satisfy any element of the effects test. The first element requires

17   "an external manifestation of the actor's intent to perform an actual, physical act in the real

18   world, not including any of its actual or intended results." *Wash. Shoe Co. v. A-Z Sporting Goods

19   Inc.*, 704 F.3d 668, 674 (9th Cir. 2012). Here, Metra is not alleged to have performed any actual,

20   physical act in the real world. With no such act, the second and third prongs become

21   meaningless, and Plaintiffs will certainly be unable to prove that Metra "targeted California

22   'itself'" rather than merely that it "intended to affect Plaintiff, who happened to be a California

23   resident." *Lycurgan, Inc. v. Griffith*, No. 14-CV-548 JLS (BGS), 2017 U.S. Dist. LEXIS 120020,

24   at *16 (S.D. Cal. July 31, 2017). Moreover, to the extent Plaintiffs rely upon their allegation that

25   Mokhtar, a third-party, wrote Metra's address on an invoice, that is precisely the type of

26   unilateral activity which courts have consistently rejected. FAC ¶ 183(b); *Jansen v. Norcross*,

27   No. C16-0130 RSM, 2016 U.S. Dist. LEXIS 82157, at *10 (W.D. Wash. June 23, 2016)

28   (granting motion to dismiss where "[t]here is no evidence that these presentations were made at

the direction of Defendant").

### 3.      Plaintiffs Cannot Prove Forum-Related Conduct

"In determining whether [Plaintiff's] claims arise out of [Defendant's] forum-related conduct, 'the Ninth Circuit follows the "but for" test.' Hence, [Plaintiff] must show that he would not have suffered an injury 'but for' [Defendant's] forum-related conduct." *Menken v. Emm*, 503 F.3d 1050, 1058 (9th Cir. 2007). Where Plaintiffs cannot show alleged conduct was "necessary to the initiation of the project," they cannot satisfy this test. *Doe*, 248 F.3d at 925. Moreover, the analysis is limited to "the defendant's suit-related conduct." *Haines v. Get Air LLC*, No. CV-15-00002-TUC-RM (EJM), 2017 U.S. Dist. LEXIS 27140, at *30 (D. Ariz. Feb. 23, 2017) (granting motion to dismiss where it "can find none").

Here, Plaintiffs' allegations contradict, rather than support, jurisdiction under this test. They allege that Mokhtar worked for seven months to convince them to sell to an entity other than a high-end distributor. FAC ¶ 169. They allege that when one such transaction failed, Mokhtar and his then-collaborators "were undeterred and moved on to phase 2.0." FAC ¶ 176. And they allege that they agreed to sell some coffee to T&H without any direct involvement from, or communication with, Metra. FAC ¶ 183. In light of these allegations, there is no basis to conclude that Plaintiffs would not have been harmed but for Metra's alleged general agreement to conspire or Mokhtar's alleged modification of an invoice.

### 4.      Personal Jurisdiction over Metra would be unreasonable

The Ninth Circuit considers seven factors in assessing reasonableness:

> (1) the extent of the defendants' purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendants' state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

*Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1132 (9th Cir. 2003).

Where a defendant's purposeful interjection is minimal, and its contacts are "attenuated, [the first] factor weighs in their favor." *Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1488

1   (9th Cir. 1993). Here, as discussed above, Metra's contacts are so attenuated as to be nonexistent.

2   This factor therefore weighs against jurisdiction being reasonable.

3        Regarding the second factor, "[t]he unique burdens placed upon one who must defend

4   oneself in a foreign legal system should have significant weight in assessing the reasonableness

5   of stretching the long arm of personal jurisdiction over national borders." *Asahi Metal Indus. Co.*

6   *v. Superior Court of Cal.*, 480 U.S. 102, 114-15 (1987) (further acknowledging "the Federal

7   Government's interest in its foreign relations policies"). The third factor weighs in Metra's favor

8   as "litigation against an alien defendant creates a higher jurisdictional barrier than litigation

9   against a citizen from a sister state," particularly where Metra's only connection is that Plaintiffs

10  allege they believed they were doing business with a Dubai entity. *Sinatra v. Nat'l Enquirer,*

11  *Inc.*, 854 F.2d 1191, 1199 (9th Cir. 1988). Here, Metra is a foreign entity governed by foreign

12  law. These two factors significantly weigh against jurisdiction being reasonable.

13       The seventh factor also weighs against jurisdiction, as the United Arab Emirates offer a

14  suitable alternate forum for litigation against a United Arab Emirates company.

15       The fifth factor, which is unclear regarding claims against Metra, "is no longer weighed

16  heavily given the modern advances in communication and transportation." *Panavision Int'l, Ltd.*

17  *P'ship v. Toeppen*, 141 F.3d 1316, 1323 (9th Cir. 1998).

18       The fourth and sixth factors weigh in Plaintiffs' favor, as they are California residents

19  who sued in California. Plaintiffs' preference to litigate in California is, however, "not of

20  paramount importance." *Dole Food Co. v. Watts*, 303 F.3d 1104, 1116 (9th Cir. 2002). Neither

21  factor should be given significant weight.

22       On balance, therefore, four factors weigh in Metra's favor including those that should

23  have significant weight. One factor is both neutral and not weighed heavily. Two weighs in

24  Plaintiffs' favor, including one that is not of paramount importance. In balancing these factors,

25  the Court must demonstrate "an unwillingness to find the serious burdens on an alien defendant

26  outweighed by minimal interests on the part of the plaintiff or the forum State." *Asahi Metal*

27  *Indus. Co.*, 480 U.S. at 115. Because Plaintiffs offer nothing more than minimal interests and

28  vague allegations here, exercising personal jurisdiction over Metra would be unreasonable.

## V.   PLAINTIFFS FAILED TO PROPERLY SERVE METRA

Plaintiffs claim to have served Metra through its "general manager in California," T&H. As set forth below, however, that standard applies only to service on corporations, while Metra is an LLC. Plaintiffs' claims against Metra should be dismissed for insufficient service of process.

### A.   LEGAL STANDARD

"Once service is challenged, plaintiffs bear the burden of establishing that service was valid under Rule 4." *Brockmeyer v. May*, 383 F.3d 798, 801 (9th Cir. 2004). If service is not authorized under a relevant federal statute, "the federal court must rely on the jurisdictional statute of the state in which the federal court is located to obtain jurisdiction." *Butcher's Union Local No. 498*, 788 F.2d at 538. The Court "may consider evidence outside the pleadings in resolving a Rule 12(b)(5) motion." *Wright v. City of Santa Cruz*, No. 13-cv-01230-BLF, 2014 U.S. Dist. LEXIS 91192, at *19 (N.D. Cal. July 3, 2014).

### B.   RULES GOVERNING SERVICE ON FOREIGN BUSINESS ENTITIES

#### 1.   Service Pursuant to Rule 4

Federal Rule of Civil Procedure 4(h)(1) permits parties to effect service within the United States on business entities either in a manner authorized by California law or on an authorized agent. Where service cannot be completed within the United States, the applicable provisions of Rule 4(h)(2) require compliance with the law of the foreign country. While Federal rules do not distinguish between foreign corporations and other business entities, California law does.

#### 2.   Serving Foreign Corporations in California

California law provides a specific statute governing only service on corporations. Cal. Code Civ. Proc. § 416.10 (enumerating methods by which "[a] summons may be served on a corporation"). Among the available methods is service "authorized by any provision in Section . . . 2110 . . . of the Corporations Code." *Id.* That section permits service upon a corporation by hand delivery to the corporation's "general manager in this state." Cal. Corp. Code § 2110. This phrase has been expansively construed. *Cosper v. Smith & Wesson Arms Co.*, 53 Cal. 2d 77, 83 (1959) (defining it to include anyone "of sufficient character and rank to make it reasonably certain that the defendant will be appraised of the service made."). More recently, a Court of

KERR
&
WAGSTAFFE
LLP

Appeal has followed *Cosper* even though *Cosper* "never really grappled with the anomaly that a mere nonexclusive sales representative could not really be described as a *general manager in this state*." *Yamaha Motor Co., Ltd. v. Superior Court*, 174 Cal. App. 4th 264, 275 (2009) (observing "[t]he ordinary person would think of the phrase 'general manager in this state' as somebody or something more than just a satellite outpost or sales representative only bound to another entity by contract.").

### 3. Serving Foreign Limited Liability Companies in California

California does not permit service on a "general manager in this state" for foreign limited liability companies. Instead, limited liability companies can only be served via "the person designated as agent for service of process in a statement filed with the Secretary of State," listed company leaders including "a general manager," "a person authorized by the association to receive service of process," or as otherwise authorized by court order. Cal. Code Civ. Proc. § 416.40; Cal. Corp. Code § 18220.

### C. METRA IS A FOREIGN LIMITED LIABILITY COMPANY, NOT A CORPORATION

Metra is, as Plaintiffs acknowledge in the FAC, a company based in Dubai, United Arab Emirates that operates as a distributor of information technology products in the Middle East. More specifically, it is a Free Zone Company that is defined by Jafza law as a limited liability company. *Supra* § II(A). That Metra is not a corporation is further supported by limitations placed upon it that do not ordinarily apply to corporations. It cannot publicly trade its shares or transfer them without Jafza's approval. *Compare* Jafza Reg §§ 11.5, 23.1 *with* Cal. Corp. Code § 204(b) (presumption against restriction on share transfer). It cannot have more than fifty shareholders. *Compare* Jafza Reg § 11.1 *with* Cal. Corp. Code § 200(a) (permitting any number of shareholders).

### D. PLAINTIFFS FAILED TO EFFECT PROPER SERVICE ON METRA

Because Metra is a limited liability company, neither Section 2110 of the Corporation Code nor the decisions interpreting the phrase "general manager in this state" have any bearing upon whether it has been properly served. Instead, Plaintiffs were obligated to serve Metra in a manner authorized by Rule 4 or California Code of Civil Procedure Section 416.40. They did

24

KERR
&
WAGSTAFFE
LLP

1    neither.

2         *First*, Plaintiffs failed to satisfy Rule 4's own requirements because they did not mail a

3    copy of the summons and complaint to Metra as required by Rule 4(h)(1)(B) or serve Metra in

4    compliance with United Arab Emirates law as required by Rule 4(h)(2) and 4(f)(2).

5         *Second*, Plaintiffs failed to properly serve Metra under California law because they did

6    not comply with any of the three options applicable to limited liability companies under Section

7    416.40. Metra has designated no agent with California's Secretary of State. Plaintiffs did not

8    serve any of Metra's leadership, because none of those individuals reside in San Carlos, and

9    neither T&H, Wael Fadel, nor Shital Patel are Metra employees, let alone its general manager (a

10   position defined by Jafza regulation, and held by Mohammed Eissa), president, or other

11   executive. Plaintiffs also did not obtain any court order authorizing alternate service.

12        For these reasons, Plaintiffs cannot carry their burden of proving that they validly served

13   Metra. Metra should be dismissed from this action.

14   **VI.   CONCLUSION**

15        For the foregoing reasons, Plaintiffs' complaint against T&H and Metra should be

16   dismissed with prejudice.

17

18

19   Date:                              **KERR & WAGSTAFFE LLP**

20

21                              By:   _/s/ Frank Busch_____
22                                    Frank Busch

23                                    Attorneys for Defendants
                                      METRA COMPUTER GROUP FZCO and
24                                    T&H COMPUTERS, INC.

25

26

27

28