MARK R. CONRAD (CA Bar No. 255667)
GABRIELA KIPNIS (CA Bar No. 284965)
**CONRAD & METLITZKY LLP**
Four Embarcadero Center, Suite 1400
San Francisco, CA 94111
Tel:     (415) 343-7100
Fax:     (415) 343-7101
Email: mconrad@conradmetlitzky.com
Email: gkipnis@conradmetlitzky.com

Attorneys for Defendants Port of Mokha, Inc.,
Port of Mokha, LLC, Mokha Foundation,
Mokhtar Alkhanshali, and Ibrahim Ahmad Ibrahim

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| MOCHA MILL, INC., *et al.*, | CASE NO. 4:18-CV-02539-HSG |
| Plaintiffs, | **NOTICE OF MOTION AND MOTION TO DISMISS BY PORT OF MOKHA DEFENDANTS** |
| v. | |
| PORT OF MOKHA, INC., *et al.*, | Date:         September 27, 2018 |
| Defendants. | Time:         2:00 p.m. |
| | Judge:        Hon. Haywood S. Gilliam, Jr. |
| | Courtroom:    Courtroom 2, 4th Floor |

# TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION TO DISMISS ........................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ...................................................... 2

I.    INTRODUCTION ................................................................................................. 2

II.   STATEMENT OF FACTS .................................................................................... 2

    A.   Three Investors and Mokhtar Form Mocha Mill ................................................ 2

    B.   Mokhtar Goes to Yemen ..................................................................................... 3

        1.   Trip One: Mokhtar Sources Specialty Coffee Beans ................................ 3

        2.   Trip Two: Mokhtar Gets Trapped in a War, Without a Salary .................. 3

    C.   Mocha Mill Idles While Its Coffee Is Trapped in Yemen ................................. 5

    D.   Mokhtar Leaves Mocha Mill and Begins Competing at Port of Mokha ............ 6

III.  STANDARD OF REVIEW ................................................................................... 8

IV.   LEGAL ARGUMENT........................................................................................... 9

    A.   Plaintiffs' Claims Against Mokhtar Must Be Dismissed Pursuant to His
        Partnership Agreement's Binding Arbitration and Forum-Selection Clauses ... 9

    B.   Plaintiffs' Claims Against the Non-Existent "Mokha Foundation" Must Be
        Dismissed for Lack of Jurisdiction ................................................................... 10

    C.   Plaintiffs' RICO Claims Should Be Dismissed Under Rule 12(b)(6) .............. 11

        1.   Plaintiffs Cannot State a RICO Claim With Pleading-by-Incorporation ........... 11

        2.   Plaintiffs Fail To Plead the Predicate RICO Crimes Adequately ..................... 13

            a.   Paragraph 212(a): Embezzlement ............................................... 13

            b.   Paragraph 212(b): Extortion ........................................................ 14

            c.   Paragraph 214(a): Wire Fraud ..................................................... 14

            d.   Paragraph 214(b): Extortion ........................................................ 14

            e.   Paragraph 215: Wire Fraud .......................................................... 15

            f.   Paragraph 216: Extortion ............................................................. 15

            g.   Paragraph 217: Wire Fraud .......................................................... 16

            h.   Paragraph 218: Money Laundering ............................................. 16

3.   Plaintiffs Do Not Allege a "Pattern" of Racketeering Activity ......................... 16

a.   Plaintiffs Do Not Allege "Open-Ended Continuity" ............................... 17

b.   Plaintiffs Do Not Allege "Closed-Ended Continuity" ............................ 18

4.   Only Mocha Mill Has Standing To Assert a RICO Claim ................................. 20

D.   Plaintiffs' Claims Against All Defendants for Conspiracy To Violate RICO Should Be Dismissed .................................................................................................... 21

E.   The Court Should Decline To Exercise Supplemental Jurisdiction Over Plaintiffs' Remaining Eleven State-Law Causes of Action ............................................. 21

F.   Plaintiffs' Eleven State-Law Causes of Action Suffer From Defects That Require Dismissal As To All or Some of the Moving Defendants ................................. 21

1.   Plaintiffs' Fraud-Based Claims Fail to Satisfy Rule 9(b) ................................... 22

2.   Plaintiffs' Conspiracy Claims Are Inadequately Pled ......................................... 22

3.   Additional Defects Are Fatal to Plaintiffs' Other State-Law Claims ................. 24

V.   CONCLUSION ............................................................................................................. 25

# TABLE OF AUTHORITIES

**Cases**

*AccuImage Diagnostics Corp. v. Terarecon, Inc.*,
   260 F. Supp. 2d 941 (N.D. Cal. 2003) .................................................................. 23

*Am. Bankers Ins. Grp., Inc. v. Long*,
   453 F.3d 623 (4th Cir. 2006) ............................................................................... 10

*Amisil Holdings Ltd. v. Clarium Capital Mgmt.*,
   622 F. Supp. 2d 825 (N.D. Cal. 2007) ................................................................... 9

*Applied Equipment Corp. v. Litton Saudi Arabia Limited*,
   7 Cal.4th 503 (1994) ........................................................................................... 23

*Argueta v. Banco Mexicano, S.A.*,
   87 F.3d 320 (9th Cir. 1996) ............................................................................. 8, 10

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .............................................................................................. 8

*Astiana v. Hain Celestial Grp., Inc.*,
   783 F.3d 753 (9th Cir. 2015) ............................................................................... 25

*Bank of New York Mellon v. Citibank, N.A.*,
   8 Cal.App.5th 935 (2017) ..................................................................................... 24

*Barsky v. Spiegel Accountancy Corp.*,
   No. 14-CV-04957-TEH, 2015 WL 580574 (N.D. Cal. Feb. 11, 2015) ....................... 18, 20

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) .............................................................................................. 8

*Berman v. Knife River Corp.*,
   No. C 11-3698 PSG, 2012 WL 646068 (N.D. Cal. Feb. 28, 2012) .............................. 23

*Bradford v. Flagship Facility Servs. Inc.*,
   No. 17-CV-01245-LHK, 2017 WL 3130072 (N.D. Cal. July 24, 2017) ......................... 23

*Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*,
   637 F.3d 1047 (9th Cir. 2011) ............................................................................... 8

*Casey v. U.S. Bank Nat. Assn.*,
   127 Cal.App.4th 1138 (2005) ............................................................................... 23

*CD Partners, LLC v. Grizzle*,
   424 F.3d 795 (8th Cir. 2005) ................................................................................. 9

*Cheery Way (USA), Inc. v. Ngoc Diep Duong*,
   No. 12-CV-0486-JSC, 2012 WL 1670172 (N.D. Cal. May 14, 2012) ........................... 9

iii

*City of Hope Nat'l Med. Ctr. v. Genentech, Inc.,*
  43 Cal. 4th 375 (2008) .................................................................................................. 24

*City of San Jose v. Super. Ct.,*
  12 Cal. 3d 447 (1974) .................................................................................................... 23

*Comm. on Children's Tel., Inc. v. Gen. Foods Corp.,*
  35 Cal.3d 197 (1983) ..................................................................................................... 24

*de Havilland v. FX Networks, LLC,*
  21 Cal.App.5th 845 (2018) ............................................................................................ 24

*Docksider, Ltd. v. Sea Tech., Ltd.,*
  875 F.2d 762 (9th Cir. 1989) ......................................................................................... 10

*Ebeid ex rel. United States v. Lungwitz,*
  616 F.3d 993 (9th Cir. 2010) ........................................................................................... 9

*Fed. Reserve Bank of San Francisco v. HK Sys.,*
  No. C-95-1190 MHP, 1997 WL 227955 (N.D. Cal. Apr. 24, 1997) ........................ 12, 13

*Figures v. Szabo,*
  No. 14-CV-04684-HSG, 2015 WL 2062709 (N.D. Cal. May 4, 2015) .......................... 21

*Fox Hollow of Turlock Owner's Ass'n v. Sinclair,*
  No. 1:03-CV-5439 AWI SAB, 2013 WL 1628260 (E.D. Cal. Apr. 15, 2013) ........... 10, 11

*Gerard v. Ross,*
  204 Cal.App.3d 968 (1988) ........................................................................................... 23

*Graf v. Peoples,*
  No. 07-CV-04731-VAP(E), 2008 WL 4189657 (C.D. Cal. Sept. 4, 2008) ..................... 11

*Grimmett v. Brown,*
  75 F.3d 506 (9th Cir. 1996) ........................................................................................... 11

*Groth-Hill Land Co., LLC v. Gen. Motors LLC,*
  No. C13-1362 TEH, 2013 WL 3853160 (N.D. Cal. July 23, 2013) ............................... 21

*H.J., Inc. v. Nw. Bell Tel. Co.,*
  492 U.S. 229 (1989) ......................................................................................... 13, 16, 17

*Haley v. Macy's, Inc.,*
  263 F. Supp. 3d 819 (N.D. Cal. 2017) ........................................................................ 8, 9

*Hopkins v. Am. Home Mortg. Servicing, Inc.,*
  No. 13-CV-04447-RS, 2014 WL 580769 (N.D. Cal. Feb. 13, 2014) ............................. 18

*Howard v. Am. Online Inc.,*
  208 F.3d 741 (9th Cir. 2000) .................................................................................... 20, 21

iv

*Ice Cream Distributors of Evansville, LLC v. Dreyer's Grand Ice Cream, Inc.*,
   No. 09-CV-05815-CW, 2010 WL 2198200 (N.D. Cal. May 28, 2010) ..................................... 18, 20

*In re Nat'l Century Fin. Enters., Inc.*,
   504 F. Supp. 2d 287 (S.D. Ohio 2007) .............................................................................. 24

*In re Stac Elec. Sec. Litig.*,
   89 F.3d 1399 (9th Cir. 1996) .......................................................................................... 9

*Jarvis v. Regan*,
   833 F.2d 149 (9th Cir. 1987) .......................................................................................... 19

*Knipe v. Washington Square Capital*,
   116 F.3d 484 (9th Cir. 1997) .......................................................................................... 18

*Korea Supply Co. v. Lockheed Martin Corp.*,
   29 Cal.4th 1134 (2003) ................................................................................................... 25

*Kroll v. Doctor's Assocs., Inc.*,
   3 F.3d 1167 (7th Cir. 1993) ............................................................................................ 10

*Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*,
   431 F.3d 353 (9th Cir. 2005) .......................................................................................... 11

*Manetti-Farrow, Inc. v. Gucci Am.*, Inc.,
   858 F.2d 509 (9th Cir. 1988) .......................................................................................... 10

*Martinez v. Quality Loan Serv. Corp.*,
   No. 08-CV-07767-MMM-PJWx, 2009 WL 586725 (C.D. Cal. Feb. 10, 2009) ............................... 11

*Mayes v. Fujimoto*,
   181 F.R.D. 453 (D. Haw. 1998).......................................................................................... 8

*Medallion Tel. Enters., Inc. v. SelecTV of Cal., Inc.*,
   833 F.2d 1360 (9th Cir. 1987) ......................................................................................... 19

*Mexicanos v. Hewlett-Packard Co.*,
   No. 14-CV-05292-BLF, 2015 WL 9592606 (N.D. Cal. July 13, 2015)........................................... 18

*Midwest Grinding Co. v. Spitz*,
   976 F.2d 1016 (7th Cir. 1992) ........................................................................................... 2

*Neibel v. Trans World Assurance Co.*,
   108 F.3d 1123 (9th Cir. 1997) .......................................................................................... 21

*Neilson v. Union Bank of Cal.*,
   290 F. Supp. 2d 1101 (C.D. Cal. 2003) ............................................................................... 24

*Noe v. Fed. Deposit Ins. Corp. for Washington Mut. Bank, F.A.*,
   No. CV087140GHKFMOX, 2010 WL 11549438 (C.D. Cal. Jan. 15, 2010) ................................... 24

v

*Oak Park Trust & Sav. Bank v. Therkildsen*,
   209 F.3d 648 (7th Cir. 2000) ......................................................................................... 2

*Oliver v. Swiss Club Tell*,
   222 Cal. App. 2d 528 (1963) ...................................................................................... 11

*Oscar v. Univ. Students Coop. Ass'n*,
   965 F.2d 783 (9th Cir. 1992) ......................................................................................... 2

*PCO, Inc. v. Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro, LLP*,
   150 Cal.App.4th 384 (2007) ....................................................................................... 24

*Penasquitos, Inc. v. Super. Ct.*,
   53 Cal.3d 1180 (1991) ................................................................................................ 11

*Pier Connection, Inc. v. Lakhani*,
   907 F. Supp. 72 (S.D.N.Y. 1995) ............................................................................... 18

*Religious Tech. Ctr. v. Wollersheim*,
   971 F.2d 364 (9th Cir. 1992) ................................................................................. 19, 20

*Richardson v. Reliance Nat. Indem. Co.*,
   No. 99-CV-02952-CRB, 2000 WL 284211 (N.D. Cal. Mar. 9, 2000) ....................... 18, 20

*Savage v. Council on Am.-Islamic Relations, Inc.*,
   No. C 07-6076 SI, 2008 WL 2951281 (N.D. Cal. July 25, 2008) ............................. 11, 12

*Savage v. Glendale Union High Sch.*,
   343 F.3d 1036 (9th Cir. 2003) ...................................................................................... 8

*Schreiber Distributing Co. v. Serv-Well Furniture Co., Inc.*,
   806 F.2d 1393 (9th Cir. 1986) .................................................................................... 19

*Schulz v. Neovi Data Corp.*,
   152 Cal.App.4th 86 (2007) ......................................................................................... 23

*Sever v. Alaska Pulp Corp.*,
   978 F.2d 1529 (9th Cir. 1992) .................................................................................... 19

*Shearson/Am. Exp., Inc. v. McMahon*,
   482 U.S. 220 (1987) ...................................................................................................... 9

*Sparling v. Hoffman Const. Co.*,
   864 F.2d 635 (9th Cir. 1988) ...................................................................................... 21

*Sprewell v. Golden State Warriors*,
   266 F.3d 979 (9th Cir. 2001) ........................................................................................ 8

*Sprout Healthy Vending LLC v. Seaga Mfg. Inc.*,
   No. 14-01613-JVSJCGX, 2014 WL 12688422 (C.D. Cal. Dec. 18, 2014) ................... 10

vi

*Swartz v. KPMG LLP*,
  476 F.3d 756 (9th Cir. 2007) ..................................................................................... 9, 22

*Treefrog Developments, Inc. v. Miles & Co*., LLC,
  No. SACV1300754CJCANX, 2013 WL 12138672 (C.D. Cal. July 31, 2013).................................. 22

*Turner v. Cook*,
  362 F.3d 1219 (9th Cir. 2004) .................................................................................... 20

*United Bhd. of Carpenters & Joiners of Am. v. Bldg. & Const. Trades Dep't, AFL-CIO*,
  770 F.3d 834 (9th Cir. 2014) ...................................................................................... 14

*United States v. Aurora Las Encinas, LLC*,
  Case No. LA CV10-01031 JAK (RZx), 2011 WL 13137312 (C.D. Cal. Sept. 8, 2011) ................... 22

*United States v. Ritchie*,
  342 F.3d 903 (9th Cir. 2003) ........................................................................................ 9

*Vess v. Ciba-Geigy Corp. USA*,
  317 F.3d 1097 (9th Cir. 2003) .................................................................................... 22

*Wade v. Regional Credit Ass'n*, 87 F.3d 1098 (9th Cir. 1996) .............................................. 21

**Federal Statutes**

18 U.S. Code

  § 1341 .......................................................................................................... 16

  § 1343 .......................................................................................................... 16

  § 1951(b)(2) ............................................................................................... 14, 15

  § 1957(a) ...................................................................................................... 16

  § 1961(5) .................................................................................................. 13, 16

  § 1962(c) .................................................................................................. 17, 21

  § 1962(d) ...................................................................................................... 21

  § 1964(c) ........................................................................................................ 2

28 U.S. Code

  § 1367(c)(3) ............................................................................................. 1, 21, 25

**State Statutes**

Cal. Code Civ. Proc.

  § 367 ............................................................................................................ 2

  § 368.5 ......................................................................................................... 21

Cal. Bus. & Prof. Code

§ 16600 ................................................................................................................ 14

§ 17203 ................................................................................................................ 25

**Federal Rules**

Fed. R. Civ. P.

8 ............................................................................................................................ 11

9(a) ...................................................................................................................... 10

9(b) ................................................................................................................. *passim*

12(b)(1) ......................................................................................................... *passim*

12(b)(3) ................................................................................................................. 8

12(b)(6) ......................................................................................................... *passim*

17(b)(2) ............................................................................................................... 10

Fed. R. Evid.

201 ........................................................................................................................ 3

## <u>NOTICE OF MOTION AND MOTION TO DISMISS</u>

PLEASE TAKE NOTICE THAT, on September 27, 2018, at 2:00 p.m., before the Honorable Haywood S. Gilliam, Jr., Courtroom 2, 4th Floor, 1301 Clay Street, Oakland, California, 94612, Defendants Port of Mokha, Inc., Port of Mokha, LLC, Mokha Foundation, Mokhtar Alkhanshali, and Ibrahim Ahmad Ibrahim (collectively, "Moving Defendants") will and hereby do move this Court for an order dismissing the First Amended Complaint ("FAC") in this action as follows:

- All claims pled against Mokhtar Alkhanshali must be dismissed because they are subject to binding arbitration and forum-selection clauses that bar Plaintiffs from suing him in this Court.

- Defendant Mokha Foundation must be dismissed as a defendant because it is a not a legal entity and lacks the capacity to be sued.

- Count One and Count Two must be dismissed because Plaintiffs fail to state a claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), including and especially because Plaintiffs do not allege a "pattern" of racketeering activity. In the alternative, the RICO claims filed by Plaintiffs Ibrahim Alaeli, Yasir Khanshali, Adnan G. Awnallah, and Monk of Mokha Specialty Coffee Production and Export, Inc., must be dismissed because these parties lack standing to assert the RICO claims they have pled.

- If the Court dismisses Count One and Count Two because they fail to state a claim, then pursuant to 28 U.S.C. § 1367(c)(3), the Court should decline to exercise supplemental jurisdiction over Counts Three to Thirteen, which arise under California law. In the alternative, Counts Three to Thirteen fail to state a viable claim against one or more of the Moving Defendants, so each must be dismissed in part or in whole.

The instant motion is based on the FAC, this notice of motion, the attached memorandum of points and authorities, the Declarations of Mokhtar Alkhanshali and Mark R. Conrad and the Request for Judicial Notice filed concurrently herewith, and any reply brief and such oral argument as Moving Defendants may submit to the Court in support of this motion.

DATED: July 27, 2018

Respectfully submitted,

CONRAD & METLITZKY LLP

*/s/ Mark R. Conrad*
MARK R. CONRAD
GABRIELA KIPNIS

Attorneys for Defendants Port of Mokha, Inc.,
Port of Mokha, LLC, Mokha Foundation,
Mokhtar Alkhanshali, and Ibrahim Ahmad Ibrahim

- 1 -

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

With 77 pages of conjecture, hyperbole, and innuendo, Plaintiffs' First Amended Complaint ("FAC") takes a routine business dispute and depicts it as a vast criminal conspiracy. The purpose of this pleading tactic is plain: to concoct federal jurisdiction and to seek treble damages and attorneys' fees, which are available under RICO, *see* 18 U.S.C. § 1964(c), but not under Plaintiffs' state-law claims.

Plaintiffs' claims are subject to dismissal on numerous grounds, but the Court can dispose of the entire action by dismissing their meritless RICO claims. RICO was "intended to combat organized crime, not to provide a federal cause of action and treble damages to every tort plaintiff." *Oscar v. Univ. Students Coop. Ass'n*, 965 F.2d 783, 786 (9th Cir. 1992). The Court should not permit Plaintiffs "to fit a square peg in a round hole by squeezing garden-variety business disputes into [a] civil RICO action[]." *Midwest Grinding Co. v. Spitz*, 976 F.2d 1016, 1025 (7th Cir. 1992). Stripped of inflammatory rhetoric and legal conclusions, the FAC offers a "RICO theory [that] is so feeble, so transparent an attempt to move a state-law dispute to federal court … , that it does not arise under federal law at all." *Oak Park Trust & Sav. Bank v. Therkildsen*, 209 F.3d 648, 650-51 (7th Cir. 2000). The Court should dismiss the RICO claims, decline supplemental jurisdiction, and let Plaintiffs pursue this case in state court.

## II.    STATEMENT OF FACTS

The chronology of this case has four simple phases: (1) the founding of Mocha Mill in 2014, (2) the sourcing of coffee by its then-CEO, Mokhtar Alkhanshali ("Mokhtar"), in 2014 and 2015, (3) the delay that occurred because Mocha Mill could not get its coffee out of war-torn Yemen and into the Port of Oakland until February 2016; and (4) Mokhtar's resignation from Mocha Mill and his founding of a competing business, Port of Mokha, in the Spring of 2016.

### A.    Three Investors and Mokhtar Form Mocha Mill.

This lawsuit is brought by three businessmen: Ibrahim Alaeli, Yasir Khanshali, and Adnan Awnallah (the "Investors"). FAC ¶¶ 27-29. The other plaintiffs are their coffee company, Mocha Mill, Inc. ("Mocha Mill"), and Mocha Mill's "predecessor" entity. *Id.* ¶¶ 24 & 26.  The Investors founded Mocha Mill with Mokhtar in April 2014. FAC ¶ 70. All four men got a 25-percent stake in the company. *Id.* Mokhtar became CEO. *Id.* ¶ 72. The Investors paid him an annual salary of $30,000. *See id.*

### B.   Mokhtar Goes To Yemen.

#### 1.   Trip One: Mokhtar Sources Specialty Coffee Beans.

Mokhtar took two trips to Yemen as CEO of Mocha Mill. His first trip was from May to July of 2014, when he met with coffee farmers; identified farms that grew high-quality beans; and developed relationships with growers, distributors, and retailers of specialty coffee. *Id.* ¶¶ 73, 83-87. The FAC describes this trip as a success: according to Plaintiffs, Mokhtar found a "blockbuster product." *Id.* ¶ 87.

Although Plaintiffs do not allege that they ever questioned Mokhtar about his use of company funds prior to the filing of this lawsuit roughly four years later, Plaintiffs now claim that Mokhtar embezzled money during this first trip to Yemen. *Id.* at ¶¶ 90-91. Specifically, the FAC identifies 20 withdrawals from Mocha Mill accounts, in amounts between $94 and $500, between April and June 2014. *Id.* The transactions total $6,465. *Id.* Plaintiffs allege that Mokhtar provided no receipt or justification for these withdrawals. *Id.* ¶¶ 91, 96. The FAC characterizes the funds as "stolen and embezzled" and alleges that Mokhtar later used them to "finance his RICO Enterprise." *Id.* ¶ 96.

Plaintiffs do not allege that receipts are typically issued by farmers, grocery stores, restaurants, taxis, buses, or for the purchase of other goods and services in the rural, undeveloped areas of Yemen where coffee is grown. Plaintiffs do not allege they ever lacked control of or access to the accounts from which these funds were withdrawn. Plaintiffs make no specific allegation about how Mokhtar used these funds. The FAC affirmatively alleges that Mokhtar had no connection to or involvement with the other members of his alleged RICO until more than a year after this trip occurred. *Id.* ¶ 117.

#### 2.   Trip Two: Mokhtar Gets Trapped in a War, Without a Salary.

Mokhtar went to Yemen again in October 2014. *Id.* ¶ 88. He did not return until April 2015. *Id.* The FAC says little about this trip except that Mokhtar returned with "more samples" and received "media attention," as if one thing had to do with the other. *Id.* ¶ 104.

The real story of this case, however, lies in facts that Plaintiffs omit from the FAC. During Mokhtar's second trip, warfare erupted in Yemen. In January 2015, rebel soldiers placed the Yemeni President under house arrest. *See* Request for Judicial Notice ("RJN") Ex. A at 1. On March 26, 2015, Saudi Arabia intervened and began bombing the Houthi rebels in defense of the exiled government. *Id.*; RJN Ex. B at 28. These facts are not reasonably subject to dispute. Fed. R. Evid. 201.

In the midst of the war, Mokhtar made a daring and desperate escape from Yemen. He went first to the port of Aden, where he was detained and tortured by soldiers but eventually released. He then went to the port of Mokha, where he hired a fishing boat to carry him—and a suitcase full of coffee beans—across the Red Sea and to safety in Djibouti. Although not all of the facts regarding Mokhtar's escape from Yemen are judicially noticeable, the Court *can* take notice of the fact that it was the story of Mokhtar's escape, not Mocha Mill's coffee beans, that garnered media attention. RJN Exs. C-F.

According to the FAC, it was in March 2015, while Mokhtar was trapped in the middle of a civil war and Saudi Arabia was dropping bombs nearby (and after Mocha Mill stopped paying his salary[1]), that Mokhtar "secretly lined up other investors to stage an extortionate coup d'etat against his partners." *Id.* ¶¶ 99. In the midst of war, "Mokhtar began demanding that his three partners give him portions of their shares for no consideration at all." *Id.* ¶ 100. On March 29, 2015—exactly three days after Saudi Arabia started bombing Yemen—Plaintiffs relented to what the FAC describes as Mokhtar's "extortionate demands" and gave him a greater ownership stake in Mocha Mill. *Id.* ¶ 102. Apparently without irony, Plaintiffs allege they were "placed in fear" that they would lose their investment because Mokhtar "held all the cards." *Id.* ¶¶ 101-102. The FAC affirmatively alleges that the Investors signed a partnership with Mokhtar regarding this new ownership arrangement. *Id.* ¶ 102. That partnership agreement requires all disputes between the Investors, Mocha Mill, and Mokhtar to be resolved through an arbitration process or, alternatively, via court proceedings *in the commercial court of Sana'a in Yemen.* Decl. of Mokhtar Alkhanshali ("Alkhanshali Decl.") ¶¶ 2-3 & Ex. A at 3 (original contract in Arabic); Decl. of Mark R. Conrad ¶ 3 & Ex. B at 3 (certified English translation).

Plaintiffs also assert that Mokhtar embezzled money on this second trip to Yemen. The FAC lists 55 transactions from October 2014 to March 2015, totaling $75,088, which Mokhtar allegedly used for his "RICO enterprise." FAC ¶ 91. Plaintiffs do not allege that receipts are typically issued by rebel soldiers at military checkpoints during a civil war. Plaintiffs do not allege that fishermen typically issue

---

[1] Admittedly, the Complaint says nothing about Mokhtar's salary. For this reason, the instant motion makes no argument based on this fact. Still, the omission is so glaring, and Plaintiffs' allegations of "extortion" are so misleading in light of the fact that they stopped paying his salary while he was trapped in the middle of a civil war, that Moving Defendants mention it here, even at the pleadings stage, because the partnership dispute at the heart of this case can only be understood in light of this fact.

MOTION TO DISMISS BY PORT OF MOKHA

1   ticket stubs or receipts for safe passage across the Red Sea or visa-less entry into Djibouti. Plaintiffs do

2   not allege they ever questioned Mokhtar about these transactions before they filed their FAC. Plaintiffs

3   do not allege they ever lacked control of or access to the accounts from which these funds were

4   withdrawn or sent. Plaintiffs make no specific allegation about how Mokhtar used these funds to finance

5   his RICO Enterprise. The FAC affirmatively alleges that Mokhtar had no connection to or involvement

6   with other members of the alleged RICO enterprise until after this trip occurred. *Id.* ¶ 117.

7       **C.**    **Mocha Mill Idles While Its Coffee Is Trapped in Yemen.**

8         Mokhtar returned to the United States in April 2015. *Id.* ¶ 104. He continued to work as Mocha

9   Mill's CEO for a about year after that. *Id.* ¶ 179.

10         A careful analysis of the FAC's allegations belies Plaintiffs' portrayal of Mocha Mill as a

11   commercial success during this year. The company had "cemented strong relationships and paved the

12   way to years of future harvests and expansion." *Id.* ¶ 152. The coffee that Mokhtar brought back from

13   Yemen in his suitcase was "hailed as some of the best in show" at industry conferences. *Id.* ¶ 107. There

14   was "tremendous buzz and anticipation." *Id.* ¶ 153. Mocha Mill "emerged as the leader in the rebirth of

15   premium Yemeni specialty coffee." *Id.* ¶ 135. The company "started making deals with high-end

16   distributors." *Id.* ¶ 107. Retailers "placed orders and made commitments to buy the coffee." *Id.* ¶¶ 109,

17   136. Well-known writer Dave Eggers took an interest in Mokhtar's story and began writing a book

18   about it. *Id.* ¶ 110. The team "was expecting a blockbuster launch" based on its "first-mover advantage."

19   *Id.* ¶ 154. Reading between these carefully crafted lines, what the FAC shows is that Mocha Mill did no

20   business at all for roughly a year after Mokhtar's return to the United States.

21         This reason is buried in Paragraph 157 of the FAC: Mocha Mill had no coffee to sell. Due to

22   civil war, its coffee was stuck in Yemen. The beans that Mokhtar sourced during his trips in 2014-2015

23   did not arrive in the United States until a year later, in February 2016, when a freighter finally carried a

24   container of year-old beans into the Port of Oakland. *Id.* ¶ 157.

25         The FAC is long on innuendo about how Mokhtar spent this year plotting to undermine or steal

26   Mocha Mill's business. But a careful analysis of the actual timeline set forth in the FAC describes very

27   little in the way of wrongdoing that caused any actual harm to Plaintiffs. In "Summer of 2015," Mokhtar

28   is alleged to have joined forces with an "enterprise lieutenant," which is a sinister way of saying that he

                                                                MOTION TO DISMISS BY PORT OF MOKHA

hired someone else to work at Mocha Mill. *Id.* ¶ 117. Next, Mokhtar retained an attorney, supposedly to help him "execute a corporate takeover scheme involving fraud." *Id.* ¶ 118. But the FAC affirmatively alleges that the attorney's "inadvisable recommendations" were not accepted and that Mokhtar's "scheme to fraudulently dilute [the Investors'] ownership interests in Mocha Mill" amounted to nothing, since the Investors rejected his term sheet. *Id.* ¶¶ 117-125.

The FAC also alleges that Mokhtar started trying to sabotage Mocha Mill's business. *Id.* ¶ 171. Mokhtar allegedly misled Plaintiffs "into believing that high-end distributors and retailers … were no longer interested in buying Mocha Mill coffee." *Id.* ¶ 140. He directed coffee purchasers to "feign disinterest" in Mocha Mill and told them not to communicate with the Investors. *Id.* ¶ 142. He convinced Dave Eggers to write a "false narrative" that took "Mocha Mill and the [Investors] completely out of the story" (although this book was not published until three years later, in 2018). *Id.* ¶ 129-134. Even if these allegations were true, which they are not, none of the alleged conduct resulted in any harm to Plaintiffs, because Mocha Mill had no coffee to sell anyway.

### D.   Mokhtar Leaves Mokha Mill and Begins Competing at Port of Mokha.

The crux of this case is what follows thirty pages of prologue in the FAC: a supposed scheme "to supplant Mocha Mill with a new competitor company called Port of Mokha." *Id.* ¶ 127. The scheme is alleged to have begun in September 2015. *Id.* ¶ 126. The most recent "racketeering" activity described in the FAC occurred in June 2016. *Id.* ¶ 199. In other words, the FAC focuses on a nine-month period during which the Moving Defendants supposedly engaged in a ruse to steal Mocha Mill's business. When the FAC's conclusory allegations are set aside and its factual allegations are scrutinized, this "enterprise" centers on a single sale of $50,000 of Mocha Mill coffee beans.

According to the FAC, Mokhtar resigned from Mocha Mill on April 8, 2016. *Id.* ¶ 179. Plaintiffs allege that, both before and after his resignation, Mokhtar tried to get Mocha Mill's coffee so he could sell it through his new company, Port of Mokha. According to Plaintiffs' own allegations, this scheme was mostly a failure. For example, the FAC refers to documents suggesting that "240 kilograms of coffee had been sold to Coutume Café in Paris for prices ranging from $220 to $300 per kilogram," but Plaintiffs never allege that there was an actual sale to Coutume Café, because there was not. *Id.* ¶ 175(a). Plaintiffs also allege Mokhtar approached Atlas Coffee to act as a "straw buyer," and the FAC discusses

- 6 -

many emails relating to this supposed scheme, but the Atlas deal never happened, either. *Id.* ¶¶ 167-174.

In the end, the FAC describes only one actual, completed transaction relating to the usurpation of Mocha Mill's assets, and it occurred after Mokhtar resigned as CEO. *See id.* ¶¶ 177-194. Specifically, the FAC alleges that Plaintiffs were duped into selling 862 kg of Mocha Mill's "best coffee varieties" to a "straw purchaser" called T&H Computers for a grand total of $50,000. *Id.* ¶¶ 177, 183(f), 184. The FAC concedes that, *before* handing over their coffee, Plaintiffs received a wire from a company called *T&H Computers*. *Id.* ¶ 183(b). Thus, Plaintiffs *knew* they were selling their coffee beans to a computer company. T&H allegedly resold the coffee to Port of Mokha for $51,000 and made a profit of $1,000. *Id.* ¶ 183(g). Port of Mokha then allegedly sold 390 kg of "Mocha Mill's" coffee to Blue Bottle, where it was offered for retail sale under Port of Mokha's brand. *Id.* ¶¶ 183(h), 183(k). Plaintiffs allege—on information and belief, even though it is untrue—that Port of Mokha sold the rest of the straw-purchase coffee to other retailers for "tremendous profits." *Id.* ¶ 183(i). By this single $50,000 transaction, Port of Mokha is alleged to have "usurped … Mocha Mill's entire business." *Id.* ¶ 190; *see also id.* ¶¶ 7, 127 (identifying the T&H purchase as a catalyst for the theft of Mocha Mill's "most valuable assets, … its knowledgebase, farmer and distributor relationships, first-mover advantage, goodwill, and publicity").[2]

Aside from the $50,000 sale to T&H Computers, the FAC alleges no actual, completed fraud or any other crime with respect to the misappropriation of Mocha Mill's coffee beans or its other assets. Indeed, aside from a conclusory allegation about unspecified ongoing "money laundering,"[3] the FAC describes no purported act of fraud or other criminal activity on the part of the Moving Defendants since June 2016. Plaintiffs do not claim they were ever duped into selling their coffee beans or business assets to other straw purchasers. Plaintiffs do not allege Defendants have prevented them from selling the rest

---

[2] Plaintiffs allege that Mokhtar committed "extortion" after the T&H sale by asking Plaintiffs for "a broad release of claims absolving [him] of all legal liability" and refusing to return certain Mocha Mill assets (website, email accounts, etc.) unless Plaintiffs agreed. *Id.* ¶¶ 195-199. But Plaintiffs concede that Mokhtar "did not get his release," and Mocha Mill got its assets back. *Id.* ¶¶ 198-199.

[3] In an effort to stretch the timeline of their RICO narrative, Plaintiffs allege that, from May 2016 until the present, Defendants have engaged in "money laundering." *Id.* ¶¶ 5(h), 202-204. The factual basis for this bare legal conclusion is scant: the FAC says nothing more than that Defendants "amassed large sums of money" derived from unspecified "fraud and extortion" and have used this money "to engage in numerous monetary transactions of over $10,000." *Id.* ¶ 203. Stated differently, Plaintiffs' theory is that Defendants once committed fraud and that any of the business they have conducted after that therefore constitutes "money laundering." As explained below, these conclusory allegations are inadequate to allege money laundering as a predicate criminal act under RICO.

- 7 -

of the coffee in their Oakland container to anyone they pleased. Plaintiffs also do not allege they ever sold any of their coffee to anyone at a better price than they received from T&H Computers. Plaintiffs do not identify a threat to their business from any supposed ongoing criminal activity. The FAC does not identify any victim of the alleged RICO scheme other than Mocha Mill and its principals.

## III.   STANDARD OF REVIEW

This motion is brought pursuant to Rule 12(b)(1), Rule 12(b)(3), and Rule 12(b)(6).

A motion under Rule 12(b)(1) tests the subject matter jurisdiction of the Court. *See, e.g.*, *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039-40 (9th Cir. 2003). Where, as here, a motion under Rule 12(b)(1) attacks the existence of jurisdiction in fact, the Court may consider extrinsic evidence. *Mayes v. Fujimoto*, 181 F.R.D. 453, 455 (D. Haw. 1998). "[N]o presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating … the existence of subject-matter jurisdiction in fact." *Id.*

A motion under Rule 12(b)(3) is based on a challenge to venue. Where, as here, the motion rests on a forum-selection clause, "the pleadings are not accepted as true," and the Court may "consider facts outside of the pleadings." *Argueta v. Banco Mexicano, S.A.*, 87 F.3d 320, 324 (9th Cir. 1996).

A motion under Rule 12(b)(6) tests whether the complaint states a claim upon which relief can be granted. Typically, the Court must accept all allegations as true and construe the facts in favor of the plaintiff. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). But the Court need not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Id.* To survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires a plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In addition, when fraud is alleged, or when claims "sound in fraud," a heightened pleading standard applies. *Haley v. Macy's, Inc.*, 263 F. Supp. 3d 819, 822 (N.D. Cal. 2017) (Gilliam, J.) (citing Fed. R. Civ. P. 9(b)). A complaint alleging fraud "must identify 'the who, what, when, where, and how of the misconduct charged,' as well as 'what is false or misleading about [the purportedly fraudulent] statement, and why it is false.'" *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047,

- 8 -

1055 (9th Cir. 2011) (quoting *Ebeid ex rel. United States v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010)). Fraud may not be alleged on "information and belief" without sufficient factual support, because a plaintiff "cannot rely on such unsupported allegations of belief as a 'pretext for the discovery of unknown wrongs.'" *Haley*, 263 F. Supp. 3d at 824 (quoting *In re Stac Elec. Sec. Litig.*, 89 F.3d 1399, 1405 (9th Cir. 1996)). Further, "[s]pecific allegations must be levied against each individual defendant," and "a pleading does not satisfy Rule 9(b) by 'merely lump[ing] multiple defendants together.'" *Cheery Way (USA), Inc. v. Ngoc Diep Duong*, No. 12-CV-0486-JSC, 2012 WL 1670172, at *5–6 (N.D. Cal. May 14, 2012) (quoting *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007)).

## IV.   LEGAL ARGUMENT

### A.   Plaintiffs' Claims Against Mokhtar Must Be Dismissed Pursuant to His Partnership Agreement's Binding Arbitration and Forum-Selection Clauses.

The FAC alleges the existence of a partnership agreement between Plaintiffs and Mokhtar, whose terms therefore may properly be considered by the Court. FAC ¶ 102; *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). Under the partnership agreement, the Investors agreed to resolve all disputes with Mokhtar relating to the Mocha Mill business through an arbitration process, and if this arbitration process failed, they further agreed to assert all disputes arising between them in connection with the partnership in the Commercial Court of Sana'a in Yemen. Alkhanshali Decl. ¶ 3 & Ex. A at 3; Conrad Decl. Ex. B at 3.

The agreement's arbitration clause applies to all of Plaintiffs' claims against Mokhtar and requires their dismissal. Although Plaintiffs have strategically omitted a claim for breach of contract from their FAC, Plaintiffs cannot evade the arbitration provision drafted by their own attorneys by pleading their claims in tort.  *See Amisil Holdings Ltd. v. Clarium Capital Mgmt.*, 622 F. Supp. 2d 825, 839 (N.D. Cal. 2007). Nor are RICO claims exempt from arbitration. *Shearson/Am. Exp., Inc. v. McMahon*, 482 U.S. 220, 242 (1987). Rather, "[t]he touchstone of arbitrability in such situations is the relationship of the tort alleged to the subject matter of the arbitration clause." *Amisil Holdings,* 622 F. Supp. 2d at 839 (citing *CD Partners, LLC v. Grizzle*, 424 F.3d 795, 799 (8th Cir. 2005)). The arbitration clause here is broad: it applies if "any dispute arises among the partners." Conrad Decl. Ex. B at 3. By its plain language, the clause covers all of the claims in the FAC, since all of Plaintiffs' claims are based

- 9 -

on their business relationship with Mokhtar, including the duties and obligations he allegedly owed them as a partner. Courts routinely dismiss tort claims (such as tortious interference, fraud, conspiracy, and unjust enrichment) where, as here, the claims "are dependent upon the allegation that [defendant] breached a duty created 'solely by the [contract].'" *Am. Bankers Ins. Grp., Inc. v. Long*, 453 F.3d 623, 630 (4th Cir. 2006); *see also Kroll v. Doctor's Assocs., Inc*., 3 F.3d 1167, 1170 (7th Cir. 1993) (requiring arbitration of fraud claims against franchisor that were "directly related to the agreements"). Any doubts about the applicability or scope of the arbitration clause must be resolved against Plaintiffs, because of both the federal policy favoring arbitration and the canon that ambiguous contracts must be construed against their drafters.

Nor can Plaintiffs escape their agreement's forum-selection clause.  A forum-selection clause is enforceable where, as here, venue is specified with mandatory language.  *See Docksider, Ltd. v. Sea Tech., Ltd*., 875 F.2d 762, 764 (9th Cir. 1989).  The partnership agreement states that any and all claims between the Mocha Mill partners shall be resolved in the Commercial Court of Sana'a. Conrad Decl. Ex B at 3. This language is mandatory, and as with the arbitration clause, Plaintiffs cannot evade the contract they wrote by pleading claims in tort. *See Sprout Healthy Vending LLC v. Seaga Mfg. Inc*., No. 14-01613-JVSJCGX, 2014 WL 12688422, at *4 (C.D. Cal. Dec. 18, 2014); *Manetti-Farrow, Inc. v. Gucci Am*., Inc., 858 F.2d 509, 514 (9th Cir. 1988) ("forum selection clauses can be equally applicable to contractual and tort causes of action"); *see also Argueta*, 87 F.3d at 324-325 (affirming dismissal of RICO claims under forum-selection clause).

### B.      Plaintiffs' Claims Against the Non-Existent "Mokha Foundation" Must Be Dismissed for Lack of Jurisdiction.

Whether a party can be sued is a jurisdictional question. *See* Fed R. Civ. P. 9(a). A party's capacity to be sued is governed by state law. Fed R. Civ. P. 17(b)(2). "[W]hen an entity lacks the capacity to be sued, all claims against that entity should be dismissed." *Fox Hollow of Turlock Owner's Ass'n v. Sinclair*, No. 1:03-CV-5439 AWI SAB, 2013 WL 1628260, at *4 (E.D. Cal. Apr. 15, 2013).

Plaintiffs sued "Mokha Foundation" on the theory that it is a "subsidiary of Port of Mokha, Inc." ECF No. 24 ¶¶ 17, 35. But this is untrue. Port of Mokha has no subsidiaries, and there is no legal entity called "Mokha Foundation." Decl. of Mokhtar Alkhanshali ¶¶4-5 & Exs. B-D. The Court should dismiss

1    the claims against it under the "common sense" rule that "a nonentity is incapable of suing or being

2    sued." *Oliver v. Swiss Club Tell*, 222 Cal. App. 2d 528, 537–38 (1963); *see also Fox Hollow*, 2013 WL

3    1628260, at *4 (citing *Penasquitos, Inc. v. Super. Ct.*, 53 Cal.3d 1180, 1186 (1991)).

4          **C.     Plaintiffs' RICO Claims Should Be Dismissed Under Rule 12(b)(6).**

5          The elements of a civil RICO claim are: (1) conduct (2) of an enterprise (3) through a pattern (4)

6    of racketeering activity (5) causing injury to plaintiff's business or property. *Living Designs, Inc. v. E.I.*

7    *Dupont de Nemours & Co.*, 431 F.3d 353, 361 (9th Cir. 2005) (quoting *Grimmett v. Brown*, 75 F.3d 506,

8    510 (9th Cir. 1996)). Here, Plaintiffs fail to state a RICO claim for several reasons. First, the FAC fails

9    to describe what specific acts actually constitute the predicate offenses for their RICO claims, let alone

10   as to each of the individual Moving Defendants. Instead, the RICO claims improperly incorporate 228

11   paragraphs of the FAC, leaving the Moving Defendants to guess about what wrongs they are accused of

12   having committed. Second, to the extent that their RICO claims can be understood, Plaintiffs do not

13   describe "racketeering activity" with the particularity required under Rule 9(b), which applies to their

14   claims.  Finally, the FAC does not establish a "pattern" of racketeering activity because the alleged

15   scheme does not meet the "continuity" requirement necessary to support a RICO claim.

16             ***1.     Plaintiffs Cannot State a RICO Claim with Pleading-by-Incorporation.***

17         A complaint must provide "a short and plain statement" that sets forth the grounds for relief and

18   provides defendants with notice of the claims against them. Fed. R. Civ. P. 8. Claims sounding in fraud

19   must be pled with "particularity." Fed. R. Civ. P. 9(b). In the context of RICO, this means a complaint

20   must, at a minimum, explain "which facts are used to support what claims under particular subsections

21   of RICO." *Savage v. Council on Am.-Islamic Relations, Inc.*, No. C 07-6076 SI, 2008 WL 2951281, at

22   *14 (N.D. Cal. July 25, 2008). Specifically, to plead a RICO claim properly, a plaintiff must identify

23   which of the various acts described in the complaint constitute the predicate acts involved in the alleged

24   "scheme of racketeering." *Martinez v. Quality Loan Serv. Corp.*, No. 08-CV-07767-MMM-PJWx, 2009

25   WL 586725, at *7 (C.D. Cal. Feb. 10, 2009). It is not enough just to "incorporate the Complaint's initial

26   lengthy description of many different asserted acts of wrongdoing by various Defendants." *Graf v.*

27   *Peoples*, No. 07-CV-04731-VAP(E), 2008 WL 4189657, at *6 (C.D. Cal. Sept. 4, 2008).

28         This is not a technical pleading requirement: it is an issue of basic fairness. A complaint that

- 11 -

"sets forth a redundant narrative of allegations and conclusions of law, but makes no attempt to allege what facts are material to his claims under the RICO statute," must be dismissed. *Savage*, 2008 WL 2951281, at *14. *See also Fed. Reserve Bank of San Francisco v. HK Sys.*, No. C-95-1190 MHP, 1997 WL 227955, at *3 (N.D. Cal. Apr. 24, 1997) (dismissing RICO claims for failing "to identify exactly which acts are 'predicate acts' for RICO liability," but granting leave to file an amended complaint in which "each predicate act must state the time, place and manner in which the act occurred").

Plaintiffs' FAC does not provide the Moving Defendants with fair notice of the claims pled against them. Simply put, just because Plaintiffs filed a *lengthy* complaint does not mean they pled their claims with *particularity*. Here, over the course of 51 pages, Plaintiffs tell a remarkable story about the wrongdoing that they imagine Defendants have done. FAC ¶¶ 1-209. But when it comes to actual legal claims, the FAC is a hollow template. The supposed substantive violations of RICO are set forth under Count Two, which consists of only three short paragraphs. *Id.* ¶¶ 229-231. The first incorporates "each and every allegation of the preceding paragraphs." *Id.* ¶ 229. The second specifies that the claim is brought against the Moving Defendants, but it does not specify what predicate acts were committed by which parties. *Id.* ¶ 230. The third explains that the substantive violations of RICO alleged against the Moving Defendants "mirror the allegations" in the preceding claim for conspiracy and says nothing more. *Id.* ¶ 231. Thus, the central RICO claim in this case contains no explanation whatsoever about how many predicate acts of racketeering occurred, which specific crimes were allegedly committed by which individual defendants, when any specific crime is alleged to have been committed, or by what means any defendant committed any specific predicate act. The Moving Defendants are left to search the the 77-page FAC for the factual and legal predicates of the claims asserted against them.  This pleading technique is improper and inadequate, and the Court should not condone it.

Moreover, even after attempting to follow Plaintiffs' trail of breadcrumbs, a thorough review of the "incorporated" Count One (which asserts a claim against all eight of the named defendants for "conspiracy") provides hardly any further illumination. Count One lists only a series of crimes and the general timeframes during which they were supposed to have occurred and then refers back to the preceding 209 paragraphs for reference. *Id.* ¶ 210 (incorporating all prior allegations by reference); *id.* ¶ 212(a) ("From about April 2014, through about December 2015, Mokhtar committed numerous acts of

- 12 -

wire fraud … and grand theft by fraud ….”); *id.* ¶ 214 (“From about June 2015 through about November 2015, Enterprise members conspired with each other and others known and unknown” to commit wire fraud, grand theft by fraud, and extortion); *see also id.* ¶¶ 212(b), 215-216.

Count One does not provide the Moving Defendants with adequate notice of the claims against them, much less describe with particularity the who, what, where, when, and why of the claims against them that constitute or sound in fraud, which includes nearly every predicate act listed in the FAC. Nor does Count One specify which predicate acts were committed by which of the five different Moving Defendants; instead, all of the acts are simply described as having been committed by the “Enterprise members,” which is hardly adequate to plead the commission of a crime by any of the individual defendants, let alone with the particularity required under Rule 9(b). For example, the FAC does not point to *any* criminal acts specifically committed by Ibrahim Ahmad Ibrahim, does not identify which acts were committed on behalf of which of the three corporate defendants (Port of Mokha, Inc., Port of Mokha, LLC, or the non-existent Mokha Foundation), let alone allege the who, what, where, when, or why of these specific defendants’ conduct, so as to allow them to answer the FAC.

The Court should dismiss Plaintiffs’ RICO claims outright and require them to start again so they can attempt to meet the applicable pleading requirements: namely, “to identify exactly which acts are ‘predicate acts’ for RICO liability,” and, with respect to each predicate act, to “state the time, place and manner in which the act occurred,” including the specific defendant that is alleged to have committed the acts. *HK Systems*, 1997 WL 227955, at *3.

### 2. *Plaintiffs Fail To Plead the Predicate RICO Crimes Adequately.*

A plaintiff must plead “at least two” acts of specific racketeering activity to state a RICO claim. 18 U.S.C. § 1961(5). Beyond this, and as explained in greater detail below, the racketeering predicates must establish a “pattern” that “amount[s] to or pose[s] a threat of continued criminal activity.” *H.J., Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989). Here, to the extent that the predicate offenses of Plaintiffs’ RICO claim can even be identified, they are not pled adequately.

#### a. Paragraph 212(a): Embezzlement.

Plaintiffs allege Mokhtar took money from Mocha Mill and provided “no receipt or justification” for 74 withdrawals from Mocha Mill accounts. FAC ¶¶ 90-93. The withdrawals are characterized as acts

- 13 -

of "wire fraud" or "grand theft by fraud."  As explained below, these withdrawals are not meaningfully "related" to the Port of Mokha RICO enterprise described in the FAC, *see infra* at p.20 n.4, but for purposes of pleading, Plaintiffs do not describe even the supposed fraud with particularity. It is not "fraud" to fail to provide a receipt for a business expense, and Plaintiffs identify no false or misleading statement by Mokhtar with respect to any, let alone each, of the 74 transactions. They allege no reliance on a supposed misrepresentation. No criminal conduct is alleged as to any defendants except Mokhtar.

b.      Paragraph 212(b): Extortion.

In March 2015, the Investors allegedly agreed to give Mokhtar a larger stake in Mocha Mill after he threatened to leave the company. FAC ¶¶ 97-103. Plaintiffs say this was "extortion," but the FAC does not allege "wrongful use of actual or threatened force, violence, or fear." 18 U.S.C. § 1951(b)(2). Instead, it describes negotiations between the Investors and their CEO who, while trapped in the middle of a civil war, was inclined to take his talents elsewhere. This is "hard bargaining," not extortion, and it does not constitute a predicate act under RICO. *United Bhd. of Carpenters & Joiners of Am. v. Bldg. & Const. Trades Dep't, AFL-CIO* ("*UBC*"), 770 F.3d 834, 837 (9th Cir. 2014); *cf.* Cal. Bus. & Prof. Code § 16600. No criminal conduct is alleged as to any defendants except Mokhtar.

c.      Paragraph 214(a): Wire Fraud.

Plaintiffs allege "numerous acts" of wire fraud and grand theft by fraud from "about June 2015 through about November 2015."  These acts are not enumerated, much less specified with particularity. Instead, Plaintiffs cite generally to the FAC's Section V(G). FAC ¶ 214(a) (citing *id.* ¶¶ 121-125). This section does not describe the commission of a fraud upon Plaintiffs; instead, it describes a supposedly "inadvisable recommendation" by an attorney, which was rejected. *Id.* ¶¶ 121-125. Plaintiffs do not allege any specific statements by any of the Moving Defendants, nor do they plead reliance, causation, or damages. *Id.* ¶ 125. Again, no conduct is alleged as to any defendant except Mokhtar.

d.      Paragraph 214(b): Extortion.

Plaintiffs cite the same Section V(G) of the FAC in support of the idea that Mokhtar "extorted" them by threatening to "start a competing company with other investors" if they did not give him more compensation. This type of "hard bargaining" is not "extortion." *UBC*, 770 F.3d at 838. And even if it were, Plaintiffs allege they were not harmed by it because they refused Mokhtar's demands. FAC ¶ 125.

- 14 -

e.      Paragraph 215: Wire Fraud.

Plaintiffs say Moving Defendants conspired to commit wire fraud between November 2015 and May 2016, citing the FAC's Sections V(H)-V(K). FAC ¶ 215. But the roughly seventy paragraphs of factual allegations referenced by Plaintiffs to support these predicate crimes disclose only one actual, completed transaction: the $50,000 sale of coffee beans to T&H. *See* FAC ¶¶ 126-194. The remaining allegations describe no fraud at all, much less with sufficient particularity to satisfy Rule 9(b). Instead, these rambling sections of the FAC describe only the general contours of an alleged scheme to "supplant" Mocha Mill, *id.* ¶¶ 126-128, 135-139; the supposed theft of "publicity" via Dave Eggers' book, which is not a crime, *id.* ¶¶ 129-134; the supposedly eager participation of Defendant Blue Bottle Coffee, Inc., though not actually any misrepresentations made by or on behalf of that company, *id.* ¶¶ 142-166; the "unsuccessful" sale of Mocha Mill coffee to Atlas Coffee Company, *id.* ¶¶ 167-176; and then, finally, a $50,000 sale of coffee beans to T&H, *id.* ¶¶ 177-194. As to all events other than the T&H sale, Plaintiffs make no effort at all to specify the who, what, when, where, or why of any supposed false or misleading statements, nor do they explain Plaintiffs' reliance or resulting damages attributable to them. As to the T&H sale, the only misrepresentation underlying the supposed "fraud" was the identity of the purchaser, and specifically, that Port of Mokha used T&H as a "straw purchaser" to purchase of Mocha Mill's "best" coffee beans. These allegations are inadequate to state any claim sounding in fraud because it is not illegal to use a straw purchaser to make a transaction, and further, Plaintiffs affirmatively allege that they received a $50,000 wire payment *from T&H Computers* in advance of the sale, *Id.* ¶ 183(b). Since Plaintiffs knew the actual identity of the party that sent them funds, they cannot plead reliance or resulting damages from any alleged misrepresentations by Defendants.

f.      Paragraph 216: Extortion.

Plaintiffs say Mokhtar requested a "release of claims" in exchange for returning certain Mocha Mill assets after he resigned as Mocha Mill's CEO. FAC ¶¶ 195-199. A former employee's request for a release does not involve the "wrongful use of actual or threatened force, violence, or fear." 18 U.S.C. § 1951(b)(2). And even if it did, Plaintiffs allege no causation or damages from this conduct, because Mocha Mill retrieved all of its assets from Mokhtar and never gave him a release. FAC ¶ 199.

- 15 -

1

       **g.**       <u>Paragraph 217: Wire Fraud.</u>

2

       Plaintiffs allege that Mokhtar committed wire fraud by "hacking into Mocha Mill emails to

3

destroy evidence." FAC ¶ 217. The "what" and "when" of this fraud allegation is completely absent,

4

much less alleged with specificity, and this bare allegation of "hacking" does not provide Mokhtar,

5

much less the other Moving Defendants, with an opportunity to defend themselves. Further, this does

6

not actually describe mail or wire fraud, which requires Plaintiffs to allege that Mokhtar "obtain[ed]

7

money or property" as a result of his hacking. 18 U.S.C. §§ 1341, 1343. Plaintiffs do not even *try* to

8

satisfy this element; they only allege that he deleted emails, which (if true) is a cover-up, not a fraud.

9

       **h.**       <u>Paragraph 218: Money Laundering.</u>

10

       In a textbook example of conclusory pleading, Plaintiffs say that any commercial transaction by

11

Port of Mokha since April 2016 is an act of "money laundering." FAC ¶ 218. Plaintiffs' apparent theory

12

is that all ongoing business conducted by Port of Mokha must be money laundering because there were

13

prior acts of "fraud" and "extortion." To begin, as described above, the FAC's claims of fraud and

14

extortion are not well pled, so the claim for money laundering also fails. Further, separate and apart from

15

the defective fraud and extortion allegations on which it rests, Plaintiffs' money laundering predicate

16

fails because it contains no allegation that Port of Mokha's ongoing transactions (as opposed to its

17

historical transactions) involve "criminally derived property." 18 U.S.C. § 1957(a).

18

       In sum, because the predicate acts underlying Plaintiffs' RICO claim are all inadequately pled,

19

the claim must be dismissed. Further, if the Court determines that one or more predicate acts *are*

20

adequately pled, then it may consider *only* those claims, and none of the claims that are inadequately

21

pled, as part of the "pattern of racketeering acts" supporting the RICO claim. Thus, for example, if the

22

Court determines that only one of the predicate acts is adequately pled, the Court must dismiss the RICO

23

claim outright, since RICO "requires at least two acts of racketeering activity" to state a claim. *H.J.,*

24

*Inc.*, 492 U.S. at 237 (citing 18 U.S.C. § 1961(5)). Moreover, to the extent that more than one of the

25

predicate acts is adequately pled (or even if all of them are), there is still not a "pattern" of "related" and

26

"continuous" criminal activity within the meaning of RICO, as explained below.

27

       **3.**       ***Plaintiffs Do Not Allege a "Pattern" of Racketeering Activity.***

28

       Even accepting all of the factual allegations as true, and even if all of the predicate acts described

       MOTION TO DISMISS BY PORT OF MOKHA

1    in the FAC had been pled adequately and with particularity, the FAC *still* fails to identify a "pattern of

2    racketeering activity." 18 U.S.C. § 1962(c). The "pattern" element of a RICO claim is the critical test by

3    which federal courts distinguish run-of-the-mill business torts from genuine RICO cases. To plead a

4    RICO claim properly, a plaintiff must allege "more than just a multiplicity of racketeering predicates."

5    *H.J., Inc.*, 492 U.S. at 238. Instead, RICO requires a plaintiff to allege repeated criminal acts by the

6    defendants that are both "related" and "continuous" in nature. *Id.* As the Supreme Court has explained:

7    "RICO's legislative history reveals Congress' intent that to prove a pattern of racketeering activity a

8    plaintiff or prosecutor must show *that the racketeering predicates are related, and that they amount to*

9    *or pose a threat of continued criminal activity*." *Id.* at 239 (emphasis added). This continuity

10   requirement reflects Congress's core concern about "long-term criminal conduct" rather than run-of-the-

11   mill disputes between former business partners. *Id.* at 242.

12       Under RICO, a plaintiff may plead RICO's "continuity" requirement as either "open-ended" or

13   "closed-ended." *Id.* Open-ended continuity involves conduct that by its nature projects into the future

14   with a threat of repetition. *Id.* at 241-42. It requires proof of "a specific threat of repetition extending

15   indefinitely into the future" or that the predicate acts are "part of an ongoing entity's regular way of

16   doing business." *Id.* at 242. Closed-ended continuity is established by a series of related predicate acts

17   committed over a substantial period of time. *Id.* at 241-42. "Predicate acts extending over a few weeks

18   or months and threatening no future criminal conduct do not satisfy this requirement ...." *Id.* In applying

19   the continuity requirement, the Ninth Circuit and the Northern District of California have repeatedly

20   dismissed RICO claims where, as here, a complaint alleges only a single scheme that was perpetrated

21   upon only a single victim, and where the scheme has long since been completed.

22          *a.*      *Plaintiffs Do Not Allege "Open-Ended Continuity"*

23       Plaintiffs cannot establish open-ended continuity. The FAC contains no suggestion that any

24   threat of criminal conduct by Defendants extends "indefinitely into the future" or that the conduct

25   described in the FAC is Port of Mokha's "regular way of doing business." *Id.* at 242. Indeed, the idea of

26   criminal conduct "extending indefinitely into the future" would not make any sense given Plaintiffs'

27   basic theory of the case: according to the FAC, the alleged criminal enterprise was to supplant Mocha

28   Mill's business by taking its coffee beans. That "scheme" ended with Mokhtar's resignation in April

- 17 -

2016, the formation of Port of Mokha, and the alleged indirect purchase of coffee beans from Mocha

Mill in Spring 2016. The FAC contains no allegations of any conduct, criminal or otherwise, since June

2016. It does not allege ongoing embezzlement, fraud, extortion, or theft. Admittedly, Plaintiffs throw in

a conclusory allegation that the Moving Defendants are engaged in ongoing "money laundering," FAC

¶¶ 202-204, but the FAC offers no *facts* in support of this accusation. Instead, Plaintiffs' theory of

"money laundering" is that the Moving Defendants necessarily launder money now because they once

committed a fraud, *id.* ¶ 203, and this is wholly inadequate to support a theory of open-ended continuity.

The FAC does not allege that Plaintiffs are under the threat of ongoing or future criminal activity or that

they are going to be duped, once again, into selling their coffee beans to Port of Mokha. Significantly,

the FAC does not allege that the Moving Defendants pose an ongoing criminal threat, or that they have

ever posed such a threat, to anyone other than Plaintiffs.

The case law holds that these allegations do not demonstrate open-ended continuity. *Knipe v.*

*Washington Square Capital*, 116 F.3d 484 (9th Cir. 1997) (affirming dismissal of RICO claim based on

"one fraudulent transaction involving one shipment of denim jeans with no allegation that the conduct

would have been repeated or that the transaction involved a regular way of conducting business"); *see*

*also Mexicanos v. Hewlett-Packard Co.*, No. 14-CV-05292-BLF, 2015 WL 9592606, at *10 (N.D. Cal.

July 13, 2015); *Barsky v. Spiegel Accountancy Corp.*, No. 14-CV-04957-TEH, 2015 WL 580574, at *6

(N.D. Cal. Feb. 11, 2015); *Hopkins v. Am. Home Mortg. Servicing, Inc.*, No. 13-CV-04447-RS, 2014

WL 580769, at *5 (N.D. Cal. Feb. 13, 2014); *Ice Cream Distributors of Evansville, LLC v. Dreyer's*

*Grand Ice Cream, Inc.*, No. 09-CV-05815-CW, 2010 WL 2198200, at *4 (N.D. Cal. May 28, 2010). It is

not enough for Plaintiffs to rely on allegations about supposed ongoing *harm* from prior criminal acts.

*See* FAC ¶¶ 203, 223-224. "In order to establish open-ended continuity, [a] plaintiff must show that

defendants *pose a threat of continued criminal activity*," and "the mere fact that the *effects* of

defendants' unlawful acts are ongoing does not make the scheme 'continuous.'" *Richardson v. Reliance*

*Nat. Indem. Co.*, No. 99-CV-02952-CRB, 2000 WL 284211, at *8 (N.D. Cal. Mar. 9, 2000) (citing *Pier*

*Connection, Inc. v. Lakhani*, 907 F. Supp. 72, 76 (S.D.N.Y. 1995)) (emphasis added).

### *b.*     *Plaintiffs Do Not Allege "Closed-Ended Continuity"*

The FAC also does not establish closed-ended continuity. Although the FAC describes events

- 18 -

1    going back all the way to the formation of Mocha Mill in 2014, the supposed RICO enterprise is

2    describes existed during a much narrower timeframe—from the Summer of 2015 until the Spring of

3    2016. FAC ¶¶ 117-199. During this time, Plaintiffs allege a variety of supposedly illegal conduct, but

4    only a single transaction by which they were actually injured.

5            More than this is necessary to establish closed-ended continuity. As the Ninth Circuit has held

6    repeatedly, activity spanning only a matter of months, involving only the plaintiff as a victim, and

7    encompassing essentially one commercial scheme or objective is not adequate to sustain a RICO claim.

8    *Medallion Tel. Enters., Inc. v. SelecTV of Cal., Inc.*, 833 F.2d 1360, 1362-65 (9th Cir. 1987) (holding

9    that "alleged acts of mail fraud, wire fraud, and interstate transportation of stolen property" did not show

10   a "pattern of racketeering activity" because they were all "parts of [the defendants'] single effort to

11   induce Medallion to form the joint venture" and there was only a "single victim of the alleged fraud");

12   *see also Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1535 (9th Cir. 1992) (holding that former employee

13   failed to state a RICO claim where multiple criminal predicate acts were "in a sense a single episode

14   having the singular purpose of impoverishing [the plaintiff]" and there was "no suggestion that these

15   defendants . . . ever intended anyone but [him] any harm"); *Religious Tech. Ctr. v. Wollersheim*, 971

16   F.2d 364, 365-66 (9th Cir. 1992) (holding that plaintiffs had failed to state claim based on crimes

17   allegedly committed over the course of six months, because "the only goal of the . . . defendants was the

18   successful prosecution of [an earlier] state tort suit" against a single adversary); *Schreiber Distributing

19   Co. v. Serv-Well Furniture Co., Inc.* 806 F.2d 1393, 1399 (9th Cir. 1986) (rejecting RICO claim where a

20   plaintiff alleged that the defendants had conspired to invade his exclusive sales territory, since the

21   plaintiff had alleged only "the fraudulent diversion of a single shipment of Chambers' products in

22   1982," which was insufficient to establish "continuity"); *Jarvis v. Regan*, 833 F.2d 149, 153 (9th Cir.

23   1987) (holding that nonprofit organizations accused of fraudulently obtaining multiple federal grants

24   over the course of several months and using the funds for the improper purpose of influencing an

25   election could not be held liable under RICO because their fraud was "isolated and presented no threat

26   of continuing").

27           Relying on cases such as *Medallion*, *Sever*, *Schreiber*, *Wollersheim*, and *Regan*, judges in the

28   Northern District of California have also repeatedly rejected RICO claims, such as the one pled by

MOTION TO DISMISS BY PORT OF MOKHA

Plaintiffs here, that describe a singular business scheme carried out against a single victim over a limited and discrete period of months. *See, e.g.*, *Barsky*, 2015 WL 580574, at *6 (finding no "pattern" based on four predicate acts committed over six months in connection with the fallout from a dispute among business partners, and noting that "courts routinely find that alleged racketeering activity lasting less than a year does not constitute a closed-ended pattern." (citing *Turner v. Cook*, 362 F.3d 1219, 1231 (9th Cir. 2004), and *Wollersheim*, 971 F.2d at 366)); *Ice Cream Distributors of Evansville*, 2010 WL 2198200, at *4 (three-year scheme perpetrated by ice cream company to "wrongfully acquire [its competitor's] accounts through the use of false statements" and to hire away employees to "steal [its] account information" was inadequate to show "continuity" under RICO); *Richardson*, 2000 WL 284211, at *9 ("a scheme involving ongoing activity, numerous victims, and the risk of continued illegal acts constitutes a violation of RICO, while a scheme, like this one, involving a single victim and isolated transactions does not").[4]

### 4.   Only Mocha Mill Has Standing To Assert a RICO Claim.

Although the FAC does not state a viable RICO claim at all, if the Court disagrees, it is clear that the only plaintiff who could even plausibly have standing to bring the claim would be Mocha Mill. The only facts alleged anywhere in the FAC about Monk of Mocha Specialty Coffee Production and Export, Inc., is that it is "the predecessor company to Mocha Mill," *id.* ¶ 26, which is not a sufficient factual basis for it to bring claims independently, and presumably means that only Mocha Mill its entitled to

---

[4] Presumably aware that their RICO claim does not adequately allege a pattern of racketeering activity, Plaintiffs throw in kitchen-sink allegations in an attempt to expand the relevant timeframe of the so-called RICO enterprise. To begin, Plaintiffs allege the RICO conspiracy extends back to Mokhtar's supposed failure to provide receipts for his Mocha Mill expenses while traveling in Yemen in 2014-2015. *See* FAC ¶¶ 89-91. But Mokhtar's alleged failure to provide receipts is not in any reasonable sense "related" to Plaintiffs' claim that he attempted to supplant their business with Port of Mokha. The mere fact that Mokhtar's alleged "embezzlement" involved some of the same participants as the other alleged crimes in this case (though, notably, not any of his alleged RICO associates) is insufficient to establish that the predicate acts are "related," and therefore insufficient to constitute part of a "pattern" under RICO. *Howard v. Am. Online Inc.*, 208 F.3d 741, 749 (9th Cir. 2000).

Plaintiffs also allege that RICO activity is ongoing and includes every one of Port of Mokha's recent business transactions, which the Complaint characterizes as acts of "money laundering." *Id.* ¶¶ 202-204. But there are no actual *facts* alleged in support of this conclusory allegation; Plaintiffs rely upon criminal conduct that ended in June 2016 and simply assume that all of this business that Port of Mokha has conducted since is somehow "money laundering." This is inadequate to establish a pattern of racketeering activity. *Richardson*, 2000 WL 284211, at *8 ("[T]he mere fact that the *effects* of defendants' unlawful acts are ongoing does not make the scheme 'continuous.'").

1   bring claims for conduct affecting it. *Cf.* Cal. Code Civ. Proc. § 367 ("Every action must be prosecuted

2   in the name of the real party in interest, except as otherwise provided by statute."); *id.* § 368.5

3   (providing that "the person to whom the transfer is made" may pursue an acquired or assigned claim).

4   Meanwhile, the Investors allege no facts that furnish a basis for them to assert RICO claims individually,

5   as opposed to in each Investor's capacity as "a partner and shareholder." FAC ¶ 27-29. Their individual

6   claims are therefore invalid. *See Sparling v. Hoffman Const. Co.*, 864 F.2d 635, 641 (9th Cir. 1988) ("no

7   standing as shareholders to assert a RICO claim"); *Groth-Hill Land Co., LLC v. Gen. Motors LLC*, No.

8   C13-1362 TEH, 2013 WL 3853160, at *11 (N.D. Cal. July 23, 2013) (same).

9
10
        **D.**    **Plaintiffs' Claim Against All Defendants for Conspiracy To Violate RICO Should Be Dismissed.**

11       "Plaintiffs cannot claim that a conspiracy to violate RICO existed if they do not adequately plead

12   a substantive violation of RICO." *Howard*, 208 F.3d at 749; *Neibel v. Trans World Assurance Co.*, 108

13   F.3d 1123, 1127 (9th Cir. 1997). Because Plaintiffs have not adequately pled a substantive violation of

14   RICO, their claim based an alleged conspiracy among all eight defendants must be dismissed, too.

15
16
        **E.**    **The Court Should Decline To Exercise Supplemental Jurisdiction Over Plaintiffs' Remaining Eleven State-Law Causes of Action.**

17       Plaintiffs' only two federal claims are for substantive violations of RICO under 18 U.S.C. §

18   1962(c), *see* FAC ¶¶ 229-231, and for conspiracy to violate RICO under 18 U.S.C. § 1962(d), *see id.* ¶¶

19   210-228. If the Court dismisses these claims, as it should for the reasons stated above, it should then

20   decline to exercise supplemental jurisdiction over Plaintiffs' remaining eleven state-law causes of

21   action, pursuant to 28 U.S.C. § 1367(c)(3). *See Wade v. Regional Credit Ass'n*, 87 F.3d 1098, 1101 (9th

22   Cir. 1996) ("Where a district court dismisses a federal claim, leaving only state claims for resolution, it

23   should decline jurisdiction over the state claims and dismiss them without prejudice."); *Figures v.*

24   *Szabo*, No. 14-CV-04684-HSG, 2015 WL 2062709, at *1 (N.D. Cal. May 4, 2015) (Gilliam, J.)

25   (dismissing pendent state-law claims where sole federal claim under RICO was inadequately pled).

26
27
        **F.**    **Plaintiffs' Eleven State-Law Causes of Action Suffer From Defects That Require Dismissal As To All or Some of the Moving Defendants.**

28       If the Court does not dismiss Plaintiffs' RICO claims (which it should) or decides to exercise

- 21 -

supplemental jurisdiction over the remaining state-law claims (which it should not), there are numerous

defects in Plaintiffs' remaining eleven (11) additional state-law claims that would need to be addressed.

Plaintiffs' state-law claims are pled almost indiscriminately, without regard to their elements or the

parties against whom they are asserted. The Court must prune Plaintiffs' scattershot pleading.

### 1. *Plaintiffs' Fraud-Based Claims Fail to Satisfy Rule 9(b).*

Every one of Plaintiffs' state-law claims sounds in fraud, at least in part. *See, e.g.*, FAC ¶¶ 239,

244, 247, 255, 260, 271, 277, 286, 292, 299, 306. Yet, Plaintiffs do not allege "the who, what, when,

where, and how" of the fraud against *any* of the Moving Defendants, let alone *each* of them. *Vess v.*

*Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003). Their state-law claims refer to all of the

defendants collectively, rather than individually, and the alleged "misrepresentation" or "deceit" is not

described with particularity. *See, e.g.*, FAC ¶¶ 242-243, 247, 254-256, 260, 269, 277, 292, 298-299,

304.[5] This contravenes Rule 9(b). *Swartz*, 476 F.3d at 765; *see also United States v. Aurora Las*

*Encinas, LLC*, Case No. LA CV10-01031 JAK (RZx), 2011 WL 13137312, at *2 (C.D. Cal. Sept. 8,

2011) ("Rule 9(b) is not satisfied where the complaint vaguely attributes the alleged fraudulent

statements to 'defendants.'")  Those claims for which fraud is an essential element should be dismissed

in their entirety and the others should be dismissed as to the averments of fraud. *Vess*, 317 F.3d at 1103.

### 2. *Plaintiffs' Conspiracy Claims Are Inadequately Pled.*

Claims Four, Five, Six, Seven, Eight, and Nine are brought under "Conspiracy" and "Aiding and

Abetting" theories against all the Moving Defendants. These claims are flawed for several reasons.

First, "conspiracy" and "aiding and abetting" are two distinct theories of liability, and Plaintiffs

improperly group them into a single claim. *See Treefrog Developments, Inc. v. Miles & Co.*, LLC, No.

SACV1300754CJCANX, 2013 WL 12138672, at *2 n.1 (C.D. Cal. July 31, 2013).[6]

---

[5] To the extent the third, fifth, seventh and tenth causes of action mention conduct by Mokhtar specifically (FAC ¶¶ 235-238, 248, 261, 286), those allegations are still lacking in that they do not include the "who, what, when, where, and how" of the fraud.

[6] In addition to improperly grouping causes of action, Plaintiffs have improperly split claims. There appears to be no substantive difference between Counts Four and Five. Both claims are brought against the same defendants and appear to be based on the same conduct. *Compare* FAC ¶ 243 (Defendants "defraud[ed] Mocha Mill into believing that high-end distributors [] were no longer interested"), *with id.* ¶ 248 (Defendants "failed to disclose . . . that high-end distributors [] were anxiously waiting to receive" coffee). Because an action for fraud may be based on concealment, it is (continued on next page)

Second, Plaintiffs' conspiracy claims are alleged without a claim for the underlying torts.[7] "Conspiracy is not an independent tort." *Applied Equipment Corp. v. Litton Saudi Arabia Limited*, 7 Cal.4th 503, 514 (1994). Because conspiracy "is not actionable without a wrong," a complaint "must allege an actionable underlying tort." *Berman v. Knife River Corp.*, No. C 11-3698 PSG, 2012 WL 646068, at *8 (N.D. Cal. Feb. 28, 2012). To the extent Plaintiffs might argue they have pled actual tortious conduct and an allegedly unlawful agreement under one cause of action, the FAC makes no distinction between the two, and as a result, it is impossible to tell what is pled against which defendant.

Third, the conspiracy and aiding and abetting claims are not adequately pled. To bring a claim for aiding and abetting in the commission of an intentional tort, the plaintiff must allege the defendant "knows the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other to so act." *Casey v. U.S. Bank Nat. Assn.*, 127 Cal.App.4th 1138, 1144 (2005). In addition, a complaint must allege the aider and abettor had the specific intent to facilitate the wrongful conduct. *See Schulz v. Neovi Data Corp.*, 152 Cal.App.4th 86, 95 (2007); *Gerard v. Ross*, 204 Cal.App.3d 968, 983 (1988). None of the claims brought under this theory adequately allege these elements as to each of the individual defendants. Likewise, to properly plead a conspiracy cause of action, Plaintiffs must "clearly allege specific action on the part of each defendant that corresponds to the elements of a conspiracy cause of action," making the allegations "within the sections of the complaint that contain [the] claims for the underlying torts," which Plaintiffs do not do here. *AccuImage Diagnostics Corp. v. Terarecon, Inc.*, 260 F. Supp. 2d 941, 948 (N.D. Cal. 2003).

Fourth, the FAC asserts two counts for conspiracy to commit negligence—Count Six and Count Nine. But as a matter of logic, "[i]t is impossible to conspire to commit negligence," and as a matter of law, California "recognizes no cause of action for conspiracy to commit negligent misrepresentation."

---

unclear why Count Five is pled as a separate and distinct cause of action from Count Four. Likewise, there appears to be no reason why the Counts Ten and Eleven—both for conversion—are not pleaded as one. This practice of claim splitting is improper. *See Bradford v. Flagship Facility Servs. Inc.*, No. 17-CV-01245-LHK, 2017 WL 3130072, at *11 (N.D. Cal. July 24, 2017) ("It is clear under California law a party cannot, as a general rule, split a single cause of action[.]") (citing *City of San Jose v. Super. Ct.*, 12 Cal. 3d 447, 464 (1974)).

[7] While there are separate claims for "Fraud & Deceit" (Count Three) and "Conspiracy and Aiding & Abetting Fraud and Deceit" (Count Four) the claims are based on different conduct, *see* FAC ¶¶ 234-237, 242-243, so the former does not serve as the predicate tort for the latter.

1   *Noe v. Fed. Deposit Ins. Corp. for Washington Mut. Bank, F.A.*, No. CV087140GHKFMOX, 2010 WL

2   11549438, at \*4 (C.D. Cal. Jan. 15, 2010) (citing *In re Nat'l Century Fin. Enters., Inc.*, 504 F. Supp. 2d

3   287, 327 (S.D. Ohio 2007)). These claims must be dismissed.

4          Finally, to state a claim for conspiracy to breach a fiduciary duty, a plaintiff must allege that the

5   defendant itself owed an independent fiduciary duty to the plaintiff. *See Neilson v. Union Bank of Cal.*,

6   290 F. Supp. 2d 1101, 1133–35 (C.D. Cal. 2003) ("California courts have also held that a claim for civil

7   conspiracy does not arise unless the alleged conspirator owed the victim a duty not to commit the

8   underlying tort.")  In Count Seven, the FAC fails to allege that any defendant other than Mokhtar owed

9   any fiduciary duty to Plaintiffs, and Plaintiffs cannot plausibly allege such a duty on the part of the other

10  Moving Defendants, who never "knowingly undert[ook] to act on behalf" of Plaintiffs and never

11  "enter[ed] into a relationship which imposes that undertaking as a matter of law." *City of Hope Nat'l*

12  *Med. Ctr. v. Genentech, Inc.*, 43 Cal. 4th 375, 385-86 (2008) (quoting *Comm. on Children's Tel., Inc. v.*

13  *Gen. Foods Corp.*, 35 Cal.3d 197, 221 (1983)).

14          **3.       *Additional Defects Are Fatal to Plaintiffs' Other State-Law Claims.***

15          There are other problems with Plaintiffs' state-law claims. For example, Counts Three and Ten

16  are brought against all Moving Defendants, but they include no allegations related to any of them except

17  Mokhtar. Plaintiffs do not (and cannot) allege that Mokhtar was acting on behalf of any of the Moving

18  Defendants given that the conduct at issue occurred before any of them are alleged to have had any

19  connection to Mokhtar (and, in the case of the corporate entities, before they existed). FAC ¶¶ 234, 286.

20          Also, Plaintiffs do not adequately allege conversion in Counts Ten and Eleven because "[m]oney

21  cannot be the subject of a cause of action for conversion unless there is a specific, identifiable sum

22  involved." *PCO, Inc. v. Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro, LLP*, 150

23  Cal.App.4th 384, 395 (2007). Plaintiffs' allegation that the Moving Defendants converted some

24  unidentified sum of "proceeds from clandestine sales" or that Defendants converted Plaintiffs "entire

25  business," FAC ¶¶ 286, 293, do not satisfy the pleading requirements for conversion.

26          Finally, there is no standalone cause of action for unjust enrichment, which is fatal to Count

27  Twelve. *See de Havilland v. FX Networks, LLC*, 21 Cal.App.5th 845, 870 (2018); *Bank of New York*

28  *Mellon v. Citibank, N.A.*, 8 Cal.App.5th 935, 955 (2017) (unjust enrichment is neither a cause of action

- 24 -

nor a remedy). And even if Count Twelve were to be construed as a claim for restitution, *see Astiana v. Hain Celestial Grp., Inc.* 783 F.3d 753, 762 (9th Cir. 2015), Plaintiffs have not pled any circumstances warranting restitution.  *See Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal.4th 1134, 1149 (2003) ["The remedy sought by plaintiff in this case is not restitutionary because plaintiff does not have an ownership interest in the money it seeks to recover …."].)  This is fatal to Count Thirteen, too.  *See id.* at 1146 ("[R]estitution is the only monetary remedy expressly authorized by Bus. & Prof. Code, § 17203.").

## V.     CONCLUSION

Plaintiffs' flawed complaint should be dismissed. The claims against Mokhtar must be dismissed pursuant to the arbitration and forum selection clauses in his partnership agreement with the Investors. The claims against Mokha Foundation must be dismissed because that entity does not exist. The RICO claims against all defendants must be dismissed because predicate acts are inadequately pled and, even if they were, the FAC does not show a "pattern of racketeering activity" that satisfies RICO's "continuity" requirement. Finally, Plaintiffs' remaining state-law claims should be dismissed pursuant to 28 U.S.C. § 1367(c)(3), and if they are not dismissed on this ground, then they must be dismissed as inadequately pled under Rule 12(b)(6).


DATED: July 27, 2018                                 Respectfully submitted,

                                                    CONRAD & METLITZKY LLP


                                                    */s/ Mark R. Conrad*
                                                    MARK R. CONRAD
                                                    GABRIELA KIPNIS

                                                    Attorneys for Defendants Port of Mokha, Inc.,
                                                    Port of Mokha, LLC, Mokha Foundation,
                                                    Mokhtar Alkhanshali, and Ibrahim Ahmad Ibrahim