Michael Shipley (SBN 233674)
Edward Hillenbrand (SBN 310872)
KIRKLAND & ELLIS LLP
333 South Hope Street, Suite 2900
Los Angeles, California 90071
Telephone:    (213) 680-8400
E-Mail:       michael.shipley@kirkland.com
              edward.hillenbrand@kirkland.com

*Attorneys for Blue Bottle Coffee, Inc.*

# IN THE UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| MOCHA MILL, INC., MONK OF MOCHA SPECIALTY COFFEE PRODUCTION AND EXPORT, INC., IBRAHIM A. ALAELI, YASIR H. KHANSHALI, and ADNAN G. AWNALLAH,<br><br>    Plaintiffs,<br><br>    v.<br><br>PORT OF MOKHA, INC., PORT OF MOKHA LLC, MOKHA FOUNDATION, BLUE BOTTLE COFFEE, INC., METRA COMPUTER GROUP FZCO, T&H COMPUTERS, INC., MOKHTAR F. ALKHANSHALI, and IBRAHIM AHMAD IBRAHIM,<br><br>    Defendants. | Case No. 4:18-cv-02539-HSG<br><br>**NOTICE OF BLUE BOTTLE COFFEE, INC.'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Judge:        Honorable Haywood S. Gilliam<br>Courtroom:    2, 4th Floor<br>Date:         September 27, 2018<br>Time:         2:00 p.m. |

---

**DEFENDANT BLUE BOTTLE COFFEE, INC.'S MOTION TO DISMISS THE COMPLAINT
CASE NO. 4:18-cv-02539-HSG**

## NOTICE OF MOTION & MOTION

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD**:

**PLEASE TAKE NOTICE** that at 2:00 p.m. on September 27, 2018, or as soon thereafter as the matter may be heard, before the Honorable Haywood S. Gilliam, United States District Judge for the Northern District of California, Defendant Blue Bottle Coffee, Inc. will and hereby does move for dismissal of this action pursuant to Federal Rules of Civil Procedure 8(a)(2), 9(b), 12(b), and 17(a).

Plaintiffs' claims against Blue Bottle should be dismissed in their entirety for failure to meet Rule 8(a)(2) and 9(b)'s pleading requirements, and for failure to state a claim and lack of subject matter jurisdiction under Rules 12(b) and 17(a).

This Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, Blue Bottle's Request for Judicial Notice in support thereof, the Declaration of Michael Shipley in support thereof and exhibit thereto, the papers in support of any motion to dismiss filed by any other defendant in this action, the papers on file in this matter, and the arguments of counsel.

Dated: July 27, 2018                          Kirkland & Ellis LLP

*/s/ Michael Shipley*
Michael Shipley (SBN 233674)
Edward Hillenbrand (SBN 310872)
KIRKLAND & ELLIS LLP
333 South Hope Street, Suite 2900
Los Angeles, California 90071
Telephone:      (213) 680-8400
Facsimile:      (213) 680-8500
E-Mail:          michael.shipley@kirkland.com
                    edward.hillenbrand@kirkland.com

*Attorneys for Blue Bottle Coffee, Inc.*

**DEFENDANT BLUE BOTTLE COFFEE, INC.'S MOTION TO DISMISS THE COMPLAINT
CASE NO. 4:18-cv-02539-HSG**

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ...................................................................1

SUMMARY OF RELEVANT ALLEGATIONS .........................................................................2

ARGUMENT ...............................................................................................................................6

    I.    The Individual Plaintiffs and Monk of Mocha Specialty Coffee Production and Export, Inc. Lack Standing to Sue for the Alleged Injuries to Mocha Mill...........6

    II.    The Complaint Fails to Adequately Allege a Substantive RICO Violation and Does Not Provide A Factual Basis to Infer that Blue Bottle Conspired to Violate RICO. ............................................................................................................8

        A.    The Complaint Does Not Adequately Allege a Substantive RICO Violation. ...................................................................................................8

        B.    The Complaint Does Not Provide a Sufficient Factual Basis to Reasonably Infer that Blue Bottle Conspired to Violate RICO. .....................13

    III.    The Complaint's State Law Claims Should Be Dismissed..........................................17

        A.    The Court Can Decline Supplemental Jurisdiction over Plaintiff's State Law Claims. ................................................................................................17

        B.    At Minimum, Plaintiffs Should Be Required to Re-Plead their State Law Claims to Give Adequate Notice. ...........................................................17

        C.    The State Law Claims Should Be Dismissed Under Rule 12(b)(6)................18

            1.    The Fourth, Fifth, and Sixth Causes of Action for Deceit, Concealment, and Negligent Misrepresentation Do Not State a Claim Against Blue Bottle. ..............................................................18

            2.    The Seventh Cause of Action for Breach of Fiduciary Duty Does Not State a Claim Against Blue Bottle. ...............................20

            3.    The Eighth and Ninth Causes of Action for Intentional and Negligent Interference with Prospective Economic Relations Do Not State a Claim Against Blue Bottle. .........................21

            4.    The Eleventh Cause of Action for Conversion Does Not State a Claim against Blue Bottle. ..............................................23

            5.    The Twelfth Cause of Action for Unjust Enrichment Does Not State a Claim Against Blue Bottle. .........................................23

            6.    The Thirteenth Cause of Action for Violating Cal. Bus. & Prof. Code § 17200 Does Not State a Claim against Blue Bottle...............24

CONCLUSION..........................................................................................................................25

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*1-800 Contacts, Inc. v. Steinberg*,
   107 Cal. App. 4th 568 (2003) ..............................................................................20

*Agric. Water v. Occidental Oil and Gas Corp.*,
   235 F. Supp. 3d 1132 (E.D. Cal 2017)...............................................................15

*Alan Neuman Prods., Inc. v. Albright*,
   862 F.2d 1388 (9th Cir. 1988) .........................................................................8, 9

*Alfus v. Pyramid Tech. Corp.*,
   745 F. Supp. 1511 (N.D. Cal. 1990) ...................................................................14

*Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*,
   7 Cal. 4th 503 (1994) ..................................................................18, 19, 20, 22

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009).............................................................................2, 14, 17

*Astiana v. Hain Celestial Grp., Inc.*,
   783 F.3d 753 (9th Cir. 2015) ..............................................................................24

*Aviva USA Corp. v. Vazirani*,
   902 F. Supp. 2d 1246 (D. Ariz. 2012) ...............................................................13

*B.L.M. v. Sabo & Deitsch*,
   55 Cal. App. 4th 823 (1997) ...............................................................................18

*Barsky v. Spiegel Accountancy Corp.*,
   2015 WL 580574 (N.D. Cal. Feb. 11, 2015) .....................................................13

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)......................................................................................14, 15

*Benson v. JPMorgan Chase Bank, N.A.*,
   2010 WL 1526394 (N.D. Cal. Apr. 15, 2010) ...................................................19

*BioResource, Inc. v. U.S. PharmaCo Distrib., Ltd.*,
   2010 WL 3853025 (N.D. Cal. Sept. 29, 2010) ..................................................21

*Bivens Gardens Office Bldg., Inc. v. Barnett Banks of Fla., Inc.*,
   140 F.3d 898 (8th Cir. 1998) ...............................................................................7

*Boon Rawd Trading Int'l Co. v. Paleewong Trading Co.*,
   688 F. Supp. 2d 940 (N.D. Cal. 2010) ...............................................................23

*Boschma v. Home Loan Ctr., Inc.*,
   198 Cal. App. 4th 230 (2011) .............................................................................18

DEFENDANT BLUE BOTTLE COFFEE, INC.'S MOTION TO DISMISS THE COMPLAINT
CASE NO. 4:18-cv-02539-HSG

*Casey v. U.S. Bank Nat'l Ass'n*,
  127 Cal. App. 4th 1138 (2005) ....................................................................................19

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*,
  20 Cal. 4th 163 (1999) ........................................................................................24, 25

*City of L.A. v. Lyons*,
  461 U.S. 95 (1983)........................................................................................................25

*Cmty. Elec. Serv. of Los Angeles, Inc. v. Nat'l Elec. Contractors Ass'n, Inc.*,
  869 F.2d 1235 (9th Cir. 1989) .....................................................................................7

*Cooper v. Pickett*,
  137 F.3d 616 (9th Cir. 1997) .......................................................................................8

*Craig Outdoor Advert. v. Viacom Outdoor Inc.*,
  528 F.3d 1001 (8th Cir. 2008) ..................................................................................7, 8

*Della Penna v. Toyota Motor Sales, USA, Inc.*,
  11 Cal. 4th 376 (1995) ..........................................................................................21, 22

*Duttweiler v. Triumph Motorcycles (Am.) Ltd.*,
  2015 WL 4941780 (N.D. Cal. Aug. 19, 2015) ...........................................................24

*Eclectic Prop. E. LLC v. Marcus & Millichap Co.*,
  751 F.3d 990 (9th Cir. 2014) .....................................................................................15

*Engalla v. Permanente Med. Grp., Inc.*,
  15 Cal. 4th 951 (1997) .................................................................................................18

*ESG Capital Partners, LP v. Stratos*,
  828 F.3d 1023 (9th Cir. 2016) ...................................................................................24

*Figures v. Szabo*,
  2015 WL 2062709 (N.D. Cal. May 4, 2015) .............................................................17

*Fiol v. Doellstedt*,
  50 Cal. App. 4th 1318 (1996) .....................................................................................19

*First Nationwide Savings v. Perry*,
  11 Cal. App. 4th 1657 (1992) .....................................................................................24

*Glen Holly Entm't, Inc. v. Tektronix, Inc.*,
  100 F. Supp. 2d 1086 (C.D. Cal. 1999) ....................................................................18

*Gottex Fund Mgmt. Ltd. v. MKA Real Estate Opp. Fund I, LLC*,
  2013 WL 12137878 (C.D. Cal. Dec. 23, 2013) ........................................................21

*Grosset v. Wenass*,
  42 Cal. 4th 1100 (2008) ................................................................................................7

*H.J. Inc. v. Nw. Bell Tel. Co.*,
  492 U.S. 229 (1989)........................................................................................10, 12, 13

**DEFENDANT BLUE BOTTLE COFFEE, INC.'S MOTION TO DISMISS THE COMPLAINT
CASE NO. 4:18-cv-02539-HSG**

*Haley v. Macy's, Inc.*,
    263 F. Supp. 3d 819 (N.D. Cal. 2017) ...................................................................................9

*Hermosillo v. Caliber Home Loans Inc.*,
    2017 WL 2653039 (D. Ariz. June 6, 2017) .........................................................................16

*Howard v. Am. Online Inc.*,
    208 F.3d 751 (9th Cir. 2000) .................................................................................... *passim*

*Hughey v. Drummond*,
    2014 WL 5797365 (E.D. Cal. Nov. 6, 2014) ......................................................................18

*In re Arris Cable Modem Consumer Litig.*,
    2018 WL 288085 (N.D. Cal. Jan. 4, 2018) .........................................................................23

*In re Atmel Corp. Deriv. Litig.*,
    2008 WL 2561957 (N.D. Cal. June 25, 2008) ....................................................................20

*In re: Jamster Mktg. Litig.*,
    2009 WL 1456632 (S.D. Cal. May 22, 2009) .....................................................................15

*Kan-Di-Ki, LLC v. Sorenson*,
    723 Fed. App'x 432 (9th Cir. 2018) ...................................................................................12

*Kasparian v. Cty. of L.A.*,
    38 Cal. App. 4th 242 (1995) ...............................................................................................22

*Kearns v. Ford Motor Co.*,
    567 F.3d 1120 (9th Cir. 2009) ............................................................................................24

*Kehr Packages, Inc. v. Fidelcor, Inc.*,
    926 F.2d 1406 (3d Cir. 1991)..............................................................................................13

*Kidron v. Movie Acquisition Corp.*,
    40 Cal. App. 4th 1571 (1995) .............................................................................................19

*Klamath-Lake Pharm. Ass'n v. Klamath Med. Serv. Bureau*,
    701 F.2d 1276 (9th Cir. 1983) ............................................................................................15

*Korea Supply Co. v. Lockheed Martin Corp.*
    29 Cal. 4th 1134 (2003) ..........................................................................................21, 24, 25

*Kwikset Corp. v. Superior Court*,
    51 Cal. 4th 310 (2011) ........................................................................................................25

*Lazar v. Grant*,
    2017 WL 4805067 (C.D. Cal. June 22, 2017) ....................................................................23

*Lee v. Hanley*,
    61 Cal. 4th 1225 (2015) ......................................................................................................23

*LiMandri v. Judkins*,
    52 Cal. App. 4th 326 (1997) ..........................................................................................20, 21

DEFENDANT BLUE BOTTLE COFFEE, INC.'S MOTION TO DISMISS THE COMPLAINT
CASE NO. 4:18-cv-02539-HSG

*Lui Ciro, Inc. v. Ciro, Inc.*,
   895 F. Supp. 1365 (D. Haw. 1995) ............................................................................ 14

*Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986) ................................................................................................... 15

*Maya v. Centex Corp.*,
   658 F.3d 1060 (9th Cir. 2011) ..................................................................................... 7

*McCullough v. Suter*,
   757 F.2d 142 (7th Cir. 1985) ..................................................................................... 11

*Medallion Television Enters., Inc. v. SelecTV of Cal., Inc.*,
   833 F.2d 1360 (9th Cir. 1987) ................................................................................... 12

*Midwest Grinding Co., Inc. v. Spitz*,
   976 F.2d 1016 (7th Cir. 1992) ......................................................................... 8, 12, 13

*N. Am. Chem. Co. v. Superior Court*,
   59 Cal. App. 4th 764 (1997) ...................................................................................... 21

*Neubronner v. Milken*,
   6 F.3d 666 (9th Cir. 1993) ....................................................................................... 8, 9

*Ngoc Nguyen v. Wells Fargo Bank, N.A.*,
   749 F. Supp. 2d 1022 (N.D. Cal. 2010) .................................................................... 20

*Odom v. Microsoft Corp.*,
   486 F.3d 541 (9th Cir. 2007) (en banc) ...................................................................... 8

*Olschewski v. Hudson*,
   87 Cal. App. 282 (1927) ............................................................................................ 23

*Osgood v. Main Street Mktg., LLC*,
   2017 WL 131829 (S.D. Cal. Jan. 13, 2017) ............................................................... 9

*Pierce v. Lyman*,
   1 Cal. App. 4th 1093 (1991) ...................................................................................... 20

*PMC, Inc. v. Sabon Entm't, Inc.*,
   45 Cal. App. 4th 579 (1996) ...................................................................................... 21

*Prescott v. Rady Children's Hosp.-San Diego*,
   265 F. Supp. 3d 1090 (S.D. Cal. 2017) ..................................................................... 25

*R Power Biofuels, LLC v. Chemex LLC*,
   2016 WL 6663002 (N.D. Cal. Nov. 11, 2016) .......................................................... 22

*Ravens v. Iftikar*,
   174 F.R.D. 651 (N.D. Cal. 1997) ................................................................................ 9

*Regent All. Ltd. v. Rabizadeh*,
   231 Cal. App. 4th 1177 (2014) .................................................................................. 23

DEFENDANT BLUE BOTTLE COFFEE, INC.'S MOTION TO DISMISS THE COMPLAINT
CASE NO. 4:18-cv-02539-HSG

*Religious Tech. Ctr. v. Wollersheim*,
   971 F.2d 364 (9th Cir. 1992) ................................................................................................. 13

*Sax v. World Wide Press, Inc.*,
   809 F.2d 610 (9th Cir. 1987) .................................................................................................... 7

*Schreiber Distrib. Co. v. Serv-Well Furniture Co.*,
   806 F.2d 1393 (9th Cir. 1986) .......................................................................................... 8, 12

*Second Measure, Inc. v. Kim*,
   143 F. Supp. 3d 961 (N.D. Cal. 2015) .................................................................................. 23

*Sever v. Alaska Pulp Corp.*,
   978 F.2d 1529 (9th Cir. 1992) .............................................................................................. 12

*Sollberger v. Wachovia Secs., LLC*,
   2010 WL 2674456 (C.D. Cal. June 30, 2010) ..................................................................... 18

*Sparling v. Hoffman Const. Co., Inc.*,
   864 F.2d 635 (9th Cir. 1988) .................................................................................................. 7

*Stolz v. Wong Commc'ns Ltd. P'ship*,
   25 Cal. App. 4th 1811 (1994) ............................................................................................... 22

*Strong v. France*,
   474 F.2d 747 (9th Cir. 1973) ................................................................................................ 20

*Swartz v. KMPG LLP*,
   476 F.3d 756 (9th Cir. 2007) ............................................................................... 8, 19, 23, 24

*Thrifty-Tel, Inc. v. Bezenek*,
   46 Cal. App. 4th 1559 (1996) ............................................................................................... 23

*United States v. Colgate & Co.*,
   250 U.S. 300 (1919) .............................................................................................................. 15

*United States v. E. I. du Pont de Nemours & Co.*,
   353 U.S. 586 (1957) .............................................................................................................. 15

*United States v. Fernandez*,
   388 F.3d 1199 (9th Cir. 2004) .............................................................................................. 14

*Venhaus v. Shultz*,
   155 Cal. App. 4th 1072 (2007) ........................................................................................ 21, 22

*Youst v. Longo*,
   43 Cal. 3d 64 (1987) ............................................................................................................. 21

*Zavala v. Wal Mart Stores Inc.*,
   691 F.3d 527 (3d Cir. 2012) ................................................................................................. 14

**Statutes**

18 U.S.C. §§ 1341 & 1343 ............................................................................................................ 9

**DEFENDANT BLUE BOTTLE COFFEE, INC.'S MOTION TO DISMISS THE COMPLAINT
CASE NO. 4:18-cv-02539-HSG**

18 U.S.C. § 1951 .................................................................................................9

18 U.S.C. § 1957 .................................................................................................9

18 U.S.C. § 1961 ............................................................................................9, 10

18 U.S.C. § 1962 .......................................................................................... *passim*

28 U.S.C. § 1331 ...............................................................................................17

28 U.S.C. § 1367 ...............................................................................................17

Cal. Bus. & Prof. Code § 17200 .......................................................................24

Cal. Corp. Code § 1107 .......................................................................................7

**Rules**

Fed. R. Civ. P. 8 ...............................................................................................15

Fed. R. Civ. P. 9 .......................................................................................... *passim*

Fed. R. Civ. P. 12 ...............................................................................7, 17, 18

Fed. R. Civ. P. 17 .................................................................................................7

**Other Authorities**

Charles Wright, *et al.*, *Federal Practice & Procedure* (2018 online ed.) ......................................8, 18

**DEFENDANT BLUE BOTTLE COFFEE, INC.'S MOTION TO DISMISS THE COMPLAINT
CASE NO. 4:18-cv-02539-HSG**

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

At its core, this lawsuit is a dispute between former business partners. Plaintiffs Ibrahim Alaeli ("Alaeli"), Yasir Khanshali ("Khanshali"), and Adnan Awnallah ("Awnallah") claim to have partnered with Defendant Mokhtar Alkhanshali ("Mokhtar")[1] to create Plaintiff Mocha Mill, Inc. But Mokhtar allegedly left and took some business with him to a new company, Defendant Port of Mokha, Inc. In a textbook example of "making a federal case" out of an ordinary business dispute, Plaintiffs have endeavored to shoehorn their dispute into the strong medicine of RICO.

Defendant Blue Bottle Coffee, Inc. is a collateral player in this story. Blue Bottle identifies, sources, and sells at retail artisanal coffee from around the world through its website and network of cafés in the United States and Japan. Its only tenuous connection to the facts of this case is that it developed a business relationship with Mokhtar while he was the CEO of Mocha Mill, but ultimately purchased $52,650 worth of very expensive "specialty Yemeni coffee" from Port of Mokha (instead of Mocha Mill). Taking the Complaint at face value, Blue Bottle did so because it had an ongoing relationship with Mokhtar and perceived some marketing advantages to working with Port of Mokha, instead of Mocha Mill.

From these thin reeds, the Complaint speculates and relies on unsupported information and belief allegations to weave an elaborately implausible hub-and-spoke RICO conspiracy, orchestrated by Mokhtar and his various business partners, lawyers, investors, straw buyers, distributors and retailers, and even a best-selling author, to defraud Mocha Mill and steal its "business assets, relationships, and opportunities." Most of these far-flung co-conspirators remain conspicuously unindicted. But not Blue Bottle, whom the Complaint goes out of its way to explain just received a significant investment from a multinational company.

In any event, there is no merit to the Complaint's claims against Blue Bottle. The RICO conspiracy, in particular, fails to state a claim. Despite paragraph after paragraph of mundane detail, speculation about motives, unsupported information and belief, and many entirely conclusory

---

[1]   It is not clear to Blue Bottle why the First Amended Complaint (the "Complaint") uses the convention of referring to Defendant Mokhtar Alkhanshali by his first name, but to Plaintiffs Alaeli, Khanshali, and Awnallah by their surnames. For consistency, Blue Bottle follows the Complaint's convention of referring to Mr. Alkhanshali as "Mokhtar." No disrespect is intended.

1

assertions, it never lays out the elements of the predicate offenses it alleges. Nor does it plead the relatedness or continuity elements necessary to allege a pattern of racketeering activity. And particularly as applied to Blue Bottle, it fails to allege sufficiently *facts* meriting a plausible inference that Blue Bottle agreed someone would conduct an enterprise through a pattern of racketeering activity. Indeed, the few facts pleaded against Blue Bottle demand a far more plausible innocent inference—that Blue Bottle decided to buy some coffee from a sales representative it had an ongoing relationship with, for its own business reasons, which it has every right to do.

The Court needn't address the remaining claims, because without the unnecessary complication of RICO, there is no original jurisdiction, so this case can be sent back to state court as an ordinary partnership dispute. But the state law claims are deeply flawed nonetheless. Plaintiffs' insistence on shotgun pleading their claims leaves Defendants questioning which Defendants committed which elements of what claims, under what theory: Direct? Aiding and abetting? Conspiracy? Defendants are, at minimum, entitled to an order requiring Plaintiffs to re-plead these claims with the appropriate degree of particularly so their allegations can be met. And in any event, as to Blue Bottle, the claims are fatally flawed in that they fail to allege essential elements.

The motion should be granted.

## SUMMARY OF RELEVANT ALLEGATIONS

The Complaint alleges[2] that in fall of 2013, Mokhtar and Alaeli started Mocha Mill to cultivate, process, and distribute coffee from the war-torn nation of Yemen. ¶¶ 61, 66.[3] Khanshali and Awnallah later joined Mocha Mill in 2014; they all allegedly agreed to take 25 percent equal stakes in the business and to refrain from competing with it. ¶¶ 69–71. Mokhtar—who invested only sweat equity—would be President and CEO. ¶ 72. From 2013 to 2016, Alaeli, Khanshali, and Awnallah (occasionally referred to as the "Individual Plaintiffs") allegedly invested over $500,000

---

[2]    In the context of a motion to dismiss, the Court must assume the Complaint's factual allegations, but not its legal conclusions, labels, threadbare recitals, or conclusory statements to be true. *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009). By summarizing the alleged facts for the benefit of the Court, Blue Bottle does not concede their truth.

[3]    Citations to "¶" are to the operative First Amended Complaint, dated June 3, 2018, which will be generally referred to as the "Complaint."

**DEFENDANT BLUE BOTTLE COFFEE, INC.'S MOTION TO DISMISS THE COMPLAINT
CASE NO. 4:18-cv-02539-HSG**

to educate Mokhtar about the coffee business and to pay for his travel so that he could develop relationships with Yemeni coffee farmers, potential distributors, and retailers. ¶¶ 73–88.

By early 2015, however, Mokhtar allegedly realized that his relationship with farmers and distributors were with him personally, as opposed to with Mocha Mill as a business. ¶ 98. He threatened to "walk away with Mocha Mill's farmer and distributor relationships." ¶ 100. To stave off that threat, the Individual Plaintiffs allegedly gave Mokhtar 40 percent of Mocha Mill's equity in exchange for his promises that he would not start a competing business and maintain for Mocha Mill a database of Yemeni coffee farmers. ¶¶ 101–03. In April 2015, Mokhtar returned from Yemen to the United States with coffee samples. ¶ 104. Mokhtar's coffee received positive reviews from many in the specialty coffee market, including Blue Bottle CEO James Freeman. ¶¶ 105-06. Mokhtar then—on behalf of Mocha Mill—discussed potential sales of the coffee to distributors and retailers, including Blue Bottle. ¶ 107. By "mid-late 2015," Mokhtar had obtained "commitments" from Blue Bottle and others to "buy the coffee in 2016." ¶ 109. Mokhtar also began to collaborate with novelist David Eggers to write a book, *The Monk of Mokha*, which was eventually published in January 2018 and profiled Port of Mokha, Blue Bottle, and other distributors. ¶¶ 110-12.

In the summer of 2015, Mokhtar, Defendant Ibrahim Ahmad Ibrahim ("Ahmad"), and nonparties Stephen Ezell ("Ezell") and Inder Comar ("Comar") allegedly became an associated-in-fact enterprise that engaged in "numerous acts of trick, fraud, deception, extortion, and money laundering."[4] ¶¶ 115-120. In September 2015, Mokhtar threatened to start a competing company if he did not receive 85 percent of Mocha Mill, but the Individual Plaintiffs refused. ¶¶ 121–125. In response, Mokhtar, Ahmad, Ezell, and Comar "secretly plotted to supplant Mocha Mill with" Port of Mokha, and to "steal Mocha Mill's most valuable assets, including it knowledgebase, farmer and distributor relationships, first-mover advantage, good will, and publicity." ¶ 127. Mokhtar also convinced Eggers to exclude Mocha Mill and its investors from *The Monk of Mokha*. ¶¶ 129-34.[5]

Blue Bottle allegedly voluntarily promoted Mocha Mill coffee on its Instagram feed

---

[4]   Ezell and Comar are not named defendants.

[5]   Eggers is not a named defendant.

**DEFENDANT BLUE BOTTLE COFFEE, INC.'S MOTION TO DISMISS THE COMPLAINT
CASE NO. 4:18-cv-02539-HSG**

beginning in April 2015. ¶ 135. It negotiated with Mokhtar directly and, in November 2015, allegedly made a commitment to buy coffee from Mocha Mill in 2016 for not more than $135 per kilogram, such that the coffee "had been sold in principle." ¶¶ 135-36. (Despite the profligacy of the Complaint's counts, a claim against Blue Bottle for breach of contract is, however, conspicuously absent.) Once Mokhtar, Ahmad, Ezell, and Comar had committed to supplanting Mocha Mill with Port of Mokha, they then "conspired with Defendant Blue Bottle to mislead Plaintiffs into believing that high-end distributors and retailers (Blue Bottle among them) were no longer interested in buying Mocha Mill coffee." ¶ 140.

As support for Plaintiffs' claim that Blue Bottle had conspired with the "Enterprise," the Complaint offers the following allegations, the vast majority of them on information and belief:

- Freeman described his first sip of Mocha Mill's coffee as "what angels signing tastes like" and Blue Bottle expressed a desire to sell it in marketing materials (¶ 145);

- Blue Bottle had "a deal in spirit and principle" to buy coffee from Mocha Mill (¶ 148);

- In 2015, Blue Bottle pitched its "expected special access" to Mocha Mills' premium Yemeni coffee to potential and actual investors (¶ 108);

- (*On information and belief*) In November 2015, Mokhtar told Freeman about the Port of Mokha Enterprise he had formed to supplant Mocha Mill, and assured Freeman that, with Blue Bottle's help, Port of Mokha would be able to steal the coffee from Mocha Mill by causing it to believe "Blue Bottle and other high-end retailers were unwilling to buy the coffee" (¶¶ 149–50);

- (*On information and belief*) Mokhtar convinced Freeman it was in his best interests to participate in the fraud scheme and promised Blue Bottle would receive (i) special exclusivity agreements with Port of Mokha, (ii) "tremendous publicity," and (iii) the opportunity to invest in Yemeni farmer relationships and future harvests, as well as (iv) maintain a close relationship with Mokhtar and Port of Mokha (¶ 151);

- (*On information and belief*) To "sweeten[] the deal," Mokhtar promised Blue Bottle a "prominent place" in Eggers' book that would build Blue Bottle's brand (¶ 154);

- (*On information and belief*) Because Freeman had promised investors special access to Mocha Mill's coffee, Mokhtar's impending departure put Blue Bottle's investor relationships in peril and frightened Freeman (¶ 155);

- (*On information and belief*) Blue Bottle joined the RICO conspiracy and thereafter (i) delayed its purchase of the coffee until it was Port of Mokha's to sell, (ii) concealed its dealings with Port of Mokha from Plaintiffs by only communicating with Mokhtar and Ezell, and (iii) delayed its marketing plan and pivoted to endorse Port of Mokha (instead of Mocha Mill), and (iv) delayed the overall launch of the coffee—"sacrificing freshness for the scheme" (¶ 156(d));

- (*On information and belief*) On February 25, 2016, Ezell sent an email to a writer for

4

Blue Bottle to put her in touch with Eggers' assistant about his book, *The Monk of Mokha* (¶ 159);

- (*On information and belief*) On February 27, 2016, Mokhtar told Freeman and Habegger about the coffee's arrival but Blue Bottle delayed its purchase "to mislead Plaintiffs into thinking that Blue Bottle was not interested in purchasing the coffee and that the beans were getting too old to sell to Blue Bottle and other high-end distributors" (¶ 157);

- A March 5–19, 2016 email exchange between Mokhtar, Ahmad, Ezell, and Blue Bottle, which excluded the Individual Plaintiffs, reflected an "agreement in principle" to buy coffee" that "appeared to be for the benefit of Port of Mokha (not mocha Mill)" (¶ 175(e));

- On March 26, 2016, Ahmad emailed Blue Bottle, copying Mokhtar and Ezell but excluding the Individual Plaintiffs, asked for a meeting in April to discuss Eggers' book and "other coffee related logistics" (¶ 175(i)).

- (*On information and belief*) On May 7, 2016, Mokhtar emailed Habegger about "pricing and long-term projects" with Port of Mokha (¶ 161);

- (*On information and belief*) On May 13, 2016, Habegger emailed Mokhtar about having an "annual project [between Blue Bottle and Port of Mokha]" and pre-financing the next harvest (¶ 162); and

- (*On information and belief*) On May 26, 2016, a Blue Bottle employee exchanged emails with Ahmed, copying Mokhtar and Ezell, to discuss Port of Mokha's marketing and "logistics" (¶ 163).

In November 2015, to acquire Mocha Mill's coffee, Mokhtar and Ezell allegedly arranged for Atlas Coffee ("Atlas") to serve as a straw buyer. ¶ 169. Between November 2015 and April 2016, Mokhtar and Ezell "convinced Plaintiffs that high-end distributors were no longer interested in buying Mocha Mill Coffee for over $100 per kilogram" and that Mocha Mill's best option was "to sell the coffee to Atlas for $50 per kilogram." ¶¶ 169–73. In April 2016, Atlas backed out of the potential deal.[6] *Id.* ¶ 173(h). On April 8, 2006, Mokhtar resigned as Mocha Mill's CEO and he, Ahmad, Defendant Metra Computer Group FZCO ("Metra"), and Defendant T&H Computers, Inc. ("T&H") created T&H Imports to be the next straw buyer. ¶¶ 177–82. Eventually, Plaintiffs sold 862 kilograms of its "best varieties" of coffee to T&H Imports for $50,000, whom thereafter sold the 862 kilograms of coffee to Port of Mokha for $51,000. ¶ 183(a)–(g).

On May 17, 2016, Blue Bottle purchased 390 kilograms of coffee from Port of Mokha for $135 per kilogram (the same price it allegedly offered to Mocha Mill), and Port of Mokha sold the

---

[6]    Atlas is not a named defendant.

rest to Coutume Café and other "high-end distributors."[7] ¶ 183(h)–(i). Blue Bottle made that coffee available to its customers beginning on June 7, 2016. ¶ 183(k). To market the coffee on its website, social media feeds, and blogs, Blue Bottle used images and a narrative provided by Mokhtar and Port of Mokha. ¶ 185–86. Other high-end retailers and distributors did the same. ¶ 187.

Based on the above allegations, and as to Blue Bottle, the Complaint alleges claims for: RICO conspiracy (#1); fraud (#4); fraudulent concealment (#5); negligent misrepresentation (#6); breach of fiduciary duty (#7); intentional interference with prospective economic relations (#8); negligent interference with prospective economic relations (#9); conversion (#11); unjust enrichment (#12); and violating California's Unfair Competition Law (#13). *See* ¶¶ 210–228, 240–83, 290–310. Except for the RICO conspiracy claim, the Complaint fails to make clear whether it is alleging (1) direct, (2) conspiracy, and/or (3) aiding and abetting theories against Blue Bottle. *See, e.g.*, ¶ 247 ("Defendants actively engaged in, participated in, agreed to, aided and abetted, conspired in, and/or furthered a fraudulent scheme, which conduct constitutes fraudulent concealment."). Notwithstanding the absence of fair notice, Blue Bottle addresses all three theories for these claims.

## ARGUMENT[8]

### I.   The Individual Plaintiffs and Monk of Mocha Specialty Coffee Production and Export, Inc. Lack Standing to Sue for the Alleged Injuries to Mocha Mill.

Although it names five plaintiffs, the Complaint does not allege that any of Defendants' conduct caused four of them—the Individual Plaintiffs and Monk of Mocha Specialty Coffee Production and Export, Inc. ("Monk of Mocha Specialty Coffee")—any direct injury. To the contrary, every one of the Complaint's thirteen causes of action is for injuries allegedly suffered only by Mocha Mill. *See* ¶ 55 (alleging the Port of Mokha RICO enterprise's fraudulent theft of Mocha Mill's "business assets, relationships, and opportunities"); *see also* ¶¶ 219, 223, 226, 228, 234, 243, 247–48, 254–55, 260, 265, 273, 282, 287, 293, 299, 306.

The only apparent reason to include the Individual Plaintiffs is they purport to be partners or

---

[7]   No other coffee retailers or distributors are named defendants.

[8]   To the extent the other Defendants have made arguments in their own Motions to Dismiss that also merit dismissal of Blue Bottle's claims, Blue Bottle joins them.

shareholders in Mocha Mill. *See* ¶¶ 27–29. But "RICO standing will not arise solely because one is a shareholder or a [partner] in a company that was the target of the alleged RICO violation." *Bivens Gardens Office Bldg., Inc. v. Barnett Banks of Fla., Inc.*, 140 F.3d 898, 906 (8th Cir. 1998); *see also Sparling v. Hoffman Const. Co., Inc.*, 864 F.2d 635, 640–41 (9th Cir. 1988). And more generally "a shareholder cannot enforce corporate rights in a direct action . . . arising out of either contract or tort law." *See Sax v. World Wide Press, Inc.*, 809 F.2d 610, 613–14 (9th Cir. 1987). Nor can a shareholder sue on his own behalf "to recover the wrongful diminution in value in his stock or to recoup his share of money taken from the corporation; such claims must generally be pursued in a shareholders derivative action." *Craig Outdoor Advert. v. Viacom Outdoor Inc.*, 528 F.3d 1001, 1024 (8th Cir. 2008) (addressing RICO claim).[9] Because the Individual Plaintiffs' claims are all derivative of the harm suffered by Mocha Mill, they lack both statutory and Article III standing to recover directly; and their claims must be dismissed under Rule 12(b)(1) or (6), and Rule 17(a). *See Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011) ("lack of statutory standing requires dismissal for failure to state a claim" and "lack of *Article III* standing requires dismissal for lack of subject matter jurisdiction").

As to Monk of Mocha Specialty Coffee, the Complaint does not even attempt to establish how it has suffered any harm—directly, derivatively, or otherwise—as a result of Defendants' alleged conduct. *See* ¶¶ 26–27. If, as the Complaint alleges, it is Mocha Mill's predecessor company, *see* ¶ 26, whatever claims it might have passed to Mocha Mill. *See* Cal. Corp. Code § 1107(d). Therefore, it too must be dismissed from the case.[10]

---

[9]   California state law says the same. *See Grosset v. Wenass*, 42 Cal. 4th 1100, 1108 (2008) ("[a]n action is derivative if the gravamen of the complaint is injury to the corporation, or to the whole body of its stock . . . or it seeks to recover assets for the corporation or to prevent the dissipation of its assets.").

[10]   Contrary to the Complaint, *see* ¶ 26, the California Secretary of State's website does not list Monk of Mocha Specialty Coffee as ever having been a registered as a California corporation, much less that it is in good standing. *See Cmty. Elec. Serv. of L.A., Inc. v. Nat'l Elec. Contractors Ass'n, Inc.*, 869 F.2d 1235, 1239 (9th Cir. 1989) (California corporation that is not in good standing lacks capacity to bring even federal claims), *abrogated on other grounds by Townsend v. Holman Consulting Corp.*, 914 F.2d 1136 (9th Cir. 1990).

II.     **The Complaint Fails to Adequately Allege a Substantive RICO Violation and Does Not Provide A Factual Basis to Infer that Blue Bottle Conspired to Violate RICO.**

Despite the Complaint's strained attempts to turn a "purely private business dispute between [Mokhtar] and [Mocha Mill] . . . occasioned solely by their previously existing business relationship" into a RICO conspiracy, *see Midwest Grinding Co., Inc. v. Spitz*, 976 F.2d 1016, 1025 (7th Cir. 1992), it fails to adequately alleged any actionable violation of RICO, either in substance, 18 U.S.C. § 1962(c) or as a conspiracy, 18 U.S.C. § 1962(d). *See* ¶¶ 210–228.

A.     **The Complaint Does Not Adequately Allege a Substantive RICO Violation.**

To assert a claim for RICO conspiracy, a plaintiff must first adequately allege an underlying violation of substantive RICO. *See Howard v. Am. Online Inc.*, 208 F.3d 741, 751 (9th Cir. 2000). The Complaint asserts a violation of § 1962(c), the elements of which are: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Odom v. Microsoft Corp.*, 486 F.3d 541, 547 (9th Cir. 2007) (en banc) (citation omitted). "Failure to present sufficient evidence on any one element of a RICO claim means the entire claim fails." *Craig Outdoor Advert.*, 528 F.3d at 1028.

Because the theory espoused in the Complaint is premised on a scheme that sounds in fraud, Rule 9(b)'s heightened particularly requirement applies to the allegation of each of these elements. *See Alan Neuman Prods., Inc. v. Albright*, 862 F.2d 1388, 1392 (9th Cir. 1988); *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1400 (9th Cir. 1986); 5A Charles Wright, *et al.*, *Federal Practice & Procedure* § 1251.1 (2018 online ed.) ("Fraud claims brought under the RICO Act—such as wire fraud and mail fraud—are subject to the particularity and specificity pleading requirements of Rule 9(b)"). Rule 9(b)'s particularity requirement has three consequences here. First, the allegations must be "specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." *Neubronner v. Milken*, 6 F.3d 666, 671 (9th Cir. 1993). Plaintiff must plead facts laying out the "who, what, when, where, and how" of any allegations that sound in fraud. *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997). Second, the allegations must be specific enough to distinguish the allegations against each defendant; "Rule 9(b) does not allow a complaint to merely lump multiple defendants together . . . ." *See Swartz v. KMPG LLP*, 476 F.3d 756, 764–65 (9th Cir. 2007). And

8

1  third, "allegations of fraud based on 'information and belief' do not satisfy the particularity

2  requirements of Rule 9(b)" unless the plaintiff alleges a factual basis for them from which

3  reasonable inferences can be drawn. *Haley v. Macy's, Inc.*, 263 F. Supp. 3d 819, 824 (N.D. Cal.

4  2017); *see also Neubronner*, 6 F.3d at 672 ("a plaintiff who makes [fraud] allegations on information

5  and belief must state the factual basis for the belief" and allege more than "suspicious

6  circumstances").

7       These rules in mind, the Complaint fails to allege sufficient facts to: (1) lay out the elements

8  of the alleged predicate acts of racketeering; or (2) show that the allegations constituted a "pattern."

9       **1. Predicate Acts:** "Racketeering activity" includes a list of predicate criminal offenses. *See*

10  18 U.S.C. § 1961(1)(A). To state a claim under § 1962(c), plaintiff must plead particular facts laying

11  out the elements of at least two predicate acts. *Alan Neuman Prods.*, 862 F.2d at 1392. Here, the

12  Complaint alleges that Defendants committed "numerous acts of": (1) mail and wire fraud, 18

13  U.S.C. §§ 1341 & 1343; (2) grand theft by fraud, Cal. Penal Code §§ 487 & 532[11]; (3) extortion, 18

14  U.S.C. § 1951, Cal. Penal Code §§ 518, 519, 520, 522 & 523; (4) attempted extortion, 18 U.S.C.

15  § 1951, Cal. Penal Code § 524; and (5) money laundering, 18 U.S.C. § 1957. *See* ¶¶ 212, 214–18.

16       Despite its girthy 310 paragraphs, the Complaint makes not even the slightest effort to afford

17  defendants notice of how the elements of the underlying predicate offenses are satisfied. *See Osgood*

18  *v. Main Street Mktg., LLC*, 2017 WL 131829, at *8–9 (S.D. Cal. Jan. 13, 2017) (dismissing a § 1962

19  claim for failure to adequately allege wire fraud, money laundering, and extortion). The wire fraud

20  acts, in particular, are alleged in a cryptic hide-the-ball manner, that alleges numerous mundane and

21  innocent facts with specificity and then draws unsupported sinister inferences on information and

22  belief. *Cf. Neubronner*, 6 F.3d at 672. One should not conflate length with particularity. A

23  "complaint can be long-winded, even prolix, without pleading with particularity. Indeed, such a

24  garrulous style is not an uncommon mask for an absence of detail." *Ravens v. Iftikar*, 174 F.R.D.

25  651, 659 (N.D. Cal. 1997) (quotation omitted).

26

27  [11]   Cal. Penal Code §§ 487 & 532 do not qualify as predicate acts under 18 U.S.C. § 1961(1)(A)
   because, as alleged, are not be "punishable by imprisonment for more than one year." *See* Cal. Penal

28  Code § 489(c).

**DEFENDANT BLUE BOTTLE COFFEE, INC.'S MOTION TO DISMISS THE COMPLAINT**
**CASE NO. 4:18-cv-02539-HSG**

1    The Port of Mokha Defendants' brief lays this out in more detail—and Blue Bottle joins their

2    arguments in full—but a few examples are merited. For instance, the Complaint makes no effort to

3    allege any facts that explain how Mokhtar's attempts to obtain more Mocha Mill equity and his

4    request for a liability release were anything but instances of hard bargaining by an employee with

5    leverage, rather than extortion. *See* ¶¶ 97–103, 121–125, 195–99, 212(b), 214(b), 216. It offers no

6    factual support for the claim that "Defendants amassed large sums of money in criminal proceeds

7    derived from fraud and extortion" and used it "to engage in numerous monetary transactions of over

8    $10,000 to grow Port of Mokha." ¶¶ 202–204, 218. And it does not aver any of its "numerous acts of

9    wire fraud"—all heavily alleged on information and belief—with the requisite particularity and a

10   sufficient factual basis under Rule 9(b), or even afford Defendants adequate notice of what facts

11   Plaintiffs contend satisfy the elements of those claims. *See* ¶¶ 89–96, 158, 174, 177–83, 200–201.

12       **2. Pattern:** Even if the Complaint sufficiently alleged the elements of one or more predicate

13   acts, it still fails to establish any "pattern of racketeering activity." 18 U.S.C. § 1961(5) (defining as

14   "at least two acts of racketeering activity" occurring within ten years of each other). To satisfy

15   RICO's pattern requirement, a plaintiff must show that (1) the "racketeering predicates are related"

16   and (2) they pose "a threat of continued racketeering activity." *H.J. Inc. v. Nw. Bell Tel. Co.*, 492

17   U.S. 229, 239 (1989).

18       **2.a. Relatedness:** Not all of the Complaint's scattershot predicate acts share the "same or

19   similar purposes" and "results" and, thus, are not sufficiently related to establish a pattern of activity.

20   *Id.* at 240. The Complaint sets out several overlapping conspiracies, with different casts of characters

21   and different goals. Its early allegations of "embezzlement" and "wire fraud" up to December 2015

22   are entirely based on insufficient expense reporting—Mokhtar's failure to "provide justification and

23   receipts for all expenditures." ¶¶ 89–96. The only participant in this alleged scheme was Mokhtar

24   himself. Then it tells of an "extortion" plan in March 2015, wherein Mokhtar allegedly successfully

25   used his bargaining leverage from his supplier and customer relationships to obtain a greater stake in

26   Mocha Mill's business. *See* ¶¶ 97–103. The Complaint also lays out a second round of "extortion"

27   from June to October 2015, again based solely on acts by Mokhtar, which did not ultimately

28   succeed. *See* ¶¶ 121–25.

But then, in November 2015, everything supposedly changes. Instead of attempting to wrest more control of Mocha Mill, the "Enterprise" finally "expands" to include actual participants other than Mokhtar and supposedly develops a plan and objective to "to steal Mocha Mill's most valuable assets, including its knowledgebase, farmer and distributor relationships, first-mover advantage, goodwill, and publicity in order to . . . leave it in obscurity." ¶ 127; *see generally* ¶¶126–194. This activity—what the Complaint labels a "Scheme to Supplant Mocha Mill with Port of Mokha Through a Pattern of Racketeering Activity" (for brevity, the "Supplant Mocha Mill Scheme")—is an entirely separate course of conduct (although large swathes of the Complaint fail to allege that any acts were taken and lack dates accordingly). Further, the Supplant Mocha Mill Scheme—the only part that allegedly involved Blue Bottle—began at the earliest "[a]fter Mokhtar's November 2015 fraud/extortion-based corporate *coup d'état* failed," ¶ 137, and ended in June of 2016, when its goal to "abscond[] with Mocha Mill's best coffee" was achieved. ¶ 184.

The pre-November 2015 embezzlement and extortion schemes—Mokhtar's solo efforts to obtain even more control of Mocha Mill—do not relate to the post-November 2015 Supplant Mocha Mill Scheme. The conduct is different; the "Enterprise" has different membership;[12] and the goals are not the same. Plaintiffs even broke out their fraud claim on the embezzlement scheme in a separate count that does not name Blue Bottle. *See* ¶¶ 232–39. Accordingly, these predicate acts are "not related to the other claimed predicate acts" and Plaintiffs have failed to allege a single related pattern. *See Howard*, 208 F.3d at 749.[13]

---

[12]   It is questionable that the Complaint even alleges an enterprise for the embezzlement and extortion schemes. Tellingly, it does not actually allege the participation of anyone other than Mokhtar in those schemes. And Mokhtar could not have associated with Port of Mokha, which was not incorporated until July 2016. *See* Dec. of Michael Shipley Ex. 1 & Req. for Judicial Notice (July 27, 2018) (filed concurrently herewith). Even if Port of Mokha existed in some unincorporated, inchoate form, without the employment of other individuals who participate, an individual and his sole proprietorship d/b/a-type business cannot associate to form an enterprise. *See McCullough v. Suter*, 757 F.2d 142, 144 (7th Cir. 1985) ("[Y]ou cannot associate with yourself, any more than you can conspire with yourself, just by giving yourself a nom de guerre.").

[13]   Perhaps anticipating the continuity problems that ensue from alleging two different patterns, the Complaint tries to bridge the gap by alleging, only on "information and belief," that "some or all" of the $140,942 Mokhtar allegedly embezzled from Mocha Mill was used to fund "his RICO enterprise" and "carry out the schemes" to take Mocha Mill's business. ¶ 96. But without any factual basis, that allegation is a nullity. It says nothing about the purpose of Mokhtar's alleged

---

11

**2.b. Continuity**. "To satisfy the continuity requirement, Plaintiffs must prove either a series of related predicates extending over a substantial period of time, i.e., closed-ended continuity, or past conduct that by its nature projects into the future with a threat of repetition, i.e., open-ended continuity[.]" *Howard*, 208 F.3d at 750 (quotations, brackets, and citations omitted). Plaintiffs have pleaded neither.

Open-ended continuity requires that the predicate acts present "a specific threat of repetition extending indefinitely into the future," or were "part of an ongoing entity's regular way of doing business." *H. J. Inc.*, 492 U.S. at 242. That threat is absent here. The "Port of Mokha Enterprise" had the sole objective of stealing Mocha Mill's assets and business, which it allegedly achieved after (1) Mokhtar's departure in April 2016, and (2) Mocha Mill's coffee sale to T&H Imports in May 2016. *See* ¶¶ 179, 183; *see also See Schreiber*, 806 F.2d at 1399 (finding no "threat of continuing activity" where the fraudulent diversion of a single shipment of products was achieved through multiple acts of mail and wire fraud); *Spitz*, 976 F.2d at 1023 ("the alleged scheme to fraudulently divert business and employees" ended when defendant left the company). At most, Plaintiffs' allegations amount to "a single alleged fraud with a single victim," which does not make out a pattern. *Medallion Television Enters., Inc. v. SelecTV of Cal., Inc.*, 833 F.2d 1360, 1363 (9th Cir. 1987); *see also Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1535 (9th Cir. 1992) ("collective conduct [that] is in a sense a single episode having the singular purpose of impoverishing [the victim]" lacks continuity).

The Complaint unsuccessfully attempts to manufacture an "ongoing and continuing" pattern of activity by alleging, without any factual support or specific dates, that money laundering and spoliation of evidence might have occurred even after the Supplant Mocha Mill Scheme's completion. ¶¶ 195–204, 216–18, 223. First, none of these allegations are specific enough to either plead additional racketeering acts post-dating the success of the Supplant Mocha Mill Scheme or to merit any inference that the "Enterprise" will continue to commit crimes in the future. Second, even if they were, "actions that merely shield defendants from liability for a past fraudulent scheme do not extend that scheme unless other circumstances suggest that the scheme is not yet complete." *Kan-Di-*

---

embezzlement at the time it was committed, and is insufficient to establish relatedness between the two patterns.

**DEFENDANT BLUE BOTTLE COFFEE, INC.'S MOTION TO DISMISS THE COMPLAINT**
**CASE NO. 4:18-cv-02539-HSG**

1   *Ki, LLC v. Sorenson*, 723 Fed. App'x 432, 435 (9th Cir. 2018); *Spitz*, 976 F.2d at 1024. Thus the

2   Complaint cannot establish open-ended continuity.

3          Nor does the Complaint allege closed ended continuity, which requires "a series of related

4   predicates extending over a substantial period of time." *H. J. Inc.*, 492 U.S. at 242. Although the

5   Ninth Circuit has rejected a bright-line rule for how long an alleged scheme must last, "courts

6   routinely find that alleged racketeering activity lasting less than a year does not constitute a closed-

7   ended pattern." *Barsky v. Spiegel Accountancy Corp.*, 2015 WL 580574, at *6 (N.D. Cal. Feb. 11,

8   2015); *see also Aviva USA Corp. v. Vazirani*, 902 F. Supp. 2d 1246, 1271 (D. Ariz. 2012). The

9   pattern in the Supplant Mocha Mill Scheme—the only one involving any allegations against Blue

10  Bottle—ran at most for *eight months* from November 2015 to June 2016.[14] Given that the scheme is

11  a single course of fraud, with a single purpose, against a single victim, it was too short-lived to

12  establish closed-ended continuity as a matter of law. *See Kehr Packages, Inc. v. Fidelcor, Inc.,* 926

13  F.2d 1406, 1418 (3d Cir. 1991) ("an eight-month period of fraudulent activity directed at a single

14  entity does not constitute a pattern, absent a threat of future criminal acts"); s*ee also Religious Tech.*

15  *Ctr. v. Wollersheim*, 971 F.2d 364, 366 (9th Cir. 1992); ¶¶ 214–15. Under any permissible

16  interpretation, the Complaint's alleged predicate acts do not extend over "a substantial amount of

17  time" and cannot establish closed-ended continuity.

18                                                    * * *

19          Therefore, the Complaint fails to allege any underlying substantive violation of RICO.

20  Because Plaintiffs "cannot claim that a conspiracy to violate RICO exist[s] if they do not adequately

21  plead a substantive violation of RICO," their § 1962(d) claim also fails. *Howard*, 208 F.3d at 751.

22          **B.     The Complaint Does Not Provide a Sufficient Factual Basis to Reasonably Infer
                     that Blue Bottle Conspired to Violate RICO.**

23          Even if the Complaint did plead a substantive RICO violation, it still fails to adequately

24

25  _____

    [14]   The Complaint also vaguely alleges an effort to extort a settlement from Mocha Mill by
26  hijacking an internet domain name, *see* ¶¶ 195–199, and makes generalized claims of spoliation of
    evidence and money laundering, *see* ¶¶ 200–204. Even if these allegations were adequate to show
27  additional predicate acts sufficiently related to the Supplant Mocha Mill Scheme—they are not—the
    fact that they are all undated should preclude any extension of the closed-ended period, even if they
28  occurred outside of it.

allege that Blue Bottle conspired in its commission. *See* 18 U.S.C. § 1962(d). To plead a claim under § 1962(d), a Plaintiff must allege facts—with the particularity required under Rule 9(b)—that the defendant "knowingly agree[d] to facilitate a scheme which includes the operation or management of a RICO enterprise." *United States v. Fernandez*, 388 F.3d 1199, 1230 (9th Cir. 2004) (quotation omitted). Accordingly, Plaintiffs "must allege either an agreement that is a substantive violation of RICO or that the defendants agreed to commit, or participated in, a violation of two predicate offenses." *Howard*, 208 F.3d at 751. But "RICO conspiracy is not a mere conspiracy to commit the underlying predicate acts. It is a conspiracy *to violate RICO*—that is, to conduct or participate in the activities of a corrupt enterprise." *Zavala v. Wal Mart Stores Inc.*, 691 F.3d 527, 539 (3d Cir. 2012). Thus, although the defendant itself needs not participate in the enterprise, *Fernandez*, 388 F.3d at 1230, plaintiff must also allege that the defendant is "aware of the essential nature and scope of the enterprise and intended to participate in it," *Howard*, 208 F.3d at 751, and agreed that the predicate acts would be committed as part of an overall pattern that supports its goal. *Zavala*, 691 F.3d at 539.

Although the Complaint is replete with conclusory allegations of agreements and conspiracies between Mokhtar and Blue Bottle, *see* ¶¶ 128, 140, 144, 156, 157, 215, sometimes while lumped in generally with "Defendants," *see* ¶¶ 55, 126, 183(h), these vague, conclusory, and formulaic recitations "are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) ("a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality"). Moreover, since Rule 9(b) applies, "[t]o survive a motion to dismiss, plaintiff must allege with sufficient factual particularity that defendants reached some explicit or tacit understanding or agreement." *Alfus v. Pyramid Tech. Corp.*, 745 F. Supp. 1511, 1521 (N.D. Cal. 1990). "Conclusory allegations that RICO defendants entered into an agreement are insufficient." *Lui Ciro, Inc. v. Ciro, Inc.*, 895 F. Supp. 1365, 1383–84 (D. Haw. 1995).

The Complaint's few truly, non-information-and-belief factual allegations establish only that Blue Bottle (1) voluntarily promoted Mocha Mill coffee on its social media, (2) discussed purchasing coffee from Mocha Mill with Mokhtar for not more than $135 per kilogram, (3) developed a personal relationship with Mokhtar; (4) later learned that Mokhtar was changing

14

1   companies and David Eggers was writing a book about Mokhtar and his business relationships, (5)

2   eventually bought coffee from Port of Mokha in May 2016 for $135 per kilogram, (6) accordingly

3   marketed the coffee to its customer's under the "Port of Mokha" brand beginning in June 2016, and

4   (7) held discussions with Mokhtar and others at Port of Mokha about the May 2016 purchase and the

5   potential for future purchases. *See* ¶¶ 98, 106, 109, 135–36, 145, 148, 159, 161–63, 175(e) & (i),

6   183(h), 185–86.

7        Even under Rule 8, "plaintiffs cannot offer allegations that are merely consistent with their

8   favored explanation" if they do not "tend to exclude a plausible and innocuous alternative

9   explanation." *Eclectic Prop. E. LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996, 998 (9th Cir.

10  2014); *see also Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 596–97 (1986)

11  (If defendant "had no rational economic motive to conspire, and if [its] conduct is consistent with

12  other, equally plausible explanations, the conduct does not give rise to an inference of conspiracy.").

13  Allegations "consistent with conspiracy, but just as much in line with a wide swath of rational and

14  competitive business strategy" do not state a conspiracy claim. *Twombly*, 550 U.S. at 554.

15       Here, setting aside the Complaint's heavy doses of bluster, speculation about motives, and

16  pontificating, the *facts* about Blue Bottle Plaintiffs allege are nothing more than "conduct consistent

17  with ordinary business conduct and an ordinary business purpose." *In re: Jamster Mktg. Litig.*, 2009

18  WL 1456632, at *5 (S.D. Cal. May 22, 2009); *see also Comm. To Protect our Agric. Water v.*

19  *Occidental Oil and Gas Corp.*, 235 F. Supp. 3d 1132, 1175 (E.D. Cal 2017) ("the FAC pleads no

20  specific facts indicating that [Defendant] acted with an objective unrelated to ordinary buisness . . .

21  aims."). The allegations merely reflect Blue Bottle's "exercise of its freedom to contract with

22  whomever it chose in order to sustain itself in the marketplace." *Klamath-Lake Pharm. Ass'n v.*

23  *Klamath Med. Serv. Bureau*, 701 F.2d 1276, 1292 (9th Cir. 1983); *see also United States v. E. I. du*

24  *Pont de Nemours & Co.*, 353 U.S. 586, 643 (1957); *United States v. Colgate & Co.*, 250 U.S. 300,

25  307 (1919). Therefore, "Plaintiffs' fraud theory is not plausible when considered in light of the

26  innocent explanation that" Blue Bottle was exercising its freedom to contract without "the necessary

27  specific intent to defraud Plaintiffs." *Eclectic Prop.*, 751 F.3d at 1000.

28       Indeed, some of conclusory and information and belief assertions are so irrational and

15

**DEFENDANT BLUE BOTTLE COFFEE, INC.'S MOTION TO DISMISS THE COMPLAINT**
**CASE NO. 4:18-cv-02539-HSG**

inconsistent that they further illustrate just how wildly implausible Plaintiffs' conspiracy theory is. For instance, the Complaint alleges (on information and belief) that Blue Bottle was specifically informed about Mokhtar's scheme to steal Mocha Mill's coffee and defraud the Individual Plaintiffs, *see* ¶ 150, while at the same time it suggests (not on information and belief) that Blue Bottle was unaware of even the existence of the Individual Plaintiffs, *see* ¶ 98. It claims (on information and belief) that Blue Bottle agreed to delay and did affirmatively delay the "launch and sale" of the 390 kilograms of coffee it purchased from Port of Mokha for "several months," *see* ¶ 164, but admits (not on information and belief) that Blue Bottle bought the coffee from Port of Mocha on May 17, 2016, and began selling it at retail on June 7, 2016, just three weeks later, *see* ¶¶ 183(h) & (k). It alleges (on information and belief) that Blue Bottle entered into "special exclusivity agreements" with Port of Mokha, *see* ¶¶ 8, 151(a), but also admits (not on information and belief) that Port of Mokha sold the majority of its 862 kilograms of coffee to Blue Bottle's competitors, including Coutume Café, *see* ¶¶ 183(h) & (i). And it absurdly declares that Blue Bottle's purchase of $52,650 worth of "specialty Yemeni coffee" from Port of Mokha "played a material role" in Nestlé's decision—more than a year later—to invest $425 million in Blue Bottle. ¶¶ 9, 155, 191. The Court can "consider any internal discrepancies or factual conflicts it finds within the Complaint that undermine its plausibility." *Hermosillo v. Caliber Home Loans Inc.*, 2017 WL 2653039, at *2 (D. Ariz. June 6, 2017).

In any event, the Complaint does not actually allege (1) that Blue Bottle agreed someone would commit two or more predicate acts, or (2) that Blue Bottle agreed those acts would be committed as part of a pattern, or (3) that Blue Bottle was even "aware of the essential nature and scope" of the alleged enterprise. *See Howard*, 208 F.3d at 75. Indeed, there are no allegations at all (conclusory or otherwise) that Blue Bottle knew of Mokhtar's alleged extortion, embezzlement, spoliation of evidence, money laundering, and use of straw buyers to induce Mocha Mill's sale. The only allegation of knowledge is a conclusory information and belief claim that Mokhtar told Blue Bottle about the Port of Mokha Enterprise, "his plan to leave Mocha Mill, as well as the scheme to fraudulently obtain Mocha Mill's coffee beans and usurp its business." ¶ 149. Therefore, Plaintiffs' 18 U.S.C. § 1962(d) claim against Blue Bottle should be dismissed.

16

**III.    The Complaint's State Law Claims Should Be Dismissed.**

**A.    The Court Can Decline Supplemental Jurisdiction over Plaintiff's State Law Claims.**

This should never have been a federal case. Plaintiffs' meritless RICO claims are the only basis for this Court's original jurisdiction. *See* 28 U.S.C. § 1331. The remaining nine claims alleged against Blue Bottle are brought under state law. Because the parties are not completely diverse, *see* ¶¶ 24–47, the Court is free to decline supplemental jurisdiction under 28 U.S.C. § 1367(c)(3). *See Figures v. Szabo*, 2015 WL 2062709, at *3 (N.D. Cal. May 4, 2015) (dismissing pendant state law claims under 28 U.S.C. § 1367(c)(3) after dismissing RICO claim under Rule 12(b)(6)).

**B.    At Minimum, Plaintiffs Should Be Required to Re-Plead their State Law Claims to Give Adequate Notice.**

Plaintiffs' remaining claims employ an impermissible "shotgun pleading" tactic that makes it impossible to know what facts, under what theory, Plaintiffs contend satisfy the elements of each claim as to any particular Defendant. Indeed, Plaintiffs' state law tort claims do not allege any particular facts. They instead "reallege and incorporate by reference, in this claim for relief, each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein." *See*, ¶¶ 240, 245, 252, 258, 267, 275, 290, 298. Each claim then includes some iteration of a generalized charge: "Defendants actively engaged in, participated in, agreed to, aided and abetted, conspired in, and/or furthered" the tort committed. ¶¶ 242, 247, 254, 260, 269, 277, 292, 298. Each claim then makes a series of broad-brush conclusory assertions against "Defendants," and sets out "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678. Indeed, other than appearing in lists of "Defendants," there are essentially no allegations specific to Blue Bottle. *See* ¶¶ 249, 263, 264.

Plaintiffs plainly have engaged in improper "shotgun" pleading. "When a party indiscriminately incorporates assertions from one count to another, for example, by incorporating all facts or defenses from all previous counts into each successive count, it can result in an unnecessarily long and confusing pleading and counts that contain irrelevant facts or defenses, and it can prevent the opposing party from reasonably being able to prepare a response or simply make the burden of doing so more difficult. When faced with what some judges have called 'shotgun

17

pleading,' a district court often will order the party to replead and state his claims or defenses more clearly." 5A Charles Wright, *et al.*, *Federal Practice & Procedure* § 1326 & n.8 (2018 online ed.) (collecting cases in footnote); *see also Hughey v. Drummond*, 2014 WL 5797365, at *5 (E.D. Cal. Nov. 6, 2014) ("Shotgun pleading occurs when one party pleads that multiple parties did an act, without identifying which party did what specifically; or when one party pleads multiple claims, and does not identify which specific facts are allocated to which claim."). At minimum, the Court should dismiss with leave and require Plaintiff to allege a "clear statement about what [each Defendant] allegedly did wrong" so that it can "make informed responses" to the allegations. *Sollberger v. Wachovia Secs., LLC*, 2010 WL 2674456, at *4 (C.D. Cal. June 30, 2010).

### C.    The State Law Claims Should Be Dismissed Under Rule 12(b)(6).

#### 1.    The Fourth, Fifth, and Sixth Causes of Action for Deceit, Concealment, and Negligent Misrepresentation Do Not State a Claim Against Blue Bottle.[15]

Plaintiffs allege three different forms of fraud (deceit, negligent misrepresentation, and concealment) each under three different theories of liability (direct, conspiracy, and aiding and abetting). The elements fraud are: "(a) misrepresentation (false representation, concealment, or nondisclosure ); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." *Engalla v. Permanente Med. Grp., Inc.*, 15 Cal. 4th 951, 974 (1997). A claim for negligent misrepresentation has the same elements, except that the defendant is liable only if it "lacked reasonable grounds for believing the [misrepresentations] to be true." *B.L.M. v. Sabo & Deitsch*, 55 Cal. App. 4th 823, 835 (1997). For a concealment-based claim, the defendant must have a duty to disclose the concealed or suppressed material fact. *Boschma v. Home Loan Ctr., Inc.*, 198 Cal. App. 4th 230, 248 (2011)).

Civil conspiracy requires the formation of a group of two or more persons who have agreed to a common plan or design to commit a tortious act. *See Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 510–11 (1994). Each coconspirator must be legally capable of committing the tort, *i.e.*, that he or she must owe the same duty to plaintiff as the defendant who

---

[15]    Claims for fraud and negligent misrepresentation are subject to Rule 9(b). *Glen Holly Entm't, Inc. v. Tektronix, Inc.*, 100 F. Supp. 2d 1086, 1093 (C.D. Cal. 1999).

1    actually commits the tort. *Id.* at 511. "The conspiring defendants must also have actual knowledge

2    that a tort is planned and concur in the tortious scheme with knowledge of its unlawful purpose," and

3    "[k]nowledge of the planned tort must be combined with intent to aid in its commission." *Kidron v.*

4    *Movie Acquisition Corp.*, 40 Cal. App. 4th 1571, 1582 (1995). Civil conspiracy claims must allege

5    (1) the formation and operations of the conspiracy, (2) the wrongful act or acts done pursuant

6    thereto, and (3) damages results from such conduct or acts. *See Benson v. JPMorgan Chase Bank,*

7    *N.A.*, 2010 WL 1526394, at *6 (N.D. Cal. Apr. 15, 2010).

8          Civil aiding and abetting claims require that the defendant knowingly (1) substantially

9    assisted or encouraged another to breach a duty, or (2) substantially assisted another's tort through

10   an independent tortious act. *See Casey v. U.S. Bank Nat'l Ass'n*, 127 Cal. App. 4th 1138, 1144

11   (2005). "Mere knowledge that a tort is being committed and the failure to prevent it does not

12   constitute aiding and abetting. . . . As a general rule, one owes no duty to control the conduct of

13   another." *Fiol v. Doellstedt*, 50 Cal. App. 4th 1318, 1325 (1996) (citations omitted).

14         The Complaint does not allege facts sufficient to establish any form of fraud or negligent

15   misrepresentation under either a direct or vicarious theory. First, it simply concludes that Defendants

16   in general "actively engaged in, participated in, agreed to, aided and abetted, conspired in, and/or

17   furthered a scheme involving" fraud and deceit, fraudulent concealment, and negligent

18   misrepresentation. ¶¶ 242, 247, 254. Plaintiffs' failure to distinguish their allegations against each

19   Defendant should alone result in dismissal of these claims. *See Swartz*, 476 F.3d at 764–65.

20         Second, the Complaint does not allege that Blue Bottle made any misrepresentation, let alone

21   that Plaintiffs justifiably relied on any misrepresentation by Blue Bottle. Indeed, it states that

22   Mokhtar was the only one in contact with Blue Bottle (not Plaintiffs) and accuses Mokhtar and

23   others (but not Blue Bottle) of telling Plaintiffs that "Blue Bottle and other high-end distributors had

24   lost interest." ¶¶ 98, 173(e) & (g), 175, 177. It does not even aver in conclusory fashion that Blue

25   Bottle knew of, agreed with, intended to aid, or assisted any of the misrepresentations allegedly

26   made by Mokhtar and others to Plaintiffs. *See* ¶¶ 142, 156–157, 164 (alleging only that Blue Bottle

27   agreed to delay its purchase of the coffee at issue). Therefore, Plaintiffs claims for deceit and

28   negligent misrepresentation, whether under a direct or vicarious theory of liability, must fail.

Third, the complaint alleges no facts that give rise to any duty of care or a duty on the part of Blue Bottle to disclose any material fact or omission to Plaintiffs. *See LiMandri v. Judkins*, 52 Cal. App. 4th 326, 336 (1997). Absent that, there can neither be liability based on negligence or an omission, nor any claim for conspiracy. *See Applied Equip.*, 7 Cal. 4th at 511; *see also Ngoc Nguyen v. Wells Fargo Bank, N.A.*, 749 F. Supp. 2d 1022, 1036 (N.D. Cal. 2010) (finding that where plaintiff failed to alleged a duty to disclose, his conspiracy to defraud must be dismissed). Similarly, although an aider and abettor can be liable in certain circumstances if his assistance "consists of mere silence or inaction," that occurs "only when a duty to disclose has arisen." *Strong v. France*, 474 F.2d 747, 752 (9th Cir. 1973). Because no duty to disclose is alleged, Plaintiffs' concealment claim, whether under a direct or vicarious theory of liability, must fail. The Fourth, Fifth, and Sixth Causes of Action should be dismissed.

### 2.     The Seventh Cause of Action for Breach of Fiduciary Duty Does Not State a Claim Against Blue Bottle.[16]

The elements of breach of fiduciary duty are: (1) the existence of a fiduciary relationship; (2) a breach of that fiduciary relationship; and (3) damages proximately caused by the breach. *Pierce v. Lyman*, 1 Cal. App. 4th 1093, 1101 (1991).

The Complaint states that only Mokhtar and Ezell, and not Blue Bottle, had a fiduciary relationship with Plaintiffs, thereby negating the first element of a breach of fiduciary duty claim. *See* ¶¶ 261–62. The failure to allege any fiduciary duty means Blue Bottle cannot be liable under either a direct or conspiracy theory. *See Applied Equip.*, 7 Cal. 4th at 511; *1-800 Contacts, Inc. v. Steinberg*, 107 Cal. App. 4th 568, 590 (2003).

As to aiding and abetting, the Complaint states without any factual basis that Blue Bottle "knew of Mokhtar and Ezell's fiduciary relationships and positions of trust at Mocha Mill" and that Mokhtar acted unlawfully "with the knowledge and assistance of Blue Bottle." ¶¶ 263–64. But the Complaint does not plausibly allege that Blue Bottle was aware that Mokhtar was in breach of his duties to Mocha Mill. Indeed, there is not a single non-conclusory or information-and-belief

---

[16]     As the breach of fiduciary duty claim is based on "acts of fraud," ¶ 264, it is subject to Rule 9(b). *See In re Atmel Corp. Deriv. Litig.*, 2008 WL 2561957, at *11-12 (N.D. Cal. June 25, 2008).

**DEFENDANT BLUE BOTTLE COFFEE, INC.'S MOTION TO DISMISS THE COMPLAINT**
**CASE NO. 4:18-cv-02539-HSG**

allegation that Blue Bottle was even aware that Mocha Mill was anything but a one-man operation, and all of the specific facts alleged suggest that was the case. *See, e.g.*, ¶ 98 (Blue Bottle had only a relationship with Mokhtar); ¶ 106 (same); ¶¶ 127, 130, 143, 144, 155. One cannot owe or breach a fiduciary duty to oneself. Nor have Plaintiffs stated how Blue Bottle substantially assisted any such breach. *See See Gottex Fund Mgmt. Ltd. v. MKA Real Estate Opportunity Fund I, LLC*, 2013 WL 12137878, at \*\*4–5 (C.D. Cal. Dec. 23, 2013) ("mere knowledge that a tort is being committed and the failure to prevent it does not constitute aiding and abetting. As a general rule, one owes no duty to control the conduct of another."). The Seventh Cause of Action should be dismissed.

### 3. The Eighth and Ninth Causes of Action for Intentional and Negligent Interference with Prospective Economic Relations Do Not State a Claim Against Blue Bottle.[17]

A claim for intentional interference with prospective economic relations requires: (1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff, (2) defendant's knowledge of the relationship, (3) intentional acts on the part of the defendant designed to disrupt the relationship, (4) actual disruption of the relationship, and (5) economic harm to the plaintiff proximately caused by the defendant's wrongful acts. *See Youst v. Longo*, 43 Cal. 3d 64, 71 n.6 (1987). Defendant's conduct must be "wrongful by some legal measure other than the fact of interference itself." *Della Penna v. Toyota Motor Sales, USA, Inc.*, 11 Cal. 4th 376, 393 (1995). It must also fall outside the privilege of free competition. *See PMC, Inc. v. Saban Entm't, Inc.*, 45 Cal. App. 4th 579 (1996), *disapproved of on other grounds by Korea Supply Co. v. Lockheed Martin Corp.* 29 Cal. 4th 1134, 1159 n.11 (2003).

A negligent interference with prospective economic relations claim replaces the third element with the defendant's negligent acts, *N. Am. Chem. Co. v. Superior Court*, 59 Cal. App. 4th 764, 786 (1997), and "arises only when the defendant owes the plaintiff a duty of care." *LiMandri*, 52 Cal. App. 4th at 348. Even for negligent interference, the defendant's conduct must still be independently wrongful. *See Venhaus v. Shultz*, 155 Cal. App. 4th 1072, 1079–80 (2007).

---

[17]   Plaintiffs' claims for intentional and negligent interference with prospective economic relationships, which are based on "acts of fraud," ¶¶ 269, 271, 277, 281, are subject to Rule 9(b). *See BioResource, Inc. v. U.S. PharmaCo Distrib., Ltd.*, 2010 WL 3853025, at \*3 (N.D. Cal. Sept. 29, 2010).

1    The Complaint states that Mokhtar and others "conspired with Defendant Blue Bottle to

2    mislead Plaintiffs into believing high-end distributors and retailers (Blue Bottle among them) were

3    no longer interested in buying Mocha Mill coffee." ¶ 140. But other than Blue Bottle itself, which

4    legally cannot interfere with its own relations, *see Applied Equip.*, 7 Cal. 4th at 517–18; *Kasparian*

5    *v. Cty. of L.A.*, 38 Cal. App. 4th 242, 266 (1995), the Complaint does not name—or even state any

6    facts supporting that Mocha Mill *had*—any distributors and retailers with whom it had an economic

7    relationship, much less that Blue Bottle knew or should have known about them. *See R Power*

8    *Biofuels, LLC v. Chemex LLC*, 2016 WL 6663002, at *16–17 (N.D. Cal. Nov. 11, 2016) (alleging

9    relationships with "major consumers of biodiesel," without naming specific companies or how many

10   there were, was "insufficient to sustain the claims alleging an interference with prospective

11   economic advantage"). Conclusory statements that Mocha Mill had relationships with "various

12   distributors and retailers" and Blue Bottle knew that based on its relationship with Mokhtar and

13   "insight into the specialty coffee industry," *see* ¶¶ 271–72, 278–79, 281, are not enough to allege the

14   first or second elements of a claim for interference with prospective economic relations.

15   Even if Plaintiffs did have the necessary relationships and Blue Bottle knew of them, the

16   Complaint also fails to address how Blue Bottle intentionally or negligently interfered with any of

17   those relationships. Indeed, the intent allegations hurled at Blue Bottle are limited to its own non-

18   actionable economic relationship with Plaintiffs. *See* ¶ 156 (alleging only that Blue Bottle delayed its

19   own purchase, marketing campaign, and launch of the coffee).

20   Specific to the negligent interference clam, Plaintiffs do not address what duty of care Blue

21   Bottle owed to Plaintiffs or breached as a result of its conduct. *See Stolz v. Wong Commc'ns Ltd.*

22   *P'ship*, 25 Cal. App. 4th 1811, 1825 (1994). And to the extent Blue Bottle's "delay" had some effect

23   on Plaintiffs' expectancy with others, the Complaint does not show how that was independently

24   wrongful. *See Della Penna*, 11 Cal. 4th at 393; *Venhaus*, 155 Cal. App. 4th at 1079–80.

25   Finally, the Complaint contains no factual allegations that Blue Bottle knew Mokhtar

26   intended to or did interfere with Plaintiffs' economic relationships with anyone other than Blue

27   Bottle itself, or where, when, and how (if at all) Blue Bottle substantially assisted or otherwise

28   encouraged any efforts to do so. The Eighth and Ninth Causes of Action should be dismissed.

4.      **The Eleventh Cause of Action for Conversion Does Not State a Claim against Blue Bottle.[18]**

The elements of conversion are: (1) plaintiff owned, possessed, or had the right to possess property, (2) defendant intentionally disposed of the property in a manner inconsistent with the plaintiff's rights, and (3) damages. *Lee v. Hanley*, 61 Cal. 4th 1225, 1240 (2015).

The Complaint does not allege facts sufficient to establish a conversion claim against Blue Bottle. It simply and improperly concludes that Defendants "actively engaged in, participated in, agreed to, aided and abetted, conspired in, and/or furthered a scheme involving conversion." ¶ 292; *see also Swartz*, 476 F.3d at 764–65. Nor does it make clear that the coffee Blue Bottle purchased from Port of Mokha is even at issue. In fact, it states only that "Port of Mokha continues to exercise dominion and control over a business that rightfully belongs to Mocha Mill," with no mention of Blue Bottle or the coffee it purchased. ¶ 294.

First, California law does not recognize conversion of completely intangible property like business goodwill. *See Thrifty-Tel, Inc. v. Bezenek*, 46 Cal. App. 4th 1559, 1565 (1996); *Olschewski v. Hudson*, 87 Cal. App. 282, 286 (1927); *Boon Rawd Trading Int'l Co. v. Paleewong Trading Co.*, 688 F. Supp. 2d 940, 955 (N.D. Cal. 2010) (goodwill not subject to conversion); *Second Measure, Inc. v. Kim*, 143 F. Supp. 3d 961, 981 (N.D. Cal. 2015).

Even if Plaintiffs claim is based on the conversion of the coffee, the Complaint has not alleged sufficient facts to justify an inference that Blue Bottle was not a bona fide purchaser of the coffee from Port of Mokha, who bought "without notice of the fraud" and "may not be held for conversion (though the original converter may be)." *Regent All. Ltd. v. Rabizadeh*, 231 Cal. App. 4th 1177, 1183 (2014). The Eleventh Cause of Action should be dismissed.

5.      **The Twelfth Cause of Action for Unjust Enrichment Does Not State a Claim Against Blue Bottle.[19]**

Although "unjust enrichment" is more of a remedy than a cause of action, "when a plaintiff

---

[18]    The conversion claim is based on "deceit and other wrongful methods," ¶ 292, and is thus subject to Rule 9(b). *See Lazar v. Grant*, 2017 WL 4805067, at *3 (C.D. Cal. June 22, 2017).

[19]    The unjust enrichment claim is based on "deceit and other wrongful methods," ¶ 249, and is thus subject to Rule 9(b). *See In re Arris Cable Modem Consumer Litig.*, 2018 WL 288085, at *9-10 (N.D. Cal. Jan. 4, 2018).

23

alleges unjust enrichment, a court may construe the cause of actions as a quasi-contract claim seeking restitution." *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015) (quotation omitted). "To allege unjust enrichment as an independent cause of action, a plaintiff must show that the defendant received and unjustly retained a benefit at the plaintiff's expense." *ESG Capital Partners, LP v. Stratos*, 828 F.3d 1023, 1038–39 (9th Cir. 2016). But "there is no right to equitable relief or an equitable remedy where there is an adequate remedy at law." *Duttweiler v. Triumph Motorcycles (Am.) Ltd.*, 2015 WL 4941780, at *8 (N.D. Cal. Aug. 19, 2015).

The Complaint, which lumps all Defendants together, does not allege facts sufficient to establish a restitution claim against Blue Bottle. *See* ¶¶ 249–50; *Swartz*, 476 F.3d at 764–65. It does not identify any benefit that Blue Bottle unjustly received at Plaintiffs' expense, that equity requires Blue Bottle to return. *See First Nationwide Savings v. Perry*, 11 Cal. App. 4th 1657, 1663 (1992) ("The person receiving the benefit is required to make restitution only if the circumstances are such that, as between the two individuals, it is *unjust* for the person to retain it."). And as with the conversion claim, Plaintiffs—who allege that Blue Bottle paid more than sixty dollars per pound for coffee at wholesale, *see* ¶183(h)—have not alleged sufficient facts to support a reasonable inference that Blue Bottle was not a bona fide purchaser. The Twelfth Cause of Action should be dismissed.

### 6.   The Thirteenth Cause of Action for Violating Cal. Bus. & Prof. Code § 17200 Does Not State a Claim against Blue Bottle.[20]

California's Unfair Competition Law ("UCL") prohibits "any unlawful, unfair[,] or fraudulent business act or practice . . . ." Cal. Bus. & Prof. Code § 17200. "A UCL action is equitable in nature; damages cannot be recovered." *Korea Supply*, 29 Cal. 4th at 1144. Under the UCL, "[p]revailing plaintiffs are generally limited to injunctive relief and restitution." *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 179 (1999). Because neither of those remedies is available here, as a matter of law, their claim must be dismissed.

As to an injunction, the Complaint alleges a one-time scheme to deprive Mocha Mill of seasonally produced, perishable agricultural goods. Because there is no plausible basis to believe

---

[20]   The UCL claim is based on fraud and misrepresentation allegations, *see* ¶¶ 303-06, and is thus subject to Rule 9(b). *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124-27 (9th Cir. 2009).

1   that there is "any real or immediate threat that the plaintiff will be wronged again," there is no

2   Article III standing to obtain an injunction in federal court. *City of L.A. v. Lyons*, 461 U.S. 95, 111

3   (1983); *see also Prescott v. Rady Children's Hosp.-San Diego*, 265 F. Supp. 3d 1090, 1103 n.7 (S.D.

4   Cal. 2017) (*Lyons* applies to UCL claims brought in federal court).

5         And as to restitution, the UCL does not recognize non-restitutionary disgorgement as a

6   remedy. *See Korea Supply*, 29 Cal. 4th at 1152. UCL restitution reaches only money that a defendant

7   has obtained from a plaintiff by violating the UCL or money or property in which a plaintiff has a

8   presently vested property interest. *Id.* Since Plaintiffs do not allege that they paid or gave anything

9   directly to Blue Bottle, they do not have an actionable claim for UCL restitution. And in the absence

10  of any available remedy, their UCL claim must be dismissed. *Id.* (affirming demurrer for failure to

11  state a claim due to lack of remedy).

12        In any event, the Complaint also does not set out the requisite elements of a UCL claim. The

13  lack of any false or misleading statement by Blue Bottle or reliance by Plaintiffs means there is no

14  "fraudulent" violation. *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 326 (2011). The lack of

15  any allegation that Blue Bottle violated some other law precludes an "unlawfulness" violation. *See*

16  *generally Cel-Tech*, 20 Cal. 4th at 180. And the lack of any alleged transgression of the antitrust

17  laws, or standards tethered to a legislatively declared policy, precludes an "unfair" violation. *See id.*

18  at 187–88.

19                                  <u>**CONCLUSION**</u>

20        For the foregoing reasons, Plaintiffs' claims against Blue Bottle should be dismissed.

21

22

23

24  Dated: July 27, 2018                KIRKLAND & ELLIS LLP

25                                  ___/s/ Michael Shipley___
                                        Michael Shipley

26

27

28

**DEFENDANT BLUE BOTTLE COFFEE, INC.'S MOTION TO DISMISS THE COMPLAINT
CASE NO. 4:18-cv-02539-HSG**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

KIRKLAND & ELLIS LLP

Michael Shipley (SBN 233674)
Edward Hillenbrand (SBN 310872)
KIRKLAND & ELLIS LLP
333 South Hope Street, Suite 2900
Los Angeles, California 90071
Telephone:     (213) 680-8400
E-Mail:          michael.shipley@kirkland.com
                    edward.hillenbrand@kirkland.com

*Attorneys for Blue Bottle Coffee, Inc.*

**DEFENDANT BLUE BOTTLE COFFEE, INC.'S MOTION TO DISMISS THE COMPLAINT
CASE NO. 4:18-cv-02539-HSG**