FRANK BUSCH (258288)
**KERR & WAGSTAFFE LLP**
101 Mission Street, 18th Floor
San Francisco, CA 94105-1727
Telephone: (415) 371-8500
Fax: (415) 371-0500
Email: busch@kerrwagstaffe.com

Attorneys for Defendants
METRA COMPUTER GROUP FZCO and
T&H COMPUTERS, INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

MOCHA MILL, INC., MONK OF MOCHA
SPECIALTY COFFEE PRODUCTION AND
EXPORT, INC., IBRAHIM A. ALAELI,
YASIR H. KHANSHALI, and ADNAN G.
AWNALLAH,

        Plaintiffs,

v.

PORT OF MOKHA, INC., PORT OF MOKHA
LLC, MOKHA FOUNATION, BLUE BOTTLE
COFFEE, INC., METRA COMPUTER
GROUP FZCO, T&H COMPUTERS, INC.,
MOKHTAR F. ALKHANSHALI, and
IBRAHIM AHMAD IBRAHIM,

        Defendants.

Case No. 4:18-cv-02539-HSG

**REPLY IN SUPPORT OF MOTION TO
DISMISS PURSUANT TO FRCP 12(b)**

DATE: September 27, 2018
TIME: 2:00 p.m.
COURTROOM: 2

TRIAL: [None]

KERR
&
WAGSTAFFE
LLP

# TABLE OF CONTENTS

*Page*

I.   INTRODUCTION ................................................................................. 1

II.  PLAINTIFFS FAIL TO STATE A CLAIM AGAINST METRA OR T&H .................. 1

    A.   Plaintiffs have Failed to Allege A RICO Conspiracy ............................... 2

        1.   Plaintiffs fail to allege any RICO violation ................................. 2

        2.   Plaintiffs do not allege a Movant agreed to commit two predicate acts ..... 2

        3.   Plaintiffs do not allege Movants agreed to commit a substantive violation 5

    B.   Plaintiffs have Failed to Adequately Allege Follow-on Claims ........................... 6

        1.   Failure to Allege Fraud with Particularity ................................. 6

        2.   Failure to Allege Conspiracy ................................................ 8

        3.   Failure to Allege Aiding and Abetting ..................................... 8

        4.   Failure to allege specific state-law claims ................................. 8

III. THIS COURT LACKS PERSONAL JURISDICTION OVER METRA ...................... 9

    A.   Legal Standard .................................................................... 9

    B.   Metra is Not Subject to General Jurisdiction ........................................ 10

    C.   Metra is not Subject to Specific Jurisdiction ........................................ 10

        1.   Plaintiffs Cannot Impute Other Contacts to Metra ................................. 10

        2.   Plaintiffs Cannot Prove Purposeful Direction ................................. 11

        3.   Plaintiffs Cannot Prove Forum-Related Conduct ................................. 11

        4.   Personal Jurisdiction over Metra would be unreasonable ........................ 12

    D.   No Discovery is Warranted ........................................................ 13

IV.  PLAINTIFFS FAILED TO PROPERLY SERVE METRA ................................ 14

V.   CONCLUSION .................................................................................. 15

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# **<u>TABLE OF AUTHORITIES</u>**

*Page*

**Cases**

*Apparel Art Int'l, Inc. v. Jacobson*,
  967 F.2d 720 (1st Cir. 1992)..................................................................................... 3

*Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*,
  7 Cal. 4th 503 (1994) ............................................................................................... 8

*Asahi Metal Indus. Co. v. Superior Court of Cal.*,
  480 U.S. 102 (1987).................................................................................................. 13

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).................................................................................................. 2

*Attia v. Google LLC*, No. 17-CV-06037-BLF,
  2018 WL 2971049 (N.D. Cal. June 13, 2018) ......................................................... 3

*Butcher's Union Local No. 498, United Food & Commercial Workers v. SDC Inv., Inc.*,
  788 F.2d 535 (9th Cir. 1986) ................................................................................... 10

*Church v. Consolidated Freightways, Inc.*, No. C-90-2290 DLJ,
  1992 U.S. Dist. LEXIS 18234 (N.D. Cal. Sept. 15, 1992) ....................................... 13

*CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066 (9th Cir. 2011)....................... 11

*Core-Vent Corp. v. Nobel Indus. AB*,
  11 F.3d 1482 (9th Cir. 1993) ................................................................................... 12

*Doe v. Unocal Corp.*,
  248 F.3d 915 (9th Cir. 2001) ................................................................................... 12

*Dole Food Co. v. Watts*,
  303 F.3d 1104 (9th Cir. 2002) ................................................................................. 13

*E.g. Earl W. Schott, Inc. v. Kalar*,
  20 Cal. App. 4th 943 (1993) .................................................................................... 15

*Edwards v. Marin Park, Inc.*,
  356 F.3d 1058 (9th Cir. 2004) .......................................................................... 3, 4, 5

*Eller v. EquiTrust Life Ins. Co.*,
  778 F.3d 1089 (9th Cir. 2015) ................................................................................. 4

*Getz v. Boeing Co.*,
  654 F.3d 852 (9th Cir. 2011) ................................................................................... 13

*H. J. Inc. v. Nw. Bell Tel. Co.*,
  492 U.S. 229 (1989)................................................................................................. 5

*Hanson v. Denckla*,
  357 U.S. 235 (1958)................................................................................................. 11

KERR
&
WAGSTAFFE
LLP

*Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*,
   328 F.3d 1122 (9th Cir. 2003) ................................................................................. 10

*Howard v. Am. Online, Inc.*,
   208 F.3d 741 (9th Cir. 2000) ............................................................................... 2, 5

*Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist.*,
   940 F.2d 397 (9th Cir. 1991) ............................................................................... 3, 4

*LiMandri v. Judkins*,
   52 Cal. App. 4th 326 (1997) ..................................................................................... 9

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986) .................................................................................................. 2

*Menken v. Emm*,
   503 F.3d 1050 (9th Cir. 2007) ................................................................................ 12

*Mission Trading Co. v. Lewis*, No. 16-cv-01110-JST,
   2016 U.S. Dist. LEXIS 157280 (N.D. Cal. Nov. 14, 2016) ................................... 13

*Monkton Ins. Servs. v. Ritter*,
   768 F.3d 429 (5th Cir. 2014) .................................................................................. 13

*Pebble Beach Co. v. Caddy*,
   453 F.3d 1151 (9th Cir. 2006) ................................................................................ 13

*Picot v. Weston*,
   780 F.3d 1206 (9th Cir. 2015) ................................................................................ 10

*Reynolds v. Cty. of San Diego*,
   84 F.3d 1162 (9th Cir. 1996) .................................................................................... 6

*Schwarzenegger v. Fred Martin Motor Co.*,
   374 F.3d 797 (9th Cir. 2004) .................................................................................. 11

*Sever v. Alaska Pulp Corp.*,
   978 F.2d 1529 (9th Cir. 1992) .................................................................................. 3

*Sinatra v. Nat'l Enquirer, Inc.*,
   854 F.2d 1191 (9th Cir. 1988) ................................................................................ 13

*Singman v. NBA Props. Inc.*, No. CV 13-05675 ABC (SHx),
   2014 U.S. Dist. LEXIS 182317 (C.D. Cal. Jan 17, 2014) ....................................... 9

*Sollberger v. Wachovia Secs., LLC*, No. SACV 09-0766 AG (ANx),
   2010 WL 2674456, at *4 (C.D. Cal. June 30, 2010) ............................................... 6

*Swartz v. KPMG LLP*,
   476 F.3d 756 (9th Cir. 2007) .................................................................................... 7

*Tatung Co. v. Shu Tze Hsu*,
   217 F. Supp. 3d 1138 (C.D. Cal. 2016) ................................................................... 8

*UMG Recordings, Inc. v. Global Eagle Entertainment, Inc.*,
   117 F. Supp. 3d 1092 (C.D. Cal. 2015) ................................................................... 7

iii

KERR
&
WAGSTAFFE
LLP

*United States v. Fernandez,*
  388 F.3d 1199 (9th Cir. 2004) ............................................................. 6

*United States v. Garlick,*
  240 F.3d 789 (9th Cir. 2001) ............................................................... 3

*Vess v. Ciba-Geigy Corp. USA,*
  317 F.3d 1097 (9th Cir. 2003) ............................................................. 6

*Walden v. Fiore,*
  571 U.S. 277 (2014) ............................................................................ 9

*Wash. Shoe Co. v. A-Z Sporting Goods Inc.,*
  704 F.3d 668 (9th Cir. 2012). ........................................................... 11

*Wisdom v. First Midwest Bank,*
  167 F.3d 402 (8th Cir. 1999) ...................................................... 3, 4, 5

*Yamaha Motor Co., Ltd. v. Superior Court,* 174 Cal. App. 4th 264 (2009) ............................... 14

**Statutes**

28 U.S.C. § 1367(c)(3) ........................................................................ 6

Cal. Bus. & Prof. Code § 17910 ........................................................ 4

Cal. Code Civ. Proc. § 410.10 ......................................................... 10

Cal. Code Civ. Proc. § 416.40 ......................................................... 14

Cal. Corp. Code § 17701.02(j) ......................................................... 15

Cal. Corp. Code § 17701.13(b) ........................................................ 15

Cal. Corp. Code § 17701.16 (a) ....................................................... 15

Cal. Corp. Code § 17708.02(a) ........................................................ 15

Cal. Corp. Code § 2110 .................................................................... 14



KERR
—— & ——
WAGSTAFFE
LLP

## I.       INTRODUCTION

Despite using 129 pages on two complaints, and twenty-six pages in opposition, Plaintiffs have yet to identify a single concrete action taken by Defendant Metra Computer Group FZCO ("Metra").  To the contrary, in the one paragraph where Plaintiffs attempt to define "the actions Metra took" they identify: (1) an agreement to join the Enterprise; (2) an offer to "let the Enterprise use" T&H Computers, Inc. ("T&H") "as an instrumentality of the straw-buyer scheme"; and then four actions by T&H—through its manager Wael Fadel—purportedly "directed" by Metra.  Opp. at 18:3-13.  Plaintiffs also fail to adequately allege claims against T&H, as they fail to identify two predicate acts, relying instead on a $50,000 wire from T&H to Plaintiffs, a $51,000 wire from another defendant to T&H, and two or three emails, the text of which Plaintiffs continue to conceal.  Moreover, Plaintiffs concede these events related to only one transaction, and all occurred over the span of a couple months.

Plaintiffs attempt to spin these minimal allegations into a RICO claim, nine state-law claims (each apparently alleged directly, as conspiracy, and as aiding-and abetting yet collectively defended with only two pages of briefing and no authority), and as a basis to exert personal jurisdiction over Metra.  Plaintiffs do not, however, address the weight of authority making clear that the law requires much more to adequately allege any of these claims, each of which must be pled with particularity.  Plaintiffs do not even cite any authority suggesting that Metra, a foreign LLC, can be served through its California subsidiary.

All claims against Movants should be dismissed with prejudice.

## II.      PLAINTIFFS FAIL TO STATE A CLAIM AGAINST METRA OR T&H

Plaintiffs' opposition reinforces the point that their entire claim sounds in fraud and is governed by the heightened pleading standards of Rule 9.  Opp. at 2:13 ("The reason Metra and T&H cannot answer these questions is because it was all a *fraud*.").  They also make clear that Movants have no ongoing stake in Plaintiffs' business.  Opp. at 8 ("Defendants (particularly Port of Mokha and Blue Bottle) thrive on the labor and assets stolen in the RICO scheme."), 9 ("Metra and T&H never had any intention of keeping the coffee anyway").  Despite this, Plaintiffs ignore their obligation to plead with particularity and therefore fail to adequately allege

their claims against Movants.  To the contrary, they allege only that T&H participated in an

ordinary commercial transaction negotiated with Plaintiffs.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009) ("Where a complaint pleads facts that are 'merely consistent with' a defendant's liability,

it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'");

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 596-97 (1986) ("if

[defendant] had no rational economic motive to conspire, and if [its] conduct is consistent with

other, equally plausible explanations, the conduct does not give rise to an inference of

conspiracy").

### A.   PLAINTIFFS HAVE FAILED TO ALLEGE A RICO CONSPIRACY

The law is clear that to allege a RICO conspiracy under 18 U.S.C. § 1962(d), a plaintiff

must allege an underlying RICO violation.  A plaintiff also "must allege either an agreement that

is a substantive violation of RICO or that the defendants agreed to commit, or participated in, a

violation of two predicate offenses."  *Howard v. Am. Online, Inc.*, 208 F.3d 741, 751 (9th Cir.

2000).  Plaintiffs fail to satisfy the first requirement for reasons expressed in motions to dismiss

by other parties.  They do not argue Movants' agreement was a substantive violation of RICO.

They fail to allege that either Movant agreed to commit, or participated in, a violation of two

predicate offenses.  Their RICO claim should therefore be dismissed.

#### 1.   Plaintiffs fail to allege any RICO violation

Plaintiffs do not dispute that they must adequately allege a direct RICO violation to

prevail on a follow-on conspiracy claim.  Opp. at 10:26-11:2.  As set forth in the motions to

dismiss by defendants alleged to have directly violated RICO, which Movants incorporate here,

Plaintiffs have failed to do so.  Their RICO conspiracy claim must therefore be dismissed.

#### 2.   Plaintiffs do not allege a Movant agreed to commit two predicate acts

Plaintiffs represent that they have adequately alleged Movants' RICO liability under the

"two predicate offenses" prong because "Metra and T&H did in fact actually commit several

predicate acts themselves."  Opp. at 13.  But Plaintiffs have failed to allege anything with

particularity.  They also only alleged Movants' involvement in a single scheme against a single

victim, which constitutes only one predicate act.  *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529,

KERR
&
WAGSTAFFE
LLP

1535 (9th Cir. 1992).  Thus, where defendants are accused of conspiring to violate RICO by making repeated use of one misappropriated trade secret, plaintiffs fail to state a claim unless they can allege misappropriation of another trade secret.  *Attia v. Google LLC*, No. 17-CV-06037-BLF, 2018 WL 2971049, at *18 (N.D. Cal. June 13, 2018).  This is of critical importance, because any other reading would permit anyone able to allege any RICO predicate to loop in everyone peripherally involved in the events, so long as at least two emails, phone calls or other uses were made of wires.  Such an expansive view is, of course, "contrary to RICO's basic purpose."  *Apparel Art Int'l, Inc. v. Jacobson*, 967 F.2d 720, 722 (1st Cir. 1992) (Breyer, J.).

Plaintiffs entirely ignore this authority in opposition, instead describing Movants as "fail[ing] to make any actual arguments."  Opp. at 12.  The argument is simple and unrebutted: all the vaguely-alleged actions attributed to Movants constitute no more than one predicate act, and therefore fall short of the requirement that Plaintiffs allege two such acts.  Which is unsurprising, as Movants have not engaged in any racketeering conspiracy.

Plaintiffs also fail to satisfy Rule 9(b), as they allege no predicate acts with specificity.  To do so requires three things.  First, the writings must "contain misrepresentations themselves."  *Wisdom v. First Midwest Bank*, 167 F.3d 402, 407 (8th Cir. 1999).[1]  Second, Plaintiffs must allege the specific contents of each writing.  *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004).  Third, Plaintiffs must identify how each defendant was involved in the alleged predicate act.  *Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist.*, 940 F.2d 397, 405 (9th Cir. 1991) ("The Ninth Circuit has repeatedly insisted" that mail fraud predicates allege "the role of each defendant in each scheme"); *Bunnett & Co., Inc. v. Gearheart*, No. 17-CV-01475-RS, 2018 WL 1070298, at *5 (N.D. Cal. Feb. 27, 2018) (requiring that "each defendant is involved in at least two predicate acts.").  Rather than address these deficiencies, Plaintiffs merely assert that an insistence upon adequate pleading is to "lose the forest through the trees" or engage in "myopic

---

[1]    Plaintiffs cite a single criminal wire fraud case, with no RICO claim, for the proposition that acts of wire fraud can be prosecuted without containing a misrepresentation.  *United States v. Garlick*, 240 F.3d 789, 795 (9th Cir. 2001).  When assessing whether Plaintiffs have adequately alleged a RICO conspiracy, the Court should follow civil RICO authority, not criminal standalone wire fraud authority.

KERR
&
WAGSTAFFE
LLP

nitpicking." Opp. at 15. But if a Movant wrote something containing a misrepresentation, *Wisdom* and *Edwards* require that Plaintiffs quote or attach it and explain the misrepresentation. *Lancaster* and *Bunnett* require this be done separately for Metra and T&H. Plaintiffs have failed to satisfy these burdens.

In reviewing the FAC, Movants identified four potential predicate acts:

**First**, Plaintiffs claim that T&H's $50,000 wire is a predicate act because "the transfer of funds was pretextual in order to facilitate the sham purchase." Opp. at 14. But there is no dispute that $50,000 was really transferred to purchase Plaintiffs' coffee, or that Plaintiffs modified the terms of the deal after receiving the wire but before delivering coffee, so it was plainly not pretextual. The wire therefore fails the *Wisdom* test, particularly as Plaintiffs explicitly allege the wire was made by T&H rather than "T&H Imports." FAC ¶ 183(b) ("Mokhtar had T&H Computers wire $50,000 to Mocha Mill."). Plaintiffs also concede they fail to allege when the wire occurred. Opp. at 14 n. 3. Plaintiffs do not allege this supposed predicate act involves Metra.

**Second**, Plaintiffs say Fadel's May 2, 2016 email is a predicate act because Fadel "conveyed his phony interest in purchasing Mocha Mill's coffee beans." Opp. at 14. But Fadel allegedly **was** interested in buying the beans because T&H proceeded to do so. Nor would the use of a fictitious business name for the transaction be a misrepresentation. California law does not require registration of fictitious business names unless they are used regularly. Cal. Bus. & Prof. Code § 17910; FAC ¶ 181 (alleging T&H Imports' "only purpose" was its role in the Spring 2016 Conspiracy). Nor can a failure to disclose be the basis of a RICO fraudulent scheme when one party owes no duty to the other. *Eller v. EquiTrust Life Ins. Co.*, 778 F.3d 1089, 1092 (9th Cir. 2015). Plaintiffs also fail to allege a single word of the email or explain Metra's involvement. This act therefore cannot be a predicate at all.

**Third**, Plaintiffs say Fadel's May 4, 2016 email is a predicate because "he again pretended to be a representative of a bonafide foodstuff business interested in purchasing Mocha Mill's coffee beans." Opp. at 14. This allegation fails for the exact same reasons as the second potential predicate, and Plaintiffs ignore their pleading obligations just as thoroughly.

**Fourth**, Plaintiffs allege T&H's delivery of coffee to Port of Mokha is a predicate act "because Port of Mokha wired $51,000 right back to them."  Opp. at 15.  But surely Plaintiffs do not contend that Movants or Port of Mokha somehow defrauded the other by selling known quantities of coffee for a fixed price.  If Plaintiffs intend to imply this allegation satisfies *Wisdom*, or even harmed them in any way providing Plaintiffs standing, they utterly fail to explain themselves.

In addition to the four actions alleged to have been taken by T&H, Plaintiffs identify an additional email by Mokhtar they contend was fraudulent because he said that T&H Imports was "looking into expanding into coffee."  Opp. at 14.  This claimed predicate act cannot support a conspiracy claim because Plaintiffs have not alleged that either Movant agreed to commit, or participated in, the email.  The email also fails to satisfy *Wisdom* and *Edwards* for the same reason as the other emails.

Taken together two wires (from and to T&H), and three vaguely-alleged emails (two from T&H, one from Mokhtar) do not identify a single predicate act by Metra.  They do not particularly allege two predicate acts by T&H.  And even if Plaintiffs could do so, they would still never establish more than a single weeks-long scheme against a single victim, and thereby never meet their burden under *Howard*.

### 3.    Plaintiffs do not allege Movants agreed to commit a substantive violation

Plaintiffs do not contend that Movants agreed to commit a substantive RICO violation. Opp. at 12:2-5.  As such, they cannot prevail on their claim under this theory.[2]

---

[2]    Plaintiffs' Opposition does, however, spend two pages asserting that Movants' conduct was related to preceding actions of the Enterprise.  Opp. at 15-17.  Given Plaintiffs' concession that Movants are only liable for conspiracy if each committed two predicate acts, this dispute does not appear relevant to this motion.  Nevertheless, it is wrong.

For the Court to reach this question, it must find that the enterprise—which does not include Movants—was alleged to have violated RICO (including that its actions were related within the meaning of *H. J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 240 (1989).  The question then becomes whether Movants are alleged to have had anything to do with more than simply the Spring 2016 Conspiracy, as even Plaintiffs do not suggest the Spring 2016 Conspiracy would be a substantive RICO violation.  The Ninth Circuit is clear on this test, which includes a requirement that "[a] single conspiracy can only be demonstrated by proof that an overall agreement existed among the conspirators. Furthermore, the evidence must show that each

KERR
&
WAGSTAFFE
LLP

## B.   PLAINTIFFS HAVE FAILED TO ADEQUATELY ALLEGE FOLLOW-ON CLAIMS

Plaintiffs' defense of their state law claims is remarkable for what it does not say.  In two pages, Plaintiffs cite no authority, do not dispute their obligation to plead with specificity, do not explain comprehensively which of the direct, conspiracy, or aiding-and-abetting theories are alleged against Movants on which claims, or present any opposition to Movants' request the Court decline supplemental jurisdiction over these claims after dismissing the RICO conspiracy claim.  Opp. at 17-18.

The Court should spend no more time parsing out Plaintiffs' unclear and imprecise allegations than Plaintiffs did in opposing Metra's motion to dismiss them.  If the RICO claims are dismissed, the Court should decline supplemental jurisdiction.  28 U.S.C. § 1367(c)(3) (permitting a district court to "decline to exercise supplemental jurisdiction" after it "has dismissed all claims over which it has original jurisdiction."); *Reynolds v. Cty. of San Diego*, 84 F.3d 1162, 1171 (9th Cir. 1996).  If not, the Court should dismiss the state law claims as set forth below.  Movants should not be forced to defend against shotgun allegations where their conduct, the theory of liability, and the application of conduct to causes of action is entirely unspecified. *See Sollberger v. Wachovia Secs., LLC*, No. SACV 09-0766 AG (ANx), 2010 WL 2674456, at *4 (C.D. Cal. June 30, 2010).

### 1.   Failure to Allege Fraud with Particularity

Plaintiffs' opposition expressly acknowledges their claims all sound in fraud.  Opp. at 2:13 ("it was all a *fraud*"); *see also* FAC ¶¶ 242, 247, 254, 260, 269, 277, 292, 299, 303.  They must therefore be alleged with particularity.  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103-04 (9th Cir. 2003) ("In some cases, the plaintiff may allege a unified course of fraudulent conduct and rely entirely on that course of conduct as the basis of a claim. In that event, the

---

defendant knew, or had reason to know, that his benefits were probably dependent upon the success of the entire operation."  *United States v. Fernandez*, 388 F.3d 1199, 1226 (9th Cir. 2004).  Under this test, the overarching allegations of money laundering, market capture, or whatever else Plaintiffs believe the enterprise did to them is clearly not a single conspiracy with Movants' purchase and resale of coffee.  There is not even a suggestion, for example, that Movants had any agreement with Blue Bottle.  Nor does the $1,000 profit attributed to T&H depend in any way on the success of any other conduct or business practice alleged in this case.

KERR
&
WAGSTAFFE
LLP

claim is said to be 'grounded in fraud' or to 'sound in fraud,' and the pleading of that claim as a whole must satisfy the particularity requirement of Rule 9(b)."). But the FAC does not even specify Plaintiffs' legal theories, let alone "inform each defendant separately of the allegations surrounding his alleged participation in the fraud." *Swartz v. KPMG LLP*, 476 F.3d 756, 764-765 (9th Cir. 2007).

Plaintiffs' apparent attempt to cure this failing in opposition only highlights the problem. They do not apply a single fact to a single element of a single claim, but instead appear to defend "Plaintiffs' fraud-based state law claims (Claims Four through Six)," "Plaintiffs' state law conspiracy claims," "theories of liability against [Movants] as both direct actors as well as aiders-and-abettors," "Plaintiffs' negligence claims (Claims Six and Nine) . . . on a direct liability theory," and apparently the UCL claim. Opp. at 17-18. Does this mean that direct liability against Movants is only alleged on Claims Six and Nine? On claims Four through Six and Nine? On what basis, if any, do Plaintiffs contend that Movants are liable under other theories? These are simply not questions that should remain unanswered in any complaint, let alone a complaint that relies entirely upon allegations of a fraudulent course of conduct and is therefore governed by Rule 9(b).

Plaintiffs' claims against Metra fare even more poorly, as even Plaintiffs' attempt to describe Metra's conduct in opposition fails to identify a single action taken by Metra that harmed Plaintiffs. Opp. at 18. Instead, they support their claims only with actions taken by T&H, for which Metra cannot be sued. No Metra employee is alleged to have done anything, let alone made any misrepresentation upon which any Plaintiff relied (a defect Plaintiffs ignore, and would be apparent if they endeavored to meet their burden to meet each element of each claim against each defendant). *UMG Recordings, Inc. v. Global Eagle Entertainment, Inc.*, 117 F. Supp. 3d 1092, 1108 (C.D. Cal. 2015) (when suing a company, plaintiffs "must allege the names of the employees or agents who purportedly made the fraudulent representations or omissions, or at a minimum identify them by their titles and/or job responsibilities."). They also fail to allege fraud against T&H, because they do not allege that they relied upon any false statement by T&H or Fadel.

KERR
&
WAGSTAFFE
LLP

### 2.      Failure to Allege Conspiracy

State law conspiracy claims fail without "evidence of some participation or interest in the commission of the offense." *Tatung Co. v. Shu Tze Hsu*, 217 F. Supp. 3d 1138, 1183 (C.D. Cal. 2016).  Each coconspirator must be legally capable of committing the tort, *i.e.*, that he or she must owe the same duty to plaintiff as the defendant who actually commits the tort. *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 511 (1994).  Metra is not alleged to have participated or had an interest in any of the alleged conduct.  T&H is alleged, at most, to have participated in two coffee transactions with the interest of obtaining $1,000.  Plaintiffs do not explain how this limited interest supports any of the conspiracy claims they allege (whichever those actually are).  Neither Movant owes Plaintiffs any duty whatsoever.

Plaintiffs have therefore failed to state any claim for conspiracy.

### 3.      Failure to Allege Aiding and Abetting

The sum total of Plaintiffs' defense of their aiding and abetting claims against Movants appears to be, after listing certain conclusory factual contentions: "For these reasons, Metra's and T&H's arguments regarding their aider-and-abettor liability should likewise be rejected. The allegations of the complaint support theories of liability against these Defendants as both direct actors as well as aiders-and-abettors of the Enterprise's principal directors."  Opp. at 18. Plaintiffs do not address any of their failures to adequately allege aiding and abetting, as set forth in Movants' opening papers.  They do not dispute that non-intentional torts cannot be aided and abetted.  They identify no substantial assistance provided by Metra in causing any harm to any Plaintiff under any theory.  Their attempt to explain away the straightforward allegation that T&H wired funds directly makes no sense.

### 4.      Failure to allege specific state-law claims

Plaintiffs do not respond at all in defense of the fact their fiduciary duty and negligent misrepresentation claims rely upon the existence of a duty Movants simply did not owe Plaintiffs. Movants therefore cannot be held liable for these claims. Indeed, Plaintiffs do not defend their fiduciary duty claim ***at all***.

Plaintiffs' defense of their negligence claims simply ignores the applicable law requiring

KERR
&
WAGSTAFFE
LLP

a duty. *Singman v. NBA Props. Inc.*, No. CV 13-05675 ABC (SHx), 2014 U.S. Dist. LEXIS

182317, at *11 (C.D. Cal. Jan 17, 2014) (negligent misrepresentation); *LiMandri v. Judkins*, 52

Cal. App. 4th 326, 348 (1997) (negligent interference). Instead, they assert without authority

that Movants should have known T&H's negotiated purchase of coffee would harm Plaintiffs.

But Movants have no duty to avoid getting a good deal on a coffee purchase, if they did so.

Plaintiffs also cannot defend their UCL claim without resort to additional shotgun

pleading. They concede that more than a single transaction is required, but reference only a

"multi-year scheme in which all of the Defendants conspired to supplant Mocha Mill with Port

of Mokha." Opp. at 18. This scheme has nothing to do with Movants, neither of whom have any

alleged interest in that scheme, or depend upon its success in any way.

## III.   THIS COURT LACKS PERSONAL JURISDICTION OVER METRA

Plaintiffs' opposition entirely fails to identify any theory under which Metra is subject to

this Court's jurisdiction. To the contrary, it appears to suggest that corporate parents are always

subject to jurisdiction where they have subsidiaries. This error, made without so much as an

attempt to distinguish the contrary authority Metra cited in its motion, infects each element of

Plaintiffs' jurisdictional argument from their initial discussion of Metra's formation of T&H

through their claim that "Metra purposefully availed itself of the privilege of conducting

activities in California and elsewhere in the United States, by and through its subsidiary T&H,

and therefore, should find it no surprise that they can be subject to suit here." Opp. at 22.

Instead, Metra's contacts must be analyzed based upon solely the "contacts that the

'defendant *himself*' creates." *Walden v. Fiore*, 571 U.S. 277, 284 (2014). A subsidiary's

contacts are irrelevant unless the subsidiary is an alter ego of the parent (a standard neither

referenced nor met anywhere in Plaintiffs' complaints or opposition). *Ranza v. Nike, Inc.*, 793

F.3d 1059, 1071 (9th Cir. 2015). Those contacts simply do not exist.

### A.   LEGAL STANDARD

Plaintiffs' motion appears to be confused about the legal standard governing the personal

jurisdiction issue. As Metra acknowledged, it is subject to personal jurisdiction "to the extent

permitted by the Due Process Clause of the United States Constitution." Cal. Code Civ. Proc.

KERR
&
WAGSTAFFE
LLP

§ 410.10; *Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1129 (9th Cir. 2003). Plaintiffs' discussion of Rule 4(k)(2) separately from Section 410.10 is therefore irrelevant (and any suggestion that Metra must "name some other state in which the suit could proceed" is inapplicable). Plaintiffs' discussion of 18 U.S.C. § 1965(b) is also irrelevant, as that section relates to nationwide service, not international jurisdiction. *Butcher's Union Local No. 498, United Food & Commercial Workers v. SDC Inv., Inc.*, 788 F.2d 535, 539 (9th Cir. 1986).

## B. METRA IS NOT SUBJECT TO GENERAL JURISDICTION

Although Plaintiffs' complaints have alleged only general jurisdiction against Metra, Plaintiffs' opposition does not contend Metra is subject to general jurisdiction in this Court. FAC ¶ 19; Opp. at 20-23. It is plainly not, as it resides in the United Arab Emirates.

## C. METRA IS NOT SUBJECT TO SPECIFIC JURISDICTION

The parties do not disagree that the standard for specific jurisdiction requires (1) purposeful direction; (2) forum related conduct; and (3) reasonableness. *Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015).

### 1. Plaintiffs Cannot Impute Other Contacts to Metra

Plaintiffs appear to assume, without supporting authority, that they can carry their burden by imputing T&H's contacts to Metra. This is not correct.

*First*, Plaintiffs spend several paragraphs on the unsurprising fact that Metra owns its subsidiary. Opp. at 19-20. What plaintiffs do not do is present any basis for the Court to conclude that T&H is Metra's alter ego. *Ranza*, 793 F.3d at 1071 (acknowledging that the Supreme Court "invalidated" the more-permissive agency test). To show alter ego requires much more than showing Metra's owners listed as T&H's directors. *Id.* at 1073 ("Total ownership and shared management personnel are alone insufficient to establish the requisite level of control."). Plaintiffs do not even attempt to show that Metra controls T&H's "routine day-to-day operations," or that Movants "failed to observe their separate corporate formalities." *Id.* at 1075. To the extent Plaintiffs intended to rely upon this theory, which at this stage they apparently do not, they have entirely failed to carry their burden. There is therefore no basis to impute T&H's contacts to Metra under an alter ego theory.

KERR
&
WAGSTAFFE
LLP

1    **Second**, Plaintiffs do not ask the Court to impute contacts on a conspiracy theory.

2    ### 2.    Plaintiffs Cannot Prove Purposeful Direction

3    The parties do not dispute that purposeful direction is governed by the "effects" test,

4    which "requires that the defendant allegedly have (1) committed an intentional act, (2) expressly

5    aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the

6    forum state." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 803 (9th Cir. 2004).

7    Although Plaintiffs ignore the limitation, "[t]he unilateral activity of those who claim some

8    relationship with a nonresident defendant cannot satisfy the requirement of contact with the

9    forum State." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958).

10    Here, Plaintiffs cannot satisfy any element of the effects test, or even present argument on

11    it without referring to T&H (a party that does not contest jurisdiction). Opp. at 21. The first

12    element requires "an external manifestation of the actor's intent to perform an actual, physical

13    act in the real world, not including any of its actual or intended results." *Wash. Shoe Co. v. A-Z*

14    *Sporting Goods Inc.*, 704 F.3d 668, 674 (9th Cir. 2012). Nothing Plaintiffs have said about

15    Metra meets this standard, as an abstract agreement is not an "actual, physical act" nor is Metra

16    subject to jurisdiction because of the subsequent acts T&H or Mokhtar are alleged to have taken.

17    Plaintiffs' argument, that "Metra and T&H engaged, generally, in a RICO conspiracy" and

18    "specifically, undertook a scheme" falls far short of the mark. Opp. at 21. Every single physical

19    act regarding the Spring 2016 conspiracy alleged in the operative complaint is attributed to either

20    T&H or non-Movant defendants. FAC ¶ 183. Likewise, the allegation that **Mokhtar** used

21    Metra's address on an invoice is completely irrelevant to Plaintiffs' attempt to drag Metra into a

22    California court, because his activity is insufficient to establish Metra's contacts.

23    ### 3.    Plaintiffs Cannot Prove Forum-Related Conduct

24    Plaintiffs present no argument regarding this prong of the specific jurisdiction test,

25    instead citing *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1079 (9th Cir. 2011), for

26    the supposed proposition that "the second element of the due process test generally is satisfied if

27    the purposeful direction test is satisfied." Opp. at 21. *CollegeSource* says no such thing, instead

28    offering a cursory analysis of the element because the defendant stole copyrighted material from

a California company.  Here, by contrast, Plaintiffs cannot—and have not seriously attempted to—"show that he would not have suffered an injury 'but for' [Defendant's] forum-related conduct." *Menken v. Emm*, 503 F.3d 1050, 1058 (9th Cir. 2007).  Nor can they, or have they even attempted to show, anything Metra supposedly did was "necessary to the initiation of the project" they claim harmed them.  *Doe v. Unocal Corp.*, 248 F.3d 915, 925 (9th Cir. 2001). Instead, Plaintiffs propose without citation to anything that they satisfy this element based upon their generalized claim of "Metra's participation in a conspiracy to defraud Mocha Mill in a pattern of racketeering activity."  Opp. at 21.

If Metra had done nothing, none of the events Plaintiffs allege would have changed. Plaintiffs allege that they agreed to sell coffee to T&H without any direct involvement from, or communication with, Metra.  FAC ¶ 183.  If any case falls short of the but-for test, it is this one.

### 4.    Personal Jurisdiction over Metra would be unreasonable

Plaintiffs do not dispute the seven factors governing reasonableness.

Where a defendant's purposeful interjection is minimal, and its contacts are "attenuated, [the first] factor weighs in their favor."  *Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1488 (9th Cir. 1993). Plaintiffs significantly mischaracterize this test by, again, improperly focusing on T&H rather than Metra.  The claim that "Metra purposefully availed itself of the privilege of conducting activities in California and elsewhere in the United States, by and through its subsidiary T&H" is nonsense.  Opp. at 22.  **Metra** does not operate in the United States.  Mot. at 3.  Plaintiffs have identified no contrary fact, and made no contrary allegation.  **Metra** is therefore not expecting to litigate in the United States.  **Metra's owners** are not parties to this case at all.  That T&H—which makes no jurisdictional objection—is sued here changes none of these straightforward and unrebutted facts.

Plaintiffs seek to excuse the significance of the second and third factors because communications and travel have gotten easier over time.  Opp. at 22.  But convenience is not the motivating concern in asserting jurisdiction over foreign companies.  Instead, the concern is with the challenges of "defend[ing] oneself in a foreign legal system" and "the Federal Government's interest in its foreign relations policies."  *Asahi Metal Indus. Co. v. Superior Court of Cal.*, 480

U.S. 102, 114-15 (1987).  The third factor weighs in Metra's favor as "litigation against an alien defendant creates a higher jurisdictional barrier than litigation against a citizen from a sister state," particularly where Metra's only connection is that Plaintiffs allege they believed they were doing business with a Dubai entity.  *Sinatra v. Nat'l Enquirer, Inc.*, 854 F.2d 1191, 1199 (9th Cir. 1988).  Here, Metra is a foreign entity governed by foreign law.  These two factors significantly weigh against jurisdiction being reasonable.

Plaintiffs do not dispute the existence of the United Arab Emirates as an alternative forum, so the seventh factor also weighs against jurisdiction.

The fourth and sixth factors weigh in Plaintiffs' favor, but Plaintiffs do not dispute that they are "not of paramount importance."  *Dole Food Co. v. Watts*, 303 F.3d 1104, 1116 (9th Cir. 2002).  Instead, Plaintiffs suggest California has "a strong interest in preventing fraud by corporations residing and conducting business in California."  *Church v. Consolidated Freightways, Inc.*, No. C-90-2290 DLJ, 1992 U.S. Dist. LEXIS 18234, at *13 (N.D. Cal. Sept. 15, 1992) (in conflict-of-law dispute, considering certain defendants with "headquarters in California").  This proposition is as irrelevant as it is unremarkable, as the unrebutted facts show that Metra neither resides nor conducts business in this state.

These factors establish that subjecting Metra to jurisdiction would be unreasonable.

## D.   NO DISCOVERY IS WARRANTED

In a footnote, Plaintiffs ask for discovery to permit a fishing expedition seeking evidence regarding Metra's conduct.  Opp. at 24 n.7.  But such discovery is not permitted where plaintiffs can offer only "purely speculative allegations of attenuated jurisdictional contacts."  *Getz v. Boeing Co.*, 654 F.3d 852, 860 (9th Cir. 2011).  This is particularly true where the allegations are made in the face "of specific denials made by the defendants."  *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1160 (9th Cir. 2006).  Moreover, "plaintiffs bear the burden of demonstrating the necessity of discovery."  *Monkton Ins. Servs. v. Ritter*, 768 F.3d 429, 434 (5th Cir. 2014); *Mission Trading Co. v. Lewis*, No. 16-cv-01110-JST, 2016 U.S. Dist. LEXIS 157280, at *13 (N.D. Cal. Nov. 14, 2016) (Plaintiffs must "establish a 'colorable basis' for personal jurisdiction before granting jurisdictional discovery.").

One generic footnote cannot meet Plaintiffs' burden here.  The FAC alleges no concrete act by Metra, no fact that would suggest Metra was the but-for cause of anything, and no fact supporting Plaintiffs' jurisdictional allegation that Metra is subject to general jurisdiction (a claim they abandon in opposing this motion).  In contrast, Metra offers specific evidentiary denials of any basis for jurisdiction under Plaintiffs' claims.  No discovery is warranted.

## IV.   PLAINTIFFS FAILED TO PROPERLY SERVE METRA

In asserting that a Dubai FZCO can be served by mailing process to a United States subsidiary, Plaintiffs simply ignore the problem with their attempt at service: Metra is not a corporation, and thus cannot be served via a "general manager in this state."[3]

Plaintiffs do not dispute that their attempt at service is only sufficient if permitted under California law.  Opp. at 24.  They do not present any evidence, or any dispute beyond using the word "purports," to challenge Metra's detailed showing that it is not a corporation.  *Compare* Mot. at 3 (presenting evidence of Metra's status and the regulations defining it as "a limited liability company"); Opp. at 25.  Despite Plaintiffs' assertion to the contrary, the unrebutted fact that Metra is an LLC, rather than a corporation, distinguishes this case from the attempts at service discussed in *Yamaha.  Yamaha* considered whether a subsidiary is a "general manager in this state" within the meaning of Cal. Corp. Code § 2110.  That phrase in that statute has been given an illogically-expansive construction.  *Yamaha Motor Co., Ltd. v. Superior Court*, 174 Cal. App. 4th 264, 275 (2009) (observing "[t]he ordinary person would think of the phrase 'general manager in this state' as somebody or something more than just a satellite outpost or sales representative only bound to another entity by contract.").  An LLC cannot be served through a "general manager in this state."  Cal. Code Civ. Proc. § 416.40.

In opposition, Plaintiffs instead suggest that two other statutes permit Plaintiffs to treat Metra's subsidiary as Metra's agent for service of process.  Neither do.

***First***, Plaintiffs suggest that "in California, LLCs are treated similar[ly] to corporations for purposes of service" and "may be served consistent with 'Chapter 4 (commencing with

---

[3]     Plaintiffs' defense of their service on T&H can be disregarded.  Opp. at 24-25.  Only Metra is challenging service.

1   Section 413.10) of Title 5 of Part 2 of the Code of Civil Procedure.'"  Opp. at 25 (citing Cal.

2   Corp. Code § 17701.16 (a)).  Whether or not the treatment is similar in other ways, the treatment

3   is different regarding service.  That Section 17701.16 makes general reference to the chapter

4   governing service of summons does not permit Plaintiffs to serve an LLC using rules applicable

5   only to corporations. To hold otherwise would be to ignore the detailed statutory scheme

6   provided by Sections 416.10 through 416.90, a remarkable proposition for which Plaintiffs

7   provide no authority.  To the contrary, California courts insist the distinctions between different

8   types of entities are strictly followed.  *E.g. Earl W. Schott, Inc. v. Kalar*, 20 Cal. App. 4th 943,

9   947 (1993) (finding no proper service where corporation was served as an association).

10          ***Second***, Plaintiffs suggest that Metra has some obligation to "maintain a registered agent

11   for service of process with the California Secretary of State."  Opp. at 25.  This is wrong under

12   the plain language of the Revised Uniform Limited Liability Company Act.  Under that act,

13   Metra is a "[f]oreign limited liability company" as it was formed under the laws of the United

14   Arab Emirates and denominated by that law as a limited liability company.  Cal. Corp. Code

15   § 17701.02(j).  Foreign LLCs may, but need not, "apply for a certificate of registration to

16   transact business in this state."  Cal. Corp. Code § 17708.02(a).  *If* they apply, ***only then*** do they

17   need to designate an agent for service of process.  Cal. Corp. Code § 17701.13(b).  A contrary

18   requirement, purporting to make every LLC everywhere in the world register an agent for service

19   of process in California, would be as absurd as it would be unconstitutional.  Metra does not do

20   business in California.  It has not applied for a certificate of registration in California, and

21   therefore neither has nor must designate an agent for service of process.

22          For these reasons, Plaintiffs have utterly failed to carry their burden of proving that they

23   validly served Metra. Metra should be dismissed from this action.

24   **V.       CONCLUSION**

25          For the foregoing reasons, Plaintiffs' complaint against T&H and Metra should be

26   dismissed with prejudice.

27

28

Date: September 10, 2018                    **KERR & WAGSTAFFE LLP**


                                   By:    /s/ Frank Busch
                                          Frank Busch

                                          Attorneys for Defendants
                                          METRA COMPUTER GROUP FZCO and
                                          T&H COMPUTERS, INC.