MARK R. CONRAD (CA Bar No. 255667)
GABRIELA KIPNIS (CA Bar No. 284965)
**CONRAD & METLITZKY LLP**
Four Embarcadero Center, Suite 1400
San Francisco, CA 94111
Tel:    (415) 343-7100
Fax:    (415) 343-7101
Email: mconrad@conradmetlitzky.com
Email: gkipnis@conradmetlitzky.com

Attorneys for Defendants Port of Mokha, Inc.,
Port of Mokha, LLC, Mokha Foundation,
Mokhtar Alkhanshali, and Ibrahim Ahmad Ibrahim

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

|  |  |
|---|---|
| MOCHA MILL, INC., *et al.*,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>PORT OF MOKHA, INC., *et al.*,<br><br>　　　　Defendants. | CASE NO. 18-CV-02539-HSG<br><br>**REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS BY PORT OF MOKHA DEFENDANTS**<br><br><br>Date:　　　　September 27, 2018<br>Time:　　　　2:00 p.m.<br>Judge:　　　Hon. Haywood S. Gilliam, Jr.<br>Courtroom:　Courtroom 2, 4th Floor |

**TABLE OF CONTENTS**

I.   ALL CLAIMS AGAINST MOKHTAR MUST BE DISMISSED PURSUANT
     TO BINDING ARBITRATION AND FORUM-SELECTION CLAUSES .................................. 1

     A.   Plaintiffs Were Required To Submit *Evidence* To Oppose Mokhtar's Motion
          Under Rule 12(b)(3), But They Have Offered None .......................................... 1

     B.   Plaintiffs' Conclusory Allegations of Economic Duress Cannot Defeat a
          Forum-Selection Clause Drafted by Their Own Lawyers .................................... 2

     C.   Plaintiffs Cannot Invoke an Earlier "Oral" Partnership Agreement To Avoid
          the One They Subsequently Signed with Mokhtar ............................................. 3

     D.   The Arbitration and Forum-Selection Clauses Apply to All of Plaintiffs' Claims ............ 4

     E.   To the Extent the Court Finds a Disputed Issue, an Evidentiary Hearing
          Is Necessary To Test Plaintiffs' Conclusory Claims of Duress ........................... 5

II.  PLAINTIFFS' CLAIMS AGAINST MOKHA FOUNDATION MUST BE
     DISMISSED BECAUSE THAT ENTITY DOES NOT EXIST ............................................. 5

III. BECAUSE PLAINTFFS' RICO CLAIM IS DEFECTIVE, THE ENTIRE CASE
     SHOULD BE DISMISSED .......................................................................... 6

     A.   The FAC Does Not Adequately Allege a "Pattern" of RICO Activity .......................... 6

          1.   *Plaintiffs Do Not Allege "Open-Ended Continuity."* ............................... 7

          2.   *Plaintiffs Do Not Allege "Closed-Ended Continuity."* ............................. 8

     B.   Plaintiffs Do Not Plead Their RICO Predicates with Particularity .......................... 10

     C.   Without a Valid RICO Claim, Plaintiffs' Conspiracy Claim Fails .......................... 11

     D.   Only Mocha Mill Has Standing To Assert RICO Claims ...................................... 12

IV.  PLAINTFFS' STATE-LAW CLAIMS MUST BE DISMISSED ............................................ 13

1

**TABLE OF AUTHORITIES**

2

3

**Cases**

*AccuImage Diagnostics Corp. v. Terarecon, Inc.*,
    260 F. Supp. 2d 941 (N.D. Cal. 2003) ....................................................................... 14

*Allwaste, Inc. v. Hecht*,
    65 F.3d 1523 (9th Cir. 1995) ............................................................................... 8, 9

*Am. Bankers Ins. Grp., Inc. v. Long*,
    453 F.3d 623 (4th Cir. 2006) .................................................................................. 4

*Application Grp., Inc. v. Hunter Grp., Inc.*,
    61 Cal. App. 4th 881 .............................................................................................. 3

*Argueta v. Banco Mexicano, S.A.*,
    87 F.3d 320 (9th Cir. 1996) ......................................................................... 1, 2, 4

*Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Tex.*,
    571 U.S. 49 (2013) ................................................................................................. 1

*Aulakh v. 7-Eleven, Inc.*,
    No. 0104-CV-06151-OWW-LJO, 2006 WL 224398 (E.D. Cal. Jan. 26, 2006) ...................... 3

*B & O Mfg., Inc. v. Home Depot U.S.A., Inc.*,
    No. C 07-02864-JSW, 2007 WL 3232276 (N.D. Cal. Nov. 1, 2007) ............................ 3

*Bank of New York Mellon v. Citibank, N.A.*,
    8 Cal. App. 5th 935 (2017) .................................................................................... 14

*Barsky v. Spiegel Accountancy Corp.*,
    No. 14-CV-04957-TEH, 2015 WL 580574 (N.D. Cal. Feb. 11, 2015) .................................. 7, 9

*Briggs v. Blomkamp*,
    70 F. Supp. 3d 1155 (N.D. Cal. 2014) ................................................................... 2

*Cheery Way (USA), Inc. v. Ngoc Diep Duong*,
    No. 12-CV-0486-JSC, 2012 WL 1670172 (N.D. Cal. May 14, 2012) ................................ 11, 13

*de Havilland v. FX Networks, LLC*,
    21 Cal. App. 5th 845 (2018) .................................................................................. 14

*DeSoto v. Condon*,
    No. SACV08514AHSMLGX, 2008 WL 11338151 (C.D. Cal. Oct. 3, 2008) ...................... 12

*Doe 1 v. AOL LLC*,
    552 F.3d 1077 (9th Cir. 2009) ........................................................................... 1, 2

28

*Ellis v. J.P. Morgan Chase & Co.*,
  950 F. Supp. 2d 1062 (N.D. Cal. 2013) ................................................................. 6

*Giotta v. Ocwen Fin. Corp.*,
  No. 15-CV-00620-BLF, 2015 WL 8527520 (N.D. Cal. Dec. 11, 2015) .................................... 12

*Golden v. Cal. Emergency Physicians Med. Grp.*,
  896 F.3d 1018 (9th Cir. 2018) ......................................................................... 3

*Hopkins v. Am. Home Mortg. Servicing, Inc.*,
  No. 13-CV-04447-RS, 2014 WL 580769 (N.D. Cal. Feb. 13, 2014) ....................................... 7

*Howard v. Am. Online Inc.*,
  208 F.3d 741 (9th Cir. 2000) ...................................................................... 11, 12

*Ice Cream Distributors of Evansville, LLC v. Dreyer's Grand Ice Cream, Inc.*,
  No. 09-CV-05815-CW, 2010 WL 2198200 (N.D. Cal. May 28, 2010) ..................................... 7, 9

*Jarvis v. Regan*,
  833 F.2d 149 (9th Cir. 1987) .......................................................................... 9

*Knipe v. Washington Square Capital*,
  116 F.3d 484 (9th Cir. 1997) .......................................................................... 7

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
  511 U.S. 375 (1994) ................................................................................... 6

*Kroll v. Doctor's Assocs., Inc.*, 3 F.3d 1167
  (7th Cir. 1993) ....................................................................................... 4

*M/S Bremen v. Zapata Off-Shore Co.*,
  407 U.S. 1 (1972) ............................................................................... 1, 2, 3

*Manetti-Farrow, Inc. v. Gucci Am., Inc.*,
  858 F.2d 509 (9th Cir. 1988) .......................................................................... 4

*Mayes v. Fujimoto*,
  181 F.R.D. 453 (D. Haw. 1998) ......................................................................... 6

*Medallion Tel. Enters., Inc. v. SelecTV of Cal., Inc.*,
  833 F.2d 1360 (9th Cir. 1987) ......................................................................... 9

*Mexicanos v. Hewlett-Packard Co.*,
  No. 14-CV-05292-BLF, 2015 WL 9592606 (N.D. Cal. July 13, 2015) ...................................... 7

*Midwest Grinding Co. v. Spitz*,
  976 F.2d 1016 (7th Cir. 1992) ...................................................................... 6, 10

*Murphy v. Schneider Nat'l, Inc.*,
  362 F.3d 1133 (9th Cir. 2003) ......................................................................... 5

iii

*Neibel v. Trans World Assurance Co.*,
 108 F.3d 1123 (9th Cir. 1997) ........................................................................ 11, 12

*Noe v. Fed. Deposit Ins. Corp. for Washington Mut. Bank, F.A.*,
 No. CV-087140-GHK-FMOX, 2010 WL 11549438 (C.D. Cal. Jan. 15, 2010) ........................ 14

*PCO, Inc. v. Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro, LLP*,
 150 Cal. App. 4th 384 (2007) ............................................................................ 15

*Pelleport Inv'rs, Inc. v. Budco Quality Theatres, Inc.*,
 741 F.2d 273 (9th Cir. 1984) .............................................................................. 2

*Pier Connection, Inc. v. Lakhani*,
 907 F.Supp. 72 (S.D.N.Y. 1995) ......................................................................... 7

*Religious Tech. Ctr. v. Wollersheim*, 971 F.2d 364 (9th Cir. 1992) ...................................... 9

*Rich & Whillock, Inc. v. Ashton Dev., Inc.*,
 157 Cal. App. 3d 1154 (1984) ............................................................................ 3

*Richardson v. Reliance Nat. Indem. Co.*,
 No. 99-CV-02952-CRB, 2000 WL 284211 (N.D. Cal. Mar. 9, 2000) .................................. 7, 9

*River Bank America v. Diller*,
 38 Cal. App. 4th 1400 (1995) ............................................................................ 3

*Salinas v. United States*,
 522 U.S. 52 (1997) ....................................................................................... 12

*Sanford v. MemberWorks, Inc.*,
 625 F.3d 550 (9th Cir. 2010) ............................................................................ 12

*Schreiber Distr. Co. v. Serv-Well Furniture Co., Inc.*,
 806 F.2d 1393 (9th Cir. 1986) ........................................................................... 9

*Scott v. Breeland*,
 792 F.2d 925 (9th Cir.1986) ............................................................................. 6

*Second Measure, Inc. v. Kim*,
 143 F. Supp. 3d 961 (N.D. Cal. 2015) ................................................................. 12

*Sever v. Alaska Pulp Corp.*,
 978 F.2d 1529 (9th Cir. 1992) ........................................................................... 9

*Sheehan v. Atlanta Int'l Ins. Co.*,
 812 F.2d 465 (9th Cir. 1987) ......................................................................... 2, 3

*Sparling v. Hoffman Const. Co.*,
 864 F.2d 635 (9th Cir. 1988) ........................................................................... 12

iv

*Spradlin v. Lear Siegler Mgmt. Servs. Co.*,
    926 F.2d 865 (9th Cir. 1991) ................................................................................ 2

*Sprout Healthy Vending LLC v. Seaga Mfg. Inc.*,
    No. 14-01613-JVSJCGX, 2014 WL 12688422 (C.D. Cal. Dec. 18, 2014) ................... 4

*Sullivan v. Mass. Mut. Life Ins. Co.*,
    611 F.2d 261 (9th Cir. 1979) ................................................................................. 4

*Swartz v. KPMG LLP*,
    476 F.3d 756 (9th Cir. 2007) ........................................................................... 11, 13

*TeleVideo Sys., Inc. v. Heidenthal*,
    826 F.2d 915 (9th Cir. 1987) ................................................................................. 9

*Treefrog Devs., Inc. v. Miles & Co., LLC*, No. SACV-1300754-CJC-ANX, 2013 WL 12138672
    (C.D. Cal. July 31, 2013) .................................................................................... 13

*United States v. Fernandez*,
    388 F.3d 1199 (9th Cir. 2004) ......................................................................... 11, 12

*United States v. Shafer*,
    608 F.3d 1056 (8th Cir. 2010) ............................................................................... 8

*Venture Glob. Eng'g, LLC v. Satyam Computer Servs. Ltd.*,
    No. 10-15142, 2012 WL 12897904 (E.D. Mich. Mar. 30, 2012) .............................. 12

*Verde Media Corp. v. Levi*,
    No. 14-CV-00891-YGR, 2015 WL 2379564 (N.D. Cal. May 18, 2015) .................... 12

*Vess v. Ciba-Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003) ......................................................................... 11, 13

**Federal Statutes**

18 U.S.C.

    § 1957 ................................................................................................................ 7, 8

    §§ 1961 *et seq.* ............................................................................................... *passim*

28 U.S.C. § 1367(c)(3) ............................................................................................. 6

**State Statutes**

Cal. Bus. & Prof. Code § 16600 ................................................................................. 3

**Other Authorities**

5A Charles Wright, et al., *Federal Practice & Procedure* (2018 online ed.) ...................... 11

v

**Federal Rules**

Fed. R. Civ. P.

Rule 8(a)(2) .................................................................................................................. 8

Rule 9(b) .................................................................................................... 10, 11, 13

Rule 12(b)(1) ................................................................................................................ 6

Rule 12(b)(3) ......................................................................................................... 1, 2, 6

Rule 12(b)(6) ................................................................................................................ 1

Case No. 18-CV-02539-HSG                    REPLY RE MOTION TO DISMISS BY PORT OF MOKHA

This is a business dispute masquerading as a RICO case. Because Plaintiffs have not pled a valid RICO claim, the case should be dismissed in its entirety. Furthermore, all claims pled against Defendant Mokhtar Alkhanshali ("Mokhtar") must be dismissed because they are subject to binding arbitration and forum-selection clauses in his partnership agreement with Plaintiffs Ibrahim Alaeli, Yasir Khanshali, and Adnan Awnallah ("Investors"). To the extent the Court finds it necessary to reach any additional arguments raised by this motion, the claims in Plaintiffs' First Amended Complaint ("FAC") are subject to dismissal on other grounds as well—most significantly, because they afford the Moving Defendants no reasonable notice of the specific grounds for the claims pled against each of them.

## I.   ALL CLAIMS AGAINST MOKHTAR MUST BE DISMISSED PURSUANT TO BINDING ARBITRATION AND FORUM-SELECTION CLAUSES.

The Investors say the Court should let them ignore a partnership agreement that their own lawyers drafted because it was "an extortionate agreement signed under duress." ECF No. 45 ("Opp.") at 4-7. This argument is unsupported by any evidence at all—let alone proof by which Plaintiffs could meet their heavy burden to demonstrate the unenforceability of the agreement—and should be rejected.

### A.   Plaintiffs Were Required To Submit *Evidence* To Oppose Mokhtar's Motion Under Rule 12(b)(3), But They Have Offered None.

Plaintiffs misunderstand the basic posture of this motion. They argue that the FAC must be accepted "as true." Opp. at 6. They challenge Mokhtar's testimony about the partnership agreement as "inadmissible hearsay outside the allegations of the FAC." *Id.* at 6. And, in trying to avoid their own chosen forum of Yemen, they rely wholly on the FAC's allegations. *Id.* at 5-6 (citing FAC ¶¶ 97-103). In short, Plaintiffs seem to think this motion must be decided on the pleadings. They are wrong.

A motion to dismiss based on a forum-selection clause is brought under Rule 12(b)(3), not Rule 12(b)(6). *See Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Tex.*, 571 U.S. 49, 60-61 (2013); *Argueta v. Banco Mexicano, S.A.*, 87 F.3d 320, 324 (9th Cir. 1996). The pleadings "are not accepted as true," and the Court may "consider facts outside of the pleadings." *Argueta*, 87 F.3d at 324.

A party challenging a forum-selection clause bears "a heavy burden of proof." *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 17 (1972). "A forum selection clause is presumptively valid," and a party seeking to avoid one must submit *evidence* to invalidate it. *Doe 1 v. AOL LLC*, 552 F.3d 1077,

1083 (9th Cir. 2009) (citing *Bremen*, 407 U.S. at 17); *Argueta*, 87 F.3d at 324. As a matter of law, it is inadequate to rely on "broad and conclusory allegations of fraud" while failing "to present any evidence in opposition to the motion." *Spradlin v. Lear Siegler Mgmt. Servs. Co.*, 926 F.2d 865, 868 (9th Cir. 1991); *see also Pelleport Inv'rs, Inc. v. Budco Quality Theatres, Inc.*, 741 F.2d 273, 280 (9th Cir. 1984) (requiring "some evidence [to be] submitted by the party opposing enforcement of the clause").

Plaintiffs here offer no proof whatsoever. They do not dispute that the Investors signed the partnership agreement. Nor do they dispute, as Mokhtar has testified, that the agreement was drafted by the Investors' own lawyers. ECF No. 41-1 ¶ 2. In lieu of proof, they merely regurgitate the FAC's unsupported allegations and claim they are victims of "duress." Opp. at 4-7 (citing FAC ¶¶ 97-103). It is hornbook law that "allegations in a complaint are not evidence." *Briggs v. Blomkamp*, 70 F. Supp. 3d 1155, 1166 (N.D. Cal. 2014). Because Plaintiffs offer no *evidence* of duress, the Court must enforce the forum-selection clause and dismiss all claims against Mokhtar. *Argueta*, 87 F.3d at 324; *Spradlin*, 926 F.2d at 868; *Pelleport Investors*, 741 F.2d at 280.

### B.    Plaintiffs' Conclusory Allegations of Economic Duress Cannot Defeat a Forum-Selection Clause Drafted by Their Own Lawyers.

Although the FAC's allegations are not "evidence" for purposes of this Rule 12(b)(3) motion, Plaintiffs still could not establish that the forum-selection clause here is unenforceable even if the Court were to treat them as such. This is because the allegations of the FAC do not show "duress" at all.

Plaintiffs cite Paragraphs 97 to 103 the FAC as the basis for their claim of "duress." Opp. at 5. These paragraphs allege the following: that Mokhtar, as Mokha Mill's CEO, developed "significant relationships" and "legitimacy" in the coffee industry, FAC ¶ 97; that Mokhtar knew he could "walk away with those relationships," *id.* ¶ 98; that he "threatened to start a competing company" and "secretly lined up other investors," *id.* ¶¶ 98-100; and that, in the face of this threat, Plaintiffs "acquiesced" and gave Mokhtar a larger ownership stake in Mocha Mill, fearing that otherwise "they would lose their entire investment," *id.* ¶¶ 101-102. In summary, Plaintiffs contend they were victims of "economic duress" because their CEO threatened to leave.

This is not duress. Under California law, "economic duress" requires, first, an unlawfully coercive act, and second, that the plaintiff was forced to "succumb to the demands of the wrongdoer *or*

- 2 -

1   *else suffer financial ruin.*" *Sheehan v. Atlanta Int'l Ins. Co.*, 812 F.2d 465, 469 (9th Cir. 1987) (citing

2   *Rich & Whillock, Inc. v. Ashton Dev., Inc.*, 157 Cal. App. 3d 1154, 1158–59 (1984) (emphasis added)).

3   "Simple hard bargaining" by a counterparty is not enough to establish "economic coercion." *Id.*

4   Plaintiffs' allegations do not establish either of these elements.

5        First, Mokhtar's conduct was not unlawfully coercive.  To the contrary, his threat to start a

6   competing company was perfectly lawful, and indeed, *protected* by California law. *See* Cal. Bus. &

7   Prof. Code § 16600. Mokhtar had no duty to remain in a partnership that did not compensate him

8   appropriately. Contrary to Plaintiffs' arguments, even if there was a supposed earlier "oral" agreement

9   with the Investors, it could not have lawfully prohibited him from leaving to start a new enterprise.

10  *Golden v. Cal. Emergency Physicians Med. Grp.*, 896 F.3d 1018, 1024 (9th Cir. 2018) (discussing

11  California's well-established "policies of open competition and employee mobility"); *see also*

12  *Application Grp., Inc. v. Hunter Grp., Inc.*, 61 Cal. App. 4th 881, 902 (1998).

13       Second, the FAC does not show that Plaintiffs would have suffered "financial ruin" if they had

14  refused Mokhtar's demands. *Rich & Whillock, Inc.*, 157 Cal. App. 3d at 1158–59. The mere prospect of

15  a lost investment is not enough to establish duress, and neither is the potential departure of a key

16  employee. *Aulakh v. 7-Eleven, Inc.*, No. 0104-CV-06151-OWW-LJO, 2006 WL 224398, at *7 (E.D.

17  Cal. Jan. 26, 2006) (holding that the "possible loss of … sunk costs cannot, on its own, justify a finding"

18  of economic duress (citing *River Bank America v. Diller*, 38 Cal. App. 4th 1400 (1995)); *B & O Mfg.,*

19  *Inc. v. Home Depot U.S.A., Inc.*, No. C 07-02864-JSW, 2007 WL 3232276, at *5 (N.D. Cal. Nov. 1,

20  2007) ("merely suffering from financial difficulties does not amount to duress").

21       Simply put, even if treated as evidence, the FAC does not meet the heavy "burden" that Plaintiffs

22  bear to prove that their forum-selection clause is unenforceable. *Bremen*, 407 U.S. at 17. Indeed,

23  Plaintiffs do not cite a single case—and undersigned counsel is unaware of none—where a court has

24  allowed a party to avoid a forum-selection clause that was drafted by their own lawyers.

25      **C.**    **Plaintiffs Cannot Invoke an Earlier "Oral" Partnership Agreement To Avoid the**

26              **One They Subsequently Signed with Mokhtar.**

27       In an argument that is contrary to both logic and the law, Plaintiffs contend that their claims are

28  all "based on the original oral partnership and joint venture agreement between Mokhtar and Plaintiffs in

- 3 -

Oakland in April 2014, which contemplated no arbitration or venue in Yemen." Opp. at 6.  This is dubious, given that the supposed "original oral partnership and joint venture agreement" is not described in the FAC, that Plaintiffs have presented no *evidence* of its existence in their opposition brief, and that Plaintiffs' lawyers have studiously avoided pleading a claim for breach of contract. Regardless, Plaintiffs' claims are not governed by a prior unwritten agreement simply because their lawyers say so.

By operation of law, any prior oral agreement would have been superseded by the written agreement that Plaintiffs affirmatively allege they signed on March 29, 2015. FAC ¶ 102. *See, e.g.*, *Sullivan v. Mass. Mut. Life Ins. Co.*, 611 F.2d 261, 264 (9th Cir. 1979) ("Under California law, a written contract presumptively supersedes all prior or contemporaneous oral agreements concerning the subject matter of the written contract."). The subsequent written agreement containing arbitration and forum-selection clauses therefore necessarily trumps any prior oral understanding between Mokhtar and the Investors about the terms of their relationship. Plaintiffs offer no reason, much less any *evidence*— which, again, is their obligation to furnish in this situation—to explain why these basic principles of contract law should not apply to them. The only explanation they offer is that the written agreement was signed under duress, which, as explained above, is both unsupported and unsupportable.

**D.     The Arbitration and Forum-Selection Clauses Apply to All of Plaintiffs' Claims.**

Plaintiffs also assert that their claims are beyond the reach of the arbitration and forum-selection clauses because they "do not allege a breach of contract" and "are not asking for any of the extortionate contract's articles to be interpreted."  Opp. at 6-7.  This is incorrect.

The Investors cannot escape their own contract by pleading claims other than breach of contract. *See* ECF No. 41 ("Mot.") at 10 (explaining that tort and RICO claims are subject to valid forum-selection clauses (citing *Am. Bankers Ins. Grp., Inc. v. Long*, 453 F.3d 623, 630 (4th Cir. 2006); *Kroll v. Doctor's Assocs., Inc.*, 3 F.3d 1167, 1170 (7th Cir. 1993); *Sprout Healthy Vending LLC v. Seaga Mfg. Inc.*, No. 14-01613-JVSJCGX, 2014 WL 12688422, at *4 (C.D. Cal. Dec. 18, 2014); *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 514 (9th Cir. 1988); *Argueta*, 87 F.3d at 324-25)). Plaintiffs offer no law in opposition to these authorities, which were cited in the opening brief.

As for the scope of the arbitration and forum-selection clauses, the question presented is whether Plaintiffs' claims fall within the scope of the partnership agreement. They do. The agreement governs

the Mocha Mill business "to sell, buy and export coffee." Decl. of Mark R. Conrad, Ex. B at 1. It governs the Investors' capital contributions, which the FAC alleges were embezzled and taken by fraud. *Id.* It establishes the rights and fiduciary duties of the partners, which is a critical issue in every one of Plaintiffs' claims. *Id.* at 2. Most significantly, it contains a clause whereby Mokhtar and the Investors pledged "not to engage in any of the activities that the Company undertakes or to compete therewith." The non-compete clause states that a violation by one partner shall entitle the others "to expel him and seek damages from him for the result of his actions." *Id.* at 2. If this case does not entail a dispute about the application of this clause, it is difficult to imagine one that would. Only through wishful thinking and creative lawyering can Plaintiffs assert that their grievances with Mokhtar are not governed by the clear contract that their own lawyers drafted to govern these disputes. Simply put, this entire case falls under the auspices of the partnership agreement, and its mandatory arbitration and forum-selection clauses apply to all of the claims asserted in this action. The entire case against Mokhtar must be dismissed.

### E.  To the Extent the Court Finds a Disputed Issue, an Evidentiary Hearing Is Necessary To Test Plaintiffs' Conclusory Claims of Duress.

Plaintiffs' efforts to escape their own contract should be rejected outright, but if the Court credits any of their arguments in opposition, then at the very least it must hold an evidentiary hearing to resolve genuine disputes regarding the validity, scope, and enforceability of the agreement—including the Investors' claims of "duress." *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1139 (9th Cir. 2003).

## II.  PLAINTIFFS' CLAIMS AGAINST MOKHA FOUNDATION MUST BE DISMISSED BECAUSE THAT ENTITY DOES NOT EXIST.

Federal court is not a playground for Plaintiffs to toss around legal claims against entities or persons they think might exist. Although Plaintiffs argue that Mokha Foundation must stay in the case as a defendant, Opp. at 7, they offer no evidence to show that there is an existing entity for them to sue. The only "evidence" they cite is an unauthenticated webpage where "POM" supposedly "acknowledges the existence of Mokha Foundation." Opp. at 7.[1] However, this webpage does not establish the existence

---

[1] Although the website is referenced in their opposition brief, Plaintiffs never actually supply or cite it to the Court. Presumably, the webpage is http://www.portofmokha.com/foundation, where Defendant Port of Mokha, Inc. references some of the charitable work in which it has participated.

of a separate legal entity that Plaintiffs may sue. As Mokhtar testified, there is no legal entity called Mokha Foundation, and Port of Mokha, Inc., has no "wholly-owned subsidiary." ECF No. 41-1 ¶¶ 4-5.

Plaintiffs say that evidence about the non-existence of Mokha Foundation is "outside the allegations of the FAC," and they argue that Mokhtar's declaration on this subject should be "stricken" as "inappropriate testimony from a defendant [that] is outside the allegations of the FAC." Opp. at 7. But again, Plaintiffs misunderstand the nature of this motion. The motion to dismiss Mokha Foundation was brought under Rule 12(b)(1), not Rule 12(b)(6). *See* Mot. at 10-11. When a motion to dismiss attacks the Court's jurisdiction, "the burden of proof is placed on the party asserting that jurisdiction exists" and "the court will presume lack of subject matter jurisdiction until the plaintiff proves otherwise in response to the motion to dismiss." *Ellis v. J.P. Morgan Chase & Co.*, 950 F. Supp. 2d 1062, 1072 (N.D. Cal. 2013) (citing *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir.1986), and *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 376-78 (1994)). The Court may consider extrinsic evidence and resolve factual disputes to determine "the existence of subject-matter jurisdiction in fact." Mot. at 8 (quoting *Mayes v. Fujimoto*, 181 F.R.D. 453, 455 (D. Haw. 1998)). Here, the record before the Court establishes that Plaintiffs have sued a non-existent entity, which requires its dismissal.

## III.   BECAUSE PLAINTFFS' RICO CLAIM IS DEFECTIVE, THE ENTIRE CASE SHOULD BE DISMISSED.

Plaintiffs concede that the only basis for federal jurisdiction is their RICO claim, and they do not dispute that the Court may decline to exercise supplemental jurisdiction over their remaining state-law causes of action if the RICO claim is dismissed. *See* Mot. at 21 (citing 28 U.S.C. § 1367(c)(3)). Plaintiffs nevertheless attempt to keep the case in federal court by insisting that this "garden-variety business dispute[]" is a vast criminal conspiracy. *Midwest Grinding Co. v. Spitz*, 976 F.2d 1016, 1025 (7th Cir. 1992). The FAC, however, falls far short of pleading a RICO claim.

### A.   The FAC Does Not Adequately Allege a "Pattern" of RICO Activity.

Plaintiffs simply ignore a long line of Ninth Circuit and Northern District cases holding that a business dispute like this one cannot support a claim under RICO. As these decisions make clear, conduct that has never posed any threat of injury to anyone other than Plaintiffs, and which poses no future threat of criminal injury to anyone *at all*, including Plaintiffs, is not enough to sustain a RICO

- 6 -

claim. Mot. at 16-20 (describing Plaintiffs' failure to plead "continuity"). Without any analysis at all, Plaintiffs disparage the authorities cited in the motion as "inapposite" and write them off as a "string citation." Opp. at 22. But the correct term for these cases is "binding legal precedent," since they hold that Plaintiffs have not pled a RICO claim showing either "open-ended" or "closed-ended" continuity.

### 1.   Plaintiffs Do Not Allege "Open-Ended Continuity."

Plaintiffs say they have alleged "open-ended continuity" because the FAC includes conclusory claims of "money laundering." Opp. at 21. Admittedly, the FAC *does* use the term "money laundering," in a desperate attempt to allege ongoing criminal activity where none exists. *See* FAC ¶¶ 202-204. But a quick review of the FAC's three short paragraphs on this subject show that the actual *facts* alleged in the FAC are not enough to describe open-ended continuity. Instead, Plaintiffs allege only that Port of Mokha, Inc., is continuing to do business transactions worth more than $10,000. *Id.* Plaintiffs make no attempt to explain how these new transactions specifically involve "criminally derived property," as required by the money laundering statute. 18 U.S.C. § 1957. And Plaintiffs make no claim—nor could they—that Mokhtar or anyone associated with him is engaged in any continuing fraud directed at Plaintiffs. They do not allege any ongoing threat that their assets will be taken. And they do not claim that Mokhtar is still trying to embezzle funds or pressuring them into signing contracts.

If Plaintiffs' allegations were enough to support a theory of open-ended continuity, then every case involving fraud by a corporate defendant could be magically transformed into a RICO suit. That is not the law, which presumably is why Plaintiffs chose to ignore numerous legal authorities holding that a RICO plaintiff is required to do more than allege the ongoing *effects* of prior crimes. Mot. at 18 (citing *Richardson v. Reliance Nat. Indem. Co.*, No. 99-CV-02952-CRB, 2000 WL 284211, at *8 (N.D. Cal. Mar. 9, 2000) (citing *Pier Connection, Inc. v. Lakhani*, 907 F.Supp. 72, 76 (S.D.N.Y. 1995))); *see also id.* (citing *Knipe v. Washington Square Capital*, 116 F.3d 484 (9th Cir. 1997); *Mexicanos v. Hewlett-Packard Co.*, No. 14-CV-05292-BLF, 2015 WL 9592606, at *10 (N.D. Cal. July 13, 2015); *Barsky v. Spiegel Accountancy Corp.*, No. 14-CV-04957-TEH, 2015 WL 580574, at *6 (N.D. Cal. Feb. 11, 2015); *Hopkins v. Am. Home Mortg. Servicing, Inc.*, No. 13-CV-04447-RS, 2014 WL 580769, at *5 (N.D. Cal. Feb. 13, 2014); *Ice Cream Distributors of Evansville, LLC v. Dreyer's Grand Ice Cream, Inc.*, No. 09-CV-05815-CW, 2010 WL 2198200, at *4 (N.D. Cal. May 28, 2010)).

The only case that Plaintiffs cite in support of their "open-ended continuity" theory is an Eighth Circuit decision that is not about open-ended continuity at all and, in fact, does not even mention that topic. Opp. at 21 (citing *United States v. Shafer*, 608 F.3d 1056, 1067 (8th Cir. 2010)). The *Shafer* case discusses the unremarkable proposition that, to sustain a conviction for money laundering, prosecutors need not directly "trace" the funds at issue to the proceeds of a specific earlier criminal transaction. But this does not mean, as Plaintiffs seem to suggest, that if a business is alleged to have once committed a crime, then every one of its subsequent commercial transactions constitutes money laundering. As the Eighth Circuit itself acknowledged in *Shafer*, money laundering requires "a monetary transaction in criminally derived property [that] is derived from *specified unlawful activity*." *Id.* (citing 18 U.S.C. § 1957 (emphasis added)). Here, the FAC does not even come close to meeting that standard, under Rule 8(a)(2) or otherwise. It simply alleges, without support, that "Defendants amassed large sums of money in criminal proceeds derived from fraud and extortion." FAC ¶ 203. That conclusory allegation is not enough to support a theory of "open-ended continuity" under RICO, especially when the only "sums of money" actually identified in the FAC as having been stolen from Mocha Mill are $52,650 from a single sale of 390 kg of coffee beans in May 2016, FAC ¶ 183, and $140,942 from Mokhtar's alleged failure to submit receipts for his business expenses several years ago, *id.* ¶ 93.

### 2.    Plaintiffs Do Not Allege "Closed-Ended Continuity."

To salvage a theory of "closed-ended continuity," Plaintiffs effectively run away from their own fundamental theory of the case. Having alleged that this case involves a single-minded scheme "to usurp Mocha Mill's entire business, supplanting in its place a secret competitor company called 'Port of Mokha,'" FAC ¶ 5, they now seek to splinter the case into a tale about "multiple fraud schemes," "multiple extortion schemes," and multiple victims. Opp. at 21-22. The reason Plaintiffs need to recast and refract the theory of their case is that, under the law, a single scheme with a single victim, perpetrated over a limited timeframe, cannot support a RICO claim. *See generally* Mot. at 19-20. The Court should not buy Plaintiffs' opportunistic repackaging of their claims.

First, although Plaintiffs argue that "having a single victim" is not fatal to their RICO claim, Opp. at 21-22, the cases they cite do not support their argument. For example, Plaintiffs describe *Allwaste, Inc. v. Hecht*, 65 F.3d 1523 (9th Cir. 1995), as a case where the Ninth Circuit sustained a

- 8 -

RICO claim involving "essentially a single victim." Opp. at 22 (citing *Allwaste*, 65 F.3d at 1527). This is a bogus description of *Allwaste*, which involved illegal kickbacks from numerous victims that were used by a business to start a competing enterprise. *Id.* at 1526-27 (describing bribes received from Sierra West Glass Recycling, A&A Recycling, a Circo real estate agent, and Golden State Glass Recycling). Plaintiffs also cite *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 918 (9th Cir. 1987), but that case also is not about a single victim, and just as important, it is not about closed-ended continuity. As the Ninth Circuit itself has explained, *Heidenthal* involved "thirteen acts of fraud related to [an] ongoing scheme to embezzle company funds involving multiple victims." *Medallion Tel. Enters., Inc. v. SelecTV of Cal., Inc.*, 833 F.2d 1360, 1364 (9th Cir. 1987) (citing *Heidenthal*, 826 F.2d at 918).

Second, the clear story of this case, as told by Plaintiffs, was Mokhtar's single-minded scheme to obtain Mocha Mill's business for himself. According to the FAC, Mokhtar initially tried to take direct control over Mocha Mill, and when this did not work, he bought Mocha Mill's coffee beans to sell under his own brand. There is no "closed-ended continuity" to be found in this time-limited and discrete scheme, which is why Plaintiffs now obfuscate their own case by characterizing it as involving "multiple fraud schemes" and "multiple extortion schemes." Opp. at 22 (citing FAC ¶¶ 89-103, 121-125, 194-199). As an example of this repackaging, Plaintiffs try to characterize a single purchase of coffee beans as involving "related wire fraud conspiracies" because the purchase did not succeed until a second attempt. *Id.* (citing FAC ¶¶ 135-194). This is not the stuff of RICO, and the relevant timeframe covered by the FAC—Spring 2015 through June 2016—is legally insufficient to establish "continuity."

As described in the underlying motion, the Ninth Circuit and Northern District have consistently held that the type of unified, time-limited conduct alleged in this case does not establish closed-ended continuity under RICO. Mot. at 19-20 (citing *Medallion*, 833 F.2d at 1362-65; *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1535 (9th Cir. 1992); *Religious Tech. Ctr. v. Wollersheim*, 971 F.2d 364, 365-66 (9th Cir. 1992); *Schreiber Distr. Co. v. Serv-Well Furniture Co., Inc.*, 806 F.2d 1393, 1399 (9th Cir. 1986); *Jarvis v. Regan*, 833 F.2d 149, 153 (9th Cir. 1987); *Barsky v. Spiegel Accountancy Corp.*, No. 14-CV-04957-TEH, 2015 WL 580574, at *6 (N.D. Cal. Feb. 11, 2015); *Ice Cream Distributors of Evansville*, No. 09-CV-05815-CW, 2010 WL 2198200, at *4; *Richardson*, No. 99-CV-02952-CRB, 2000 WL 284211, at *9). Plaintiffs disparage the preceding authorities as part of an "inapposite" string

- 9 -

cite and then use that disparagement as a justification for ignoring the law. But Plaintiffs offer no string of cases—nor even a single published decision—where a federal court has sustained a RICO claim based on the type of anemic "continuity" described in their FAC.  That is because *there is no such case*. Cases like this one are not properly pled under RICO, and Plaintiffs' attempt to squeeze "a square peg in a round hole" should be rejected. *Spitz*, 976 F.2d at 1025.[2]

### B.    Plaintiffs Do Not Plead Their RICO Predicates with Particularity.

Rather than address the fundamental defects of their FAC, Plaintiffs double down on the problems that render it subject to dismissal. They begin by merging the separate identities of the five Moving Defendants—Mokhtar Alkhanshali ("Mokhtar"), Ibrahim Ahmad Ibrahim ("Ahmad"), Port of Mokha, Inc. ("POM, Inc."), Port of Mokha, LLC ("POM, LLC"), and Mokha Foundation—and defining them all as a conglomerated entity called "POM." Opp." at 1. Then, throughout the opposition, Plaintiffs draw almost no distinctions between the defendants they have sued. Nowhere do Plaintiffs explain how their claims are pled with particularity against each one.  For example:

- **Ahmad.** The opposition brief does nothing to explain the basis for the claims against Ahmad, but instead—as if to mock the particularity requirement of Rule 9(b)—says that the facts pled against him as a "RICO associate" are "too numerous to list" and then cites to the entire complaint: "*See generally* FAC."  Opp. at 17.

- **POM, Inc. vs. POM, LLC.** Like the FAC, the opposition brief does not articulate a distinct basis for the liability of these two companies, let alone with particularity. Nor does it point to any action specifically taken by anyone by or on behalf of either entity. Instead, Plaintiffs simply proceed on the assumption that the two different companies may be treated as one and the same. Opp. at 1.

- **Mokha Foundation.** Plaintiffs provide no explanation of *any* claim against Mokha Foundation. Instead, Plaintiffs insist that thirteen separate claims may be maintained against a phantom defendant that is not discussed in the FAC, except where it is alleged (inaccurately) to be a subsidiary of POM, Inc. FAC ¶¶ 17, 35, 193; Opp. at 17.

---

[2] Plaintiffs argue they have sufficiently alleged the sufficiently "related" nature of the alleged predicate RICO acts.  Opp. at 20. But Plaintiffs never actually respond to the specific point made in the motion on the issue of "relatedness."  The motion did not make a freestanding argument that the alleged predicate RICO offenses are all "unrelated," only that Plaintiffs' attempts to expand the timeframe of the supposed RICO enterprise by incorporating allegations about Mokhtar's allegedly unreimbursed business expenses was improper, because that alleged "embezzlement" had nothing to do with the alleged RICO scheme to take over Mocha Mill's business. Mot. at 20 & n.4. Plaintiffs do not explain anywhere in their opposition how these two totally disparate course of conduct could be "related" for purposes of establishing a "pattern" of racketeering activity.

Plaintiffs' opposition brief also discusses the sufficiency of their pleading regarding the existence of an "enterprise," but the motion made no argument that this element was inadequately alleged.

Plaintiffs defend their failure to explain the basis for their claims against each defendant by arguing that the claims all "flow from the facts in Section V" of the FAC. *Id.* at 7. They complain that meeting their actual burden to allege the claims with particularity "would result in a complaint hundreds of pages long of mostly repetition," but in the spirit of compromise, they offer to amend the complaint if hundreds of pages of repetition would be "preferable to the Court." *Id.* at 7-8.

Plaintiffs are missing the point here. The problem is not that the FAC fails to repeat "the facts of Section V" for each cause of action. The problem is that "the facts of Section V" include a smorgasbord of more than 140 paragraphs of text, across more than 40 pages of pleading, that provide the individual defendants with no earthly idea of what is actually alleged as the specific factual basis for the thirteen different causes of action asserted against each of them.

It does not satisfy Rule 9(b) to bring claims of embezzlement, wire fraud, fraud & deceit, fraudulent concealment, and numerous other claims that "sound" in fraud, and then to say: "*see generally* FAC," which is quite literally what Plaintiffs say in their opposition brief. The FAC should be dismissed, and Plaintiffs should be required to re-write their claims in compliance with the basic rules of pleading. 5A Charles Wright, et al., *Federal Practice & Procedure* § 1326 & n.8 (2018 online ed.) ("When faced with what some judges have called 'shotgun pleading,' a district court often will order the party to replead and state his claims or defenses more clearly." (collecting cases)); *see also Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003); *Cheery Way (USA), Inc. v. Ngoc Diep Duong*, No. 12-CV-0486-JSC, 2012 WL 1670172, at *5–6 (N.D. Cal. May 14, 2012) (quoting *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007)).

### C.    Without a Valid RICO Claim, Plaintiffs' Conspiracy Claim Fails.

The instant motion cited two Ninth Circuit cases for the proposition that Plaintiffs' conspiracy claim necessarily fails because the FAC does not allege a substantive violation of RICO. Mot at 21 (citing *Howard v. America Online Inc.*, 208 F.3d 741, 749 (9th Cir. 2000), and *Neibel v. Trans World Assurance Co.*, 108 F.3d 1123, 1127 (9th Cir. 1997)). Plaintiffs argue the motion relied on "overruled law." Opp. at 22-23 (citing *United States v. Fernandez*, 388 F.3d 1199, 1230 (9th Cir. 2004)). Not so.

Plaintiffs' argument is a red herring, and the *Fernandez* case is irrelevant. In *Fernandez*, the Ninth Circuit overruled its earlier decision in *Neibel* on the question of whether a RICO conspiracy

- 11 -

1   claim may be established even if the conspirator never agrees to operate, direct, or manage the

2   enterprise's affairs. 388 F.3d at 1228-30 (citing *Salinas v. United States*, 522 U.S. 52, 62 (1997)). That

3   issue was not raised by the instant motion, which did not cite *Neibel* for this tangential point of law.

4          The point here is that, without a RICO violation, there can be no viable claim for conspiracy.

5   This proposition is still good law. *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 559 (9th Cir. 2010)

6   (citing *Howard v. Am. Online Inc.*, 208 F.3d 741, 751 (9th Cir. 2000)); *Giotta v. Ocwen Fin. Corp.*, No.

7   15-CV-00620-BLF, 2015 WL 8527520, at *9 (N.D. Cal. Dec. 11, 2015); *Verde Media Corp. v. Levi*,

8   No. 14-CV-00891-YGR, 2015 WL 2379564, at *4 (N.D. Cal. May 18, 2015).

9          **D.     Only Mocha Mill Has Standing To Assert RICO Claims.**

10         No plaintiff other than Mocha Mill has standing to assert a RICO claim. With respect to the

11  Investors, Plaintiffs do not cite a single case holding that partners or joint venturers can assert RICO

12  claims individually where, as here, only their business is alleged to have been injured. The single case

13  cited by Plaintiffs, *Second Measure, Inc. v. Kim*, 143 F. Supp. 3d 961, 971 (N.D. Cal. 2015), is utterly

14  irrelevant. It does not discuss RICO, nor does it discuss the requirement that a plaintiff must experience

15  a "separate and distinct injury" in order to have standing to assert a RICO claim.

16         Strangely, Plaintiffs suggest that the Investors should be permitted to bring RICO claims because

17  they "entered into a partnership or joint venture" and "it is the partnership that owns Mocha Mill." Opp.

18  at 25. But this observation only underscores that the Investors' alleged individual harm is entirely

19  derivative of Mocha Mill's business. Indeed, the opposition brief makes no attempt to argue that the

20  Investors have suffered any harm that affects any of them differently. As a result, they lack standing to

21  assert their own RICO claims. *Sparling v. Hoffman Const. Co.*, 864 F.2d 635, 640 (9th Cir. 1988). To

22  the extent Plaintiffs suggest that the law treats "partners" or "joint venturers" differently than other

23  derivatively injured plaintiffs, they are wrong. *DeSoto v. Condon*, No. SACV08514AHSMLGX, 2008

24  WL 11338151, at *2 (C.D. Cal. Oct. 3, 2008) (dismissing derivative RICO claims of limited partners);

25  *Venture Glob. Eng'g, LLC v. Satyam Computer Servs. Ltd.*, No. 10-15142, 2012 WL 12897904, at *4

26  (E.D. Mich. Mar. 30, 2012) (dismissing derivative RICO claims of joint venture participants).

27         Regarding Monk of Mocha Specialty Coffee Company ("Monk of Mokha"), Plaintiffs do not

28  even try to argue that this entity has a basis to assert an independent RICO claim. Instead, they offer to

- 12 -

1  dismiss these claims "if all Defendants stipulate and the Court agrees that Mocha Mill, as successor to

2  Monk of Mokha, retains all of Monk of Mocha's claims." Opp. at 25. This is an absurd response. The

3  issue is not whether the Moving Defendants (or the Court) will agree to a factual recitation about Mocha

4  Mill's corporate lineage. The question is whether the FAC alleges facts to support Monk of Mocha's

5  thirteen separate causes of action as a plaintiff. It does not, and therefore its claims must be dismissed.

6  **IV.   PLAINTFFS' STATE-LAW CLAIMS MUST BE DISMISSED.**

7       The opposition brief offers no basis to sustain Plaintiffs' deficient state-law claims.

8       *First*, Plaintiffs never dispute the fundamental premise set forth in the Moving Defendants'

9  motion that each of their state-law claims "sounds" in fraud.  *See* Mot. at 22 (citing FAC ¶¶ 239, 244,

10  247, 255, 260, 271, 277, 286, 292, 299, 306). Given this, the shotgun pleading of each of Plaintiffs'

11  state-law claims is improper, and the FAC's failure to meet the particularity requirements of Rule 9(b)

12  requires dismissal of these claims. *Vess*, 317 F.3d at 1106; *Cheery Way*, 2012 WL 1670172, at *5–6

13  (quoting *Swartz*, 476 F.3d at 764). The unfairness of Plaintiffs' pleading tactic is particularly apparent in

14  its state-law claims, which are asserted without any regard to the individual conduct of any of the five

15  distinct Moving Defendants, but instead are simply asserted indiscriminately against them all as

16  "Defendants," *see, e.g.* FAC ¶ 253 (or, as the opposition brief collectively defines them, "POM," Opp. at

17  23). Plaintiffs defend their failure to articulate a basis for the claims against each individual defendant

18  by arguing that, "in the same way a gang not registered with a state cannot escape RICO liability," so

19  too the "POM Enterprise" cannot absolve itself of "RICO liability."  Opp. at 24. But civil lawsuits are

20  not filed against RICO Enterprises—they are brought against natural persons and legal entities, whose

21  individual liability must be asserted with particularity, and not with the indiscriminate smear of

22  collective-enterprise guilt.

23       *Second*, as to any given claim, it is impossible to tell what theory of liability is asserted against

24  any given defendant. In particular, Plaintiffs' conspiracy and aiding and abetting claims are not well

25  pled. *See* Mot. at 22 (citing *Treefrog Devs., Inc. v. Miles & Co., LLC*, No. SACV-1300754-CJC-ANX,

26  2013 WL 12138672, at *2 n.1 (C.D. Cal. July 31, 2013)). Plaintiffs argue that the FAC makes it "very

27  clear" that "POM bears direct liability for its racketeering activity, and conspiracy liability for

28  agreements to commit such … crimes." Opp. at 23. But the FAC is clear as mud. To take just one

- 13 -

confounding example, consider Plaintiffs' Claim Six for "Negligent Misrepresentation." It is asserted against eight different defendants. It alleges "direct" liability for negligent misrepresentations. It also alleges conspiracy liability, based on the nonsensical idea that the defendants conspired to act negligently. It also asserts claims based on the baffling concept of aiding and abetting negligence. Which of the eight defendants is sued on which theory of direct, conspiracy, or aiding and abetting liability (or all of them) is anybody's guess. Which defendants made which negligent representations, or on what topics, is also a mystery.  Which defendants aided and abetted which negligent acts, or how, is never explained.  This cause of action is emblematic of the way Plaintiffs have pled *all* of their state-law claims. What is more, in the face of specific legal authority holding that they must spell out "specific action on the part of each defendant that corresponds to the elements of a conspiracy cause of action … within the sections of the complaint that contain [the] claims for the underlying torts," Mot. at 23 (citing *AccuImage Diagnostics Corp. v. Terarecon, Inc.*, 260 F. Supp. 2d 941, 948 (N.D. Cal. 2003)), the opposition brief is utterly silent. The FAC's state-law claims should be dismissed so that Plaintiffs can plead them with sufficient clarity to enable each defendant to respond to and defend against them.

*Third,* Plaintiffs' state-law causes of action are defective for additional claim-specific and defendant-specific reasons:

**Conspiracy To Commit Negligence/Aiding and Abetting Negligence (Counts Six and Nine).** Plaintiffs do not address, and thus concede, that these claims are oxymoronic and a legal impossibility. Mot. at 23-24 (citing *Noe v. Fed. Deposit Ins. Corp. for Washington Mut. Bank, F.A.*, No. CV-087140-GHK-FMOX, 2010 WL 11549438, at *4 (C.D. Cal. Jan. 15, 2010)).

**Unjust Enrichment (Count Twelve).** Plaintiffs describe a split of authority regarding the validity of this claim, but the most recent California appellate cases are against them.  Mot. at 24-25 (citing *de Havilland v. FX Networks, LLC*, 21 Cal. App. 5th 845, 870 (2018); *Bank of New York Mellon v. Citibank, N.A.*, 8 Cal. App. 5th 935, 955 (2017)).

**Breach of Fiduciary Duty (Count Seven).** Plaintiffs do not even respond to the argument (because there is no colorable response) that a claim for breach of fiduciary duty, or for conspiracy to breach a fiduciary duty, can be alleged against anyone other than Mokhtar. Mot. at 24.

**Conversion (Counts Ten and Eleven).** Plaintiffs say Count Eleven entails the conversion of "almost all of Mocha Mill's assets and opportunities," Opp. at 24, but this is exactly the type of vague allegation that fails to state a claim conversion, because California law requires Plaintiffs to plead this claim by describing "a specific identifiable sum." Mot. at 24 (citing *PCO, Inc. v. Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro, LLP*, 150 Cal. App. 4th 384, 395 (2007)). Plaintiffs argue that Count Ten identifies $140,942 in "embezzled" funds, but the allegations regarding these funds pertain to Mokhtar and no other defendants, let alone the Port of Mokha entities, which did not exist until months after the alleged embezzlement. *See* FAC ¶¶ 91-93.

**"Restitution" (Counts Twelve and Thirteen).** Plaintiffs assert an entitlement to "restitution" in support of their unjust enrichment and unfair competition claims, but the FAC establishes no such right, given that Plaintiffs seek to disgorge funds that come from Port of Mokha's own customers, not from Plaintiffs. *See* FAC ¶ 300 (seeking disgorgement of "all payments, commissions, profits, benefits, year-end performance or other bonuses, and other compensation obtained by Defendants"); *id.* ¶ 309 (seeking disgorgement of "all earnings, profits, compensations, benefits, and other ill-begotten gains").

**Claim-Splitting (Counts Four & Five, Ten & Eleven).** Plaintiffs offer no explanation or justification for the redundant claims asserted against Moving Defendants for "fraud and deceit" and for "fraudulent concealment" (Four and Five) or for "conversion" (Counts Ten & Eleven).

DATED: September 10, 2018                    Respectfully submitted,

                                             CONRAD & METLITZKY LLP


                                             */s/ Mark R. Conrad*
                                             MARK R. CONRAD
                                             GABRIELA KIPNIS

                                             Attorneys for Defendants Port of Mokha, Inc.,
                                             Port of Mokha, LLC, Mokha Foundation,
                                             Mokhtar Alkhanshali, and Ibrahim Ahmad Ibrahim