Michael Shipley (SBN 233674)
Edward Hillenbrand (SBN 310872)
KIRKLAND & ELLIS LLP
333 South Hope Street, Suite 2900
Los Angeles, California 90071
Telephone:     (213) 680-8400
Facsimile:      (213) 680-8500
E-Mail:         michael.shipley@kirkland.com
                edward.hillenbrand@kirkland.com

*Attorneys Blue Bottle Coffee, Inc.*

# IN THE UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

|  |  |
|---|---|
| MOCHA MILL, INC., MONK OF MOCHA SPECIALTY COFFEE PRODUCTION AND EXPORT, INC., IBRAHIM A. ALAELI, YASIR H. KHANSHALI, and ADNAN G. AWNALLAH, <br><br> Plaintiffs, <br><br> v. <br><br> PORT OF MOKHA, INC., PORT OF MOKHA LLC, MOKHA FOUNDATION, BLUE BOTTLE COFFEE, INC., METRA COMPUTER GROUP FZCO, T&H COMPUTERS, INC., MOKHTAR F. ALKHANSHALI, and IBRAHIM AHMAD IBRAHIM, <br><br> Defendants. | Case No. 4:18-cv-02539-HSG <br><br> **BLUE BOTTLE COFFEE, INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT** <br><br> Judge: Honorable Haywood S. Gilliam, Jr. <br> Courtroom: 2, 4th Floor <br> Date: September 27, 2018 <br> Time: 2:00 p.m. |

**TABLE OF CONTENTS**

I.   Plaintiffs Do Not Plead an Actionable RICO Conspiracy Against Blue Bottle. ......................1

    A.   Plaintiffs Must Allege Particular Facts that Plausibly Show Blue Bottle Agreed that Someone Would Conduct the Affairs of an Enterprise Through a Pattern of Racketeering Activity ...............................................................................1

    B.   Following the Procedure Outlined by *Iqbal*, the Complaint Does Not Plausibly Allege an Unlawful Agreement Between Blue Bottle and Mokhtar. ...........................4

        1.   Plaintiffs Make No Effort to Separate Well-Pleaded Facts from Material Not Entitled to a Presumption of Truth. ............................................ 5

        2.   A Case of Implausible Inferences: "Exhibit 1" as Exhibit 1. ......................... 7

        3.   Plaintiffs' RICO Conspiracy Claim Should Be Dismissed for Failure to Allege an Unlawful Agreement. ............................................................... 12

    C.   Plaintiffs' RICO Conspiracy Claim Suffers from Other, Fatal Flaws. .......................13

II.   Plaintiffs' State-Law Claims Against Blue Bottle Lack the Requisite Plausibility.................14

    A.   Plaintiffs Confess to Shotgun Pleading..........................................................................14

    B.   Plaintiffs' State-Law Claims Fail on the Merits. ...........................................................14

III.   The Individual Plaintiffs Lack Standing to Sue Blue Bottle.....................................................15

**BLUE BOTTLE COFFEE, INC.'S REPLY ISO ITS MOTION TO DISMISS THE COMPLAINT**
**CASE NO. 4:18-CV-02539-HSG**

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009)..................................................................................... *passim*

*Bagnell v. Komatsu Dresser Co.,*
   838 F. Supp. 1279 (N.D. Ill. 1993) ...................................................................10

*Bell Atlantic Corp. v. Twombly,*
   550 U.S. 544 (2007)............................................................................................2, 3

*Boon Rawd Trading Int'l Co. v. Paleewong Trading Co.,*
   688 F. Supp. 2d 940 (N.D. Cal. 2010) ............................................................15

*City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.,*
   880 F. Supp. 2d 1045 (N.D. Cal. 2012) ............................................................7

*Eclectic Prop. E. LLC v. Marcus & Millichap Co.,*
   751 F.3d 990 (9th Cir. 2014) ..........................................................................1, 2

*Gilmore v. Gilmore,*
   2011 WL 5517832 (S.D.N.Y. Nov. 10, 2011)...................................................2

*In re GlenFed, Inc. Sec. Litig.,*
   42 F.3d 1541 (9th Cir. 1994) (en banc) ............................................................4

*Glenn v. First Nat'l Bank in Grand Junction,*
   868 F.2d 368 (10th Cir. 1989) .........................................................................14

*Haley v. Macy's, Inc.,*
   263 F. Supp. 3d 819 (N.D. Cal. 2017) ............................................................3

*Howard v. Am. Online, Inc.,*
   208 F.3d 741 (9th Cir. 2000) .......................................................................2, 13

*Imported Liquors Co. v. L.A. Liquor Co.,*
   152 F.2d 549 (9th Cir. 1945) ............................................................................3

*Kendall v. Visa U.S.A., Inc.,*
   518 F.3d 1042 (9th Cir. 2008) ..........................................................................3

*McHenry v. Renne,*
   84 F.3d 1172 (9th Cir. 1996) ............................................................................4

*Neibel v. Trans World Assur. Co.,*
   108 F.3d 1123 (9th Cir. 1997) ..........................................................................2

**BLUE BOTTLE COFFEE, INC.'S REPLY ISO ITS MOTION TO DISMISS THE COMPLAINT
CASE NO. 4:18-CV-02539-HSG**

*Neubronner v. Milken*,
    6 F.3d 666 (9th Cir. 1993) ........................................................................................3

*Religious Tech. Ctr. v. Wollersheim*,
    971 F.2d 364 (9th Cir. 1992) ...................................................................................13

*RSM Prod. Corp. v. Freshfields Bruckhaus Deringer U.S. LLP*,
    682 F.3d 1043 (D.C. Cir. 2012) ................................................................................2

*Salinas v. United States*,
    522 U.S. 52 (1997)....................................................................................................2

*Steckman v. Hart Brewing Inc.*,
    143 F.3d 1293 (9th Cir. 1998) ..................................................................................7

*United Bhd. of Carpenters & Joiners of Am. v. Bldg. & Const. Trades Dep't, AFL-CIO*,
    770 F.3d 834 (9th Cir. 2014) ....................................................................................3

*United States v. Fernandez*,
    388 F.3d 1199 (9th Cir. 2004) ..........................................................................1, 2, 13

*Zavala v. Wal Mart Stores Inc.*,
    691 F.3d 527 (3d Cir. 2012)....................................................................................13

**California Cases**

*Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*,
    7 Cal. 4th 503 (1994) ..............................................................................................14

*Casey v. U.S. Bank N.A.*,
    127 Cal. App. 4th 1138 (2005) ...............................................................................14

*Eng v. Brown*,
    21 Cal. App. 5th 675, 694 (2018) ...........................................................................15

*First Nationwide Savings v. Perry*,
    11 Cal. App. 4th 1657 (1992) .................................................................................15

*Korea Supply Co. v. Lockheed Martin Corp.*,
    29 Cal. 4th 1134 (2003) ..........................................................................................15

*Regent All. Ltd. v. Rabizadeh*,
    231 Cal. App. 4th 1177 (2014) ...............................................................................15

*Westside Ctr. Assocs. v. Safeway Stores 23, Inc.*,
    42 Cal. App. 4th 507 (1996) ...................................................................................14

**Federal Statutes**

15 U.S.C. §§ 78u–4 ............................................................................................................4

18 U.S.C. § 1962 ...................................................................................................1, 2, 4, 13

**California Statutes**

Cal. Comm. Code § 2201(1) ..............................................................................................11

**Rules**

Fed. R. Civ. P. 8 ...........................................................................................................3, 14

Fed. R. Civ. P. 9 ...........................................................................................................3, 14

Fed. R Civ. P. 11 ...............................................................................................................10

Fed. R. Civ. P. 12 ................................................................................................................7

**Secondary Sources**

G. Joseph, *Civil RICO: A Definitive Guide* (4th ed. 2015) ................................................2

Manual for Complex Litigation (4th ed.) ..........................................................................13

Rakoff & Goldstein, *RICO: Civil & Criminal Law & Strategy* (2018 ed.) .........................13

Restatement (Second) of Contracts § 22 ...........................................................................11

Restatement (Second) of Contracts § 39 ...........................................................................11

**BLUE BOTTLE COFFEE, INC.'S REPLY ISO ITS MOTION TO DISMISS THE COMPLAINT
CASE NO. 4:18-CV-02539-HSG**

For some reason, Plaintiffs submitted with their Opposition an exhibit containing a series of emails that Plaintiffs admit form the basis of their RICO conspiracy allegations against Blue Bottle. The emails—incorporated by reference in the Complaint—are ordinary business discussions about the purchase of coffee. These documents, however, are the sole purported basis of information and belief allegations that, for instance, Blue Bottle knew Port of Mokha was a "shadow enterprise," which Plaintiffs allege Blue Bottle knowingly and purposefully assisted in defrauding Mocha Mill out of its business and property. Comparing the emails with the Complaint establishes, beyond any doubt, the key point made in Blue Bottle's Motion: The speculative chasm between the *facts* alleged in the Complaint and the *conclusions* drawn from them is too insurmountably wide to afford any plausible basis to state a claim for relief. The Motion should be granted and the case dismissed.

## I.    Plaintiffs Do Not Plead an Actionable RICO Conspiracy Against Blue Bottle.

### A.    Plaintiffs Must Allege Particular Facts that Plausibly Show Blue Bottle Agreed that Someone Would Conduct the Affairs of an Enterprise Through a Pattern of Racketeering Activity.

The principal count against Blue Bottle is that it violated 18 U.S.C. § 1962(d) by conspiring with Mokhtar to violate § 1962(c). *See* ¶¶ 210–228.[1] The key question, then, is: Did Blue Bottle "knowingly agree to facilitate a scheme which includes the operation or management of a RICO enterprise[?]" *United States v. Fernandez*, 388 F.3d 1199, 1230 (9th Cir. 2004) (quotations omitted). To allege that, Plaintiffs must offer *particular facts* meriting plausible inferences that: (1) Blue Bottle agreed someone would commit two or more predicate acts, or (2) Blue Bottle agreed those acts would be committed as part of a pattern, and (3) Blue Bottle was "aware of the essential nature and scope" of the alleged enterprise. *See* Mot. 16.

"When companies engage in . . . transactions that are facially legitimate . . . and operate legitimate businesses for years thereafter, and otherwise act as routine participants in American commerce, a significant level of factual specificity is required to allow a court to infer reasonably that such conduct is plausibly part of a fraudulent scheme." *Eclectic Prop. E. LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996, 997–98 (9th Cir. 2014). An inference of an unlawful agreement is

---

[1]   Citations to "¶" are to the operative First Amended Complaint, dated June 3, 2018, which will be generally referred to as the "Complaint."

**BLUE BOTTLE COFFEE, INC.'S REPLY ISO ITS MOTION TO DISMISS THE COMPLAINT CASE NO. 4:18-CV-02539-HSG**

*not* plausible unless plaintiffs show "something more" that "tend[s] to exclude a plausible and innocuous alternative explanation." *Id.* at 998. Absent "something more," courts will not infer a defendant "knew of the [] conspiracy and agreed to foster its goals" from a defendant's contracting in the ordinary scope of its business, even when the defendant's counterparty is engaged in unlawful activity and the defendant has some circumstantial awareness of its shady practices. *See RSM Prod. Corp. v. Freshfields Bruckhaus Deringer U.S. LLP*, 682 F.3d 1043, 1048 (D.C. Cir. 2012).

Plaintiffs do not dispute that they bear the burden of pleading each of the three elements of agreement to allege a § 1962(d) claim. They certainly cite no authority otherwise.[2] They do appear, however, to take issue with the proposition that they need to allege "something more" than facts consistent with ordinary self-interested business activity. *See* Opp'n 15. But their arguments make no sense. They argue, for instance, that the "something more" rule posited in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) is limited to antitrust cases. Opp'n 15. Of course, that was emphatically rejected by *Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009), and the Ninth Circuit has expressly applied the rule to a RICO claim. *See Eclectic Prop.*, 751 F.3d at 998–99. Plaintiffs only response to *Eclectic Properties* is a tautological assertion that "Plaintiffs' inferences in that case were clearly '*implausible*.'" Opp'n 15. Of course, the inferences were implausible *because* they were merely consistent with innocent conduct, lacking "something more." *Eclectic Prop.*, 751 F.3d at 1000; *see* G. Joseph, *Civil RICO: A Definitive Guide* 278 (4th ed. 2015) (explaining that identifying "something more" "is as good a starting point as any for alleging a viable conspiracy claim").

The fundamental problem with the Opposition, however, is its refusal to grapple with the

---

[2]   Plaintiffs chastise Blue Bottle, *see* Opp'n 22, for citing *Howard v. Am. Online, Inc.*, 208 F.3d 741 (9th Cir. 2000), which Plaintiffs say relied on *Neibel v. Trans World Assur. Co.*, 108 F.3d 1123, 1127 (9th Cir. 1997), which was implicitly overruled in part by *Salinas v. United States*, 522 U.S. 52 (1997), as recognized by *Fernandez*, 388 F.3d at 1230. Of course, *Fernandez* cites *Howard* for the same essential points that Blue Bottle's Motion does, *see id.* at 1230, and neither *Fernandez* nor any other court has suggested its overruling. *Howard* has been cited by courts 411 times—290 times since *Fernandez*—including 36 times by the Ninth Circuit. The only decision even mildly critical of *Howard* is a 2011 opinion from a New York district court on an issue irrelevant to this case. *See Gilmore v. Gilmore*, 2011 WL 5517832, at *1 (S.D.N.Y. Nov. 10, 2011). In any event, the Motion explains that § 1962(d) does not require Blue Bottle to agree that *Blue Bottle itself* would participate in enterprise's management—the point from *Neibel* that was disapproved by *Fernandez*. The Motion cites *Fernandez* for that very point. *See* Mot. 14.

well-established rule that "[b]are assertions of 'agreement,' or identifications of particular persons as 'co-conspirators,' will not suffice" "to allege conspiracy plausibly." *United Bhd. of Carpenters & Joiners of Am. v. Bldg. & Const. Trades Dep't, AFL-CIO* ("*UBC*"), 770 F.3d 834, 842 (9th Cir. 2014) (applying rule to RICO conspiracy); *see also Twombly*, 550 U.S. at 564; *Iqbal*, 556 U.S. at 680. The Ninth Circuit has recognized for three-quarters of a century that bare assertions that parties "agreed" are "mere expressions of legal conclusions." *Imported Liquors Co. v. L.A. Liquor Co.*, 152 F.2d 549, 552 (9th Cir. 1945). More recently, it held that statements like "the acquiring banks 'knowingly, intentionally and actively participated in an individual capacity with the Consortiums in charging the fixed minimum merchant discount fees'" and "there is an agreement among all financial institutions to charge a minimum merchant discount fee set by the Consortiums" are "nothing more than . . . conclusory statement[s]." *See Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1048 (9th Cir. 2008). Thus, to get past the conclusion, a "complaint must answer the basic questions: who, did what, to whom (or with whom), where, and when?" *UBC*, 770 F.3d at 842. As is discussed in the Motion and below, the Complaint comes nowhere close to alleging *facts* that answer these questions in a way that excludes completely plausible, innocent commercial activity by Blue Bottle.

Plaintiffs take issue with Blue Bottle spending few of the 25 pages it had to address thirteen counts and multiple liability theories to exhaustively recite the Rule 8(a) and 9(b) pleading standards in which the Court is undoubtedly well versed. Blue Bottle did, however, explain case-specific standards as applicable here. *See* Mot. 8. In any event, as *Iqbal* explains—and Plaintiffs do not—to decide a motion to dismiss based on the adequacy of factual allegations, courts should employ a "two-pronged approach." 556 U.S. at 679. The analysis begins by "identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* As noted, "conclusions" include bare assertions of allegedly unlawful agreements, as well as of a defendant's knowledge, motive, or intent. *See id.* at 681. And when Rule 9(b) applies—as Plaintiffs concede it does here—the non-presumption of truth further extends to: (1) non-particular allegations that sound in fraud; (2) information and belief allegations that lack a factual basis from which they are drawn; and (3) allegations that impermissibly "lump" various defendants into an undifferentiated mass. *Neubronner v. Milken*, 6 F.3d 666, 671 (9th Cir. 1993); *Haley v. Macy's, Inc.*, 263 F. Supp. 3d 819,

3

824 (N.D. Cal. 2017). Once those matters are excluded, the Court should then look what "well-pleaded factual allegations" remain, "assume their veracity[,] and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. 679.

Especially with the § 1962(d) count, the Opposition makes no effort to do that analysis. It instead employs the same technique as the Complaint. In two sentences, it makes broad-brush conclusory assertions of conspiracies and criminal conduct. *See* Opp'n 23. But it does not *explain* why or how those conclusions tie back to any alleged *facts*, as applied to the elements of the claim, offering instead a block citation to 68 undifferentiated paragraphs from the Complaint. *Id.*

So it seems that Plaintiffs invite the Court—perhaps with the assistance of Blue Bottle—to wade back through the pages of "facts" set out in an earlier section of the Opposition and puzzle out which of those facts are actually *facts* (as opposed to conclusions, speculation, or unsupported information and belief) and decide how and if they line up to the conclusions in the Opposition to sufficiently satisfy the elements of Plaintiffs' claims. It is inappropriate for Plaintiffs to saddle Blue Bottle and the Court with that burdensome task. *Accord In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1554 (9th Cir. 1994) (en banc) ("A complaint is not a puzzle, however, and we are loathe to allow plaintiffs to tax defendants, against whom they have levelled very serious charges, with the burden of solving puzzles in addition to the burden of formulating an answer to their complaint."), *superseded by statute on other grounds by* 15 U.S.C. §§ 78u–4; *McHenry v. Renne*, 84 F.3d 1172, 1179 (9th Cir. 1996) ("Prolix, confusing complaints such as the ones plaintiffs filed in this case impose unfair burdens on litigants and judges."). Indeed, the Court has discretion to require Plaintiffs to re-plead to segregate the actual facts, to explain what factual or legal inferences are drawn from them, and then to allege how those facts and inferences satisfy each element of Plaintiffs' claims on a claim-by-claim and Defendant-by-Defendant basis. *McHenry*, 84 F.3d at 1179.

    **B.**    **Following the Procedure Outlined by *Iqbal*, the Complaint Does Not Plausibly Allege an Unlawful Agreement Between Blue Bottle and Mokhtar.**

Applying the two-pronged standard set out in *Iqbal*, once facts that pertain to Blue Bottle's participation in the alleged conspiracy are culled out of the conclusions, the defendant-lumping, and

**BLUE BOTTLE COFFEE, INC.'S REPLY ISO ITS MOTION TO DISMISS THE COMPLAINT CASE NO. 4:18-CV-02539-HSG**

the baseless information and belief, there's no foundation for the claims the Complaint purports to bring against Blue Bottle.

**1.      Plaintiffs Make No Effort to Separate Well-Pleaded Facts from Material Not Entitled to a Presumption of Truth.**

The Motion performed the *Iqbal* analysis. Blue Bottle painstakingly waded through the voluminous allegations of the complaint, excluded material not presumed true,[3] and explained how the remaining well-pleaded facts did not support a plausible inference that Blue Bottle had, in fact, engaged in a RICO conspiracy with Mokhtar. *See* Mot. 14–15. On the other hand, the Opposition declines to confront that analysis. It does not, for instance, explain what other well-pleaded facts were excluded from Blue Bottle's listing. Nor does it explain why the well-pleaded facts identified by Blue Bottle actually merit the inference of conspiracy that Plaintiffs claim. Instead, Plaintiffs congratulate the length of the Complaint, *see* Opp'n 1, 4, 5, and declare how "detailed" it is, over and over again. (Some version of the adjective or verb "detail" is employed 32 times in 26 pages.) But length is not particularity; merely saying something is detailed does not make it meaningfully so.

In lieu of drilling down to the well-pleaded facts, the Opposition regurgitates "facts" from the Complaint as an undifferentiated mass of facts, baseless allegations, conclusions, and information and belief. It often proclaims that Plaintiffs have "detailed" these "facts" and cites scores of paragraphs from the Complaint (many of which themselves are conclusions or matters stated on information and belief) as support.[4] On other occasions, it limits citations to a single paragraph, but conveniently omits that the Complaint alleges these "facts" only on information and belief. (This

---

[3]   To assist the Court, Blue Bottle annotated § V.J of the Complaint—the section containing the purported "factual" allegations against Blue Bottle—highlighting the material that Blue Bottle contends is not entitled to a presumption of truth under *Iqbal*, so that the Court can evaluate the plausibility of any well-pleaded allegations that remain. A copy of that annotation is attached as Exhibit A to this Reply.

[4]   *See, e.g.*, Opp'n 12 (claiming that "Plaintiffs allege in great detail, citing documents and emails, that, in order to steal Mocha Mill's *most premium* coffee, Mokhtar and his RICO associates devised two *schemes to defraud* Plaintiffs into selling that coffee to a straw buyer arranged by POM" (emphasis original) (citing 54-paragraph block as support)); Opp'n 17 (claiming that "[t]hrough this fraud conspiracy, coordinated with Blue Bottle (helping POM set up the ruse for the straw sale) and T&H/Metra (making the straw purchase for POM), POM succeeded in defrauding Plaintiffs out of their most premium coffee, siphoning the tremendous first-mover advantage and resulting business relationships (the entire business, really) to POM" (citing 68-paragraph block as support)).

tactic is especially pernicious in the Opposition's three paragraphs addressed to Blue Bottle's entry

into the alleged conspiracy.[5]) On the other hand, just like the FAC, the few paragraphs that address

allegations of actual *facts* recount facts that merit no inference of criminal agreement on the part of

Blue Bottle. *See* Opp'n 10 (explaining facts about Blue Bottle's "economic motivation" to scheme

with Port of Mokha—such as the fact that Blue Bottle's CEO though that the coffee tasted good[6]—

---

[5]   **(1)** *Compare* Opp'n 12 ("Blue Bottle was very anxious ('counting the days,' in fact) to market and sell Mocha Mill coffee as soon the first shipment arrived in Oakland, which was slated for February"), *with* ¶ 147 ("*Plaintiffs are informed and believe* that Blue Bottle was extremely anxious . . . ."); **(2)** *compare* Opp'n 12 ("Plaintiffs explain that in and after November 2015, Mokhtar told Freeman about the RICO enterprise and explained the fraud scheme to steal Mocha Mill's coffee and supplant Mocha Mill with POM, because Mokhtar needed Blue Bottle's complicity and help." (citing ¶ 149)), *with* ¶ 149 ("*Plaintiffs are informed and believe* that, in and after November 2015, Mokhtar told Freeman . . . ."); **(3)** *compare* Opp'n 12–13 ("Freeman was naturally concerned about being able to obtain Mocha Mill's coffee without Mokhtar at the company, particularly if Mokhtar left on bad terms. Mokhtar assured Freeman that with Blue Bottle's help, POM would be able to steal the coffee from Mocha Mill by deceiving Mocha Mill into believing that Blue Bottle was unwilling to buy the coffee." (citing ¶ 150)), *with* ¶ 150 ("*Plaintiffs are informed and believe* that Freeman was naturally concerned . . . ."); **(4)** *compare* Opp'n at 13 ("Mokhtar convinced Freeman that it was in Blue Bottle's best interest to participate in the scheme, assuring Freeman that if Blue Bottle joined the conspiracy, it would receive the coffee from POM along with several significant benefits. . . ." (citing ¶ 151)), *with* ¶ 151 ("*Plaintiffs are informed and believe* that Mokhtar convinced Freeman . . . ."); **(5)** *compare* Opp'n 14 ("Any uncertainty from Mokhtar's impending departure put investor relationships at peril, which is a significant motivator for any CEO. Blue Bottle was thus highly motivated to join POM's fraud scheme and see them through." (citing ¶ 155)), *with* ¶ 155 ("*Plaintiffs are informed and believe that* . . . [a]ny uncertainty concerning Mokhtar's impending departure put investor relationships in peril and caused Freeman fear . . . . Blue Bottle was highly motivated to join the conspiracy and help it succeed."); **(6)** *compare* Opp'n 15 (listing "significant benefits" Blue Bottle would receive (citing ¶ 151)), *with* ¶ 151 (listing those benefits in a paragraph that begins with "*Plaintiffs are informed and believe*"); and **(7)** *compare* Opp'n 15 ("Plaintiffs allege that Freeman and Blue Bottle agreed to participate in the POM wire fraud conspiracy to deceive Plaintiffs into parting with their coffee, knowing of POM's existence and objective." (citing ¶ 156)), *with* ¶ 156 ("*Plaintiffs are informed and believe* that Freeman, on behalf of Blue Bottle, agreed to join the RICO conspiracy."). (All emphasis added.)

[6]   Indeed, the Complaint and Opposition recount Mr. Freeman's enjoyment of the coffee in excruciating and repetitive detail. While the Complaint cites the same quote from Mr. Freeman twice, the Opposition outdoes it by citing that same quote three times. *See* ¶¶ 106, 145; Opp'n 10, 11, 14. But that fact does not merit the inferences Plaintiffs draw from it. For instance, Mr. Freeman's April 2015 statement that he was "***counting the days***" until the coffee became available, ¶ 145 (three forms of emphasis original), appears to be the only factual basis for Plaintiffs' theory that—over a year later—Blue Bottle waited to make its purchase in May 2016, as opposed to in February 2016, because it was a knowing participant in an elaborate scheme to trick Plaintiffs into selling their coffee to a straw purchaser. *See* Opp'n 12. That is not a reasonable inference to draw.

which are not meaningfully different from an economic motivation to buy the coffee in an ordinary transaction, and thus show no motive to commit a crime or tort)[7].

This manifest failure to sort factual wheat from conclusory chaff means Plaintiffs have not engaged in the analysis that *Iqbal* and subsequent cases require.

### 2.    A Case of Implausible Inferences: "Exhibit 1" as Exhibit 1.

The Court needn't take Blue Bottle's word on the flaws in Plaintiffs' pleading technique. Plaintiffs (perhaps inadvertently) have offered to show their work in action. Along with their Opposition, Plaintiffs submitted a curious declaration from their attorney, attaching "Exhibit 1"—a cover letter and a pair of email threads between Blue Bottle personnel and various people affiliated with Mokhtar, Mocha Mill, and Port of Mokha. The cover letter explains that the emails form the factual basis for ¶¶ 160–63. *See* Ex. 1 at 5–6 (all page citations to the ECF pagination).

It is, suffice it to say, unusual for a plaintiff to submit evidence with a Rule 12(b)(6) opposition. Indeed, courts have struck declarations as improper. *See, e.g.*, *City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*, 880 F. Supp. 2d 1045, 1060 (N.D. Cal. 2012). But Plaintiffs' acknowledgement that paragraphs of the Complaint are based on these emails permits the Court to reject the truth of any conclusory allegations supposedly derived from them that are contradicted by them. *See Steckman v. Hart Brewing Inc.*, 143 F.3d 1293, 1295-96 (9th Cir. 1998). Comparing the emails, on one hand, with the information and belief allegations Plaintiffs contend they support, on the other hand, illustrates the wildly implausible nature of the inferences Plaintiffs attempt to draw.

Exhibit 1 is two separate email threads. In the first (Ex. 1 at 8–10), Blue Bottle's coffee buyer Charlie Habegger emails Mokhtar at an @mochamill.com email address about meeting in Oakland

---

[7]    Even some of these facts are alleged on speculative information and belief that, in several respects, turns out to be demonstrably wrong. For instance, the Opposition claims that Blue Bottle "us[ed] its expected special access to Mocha Mill's premium Yemeni coffee" to raise $70 million in capital. Opp'n 10; ¶ 108 (alleging that fact on information and belief). But the closing of Blue Bottle's $70 million raise was publicly announced in June 2015. *See* goo.gl/xRmZHH; *see also Iqbal*, 556 U.S. at 667 (taking unpleaded but indisputable factual context into account in assessing plausibility). That was five months *before* Plaintiffs allege (in a statement contradicted by an exhibit they submit, and belied by the fact that they alleged thirteen counts but not breach of contact) that a sale "in principle," *i.e.* Blue Bottle's "special access" was arranged. ¶ 136. So, to correct Plaintiffs' false analogy, it would be "implausible, nearly impossible" for Apple to "mention a breakthrough iPhone at an investor event" at a time when it was only making the Newton. *Cf.* Opp'n 11.

1    on March 5, 2016. After the meeting, Mokhtar responds to thank Habegger for his time. Mokhtar

2    references some proposals for "pricing and long term projects," and discusses the "Port of Mokha

3    story" to market the coffee. Habegger responds with further discussions related to pricing, and Blue

4    Bottle potentially "pre-financing the next harvest." Mokhtar—who was in Yemen—then forwards

5    the email to Ibrahim at an @gmail.com account. The email at the top of the thread reads as if it is

6    Ibrahim's response to Habegger on pricing and financing. But the address information shows it was

7    sent from Ibrahim to Mokhtar at an @mochamill.com address, copying Stephen Ezell, also at an

8    @mochamill.com address. Habegger is not actually copied.

9         The second (Ex. 1 at 11), is a March 26, 2016 email from Clare McParland—assistant to

10   Blue Bottle CEO James Freeman. The recipient addresses are not visible, but the salutation is "Hello

11   Mokhtar (and team)!" The email suggests a time for Mokhtar to meet with Sarah Greib and Vera

12   Kachouh—marketing writers at Blue Bottle. Ibrahim responds the same day, explaining that

13   Mokhtar is travelling, and proposes some dates. He adds he is "adding the team's work emails." The

14   cc: line shows addressees to Mokhtar, Ezell, and Ibrahim at both @mochamill.com and

15   @portofmokha.com email addresses, and to Greib, Kachouh and Habegger at Blue Bottle.

16        The Opposition cites Exhibit 1 for the proposition that "[a]t the time of the schemes, Blue

17   Bottle knew that POM existed only as a shadow enterprise run by Mocha Mill's CEO, as evidenced

18   by emails between the two companies." Opp'n 14. How, precisely, is it even *possible*, much less

19   plausible to draw an inference that Blue Bottle knew Port of Mokha was a "shadow enterprise" from

20   Exhibit 1? In context, the interchangeable "work email" domains, the similarity of names, and the

21   identical membership of the "team" make it far more plausible that, to the extent anyone at Blue

22   Bottle even noticed the different email addresses, they considered Mocha Mill and Port of Mokha to

23   be affiliated or even the same company under common control or in the midst of rebranding.

24        Similarly farfetched is the claim that Exhibit 1 merits some inference that "there are actual

25   emails evidencing knowledge of the fiduciary relationships, to further support conspiracy." Opp'n

26   24. How, precisely, do the emails in Exhibit 1 show that Blue Bottle was aware of some fiduciary

27   relationship between Mokhtar and Plaintiffs? Because Mokhtar had, and sometimes used, a

28   @mochamill.com email address? From which he described the "Port of Mokha" story? And that he

8

and members of his "team" also have emails at both @mochamill.com and @portofmokha.com domains? Again, instead of the sinister inference that Blue Bottle knew and participated in a scheme whereby Mokhtar was engaged in racketeering to steal Mocha Mill's business, the innocent—and far more plausible—inference is that Blue Bottle believed it was engaged in ordinary business discussions with a fledgling supplier, perhaps in the process of a name change to take advantage of recent publicity regarding Mokhtar's escape from Yemen.

Plaintiffs, however, invite the most scrutiny when they take issue with "Blue Bottle['s] ridicule[ of] Plaintiffs' information and belief allegations in conclusory fashion, asking the Court to summarily ignore them, even though they are based on sound reason and documentation," by citing *"See, e.g.*, Ex.1 vis-à-vis FAC ¶¶ 160–65." Opp'n 9. That claim merits testing.

First, ¶ 160 claims that "Plaintiffs are informed and believe that, in furtherance of the scheme, on May 5, 2016, Habegger met Mokhtar at Mokhtar's residence to discuss the Port of Mokha scheme and fraudulent acquisition of Mocha Mill's coffee so that it could be sold under the Port of Mokha brand. At the time, Habegger was well aware that Mokhtar was Mocha Mill's CEO with a fiduciary duty to his company." Are Exhibit 1's emails really "sound reason and documentation" "vis-à-vis" that allegation? Sure, it's fair to say there was a meeting. But from what other than their own febrile imaginations do Plaintiffs draw the inference that any "scheme" or "fraudulent acquisition" was the subject of any discussion at the meeting? Certainly not the email.

Then, ¶ 161 alleges that "on [March[8]] 7, 2016, Mokhtar emailed Habegger concerning 'pricing and long term projects' with Port of Mokha. Mokhtar promised to be 'flexible with the pricing of the single farmer lots.' Mokhtar also discussed Blue Bottle's opportunity to invest in future harvesting efforts, couching it as 'our long term strategy' to develop the Yemeni Hayma coffee region and 'the story we can both tell together about these farmers.'" That is a reasonably fair description of an email in Exhibit 1.

But the paragraph then continues (on information and belief): "Both Habegger and Freeman knew that Mokhtar was CEO of Mocha Mill at the time and that the coffee belonged to Mocha Mill,

---

[8] The Complaint says "May," but in the cover letter in Exhibit 1, whereby Plaintiffs purport to correct typographical errors in their Complaint without going through the trouble of amending it, Plaintiffs explain that they meant to say "**March***, not May.*" (multiple forms of emphasis original).

9

not Port of Mokha. Both knew that their plans hinged on the fraud. Port of Mokha and Blue Bottle purposely left Plaintiffs in the dark." No reasonable trier of fact could *ever* draw this inference from the text of the quoted email. What inference of fraud can be drawn? How do they support that Mr. Freeman—who is not *on* any of the emails—knew anything? How do they show that Blue Bottle— which was communicating with the ostensible CEO of Mocha Mill and several others on @mochamill.com addresses—*knew* that Mocha Mill was being "left in the dark"? These conclusions are *not*, as Plaintiffs attest, "based on sound reason and documentation." Opp'n 9. To draw a connection between the emails and these conclusions requires one to engage in either conspiracy theorizing—taking "the random paths of wild improbabilities rather than the straight lines of reasonable inferences," *Bagnell v. Komatsu Dresser Co.*, 838 F. Supp. 1279, 1291 (N.D. Ill. 1993)— or perhaps, just making things up. *See* Fed. R Civ. P. 11(b)(3).

Even worse is ¶ 162. It explains, factually, "on [March] 13, 2016, Habegger emailed Mokhtar stating 'how this first round will set the foundation for an annual project [between Blue Bottle and Port of Mokha] . . .' Habegger went on to write, 'The next shipment that lands, which we know is going to have coffees just as beautiful (or better), will be timed with all your media work and be a slam!' Habegger stated, 'I spoke with James [Freeman] last week as I mentioned, and we are both 100% on board for pre-financing next harvest.'" Again, that is a reasonable description of the March 13, 2016 email between Habegger and Mokhtar.

But ¶ 162 also alleges (on information and belief) "that, by this time, Blue Bottle was fully invested in Mokhtar's fraud scheme and Blue Bottle's plans depended on Mokhtar being able to successfully defraud Mocha Mill out of its coffee." And that when the email was sent, "Habegger was well aware that Mokhtar was Mocha Mill's CEO owing a fiduciary duty to Mocha Mill. Port of Mokha and Blue Bottle purposely left Plaintiffs in the dark to ensure success of the RICO conspiracy." Again, it is difficult to comprehend how Plaintiffs can claim in good faith that the conclusions they draw have any logical connection to the actual communications.

And then ¶ 163 alleges, factually, that "on May 26, 2016, Clare McPharland of Blue Bottle and Ahmad of the RICO Enterprise [i.e., Port of Mokha, *see* ¶ 120] exchanged emails, copying Mokhtar and Ezell, to discuss Port of Mokha's marketing and 'logistics' with Blue Bottle." Okay.

10

1    But yet again, ¶ 163 alleges (on information and belief) that at "the time, Blue Bottle was aware that

2    Mokhtar was Mocha Mill's CEO, Ezell was a Mocha Mill Director, and that the coffee still belonged

3    to Mocha Mill. Port of Mokha and Blue Bottle purposely left Plaintiffs in the dark to ensure success

4    of the RICO conspiracy." There is zero support for that assertion in the actual email.

5            Finally, ¶¶ 164 and 165 say that "Plaintiffs are informed and believe that, over the next

6    several months, Blue Bottle and Enterprise members continued to affirmatively delay the launch and

7    sale of the coffee and keep their dealings hidden from Plaintiffs, while planning a rollout of Mocha

8    Mill's coffee under the Port of Mokha brand, fully expecting the coffee to be stolen through fraud.

9    Blue Bottle helped Mokhtar and Ahmad plan and execute the scheme, thereby exercising a level of

10   management and control of the Enterprise," ¶ 164, and that " [t]he scheme and Blue Bottle's part in

11   it had the intended effect of deceiving Plaintiffs into parting with their most premium coffee for a

12   fraction of what it was worth and allowing Port of Mokha to steal Mocha Mill's business," ¶ 165. Do

13   the emails discuss anything at all about delay? Or hiding their dealings from Mocha Mill (again, in

14   communications with a "team" with @mochamill.com email addresses)? Or intending to deceive

15   Plaintiffs? Or stealing anything?[9] The answer, unequivocally, is "no."

16           The Complaint is riddled with allegations that employ this bait-and-switch technique.

17   Plaintiffs quote or describe completely mundane business activity at a reasonable (sometimes even

18   excessive) degree of particularity. And then, generally on information and belief, they make

19   conclusory and highly inculpatory claims having little or no basis in the well-pleaded facts alleged.

20   No doubt, conspiracies are often proven by circumstantial evidence. But prosaic discussions about

21   coffee, or prices, or marketing, or PR, or Dave Eggers are not circumstantial evidence of a

22   conspiracy—which requires the parties to actually come to an agreement for some unlawful end.

23           It would be fair to infer that Plaintiffs' submitted Exhibit 1 as their *best* example of factual

24   ---

[9]    The Complaint also refers to the March 5–19 email discussion in ¶ 175e, which claims that the
25   emails represented an "agreement in principle" for Blue Bottle to "buy Mocha Mill coffee." But the
     emails are, at best, a negotiation consisting of an exchange of offers and counteroffers with no
26   acceptance. *See* Ex. 1 at 8–11. That, of course, is not an agreement, in principle or otherwise. *See*
     Restatement (Second) of Contracts §§ 22, 39. Perhaps Plaintiffs' failure to grasp this basic point of
27   contract law also informs the Complaint's baseless conclusory claim that "the coffee had [also] been
     sold in principle" by *Mocha Mill* in November 2015. *See* ¶¶ 136, 148; *accord* Cal. Comm. Code
28   § 2201(1) (sales of goods over $500 must be evidenced by some writing).

material that underpins their legal conclusions and assertions on information and belief. Indeed, although the Opposition declares over and over again the facts alleged are drawn from "specific emails," Opp'n 1, 9–17, 23, 24, other than the emails in Exhibit 1 quoted in ¶¶ 161–63, the Complaint is, to say the least, sparse in its quotations from other emails. If mundane emails about marketing show a "shadow enterprise," what kind of conspiratorial inferences do Plaintiffs draw from the material they do not quote in the Complaint or file with the Court?

### 3. Plaintiffs' RICO Conspiracy Claim Should Be Dismissed for Failure to Allege an Unlawful Agreement.

After shearing the Complaint of material not entitled to a presumption of truth, the remaining well-pleaded allegations do not merit a plausible conclusion that Blue Bottle agreed that anyone would commit any crimes, much less to commit them in the service of an ongoing criminal scheme. Indeed, the Complaint does not allege any facts suggesting that Blue Bottle even knew Mocha Mill and Port of Mokha were distinct entities under different ownership[10]—much less that the latter was some criminal scheme bent on defrauding the other.

Stripped of the material not presumed to be true and considering the *facts* alleged, Plaintiffs' theory is that Blue Bottle had some incentive, everything else aside, to complete a purchase in March, instead of the middle of May, because Mr. Freeman really liked the coffee and because fresh beans are better. *See* ¶¶ 145–46. To Plaintiffs, that delay, along with the fact that some Blue Bottle personnel exchanged emails with persons who simultaneously used both @mochamill.com and @portofmokha.com email addresses, means that Blue Bottle must have conspired with Mokhtar to engage in a complex racketeering scheme predicated on wire fraud.

That makes no sense. To the contrary, the only agreement the Complaint adequately alleges was an agreement by Blue Bottle to buy coffee in a deal brokered by Mokhtar. That is not the stuff

---

[10]   The Opposition takes issue with the Motion's assertion that the Complaint does not allege any facts that suggest Blue Bottle even knew the Individual Plaintiffs existed. Opp'n. 17. Plaintiffs' cavil, however, does not cite any of their purported "emails with *names*, *dates*, and *content*" (emphasis original), showing Blue Bottle had such knowledge. The only allegation they cite—that the Individual Plaintiffs attended an industry conference in *2014*, where they "interacted with industry insiders"—does not mention Blue Bottle. ¶ 81. Indeed, the Complaint makes no allegations whatsoever regarding Blue Bottle prior to 2015. *Cf.* ¶ 107 (alleging that Blue Bottle interacted with *Mokhtar*, not the Individual Plaintiffs, at the same industry conference the following year).

of a RICO conspiracy; there is no "something more." And since Plaintiffs have not offered any additional *facts* that could serve as a basis to amend, the Court should grant the Motion without leave and dismiss the § 1962(d) claim with prejudice.[11]

### C.    Plaintiffs' RICO Conspiracy Claim Suffers from Other, Fatal Flaws.

As noted in the Motion, Plaintiffs' § 1962(d) conspiracy claim also fails because Plaintiffs have not alleged an actionable count of substantive RICO against any primary Defendant. *See Religious Tech. Ctr. v. Wollersheim*, 971 F.2d 364, 367 n.8 (9th Cir. 1992) ("Because we find that [plaintiff] has failed to allege the requisite substantive elements of RICO, the conspiracy cause of action cannot stand."). Given space constraints, Blue Bottle will leave it to the primary Defendants to rebut Plaintiffs' arguments on those theories, and adopts them as its own herein.

But one thing particular to Blue Bottle merits mention. There are no allegations *at all* that Blue Bottle knew of, much less agreed to, whatever unlawful activity or scheming allegedly occurred before November 2015, when the scheme to supplant Mocha Mill with Port of Mokha was allegedly hatched. *See* ¶ 137; *see also* Opp'n 1. So even if the Complaint alleges that Blue Bottle agreed to something—it does not—Blue Bottle could not have agreed to help anything but an eight-month-long effort to defraud Mocha Mill out of a single shipment of coffee. Because that scheme alone, however, lacks the continuity to form a "pattern," *see* Mot. 12–13, any agreement to participate in it cannot be a "knowing[ ] agree[ment] to facilitate a scheme which includes the operation or management *of a RICO enterprise*." *Fernandez*, 388 F.3d at 1230 (emphasis added); *see also Zavala v. Wal Mart Stores Inc.*, 691 F.3d 527, 539 (3d Cir. 2012). If, unaware to Blue Bottle, there were a larger, longer scheme that somehow constituted a "pattern," the Complaint nowhere alleges that Blue Botte was aware of its "essential scope and nature[.]" *Howard*, 208 F.3d at 751. Thus, whatever conspiracy Blue Bottle was allegedly party to would not violate § 1962(d).

---

[11]   If the Court is inclined to permit amendment, it should require Plaintiffs to plead their claims in a more straightforward manner. To aid that, the Court can and should also require Plaintiffs to submit a "RICO case statement," as is required in other jurisdictions. S*ee* Manual for Complex Litigation (4th ed.) § 40.54 (providing a sample order); *See* Rakoff & Goldstein, *RICO: Civil & Criminal Law & Strategy* § 7.02[2] & nn. 25, 26 (2018 ed.) (collecting cases requiring statements).

13

1  **II.    Plaintiffs' State-Law Claims Against Blue Bottle Lack the Requisite Plausibility.**

2      **A.    Plaintiffs Confess to Shotgun Pleading.**

3          Plaintiffs contend that each of their state law claims arise from the "same set of operative

4  facts," so they "deemed it unnecessary" to distinguish which facts establish each element, of each

5  claim, against each Defendant, under each theory of liability. Opp'n 23. That, however, concedes the

6  improper "shotgun pleading" identified in the Motion. *See* Mot. 17–18. Plaintiffs do not and cannot

7  provide any authority that permits them to lump all defendants and liability theories into catch-all

8  accusations like "Defendants actively engaged in, participated in, agreed to, aided and abetted,

9  conspired in, and/or further" each alleged count. *See* ¶¶ 242, 247, 254, 260, 269, 277, 292, 298. [12]

10  Rules 8(a) and 9(b) apply regardless of whether Plaintiffs "deemed it necessary" to comply.

11     **B.    Plaintiffs' State-Law Claims Fail on the Merits.**

12         Plaintiffs' efforts to save their remaining state-law claims are equally unavailing. First, they

13  do not even attempt a substantive response to Blue Bottle's arguments for dismissing their fraud,

14  concealment, and negligent misrepresentation claims (although they concede that Blue Bottle did not

15  make any material misrepresentations). *See* Opp'n 24. Instead, they reference § III.B.4 of their

16  Opposition, which makes no effort to even identify specific material misrepresentations, much less

17  explain any factual basis to infer that Blue Bottle substantially assisted or conspired to further them.

18         Second, Plaintiffs concede that Blue Bottle owed no fiduciary duties to them and thus could

19  not conspire to breach them either. *See Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th

20  503, 511 (1994). For aiding and abetting, they address only Blue Bottle's alleged knowledge of *a*

21  *duty*. *See* Opp'n 24. They say nothing at all about how Blue Bottle knew of a breach, much less how

22  it substantially assisted a breach. *See Casey v. U.S. Bank N.A.*, 127 Cal. App. 4th 1138, 1153 (2005).

23         Third, on tortious interference, Plaintiffs point only to generic "foreseeable prospective

24  relationships" with "other high-end distributors and retailers." Opp'n 24. But absent an "existing

25  relationship with an identifiable buyer," Plaintiffs have no claim. *Westside Ctr. Assocs. v. Safeway*

26  *Stores 23, Inc.*, 42 Cal. App. 4th 507, 527 (1996).

---

27  [12]   As addressed in the other Defendants' filings, the RICO claims suffer from the same deficiency.
*See Glenn v. First Nat'l Bank in Grand Junction*, 868 F.2d 368, 371 (10th Cir. 1989) (affirming

28  dismissal of a shotgun-plead RICO claim).

1    Fourth, citing nothing, Plaintiffs confirm that their conversion claim is addressed to the

2    abstract, intangible property interest of "Mocha Mill's entire business," Opp'n 24, and they fail to

3    address how Blue Bottle was not a bona fide purchaser of the coffee it bought from Port of Mokha.

4    *See Boon Rawd Trading Int'l Co. v. Paleewong Trading Co.*, 688 F. Supp. 2d 940, 955 (N.D. Cal.

5    2010); *see also Regent All. Ltd. v. Rabizadeh*, 231 Cal. App. 4th 1177, 1183 (2014).

6    Fifth, on unjust enrichment, the Opposition primarily addresses an argument raised by the

7    Port of Mokha Defendants, not Blue Bottle. *See* Opp'n 24. Plaintiffs respond to Blue Bottle's

8    arguments by just asserting that "Blue Bottle [was] unjustly enriched with Mocha Mill's assets." *Id.*

9    They do not even try to explain why Blue Bottle was not a bona fide purchaser of the coffee bought

10   from Port of Mokha. *See First Nationwide Savings v. Perry*, 11 Cal. App. 4th 1657, 1663 (1992).

11   Finally, Plaintiffs attempt to justify the viability of their UCL claim with yet another

12   conclusory statement: "Blue Bottle helped POM defraud Mocha Mill out of its best coffee at the

13   critical moment of launch, virtually stealing and siphoning to POM all assets and opportunities that

14   rightfully belong to Mocha Mill." Opp'n 25. Of course, there's no factual support for this outrageous

15   averment. Nor for that matter, would it prove an actionable theory for resolution under the UCL.

16   Indeed, the theory is not meaningfully different from the facts of *Korea Supply Co. v. Lockheed*

17   *Martin Corp.*, 29 Cal. 4th 1134, 1149 (2003), which held that UCL restitution does not reach the

18   results of business opportunities wrongfully taken by a defendant.

19   **III.    The Individual Plaintiffs Lack Standing to Sue Blue Bottle.**

20   Plaintiffs' only response concerning the standing of the Individual Plaintiffs is that they

21   could bring partnership claims against Mokhtar for breaching duties to them as partners in Mocha

22   Mill. Opp'n 25. That seems curious, given that they allege Mocha Mill is *a corporation. See* ¶ 24; *cf.*

23   *Eng v. Brown*, 21 Cal. App. 5th 675, 694 (2018) (a partnership and its respective duties generally

24   cease "to exist after the formation of a corporation"). Regardless, Blue Bottle was never anyone's

25   partner. So to the extent these parties bring claims against Blue Bottle, they must be dismissed.

26                                    *    *    *

27   For the above-stated reasons, as well as the reasons set out in the motion papers, Blue

28   Bottle's Motion should be granted and Plaintiffs' action dismissed with prejudice.

Dated: September 10, 2018

KIRKLAND & ELLIS LLP

*/s/ Michael Shipley*

Michael Shipley (SBN 233674)
Edward Hillenbrand (SBN 310872)
KIRKLAND & ELLIS LLP
333 South Hope Street, Suite 2900
Los Angeles, California 90071
Telephone:     (213) 680-8400
E-Mail:         michael.shipley@kirkland.com
                edward.hillenbrand@kirkland.com

*Attorneys Blue Bottle Coffee, Inc.*

**BLUE BOTTLE COFFEE, INC.'S REPLY ISO ITS MOTION TO DISMISS THE COMPLAINT**
**CASE NO. 4:18-CV-02539-HSG**