UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MOCHA MILL, INC., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>PORT OF MOKHA, INC., et al.,<br><br>Defendants. | Case No. 18-cv-02539-HSG<br><br>**ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS THE FIRST AMENDED COMPLAINT**<br><br>Re: Dkt. Nos. 39, 41, 43 |

On April 30, 2018, Plaintiffs Mocha Mill, Inc. ("Mocha Mill"), Monk of Mocha Specialty Coffee Production and Export, Inc. ("Monk of Mocha"), Ibrahim A. Alaeli ("Alaeli"), Yasir H. Khanshali ("Khanshali"), and Adnan G. Awnallah ("Awnallah") brought this suit, asserting violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c) and (d), as well as various state law claims, against Defendants Port of Mokha, Inc. and Port of Mokha LLC (collectively, "POM"), Mokha Foundation, Blue Bottle Coffee, Inc. ("Blue Bottle"), Metra Computer Group FZCO ("Metra"), T&H Computers, Inc. ("T&H"), Mokhtar F. Alkhanshali ("Alkhanshali"), and Ibrahim Ahmad Ibrahim ("Ahmad"). *See* Dkt. No. 1. On June 3, 2018, Plaintiffs filed a first amended complaint. *See* Dkt. No. 24 ("FAC").

Now pending before the Court are three motions to dismiss the FAC, all filed on July 27, 2018. Defendants Metra and T&H filed one motion. Dkt. No. 39 ("Metra Mot."). Defendants POM, Mokha Foundation, Alkhanshali, and Ahmad filed another. Dkt. No. 41 ("POM Mot."). Defendant Blue Bottle filed the third. Dkt. No. 43 ("Blue Bottle Mot."). Briefing on these motions is complete. Dkt. Nos. 44 ("Metra Opp."), 45 ("POM Opp."), 47 ("Blue Bottle Opp."), 49 ("Metra Reply"), 50 ("POM Reply"), 51 ("Blue Bottle Reply"). The Court held oral argument on the motions on October 11, 2018. Dkt. No. 64. After carefully considering the parties'

arguments, the Court **GRANTS** Defendants' motions.

## I. BACKGROUND

As alleged in the operative complaint, Plaintiff Alaeli and Defendant Alkhanshali agreed to start a business sometime in 2013, with the hopes of "start[ing] a coffee import/export company cultivating, processing, and distributing specialty coffee sourced from Yemen." FAC ¶¶ 61–66. This union led to Mocha Mill, the goal for which "was to be the first company to market and sell premium Yemeni coffee." *Id.* ¶ 67. After adding Plaintiffs Khanshali and Awnallah as investors, the four made great strides in establishing the Mocha Mill business, from Alkhanshali travelling to Yemen to build distribution and supply chain relationships, to attending coffee conferences. *See, e.g., id.* ¶¶ 69–81. But as often happens in business relationships, the group splintered. And Alkhanshali ultimately founded a different company: Port of Mokha. The details of this transition gave rise to the present action, as Plaintiffs allege that Alkhanshali orchestrated a conspiracy to usurp Mocha Mill as the first company to emerge as the provider of premium Yemeni coffee. *See, e.g.*, *id.* ¶ 7.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure ("Rule") 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A defendant may move to dismiss a complaint for failing to state a claim upon which relief can be granted under Rule 12(b)(6). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). To survive a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In reviewing the plausibility of a complaint, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party."

2

*Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Nonetheless, courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)). The Court also need not accept as true allegations that contradict matter properly subject to judicial notice or allegations contradicting the exhibits attached to the complaint. *Sprewell*, 266 F.3d at 988.

If the court concludes that a 12(b)(6) motion should be granted, the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal citations and quotation marks omitted).

## III. DISCUSSION

Plaintiffs bring two federal causes of action—under RICO Sections 1962(c) and (d)—and eleven state law claims. FAC ¶¶ 210–310. Defendants move to dismiss all causes of action.[1] This order first addresses overarching defects in Plaintiffs' case before turning to the federal claims.

### A. Plaintiff Monk of Mocha and the Individual Plaintiffs Lack Standing

Defendants argue that Monk of Mocha lacks standing because it is merely Mocha Mill's predecessor company, whose claims—if any—passed to Mocha Mill. Blue Bottle Mot. at 7 (citing Cal. Corp. Code § 1107(d)). No party disputes that Mocha Mill retains whatever claims Monk of Mocha might hold and Plaintiffs concede that this Court may dismiss Monk of Mocha for lack of standing. *See* Blue Bottle Opp. at 25; Dkt. No. 64, at 5:1–23. Accordingly, the Court **DISMISSES** all claims as to Monk of Mocha without leave to amend.

Defendants also argue that the individual Plaintiffs lack standing because their claims, based on the operative complaint, are derivative of the harm suffered by Mocha Mill. *See* Blue Bottle Mot. at 6–7. Plaintiffs respond that Defendants "miss the point that the individual Plaintiffs entered into a partnership and joint venture with Mokhtar and it is the partnership and joint

---

[1] The Court considers Defendants' arguments across the three dismissal motions collectively, due to the substantial overlap.

3

venture that owns Mocha Mill." Blue Bottle Opp. at 25. This alone, in Plaintiffs' view, means that "in addition to Mocha Mill's standing as the defrauded corporation, the individual Plaintiffs have standing as [Alkhanshali's] defrauded partners." *Id.*

The Court finds the individual Plaintiffs do not have standing to assert the claims alleged in the operative complaint. Well-established Ninth Circuit law holds that a plaintiff lacks standing under RICO if the alleged injury is derivative of harm to another legal entity, such as a corporation. *See Sparling v. Hoffman Const. Co.*, 864 F.2d 635, 640–41 (9th Cir. 1988). For that reason, shareholders and limited partners cannot assert RICO claims when their harm "is also derivative of the harm" to their corporation or partnership. *See id.* To avoid the general bar against shareholder standing in RICO actions, a plaintiff must plead either "an injury distinct from that to other shareholders or a special duty between [the defendant] and [plaintiff]." *Id.* The FAC pleads neither for the individual Plaintiffs in this action. Rather, the FAC only alleges injury to Mocha Mill.[2]

Even in opposition to the pending dismissal motions, Plaintiffs failed to identify a single non-derivative harm to the individual Plaintiffs. *See* Blue Bottle Opp. at 25. Instead, Plaintiffs argue that individual Plaintiffs and Defendant Alkhanshali "entered into a partnership and joint venture," which "owns Mocha Mill." *Id.* Thus, according to Plaintiffs, "the individual Plaintiffs have standing as [Alkhanshali's] defrauded partners." *Id.* But even if there were a partnership exception to the *Sparling* principle—a proposition for which Plaintiffs provide no support—

---

[2] The Court observes that each claim for relief asserts that Defendants harmed Mocha Mill. *See* FAC ¶ 228 ("As a result of the Enterprise's racketeering activity, Port of Mokha unlawfully supplanted Mocha Mill, causing Mocha Mill to suffer significant damages") (Claim 1), ¶ 231 (incorporating the first claim's allegations and claim for relief) (Claim 2), ¶ 234 (alleging that Alkhanshali "embezzled at least approximately $140,942 from Mocha Mill") (Claim 3), ¶ 242 (alleging conduct that "caus[ed] Mocha Mill to suffer significant injury and damages") (Claim 4), ¶ 247 (alleging conduct that "caus[ed] Mocha Mill to suffer significant injury and damages") (Claim 5), ¶ 254 (alleging conduct that "caus[ed] Mocha Mill to suffer significant injuries") (Claim 6), ¶ 260 (alleging conduct that "caus[ed] Mocha Mill to suffer significant injuries") (Claim 7), ¶ 269 (alleging conduct that "caus[ed] Mocha Mill to suffer significant injury and damages") (Claim 8), ¶ 277 (alleging conduct that "caus[ed] Mocha Mill to suffer significant injuries") (Claim 9), ¶ 287 (alleging Alkhanshali "illegally stole and converted Mocha Mill's funds") (Claim 10), ¶ 292 (alleging conduct that "caus[ed] Mocha Mill to suffer significant injuries") (Claim 11), ¶ 299 (alleging conduct that "caus[ed] Mocha Mill to suffer significant injuries") (Claim 12), ¶ 306 (alleging that Defendants "deprive[d] Plaintiffs of the continuing business profits and opportunities they were entitled") (Claim 13).

4

United States District Court
Northern District of California

Plaintiffs could not rely on it, because the FAC stated that "at all times material to the allegations of this Complaint, [Mocha Mill] was and remains a California *corporation*." FAC ¶ 24 (emphasis added).

At the hearing on the pending motions, Plaintiffs relied exclusively on the Supreme Court's opinion in *Franchise Tax Board of California v. Alcan Aluminium Ltd.*, 493 U.S. 331 (1990) (*Alcan Aluminium*), to justify the individual Plaintiffs' standing. *See* Dkt. No. 64, at 5:24–14:1. Although Plaintiffs nowhere cited *Alcan Aluminium* in any briefing leading up to the hearing, Plaintiffs represented to the Court several times that *Alcan Aluminum* resolved this issue in Plaintiffs' favor. *See, e.g.*, *id.* at 6:14–19 ("That is a claim that's independent of Mocha Mill's claims, Your Honor, and under *Alcan Aluminum* [sic], that claim should persist."), 11:4–5 ("So this is exactly what *Alcan Aluminum* [sic] refers to, Your Honor."). Plaintiffs stressed the following *Alcan Aluminium* language: "There is, however, an exception to [the shareholder standing] rule allowing a shareholder with a direct, personal interest in a cause of action to bring suit even if the corporation's rights are also implicated." *Alcan Aluminium*, 493 U.S. at 336; *see also* Dkt. No. 64, at 9:10–15.

The Court finds Plaintiffs' reliance on *Alcan Aluminium* unavailing. To start, Plaintiffs' favored excerpt in no way differs from the Ninth Circuit's law requiring proof of non-derivative harms. A derivative harm is not a "direct" harm, to use *Alcan Aluminium*'s language. *See* 493 U.S. at 336. More important, *Alcan Aluminium* expressly declined to make any finding as to standing, deciding the case on other grounds. *See id.* at 338 ("We need not decide this dispute about respondents' stockholder standing, for assuming that respondents do have such standing . . . their federal actions are nevertheless barred under the Tax Injunction Act.").

Because the operative complaint does not allege non-derivative harms to the individual Plaintiffs, the Court **DISMISSES** all claims brought by Plaintiffs Alaeli, Khanshali, and Awnallah.

### B. The Court Lacks Jurisdiction Over Mokha Foundation

The operative complaint asserts that "Mokha Foundation is an entity headquartered in the Northern District of California, which Plaintiffs are informed and believe, and on that basis allege,

operates as a wholly-owned subsidiary of [POM]" FAC ¶ 17. POM represents in its dismissal motion, however, that it "has no subsidiaries, and there is no legal entity called 'Mokha Foundation.'" POM Mot. at 10. And POM supports this denial with a declaration from POM's CEO. *See id.* (citing Dkt. No. 41-1 ¶ 5). POM accordingly moves to dismiss Plaintiffs' claims against Mokha Foundation for lack of jurisdiction under Rule 12(b)(1), arguing that Mokha Foundation is not a legal entity and thus lacks the capacity to be sued. POM Mot. at 10–11. Plaintiffs respond that Mokha Foundation should remain a Defendant because (1) POM has not adequately proven Mokha Foundation does not exist, and (2) even if Mokha Foundation does not exist in any state, it could be an unincorporated entity. POM Opp. at 7.

Plaintiffs misunderstand the burden of proof on this jurisdictional dispute. The burden under Rule 12(b)(1) is on the party asserting jurisdiction, and courts presume the absence of jurisdiction until the pleading party proves otherwise. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986) ("The party seeking to invoke the court's jurisdiction bears the burden of establishing that jurisdiction exists."). Moreover, the Court has "broad discretion to consider relevant and competent evidence on a motion to dismiss for lack of subject matter jurisdiction that raises factual issues." 5B Charles Alan Wright et al., Federal Practice and Procedure § 1350 (3d ed. 2018); *see also Arbaugh v. Y&H Corp.*, 546 U.S. 500, 501 (2006) ("Second, in some instances, if subject-matter jurisdiction turns on contested facts, the trial judge may be authorized to review the evidence and resolve the dispute on her own.").

Turning to the present dispute, the capacity to sue or be sued is determined "by the law of the state where the court is located." Fed. R. Civ. P. 17(b). And under California law, "[a] civil action can be maintained only against a legal person, i.e., a natural person or an artificial or quasi-artificial person; a nonentity is incapable of suing or being sued." *Oliver v. Swiss Club Tell*, 35 Cal. Rptr. 324, 329 (Ct. App. 1963); *see also Nat'l Grande of the Order of Patrons of Husbandry v. Cal. Guild*, No. 2:16-201 WBS DB, 2018 WL 3869626, at *4 (E.D. Cal. Aug. 13, 2018) (rejecting jurisdiction over "some amorphous entity"); *Banks.com, Inc. v. Keery*, No. C 09-06039 WHA, 2010 WL 727973, at *7 (N.D. Cal. Mar. 1, 2010) (rejecting jurisdiction over "a domain

name only"). Plaintiffs plead nothing to suggest that Mokha Foundation is an entity capable of being sued. Rather, Plaintiffs pleaded that Mokha Foundation "is an entity headquartered in the Northern District of California, which . . . operates as a wholly-owned subsidiary of Port of Mokha, Inc," *see* FAC ¶ 17, Defendants denied that allegation with a sworn declaration, *see* POM Mot. at 10–11, and Plaintiffs point to nothing substantiating their pleaded allegations. The Court thus finds that Plaintiffs have not carried their burden of establishing that jurisdiction exists. *See Kokkonen*, 511 U.S. at 377.

The Court also finds unavailing Plaintiffs' alternative argument that jurisdiction might exist over Mokha Foundation as an unincorporated entity. POM Opp. at 7. An unincorporated association, "whether organized for profit or not, may sue and be sued in the name it has assumed or by which it is known." Cal. Civ. Proc. Code § 369.5. But to qualify as an unincorporated association subject to suit, there must be "(1) a group whose members share a common purpose, and (2) who function under a common name under circumstances where fairness requires the group be recognized as a legal entity." *People ex rel Totten v. Colonia Chiques*, 67 Cal. Rptr. 3d 70, 75 (Ct. App. 2007) (quoting *Barr v. United Methodist Church*, 153 Cal. Rptr. 322, 266 (Ct. App. 1979)). The operative complaint, however, does not allege that Mokha Foundation was an unincorporated association. More important, the Court has serious doubts that Plaintiffs could satisfy California's two-prong test—even if Plaintiffs alleged Mokha Foundation is an unincorporated association—because there is presently no reason to suggest that fairness dictates that this Court recognize Mokha Foundation as a legal entity. *See Totten*, 67 Cal. Rptr. at 75. Plaintiffs also brought suit against POM—the entity they claim controls Mokha Foundation—and the operative complaint "does not allege that [Mokha Foundation] engaged in any specific conduct, entered into any contract with plaintiff[s], or incurred any legal obligations with respect to plaintiff." *See Banks.com, Inc.*, 2010 WL 727973, at *7.

Accordingly, Plaintiffs' complaint as to defendant Mokha Foundation is **DISMISSED**.

### C.   The Court Lacks Jurisdiction Over Metra

Defendant Metra asks the Court to dismiss all claims against it for lack of personal jurisdiction and improper service of process. Metra Mot. at 17–25. Because the Court finds

personal jurisdiction lacking, it does not address whether service was proper.

### i. Rule 12(b)(2) Standard

"Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014). Where "there is no applicable federal statute governing personal jurisdiction, the law of the state in which the district court sits applies." *Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1129 (9th Cir. 2003).

Where a state, like California, "authorize[s] its courts to exercise jurisdiction over persons 'on any basis not inconsistent with . . . the Constitution of the United States,'" federal courts ask whether the exercise of jurisdiction over a defendant "comports with the limits imposed by federal due process." *Walden v. Fiore*, 571 U.S. 277, 283 (2014) (citing *Daimler*, 571 U.S. at 125); Cal. Civ. Proc. Code § 410.10 ("A court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States."); *see also Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1360 (Fed. Cir. 2001) ("[B]ecause California's long-arm statute is coextensive with the limits of due process, the two inquiries collapse into a single inquiry: whether jurisdiction comports with due process."). Specifically, "[a] court may exercise personal jurisdiction over a defendant consistent with due process only if he or she has certain minimum contacts with the relevant forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Menken v. Emm*, 503 F.3d 1050, 1056 (9th Cir. 2007) (internal quotation marks omitted) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

A plaintiff can invoke two categories of personal jurisdiction: general and specific. *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015). "[C]ourts have general jurisdiction over a foreign corporation only if the corporation's connections to the forum state are so continuous and systematic as to render [it] essentially at home in the forum State." *Williams v. Yamaha Motor Co. Ltd.*, 851 F.3d 1015 (9th Cir. 2017) (quotations omitted). In that case, the foreign defendant is subject to suit "whether or not the conduct at issue has any connection to the forum." *Ranza*, 793 F.3d at 1068. This is in contrast to "[s]pecific or case-linked jurisdiction [which] depends on an

8

affiliation between the forum and the underlying controversy (i.e., an activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation)." *Walden*, 571 U.S. at 283 n.6 (internal quotation marks and brackets omitted).

"When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that the court has jurisdiction over the defendant." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006). Although the Court "may not assume the truth of allegations in a pleading which are contradicted by affidavit," the Court must resolve conflicts between the facts contained in the parties' affidavits in plaintiff's favor. *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1073 (9th Cir. 2011) (internal quotation marks omitted); *see also Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). Absent an evidentiary hearing, a plaintiff need only make out "a prima facie showing of jurisdictional facts to withstand the motion to dismiss." *Pebble Beach Co.*, 453 F.3d at 1154 (quotation omitted).

On a dismissal motion, courts in the Ninth Circuit analyze specific jurisdiction under a three-prong test:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger*, 374 F.3d at 802. The plaintiff bears the burden of satisfying the first two specific jurisdiction prongs. *Id.* (citing *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990)). If the plaintiff does so, the burden then shifts to the defendant to "present a compelling case" that the exercise of jurisdiction would not be reasonable. *Id.* (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476–78 (1985)).

**ii. The Court Lacks Specific Jurisdiction Over Metra**

Plaintiffs argue that the operative complaint adequately alleges facts to support specific jurisdiction over Metra. Metra Opp. at 18–24. Alternatively, Plaintiffs argue that personal jurisdiction is proper under either the federal nationwide jurisdiction statute or RICO's nationwide

9

service provision. *Id.* Finally, Plaintiffs ask that, even if the Court finds jurisdiction lacking, it permit Plaintiffs jurisdictional discovery. *Id.* at 24 n.7.

The Court finds the operative complaint does not adequately plead facts to support personal jurisdiction over Metra. To start, the operative complaint does not allege any specific misconduct on the part of Metra; rather, it broadly states that "Metra does substantial business within, and sends is[sic] products into the stream of commerce into, the State of California and the Northern District of California by and through its wholly-owned subsidiary and American-based agent, T&H Computers, Inc., which Plaintiffs are informed and believe, and on that basis allege, does substantial business, for the benefit of its parent company, within the State of California and within the Northern District of California." FAC ¶ 19.

Even if these contacts showed Metra purposefully availed itself of the privilege of conducting activities in California—which the Court does not decide here—Plaintiffs have not shown that their claims against Metra arise out of these contacts. Plaintiffs offer no explanation for how Metra's mere status as a parent relate to the conspiracy allegations. When asked at the hearing on the pending motions where in the operative complaint Plaintiffs adequately pleaded jurisdictional facts over Metra, Plaintiffs directed the Court to "paragraphs 177 through 183." Dkt. No. 64, at 14:23–24. But like the rest of the operative complaint, nothing in these seven paragraphs demonstrates Metra's involvement aside from bare assertions that Metra must have been involved. *See, e.g.*, FAC ¶ 177 ("[Alkhanshali] and Ahmad created the fictional 'T&H Imports,' in conspiracy with Defendants T&H Computers and Metra Computer Group, both of which are companies run by Ahmad's extended family."), ¶ 178 ("T&H and Metra knew of the Enterprise's objective and . . . agreed to help execute the fraud scheme.") ¶ 183 ("Enterprise members conspired with T&H and Metra . . . .").

Accordingly, the Court finds that the operative complaint has not adequately alleged forum-related activities that relate to the claims in this action. *See Schwarzenegger*, 374 F.3d at 802

//

//

### iii. The Court Finds No Alternative Basis for Jurisdiction

Plaintiffs alternatively argue the Court has personal jurisdiction over Metra under either Federal Rule of Civil Procedure 4(k)(2)—the provision for nationwide jurisdiction—or 18 U.S.C. § 1965(b)—RICO's nationwide service provision. POM Opp. at 20–23. The Court finds neither basis adequate for asserting personal jurisdiction.

Rule 4(k)(2) provides a mechanism to establish personal jurisdiction over a defendant where (1) the "claim arises under federal law," (2) "the defendant is not subject to jurisdiction in any state's courts of general jurisdiction," and (3) "exercising jurisdiction is consistent with the United States Constitution and laws." Fed. R. Civ. P. 4(k)(2). But Rule 4(k)(2) only assists plaintiffs in two circumstances: (1) where the forum state's long-arm statute is more restrictive than the Due Process Clause of the Fifth Amendment; and (2) where a defendant's contacts with any particular state are not enough to warrant the exercise of personal jurisdiction under the Fifth Amendment, but the defendant's *nationwide* contacts—as a whole—so merit. Neither situation exists here. First, California's long-arm statute is coextensive with the Fifth Amendment. *See* Cal. Code Civ. Proc. § 410.10. Second, Plaintiffs pleaded no U.S. contacts outside of California. Thus, Rule 4(k)(2)—while it applies to the federal causes of action at issue in this dispute—affords Plaintiffs no more tenable basis for personal jurisdiction than California's long-arm statute by itself.

Plaintiffs' invocation of RICO's nationwide-service provision is similarly unavailing because it in no way eliminates Plaintiffs' burden to plead facts demonstrating the minimum contacts necessary to establish personal jurisdiction. *See Doe v. Unocal Corp.*, 27 F. Supp. 2d 1174, 1182 (C.D. Cal. 1998) ("Where a defendant is properly served in the United States under RICO's nationwide service provision, that defendant's national contacts, rather than its minimum contacts with the forum state, determine whether the district court has personal jurisdiction over the defendant."); *Go-Video, Inc. v. Akai Elec. Co.*, 885 F.2d 1406, 1416 (9th Cir. 1989) (explaining that "when a statute authorizes nationwide service of process, national contacts analysis is appropriate . . . . before a court can assert personal jurisdiction"). With respect to foreign defendants, Section 1965(b) simply affords courts the opportunity to analyze nationwide

contacts in determining whether the court may exercise personal jurisdiction. *See Go–Video, Inc.*, 885 F.2d at 1416. But as just explained, Plaintiffs plead no facts showing Metra engaged in U.S. contacts outside of California. As a result, any Section 1965(b) inquiry necessarily collapses into the personal jurisdiction inquiry under California's long-arm statute.

### iv. Jurisdictional Discovery is Not Warranted

Plaintiffs finally argue that, even if this Court finds jurisdiction lacking, it should permit Plaintiffs jurisdictional discovery "to develop the factual record regarding Metra's conduct in the United States." Metra Opp. at 24 n.7.

The court may order jurisdictional discovery where "pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 n.1 (9th Cir. 1977). Jurisdictional discovery "should be granted when . . . the jurisdictional facts are contested or more facts are needed." *Laub v. U.S. Dept. of Interior*, 342 F.3d 1080, 1093 (9th Cir. 2003). "[W]here a plaintiff's claim of personal jurisdiction appears to be both attenuated and based on bare allegations in the face of specific denials made by the defendants, the Court need not permit even limited discovery . . . ." *Pebble Beach Co.*, 453 F.3d at 1160 (citing *Terracom v. Valley Nat'l Bank*, 49 F.3d 555, 562 (9th Cir.1995)). For that reason, courts need not allow jurisdictional discovery requests that "amount[] merely to a 'fishing expedition.'" *Barantsevich v. VTB Bank*, 954 F. Supp. 2d 972, 996 (C.D. Cal. 2013).

The heart of Plaintiffs' claims against Metra is that, as the parent company of T&H, Metra must have known or participated in wrongdoing. That is not enough for this court to permit jurisdictional discovery. Rather, Plaintiffs needed to provide the Court with "specific facts, transactions, or conduct that would give rise to personal jurisdiction." *See Getz v. Boeing Co.*, 654 F.3d 852, 860 (9th Cir. 2011). Plaintiffs did not do so.

In sum, the Court finds it lacks personal jurisdiction over, and thus **DISMISSES** all claims against, Defendant Metra. In addition, the Court **DENIES** Plaintiffs' request for jurisdictional discovery.

//

### D. The Arbitration Agreement Between Mocha Mill and Alkhanshali Does Not Encompass This Dispute

Defendant Alkhanshali argues that Plaintiffs' claims against him must be dismissed under a partnership agreement's allegedly binding arbitration and forum-selection clause. POM Mot. at 9–10. Alkhanshali contends that the relevant clause expansively covers any claims related to the underlying business: "Under the partnership agreement, the Investors agreed to resolve all disputes with [Alkhanshali] relating to the Mocha Mill business through an arbitration process, and if this arbitration process failed, they further agreed to assert all disputes arising between them in connection with the partnership in the Commercial Court of Sana'a in Yemen." *Id.* at 9. Alkhanshali in turn asks this Court to dismiss claims against him under Rule 12(b)(3) for improper venue. POM Mot. at 8; POM Reply at 1–2.

In opposition, Plaintiffs primarily contest dismissal by arguing that the agreement "is void and unenforceable because it resulted from extortion and was signed under duress," and because "Plaintiffs' claims . . . are based on the original oral partnership and joint venture agreement . . . which contemplated no arbitration or venue in Yemen, *and* which, by the partners' non-compete agreement, prohibited the extortion that resulted in [sic] agreement POM relies on." POM Opp. 4–7. At the hearing on this motion, however, Plaintiffs argued for the first time that they also believe it is improper for Alkhanshali to seek dismissal under Rule 12(b)(3). *See* Dkt. No. 64, at 22:5–24:5, 26:19–27:6. Plaintiffs relied exclusively on *Atlantic Marine Construction Co. v. United States District Court for the Western District of Texas*, 571 U.S. 49 (2013)—a case cited nowhere in Plaintiffs' papers—for the principle that a forum-selection clause may not be enforced through a motion to dismiss under Rule 12(b)(3). *See* Dkt. No. 64 at 23:1–12.

Whatever basis Alkhanshali may have had for seeking to dismiss claims against him based on the partnership agreement is ultimately inconsequential, because the Court finds that no fair reading of the arbitration and forum-selection clause would encompass the present action. The only certified translation before the Court—offered by Alkhanshali—is not nearly as broad as he argues.[3] The provision, according to Alkhanshali's uncontested translation, covers "disputes . . .

---

[3] The Court finds that it may incorporate the partnership agreement into the operative complaint by reference. *See Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (explaining that under the

over interpretation of any of the contract's articles." Dkt. No. 41-2 Ex. B, at 3. The contract then provides that if the dispute cannot be resolved amicably, "each party shall select an arbitrator, and the [Yemeni] Court shall have jurisdiction over the dispute." *Id.* This language, requiring an arbitrator subject to a Yemeni court's jurisdiction to resolve disputes over the contract's interpretation, does not encompass disputes over alleged wrongdoing where interpretation of the contract's language is entirely irrelevant to the claims.

Because the arbitration provision does not encompass the dispute at issue here, the Court **DENIES** Defendant Alkhanshali's request to dismiss all claims against him pursuant to the arbitration and forum selection clauses.

### E. Plaintiffs Fail to State Federal Claims Upon Which Relief Can Be Granted

Defendants contend that the operative complaint fails to state a federal cause of action upon which relief can be granted under Rule 12(b)(6). The operative complaint's only federal causes of actions are based on purported violations of two RICO provisions. First, it alleges violations of 18 U.S.C. § 1962(d), which provides: "It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section." FAC ¶¶ 210–28. Second, it alleges violations of 18 U.S.C. § 1962(c), which provides: "It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." *Id.* ¶¶ 229–31. Because Plaintiffs' Section 1962(d) claim requires the survival of the Section 1962(c) claim, the Court turns first to Plaintiffs' claims under Section 1962(c). *See Howard v. Am. Online Inc.*, 208 F.3d 741, 751 (9th Cir. 2000) ("[F]ailure to adequately plead a substantive violation of RICO precludes a claim for conspiracy.").

To state a claim under Section 1962(c), Plaintiffs must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co.*, 473

---

incorporation-by-reference doctrine, a court may "take into account documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading" (internal quotations and citation omitted)).

14

U.S. 479, 496 (1985). Racketeering activity is commonly referred to as "predicate acts." *Living Designs, Inc. v. E.I. Dupont de Nemours and Co.*, 431 F.3d 353, 361 (9th Cir. 2005). "Rule 9(b)'s requirement that '[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity' applies to civil RICO fraud claims." *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1065–66 (9th Cir. 2004); *see also Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 541 (9th Cir. 1989) ("We have applied the particularity requirements of rule 9(b) to RICO claims."). "RICO is to be read broadly" and "liberally construed to effectuate its remedial purposes." *Sedima, S.P.R.L.*, 473 U.S. at 497–98; *see also Odom v. Microsoft Corp.*, 486 F.3d 541, 545–47 (9th Cir. 2007) (admonishing "judicial resistance to RICO, manifested in narrow readings of its provisions by lower federal courts"). But Congress's intent that RICO be read broadly "is not an invitation to apply RICO to new purposes that Congress never intended." *Reves v. Ernst & Young*, 507 U.S. 170, 183 (1993).

### i. Conduct of an Enterprise

Section 1962(c) applies to "any person employed by or associated with any enterprise." A plain reading of this language establishes the "basic principle" that a Section 1962(c) claim demands proof of "two distinct entities: (1) a 'person'; and (2) an 'enterprise' that is not simply the same 'person' referred to by a different name." *Cedric Kushner Prods., Ltd. v. King*, 533 U.S. 158, 161 (2001). An "enterprise" may be either a legal entity or an association-in-fact. 18 U.S.C. § 1961(4). When alleging a legal entity "enterprise," there must be some "distinctness" between the "person" and the "enterprise," but the standard is not exacting. *King*, 533 U.S. at 162. The RICO enterprise may nonetheless be a corporation and a corporate shareholder or employee may be the sole member, or "person," involved in the enterprise. *Id.* And there is no bar against the corporate "enterprise" bringing a civil RICO claim against the shareholder "person" for their wrongful conduct. *United Energy Owners Comm., Inc. v. U.S. Energy Mgmt. Sys., Inc.*, 837 F.2d 356, 362 (9th Cir. 1988); *Sun Sav. & Loan Ass'n v. Dierdorff*, 825 F.2d 187, 194 (9th Cir. 1987) ("The enterprise that Sun has alleged in its complaint is Sun itself.").

It is not enough, however, for a plaintiff simply to call a defendant's corporation the enterprise. Because Section 1962(c) demands "conduct" of an enterprise, liability "depends on

15

showing that the defendants conducted or participated in the conduct of the '*enterprise's* affairs,' not just their *own* affairs." *Reves*, 507 U.S. at 185. And to conduct or participate in the "enterprise's affairs" means one must, at a minimum, "participate in the operation or management of the enterprise." *Id.* Whether the corporate employee conducts the affairs of the enterprise "within the scope, or beyond the scope" of their corporate authority is irrelevant. *King*, 533 U.S. at 166. But the "conduct" requirement demands "an element of direction" because "Congress did not intend RICO to extend beyond the acquisition or operation of an enterprise." *Reves*, 507 U.S. 178–82. All told, there must be some direction or goal of the enterprise, which the defendant conducts or at least participates in conducting.

Plaintiffs allege two stages of enterprises in the operative complaint. First, Plaintiffs allege that Alkhanshali was the sole member of a RICO enterprise when Mocha Mill was the RICO enterprise, starting around April 2014. *See, e.g.*, FAC ¶ 212. Second, Plaintiffs allege that Alkhanshali "expanded" the enterprise in the Summer of 2015 "to form a larger association-in-fact enterprise" including other Defendants. *See, e.g.*, *id.* ¶ 213. Defendants do not dispute that—and more important, the Court need not now consider whether—Plaintiffs have adequately alleged conduct of an enterprise as to the expanded association-in-fact enterprise.

As to the pre-Summer of 2015 conduct, the Court finds that Plaintiffs have failed to adequately plead conduct of an enterprise. Plaintiffs allege that Alkhanshali was the sole "person" of an enterprise and that Plaintiff Mocha Mill itself was that enterprise. FAC ¶ 212. But Plaintiffs allege that the conduct of this enterprise that Alkhanshali purportedly directed consisted of Alkhanshali embezzling funds from and extorting Mocha Mill. *See, e.g.*, *id.* ¶¶ 5, 212. It defies all logic to suggest that a person stealing money from the enterprise constitutes conducting the affairs of the enterprise; rather, this is the very definition of a person conducting or participating in "their *own* affairs." *See Reves*, 507 U.S. at 185. Plaintiffs essentially ask this Court to find that the enterprise's affairs were to defraud the enterprise. The Court found no case—binding or not—to support this untenable position.

The Court thus finds that Plaintiffs have not adequately pleaded Section 1962(c) violations before the Summer of 2015, when Plaintiffs allege the creation of an association-of-fact

enterprise.[4]

### ii. Pattern

To establish a "pattern" under RICO, courts consider the relatedness of the predicate acts and continuity. *Medallion Television Enters., Inc. v. SelecTV of Cal., Inc.*, 833 F.2d 1360, 1363 (9th Cir. 1987) (*Medallion*). Predicate acts are related if they have "the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *H.J., Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 240 (1989). A plaintiff can establish that predicate acts were continuous by pleading either open-ended or closed-ended continuity. *Allwaste, Inc. v. Hecht*, 65 F.3d 1523, 1526 (9th Cir. 1995). Open-ended continuity refers to "past conduct that by its nature projects into the future with a threat of repetition." *H.J., Inc.*, 492 U.S. at 241. Closed-ended continuity refers to "a series of related predicates extending over a substantial period of time." *Id.* at 242. The continuity requirement reflects Congress "concern[] in RICO with long-term criminal conduct." *Id.* at 242. Plaintiffs argue that the operative complaint adequately alleges both open-ended and closed-ended continuity.

#### a. Open-Ended Continuity

Plaintiffs argue there is open-ended continuity because Defendants are engaged in ongoing money laundering, simply by virtue of having previously committed fraud. FAC ¶ 223; POM Opp. at 21. Plaintiffs first allege that by committing fraud in the past, Defendants acquired criminal proceeds. *See* POM Opp. at 21. Plaintiffs then claim that Defendants' large business "necessarily involves numerous transactions over $10,000." *Id.* And because every transaction is infected by the past fraud, each such transaction constitutes money laundering. *Id.* As a result, in Plaintiffs' view, POM—by virtue of its continued existence—commits continuous and never-ending acts of money laundering.

---

[4] Because the Court finds that Plaintiffs failed to adequately plead conduct of an enterprise before the Summer of 2015, it need not address whether Plaintiffs adequately pleaded the alleged embezzlement and extortion predicate acts from this period. The Court nonetheless has serious doubts about Plaintiffs' ability to plead these predicate acts based on what was alleged in the operative complaint.

17

Plaintiffs cite no case to support this untenable position. At the hearing on this motion, Plaintiffs conceded that they knew of no civil RICO case that relied on this theory of open-ended continuity. Dkt. No. 64 at 28:20–25. This Court is unwilling to break new ground by endorsing Plaintiffs' position, which would convert every corporate defendant alleged to have committed fraud one time into an open-ended, money laundering operation subject to civil RICO liability. To do so would serve "a purpose[] that Congress never intended." *See Reves*, 507 U.S. at 183.

### b. Closed-Ended Continuity

Plaintiffs also argue that there is closed-ended continuity because the operative complaint alleges conspiratorial conduct over several years—from April 2014 to at least June 2016. *See, e.g.*, FAC ¶ 5. But for reasons explained above, the Court finds that Plaintiffs have failed to adequately plead conspiratorial conduct before the Summer of 2015. The operative complaint thus, at best, describes a conspiratorial scheme that existed for about one year, from the Summer of 2015 to June 2016, with a singular goal of stealing Mocha Mill's business. *See, e.g.* FAC ¶ 5 ("Defendants . . . sought to usurp Mocha Mill's entire business . . . through an extensive RICO conspiracy . . . ."), ¶ 6 ("In short, using racketeering activity and other fraudulent means, [Defendants] stole the Mocha Mill business . . . ."), ¶ 7 (describing the "scheme"), ¶ 25 ("Mocha Mill's business was stolen by the Port of Mokha RICO enterprise through a pattern of racketeering activity."), ¶ 55 (alleging an enterprise "designed to steal . . . the business assets, relationships, and opportunities that Mocha Mill had spent significant time and money developing"), ¶ 213 ("The Enterprise sought to steal for the benefit of Port of Mokha the business Mocha Mill had spent years developing."). But the Ninth Circuit has explained that activity spanning only a matter of months, involving a single victim, with a singular goal, cannot sustain a RICO claim. *See Medallion*, 833 F.2d at 1362–65 (holding that "alleged acts of mail fraud, wire fraud, and interstate transportation of stolen property" did not show a "pattern of racketeering activity" because they were all "parts of [defendants'] single effort to induce Medallion to form the joint venture" and there was only a "single victim of the alleged fraud"); *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1535 (9th Cir. 1992) (holding that a former employee failed to state a RICO claim where multiple criminal predicate acts were "in a sense a single episode having the singular

purpose of impoverishing [the plaintiff]" and there was "no suggestion that these defendants . . . ever intended anyone but [plaintiff] any harm"); *Religious Tech. Ctr. v. Wollersheim*, 971 F.2d 364, 365–66 (9th Cir. 1992) (holding that plaintiffs had failed to state claim based on crimes allegedly committed over the course of six months, because "the only goal of the . . . defendants was the successful prosecution of [an earlier] state tort suit" against a single adversary); *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1399 (9th Cir. 1986) (rejecting RICO claim where a plaintiff alleged that the defendants had conspired to invade his exclusive sales territory, since the plaintiff had alleged only "the fraudulent diversion of a single shipment of Chambers' products in 1982," which was an "isolated event" and thus insufficient to establish continuity); *Jarvis v. Regan*, 833 F.2d 149, 153 (9th Cir. 1987) (holding that nonprofit organizations accused of fraudulently obtaining multiple federal grants over the course of several months and using the funds for the improper purpose of influencing an election could not be held liable under RICO because their fraud was "isolated and presented no threat of continuing").

Because Plaintiffs fail to plead closed-ended continuity, the Court finds that Plaintiffs have failed to adequately plead RICO's "pattern" requirement. Accordingly, the Court **DISMISSES** Plaintiffs' Section 1962(c) claim. And because Plaintiffs' Section 1962(d) claim requires the survival of the Section 1962(c) claim, the Court also **DISMISSES** Plaintiffs' Section 1962(d) claim. *See Howard*, 208 F.3d at 751.

### F. The Court Declines to Exercise Supplemental Jurisdiction

A district court may decline to exercise supplemental jurisdiction if it has dismissed all claims over which it has original jurisdiction. *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 561 (9th Cir. 2010) (citing 28 U.S.C. § 1367(c)(3)). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Id.* (citation and internal quotation marks omitted). Having dismissed Plaintiffs' only federal claims, the Court, in its discretion, declines to assert supplemental jurisdiction over the remaining state law claims unless and until a federal claim is adequately stated. Accordingly, Plaintiffs' remaining state law claims

are **DISMISSED**.

## IV. CONCLUSION

The Court **GRANTS** each Defendants' motion to dismiss the first amended complaint, and as to all claims. Dismissal is with leave to amend, except as otherwise stated above. Any amended complaint must be filed within 28 days of the date of this order.

**IT IS SO ORDERED.**

Dated: 3/5/2019

HAYWOOD S. GILLIAM, JR.
United States District Judge